IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIANNE NESTOR CASSINI, OLEG CASSINI, INC., CASSINI PARFUMS LTD., and GEMEAUX LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF NASSAU, BRIAN CURRAN, in his official capacity as NASSAU COUNTY PUBLIC ADMINISTRATOR, JEFFREY DELUCA, KENNETH MAHON, MARGARET C. REILLY, ROSALIA BAIAMONTE, JEFFREY MILLER, WILLIAM DOYLE GALLERIES, INC., JAMES DZURENDS, in his official capacity as NASSAU COUNTY SHERIFF, JOSEPH FUCITO, in his official capacity as NEW YORK CITY SHERIFF, and JOHN & JANE DOES 1-10,<br><br>Defendants. | **VERIFIED COMPLAINT IN A CIVIL ACTION**<br><br>Case No.<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiffs MARIANNE NESTOR CASSINI, OLEG CASSINI, INC., CASSINI

PARFUMS LTD., and GEMEAUX LTD., by and through their attorney, KRISTINA S.

HEUSER, ESQ., hereby complain of Defendants as follows:

**<u>INTRODUCTION</u>**

Marianne Nestor Cassini, one of the Plaintiff's herein, is the widow of Oleg Cassini. Mr.

Cassini amassed great fame during his life as a fashion designer and icon, perhaps most famously

designing the wardrobe of Jacqueline Kennedy while she was First Lady of the United States.

Mrs. Nestor Cassini was married to Mr. Cassini in 1971 and remained married to him until his

until his untimely and unexpected death in 2006. Since her husband's passing, Mrs. Nestor

Cassini has been victimized by Defendants as they have worked in concert to shamefully loot her

late husband's estate. Not only have they abused the legal process to steal the Estate's assets and distribute them amongst the coconspirators and their other cronies, but their thievery has extended to Mrs. Nestor Cassini's businesses and personal assets that are not properly part of the Estate. As will be described more fully herein, the Defendants – which include the Nassau County Surrogate, the former Nassau County Public Administrator, and the Receiver they appointed to act in Plaintiff's stead once they stripped her of her legal rights – went so far as even jailing this respected businesswoman and philanthropist for in excess of eight months in the Nassau County Correctional Center. Defendants did this to get Mrs. Cassini out of the way while they sold-off her and her husband's property for their own personal profit. This disgraceful, corrupt, and unabashedly illegal conduct must not go without consequence.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 and over the pendent state law claims pursuant to 28 U.S.C. §1367.

2. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §1391(b)(1) and (2) based upon most Defendants' residences and the location where the events giving rise to the claims occurred.

## PARTIES

3. Plaintiff MARIANNE NESTOR CASSINI (hereinafter "Mrs. Cassini") is the widow of Oleg Cassini, who was her first and only husband and to whom she was married for over thirty (30) years until his untimely death, and the chief beneficiary and residuary legatee of his probated will. Mrs. Cassini did maintain a residence (together with her husband) in the Village of Oyster Bay Cove, County of Nassau, State of

New York for over forty (40) years until her residence was illegally sold at less than one third of its value in 2019, as more fully described herein.

4. Plaintiff OLEG CASSINI, INC. (hereinafter "OCI") is a New York corporation engaged in the business of designing and authorizing the manufacture and distribution of men's and women's clothing, accessories and other items, under the trademark OLEG CASSINI. Mrs. Cassini is the sole shareholder of OCI. OCI has been in existence since 1951.

5. Plaintiff CASSINI PARFUMS LTD. (hereinafter ''Cassini Parfums'') is a New York corporation primarily engaged in manufacturing perfumes (natural and synthetic), cosmetics, soaps, detergents, and other toiletry products that use fragrances. Mrs. Cassini is the founder and sole shareholder of Cassini Parfums, having founded the company in 1989.

6. Plaintiff GEMEAUX LTD. (hereinafter "Gemeaux") is a New York corporation for which Mrs. Cassini serves as Chief Executive Officer and is a fifty-percent shareholder. The other half of the company is owned by Mrs. Cassini's sister, Peggy Nestor. The sisters founded Gemeaux in 1973. The nature of Gemeaux's business is television and film licensing, marketing, public relations, and design.

7. Defendant COUNTY OF NASSAU (hereinafter "the County" or collectively with the other Defendants employed by the County of Nassau as "the County defendants") is a municipal subdivision of the State of New York. The County employs and oversees other Defendants named hereinbelow.

8. Defendant BRIAN CURRAN (hereinafter "the Public Administrator" or collectively with the other Defendants employed by the County of Nassau as "the County

defendants") is sued herein in his official capacity as NASSAU COUNTY PUBLIC ADMINISTRATOR only. "The Public Administrator's primary duty is to administer estates that would otherwise remain unadministered; to protect the decedent's property from waste, loss or theft; make appropriate burial arrangements when no close relative is available to make the decisions; conduct thorough investigations to discover all assets; liquidate assets at public sale or distribute assets to heirs; pay the decedent's bills and taxes; and to locate persons entitled to inherit from the estate and ensure that the legal distributees receive their inheritance."[1]

9.  Defendant JEFFREY DELUCA (hereinafter "Mr. DeLuca" or collectively with defendants Reilly, Baiamonte, Miller, and Mahon as "the RICO defendants") was the Nassau County Public Administrator that immediately preceded the current Public Administrator. Mr. DeLuca knowingly participated in a scheme to steal from Plaintiff's by improperly using his office to misappropriate the assets of the Cassini Estate for the financial gain of the RICO defendants and their cronies. Upon information and belief, Mr. DeLuca is a resident of the County of Nassau, State of New York.

10. Defendant KENNETH MAHON (hereinafter "Mr. Mahon" or collectively with defendants Reilly, Baiamonte, Miller, and DeLuca as "the RICO defendants") is an attorney, member of the New York State Bar, and partner in the law firm Mahon, Mahon, Kerins & O'Brien, LLC. Mr. Mahon and/or his law firm have served as counsel to the Public Administrator at all relevant times herein. Upon information and belief, Mr. Mahon is a resident of the County of Nassau, State of New York.

---

[1] Source: Public Administrator | Nassau County, NY - Official Website (nassaucountyny.gov)

11. Defendant MARGARET C. REILLY (hereinafter "Judge Reilly" or collectively with defendants Mahon, Baiamonte, Miller, and DeLuca as "the RICO defendants") became the Nassau County Surrogate in 2016, thereby becoming the presiding judge over the Cassini Estate matter already pending in the Nassau County Surrogates Court. Upon taking over the case, Judge Reilly issued a series of improper orders, all of which were deemed such and accordingly vacated by the Appellate Division, Second Department in February 2020. Judge Reilly is a resident of the County of Nassau, State of New York.

12. Defendant ROSALIA BAIAMONTE (hereinafter "the Receiver", "Ms. Baiamonte", or collectively with defendants Reilly, Mahon, Miller, and DeLuca as "the RICO defendants") is an attorney, member of the New York State Bar, and partner in the law firm Gassman Baiamonte Bruner, P.C. Ms. Baiamonte's bio posted on her law firm's website states, "Since admission to the Bar, Ms. Baiamonte has been engaged exclusively in the practice of matrimonial and family law." Judge Reilly appointed Ms. Baiamonte as Receiver of the Oleg Cassini Estate, a role that she still serves in despite the Order of the Appellate Division deeming the appointment illegal. Upon information and belief, Ms. Baiamonte is a resident of the County of Nassau, State of New York.

13. Defendant JEFFREY MILLER (hereinafter "Mr. Miller", "attorney for the Receiver", or collectively with defendants Reilly, Mahon, Baiamonte, and DeLuca as "the RICO defendants") is an attorney, member of the New York State Bar, and partner in the law firm Westerman Ball Ederer Miller Zucker & Sharfstein, LLP. Judge Reilly appointed Mr. Miller as attorney for Ms. Baiamonte in connection with the Cassini

Estate. Upon information and belief, Mr. Miller is a resident of the County of Nassau, State of New York.

14. Defendant WILLIAM DOYLE GALLERIES, INC. (hereinafter "Doyle Galleries") is a New York corporation that acquires Estate property and sells it at auction.

15. Defendant JAMES DZURENDS (hereinafter "the Nassau County Sheriff") is sued herein in his official capacity as NASSAU COUNTY SHERIFF, only. The Nassau County Sheriff is employed by the County of Nassau and operates the Nassau County Correctional Center.

16. Defendant JOSEPH FUCITO (hereinafter "the New York City Sheriff") is sued herein in his official capacity as NEW YORK CITY SHERIFF, only. The New York City Sheriff, acting under color of state law, unlawfully seized Mrs. Cassini's person and wrongfully delivered her into the hands of the Nassau County Sheriff, as more fully described hereinbelow.

17. JOHN & JANE DOES 1-10 represent persons whose identities have yet to be ascertained, such as court officers, deputy sheriffs, corrections officers, and other agents of the named Defendants in this action, who acted in concert with and/or at the behest of the named Defendants to unlawfully deprive Plaintiffs of their liberty and property or otherwise violated their constitutional rights.

## MATERIAL FACTS

18. From the outset of her tenure as Nassau County Surrogate and judge over the Oleg Cassini estate proceeding (hereinafter "estate proceeding"), Judge Reilly has appointed her friends, colleagues and campaign donors to various roles in the

litigation, such as the Receiver and attorney for the Receiver, whom Judge Reilly specifically ordered Mrs. Cassini to pay.

19. All prior applications for the appointment of a Receiver had been denied by the previous Surrogate Edward W. McCarty III.

20. Almost immediately upon Judge Reilly becoming Surrogate, on January 6, 2016, then-Court Attorney Eugene Shifrin, Esq. sent the following email to all counsel in the estate proceeding:

> Judge Reilly has asked me to advise you that the Court will be severing the cross-motion seeking the appointment of a Receiver returnable January 13, 2016 so that no opposition to the cross-motion will be due at this time.

21. Just prior to Judge Reilly becoming Surrogate, on or about December 9, 2015, J. Vincent Reppert, Esq., and his firm, Reppert Kelly, LLC, moved to withdraw as counsel due to an injury Mr. Reppert sustained for which he required surgery that rendered him unable to continue his representation of Mrs. Cassini.

22. In his affirmation in support of the motion to withdraw, Mr. Reppert requested that pursuant to CPLR 321(c)[2], the estate proceeding be stayed for a period of not less than 30 days. As would later be confirmed by the New York State Supreme Court Appellate Division Second Department, Judge Reilly unlawfully ignored Mr. Reppert's request and the requirements of the CPLR.

23. As noted in the above-quoted email, the motion to withdraw was returnable before Judge Reilly on January 13, 2016.

---

[2] CPLR 321(c) provides: "Death, removal or disability of attorney. If an attorney dies, becomes physically or mentally incapacitated, or is removed, suspended, or otherwise becomes disabled at any time before judgment, no further proceeding shall be taken in the action against the party for whom he appeared, without leave of the court, until thirty days after notice to appoint another attorney has been served upon that party."

24. Without the motion having been decided, a conference was held in the estate proceeding on March 2, 2016. Judge Reilly's principal court attorney, Debra Keller, conducted the conference.

25. Mrs. Cassini appeared at the conference without counsel. She inquired about the status of the pending motion, but Ms. Keller – whom Judge Reilly brought over with her to Surrogate's Court after having worked alongside her as her law clerk in her former role as a Supreme Court Judge and with whom the Judge has a very close relationship - advised that she had no information to provide.

26. At the conclusion of that conference, Ms. Keller scheduled another court conference for June 8, 2016.

27. On May 23, 2016, Ms. Keller faxed to Mr. Reppert's office a copy of a Decision and Order granting his motion to withdraw. The Order was backdated to March 14, 2016, but could not have actually been issued on that date because Mr. Kelly, on behalf of the law firm, had repeatedly inquired of the Court about the status of the pending motion and each time he was either told that no decision had been made or his inquiries were ignored altogether. Besides telephone calls, Mr. Kelly memorialized these inquiries in written correspondence sent to the Court on March 24, 2016 and April 15, 2016, respectively.

28. During that time period, Mr. Kelly also called the Court and spoke with Court Attorney Eugene Shifrin, Esq. and Judge Reilly's Secretary, Lori Muscarella, both of whom advised that the motion to withdraw had not yet been decided. Had the Order actually been issued on March 14, 2016, it would have been readily available to all Court staff. The fact that their records reflected that the motion was still pending is

proof positive that no decision was rendered on the date reflected on the Decision and Order.

29. The most troublesome part about the backdated Order was that it provided for a thirty-day stay as required by statute, but because the Order was not released until May 23, 2016 and purportedly issued on March 14, 2016, by the time the Order was received, the stay had expired. In other words, Mrs. Cassini was not given any time to retain new counsel.

30. This represented the first of many ways Judge Reilly would violate the law in her handling of the estate proceeding.

31. Upon receipt of the backdated Order, Mrs. Cassini wrote a letter to the Court requesting that the statutorily required thirty-day stay begin to run on the date the Order was actually received. Her request was ignored.

32. With a court conference coming up in just two short weeks, Mrs. Cassini scrambled to try to find counsel. However, this was such an important and complex matter dealing with millions of dollars and assets and a hostile Judge, she wanted to be sure to retain the right attorney whom she could feel confident would do a good job representing her and her beloved late husband's estate. Mrs. Cassini was not given adequate time to secure competent counsel available to take on this amorphous estate proceeding. She was, however, able to secure an attorney to appear with her at the upcoming conference and with whom she would continue to confer about taking on the matter in its entirety.

33. On June 8, 2016, Robert B. McKay, Esq. appeared with and on behalf of Mrs. Cassini at the court conference. During the conference, Ms. Keller, for the first time,

announced that the trial of the estate proceeding was scheduled for July 25, 2016. Mr. McKay advised the court that he could not commit to representing Mrs. Cassini at a trial until he knew more about what was left to do in the case and what such a commitment would entail specifically.

34. Ms. Keller advised Mr. McKay in the presence of Mrs. Cassini that the trial date was set and would not be adjourned under any circumstances. Mr. McKay advised that even if he did agree to take on the matter in its entirety, neither he nor any new attorney could conceivably be ready to try the matter on such short notice.

35. Specifically, Mr. McKay informed Ms. Keller that he would not be able to handle the trial on such short notice because: 1) he would be on a previously scheduled and paid-for summer vacation with his family during the scheduled trial dates; and, 2) the file in the estate proceeding was enormous (at least 28 large boxes of documents) and three weeks was not near adequate time to familiarize himself with the substance of all of those documents; and, 3) the matter had been pending for over ten years and he required adequate time to get up to speed on all that had transpired in order to represent Mrs. Cassini properly.

36. Ms. Keller told Mr. McKay unequivocally that no adjournments would be granted and that if he was not committed to representing Mrs. Cassini for all purposes including the upcoming, non-adjournable trial, he could not participate in the conference. With that, Ms. Keller directed Mr. McKay to leave the courtroom.

37. During this conference, following Mr. McKay's forced departure, Mrs. Cassini asked Ms. Keller about the motion to appoint a receiver and, specifically, regarding a briefing schedule. Ms. Keller told Mrs. Cassini she was not permitted to speak.

38. At the conclusion of that conference, Ms. Keller advised that the next court conference would be held on June 29, 2016.

39. On June 29, 2016, Mrs. Cassini appeared before the Court together with Mr. McKay. Ms. Keller entered the courtroom and directed the parties and counsel to a conference room, but rudely told Mr. McKay that he was not permitted to participate in the conference. Ms. Keller did not allow Mr. McKay to accompany Mrs. Cassini to the conference room. This left Mrs. Cassini, once again, unrepresented before the Court.

40. Ms. Keller concluded that portion of the conference that occurred in a conference room and directed all parties and counsel back into the courtroom. Judge Reilly then took the bench and directed the court officers to lock the courtroom doors, which they did.

41. Judge Reilly then directed that Mrs. Cassini be placed under oath. After Mrs. Cassini stated her name and address, at Judge Reilly's behest, a court officer handed to all parties and counsel a copy of a decision dated June 29, 2016 granting Objectant's cross-motion (made to the motion to withdraw) for the appointment of a receiver.

42. The decision stated that the motion was unopposed.

43. The motion was only unopposed because no briefing schedule had ever been set and Mrs. Cassini was without counsel.

44. Judge Reilly stated that an order would follow, which it did. Two days later, on July 1, 2016, the Court entered an order appointing Rosalia Baiamonte, Esq. as a paid Receiver. Judge Reilly waived the requirement that Ms. Baiamonte post a bond.

45. Upon information and belief, Ms. Baiamonte is a divorce attorney with no specific knowledge or experience in estates, trusts, business, real estate, or the nature of any of the businesses, property, or other assets she would be responsible for overseeing in her role as Receiver.

46. Also upon information and belief, Ms. Baiamonte has a personal relationship with Judge Reilly and her husband, Vincent De Paul McNamara, Esq.

47. The Order appointing Ms. Baiamonte ordered she be paid for her services as Receiver from funds of the Estate and/or from entities that were closely held family corporations.

48. Upon her appointment, Ms. Baiamonte immediately stated her intention to terminate all employees of Oleg Cassini, Inc. and Cassini Parfums Ltd., and sell off personal assets belonging to Mrs. Cassini, including her real property.

49. Notably, the companies were not mentioned in Oleg Cassini's probated will; all the Testator's terms set forth in the will were met and satisfied prior to the appointment of a Receiver.

50. Cassini Parfums Ltd. was purchased by Mrs. Cassini in 1996 pursuant to an option agreement.

51. Mrs. Cassini was fifty-percent owner of Oleg Cassini, Inc. ("OCI") with Mr. Cassini owning the other fifty-percent until Mr. Cassini's death, at which time Mrs. Cassini assumed one hundred percent ownership. The company had been held by the couple as joint tenants with rights of survivorship.

52. Mrs. Cassini was nominated President of OCI at a meeting of its Board of Directors

in 1977 and had been managing OCI continuously since that time with the approval and consent of her husband.

53. Mrs. Cassini was also the President of Cassini Parfums Ltd. since its inception in 1989. She then purchased this company in 1996. At the time of purchase, Cassini Parfums Ltd. owed Mrs. Cassini 1.6 million dollars.

54. Mrs. Cassini invested millions of her own dollars in the companies over the years. For the benefit of the companies, Mrs. Cassini also, over many decades, developed and created relationships with licensees, customers, and suppliers. In addition to the money she invested, Mrs. Cassini invested an enormous amount her time to enhance and grow the trademarks and companies.

55. Prior to working with her husband developing their joint companies, Mrs. Cassini was a successful photographic model with over 250 magazine covers, worldwide, many with her name featured. Her first important contract was with Cover Girl cosmetics, with her name endorsing the product. The visual photographs were done by Richard Avedon.

56. Although the RICO defendants were well aware of all of the details regarding the ownership of the companies, their assets, and that they were separate and apart from the Estate, they proceeded to conspire together to dismantle the companies for their own personal enrichment.

57. To do this, the RICO defendants exploited an opportunity presented by the withdrawal of Mrs. Cassini's former attorney.

58. According to public records, Ms. Baiamonte's law firm as well as Objectant's law firm were contributors to Judge Reilly's campaign for Nassau County Surrogate.

59. Mrs. Cassini promptly moved in July 2016 to vacate the Decision and Order appointing the Receiver on due process grounds based on the fact that the severed cross-motion was decided by the Court without affording Mrs. Cassini any notice or due process as to when her opposition would be due and when it would be heard by the Court. Mrs. Cassini was not given any opportunity to submit an opposition to the cross-motion pursuant to the Court's email of January 6, 2016.

60. During the week of July 18, 2016, Mr. McKay prepared and attempted to file an Order to Show Cause on behalf of Mrs. Cassini seeking a postponement of the trial that was announced for the first time on June 8, 2016.

61. When he appeared in Surrogate's Court on the morning of July 20, 2016, the day following the filing of the Order to Show Cause, Mr. McKay asked Judge Reilly if she had read the papers he filed. Judge Reilly responded that she would not answer him unless he was appearing for Mrs. Cassini for all purposes, including the imminent trial.

62. When he responded with his explanation of the concerns and impediments he had previously communicated to Ms. Keller, Judge Reilly declared that the trial of the estate proceeding would go forward on July 25th with or without him, and with or without Mrs. Cassini. She directed Mr. McKay to leave the courtroom.

63. The Order to Show Cause was ignored.

64. On July 25, 2016, still without counsel, Mrs. Cassini appeared by herself for the trial. Mrs. Cassini pleaded for an adjournment, but Judge Reilly proceeded with a "trial". The trial was not a trial at all as Mrs. Cassini was completely unable to represent herself, and even if she had been capable, she would not have been permitted

because Judge Reilly ruled that Mrs. Cassini was precluded from offering any

evidence at trial.[3]

65. Mrs. Cassini made the following statement on the record before the sham trial began:

> Your Honor, I respectfully request permission to make a statement before the trial starts on the record. I'm here today because despite motions and requests for an adjournment, this Court has directed that the trial must start today. I state for the record that despite my efforts to secure counsel, I have been unsuccessful. I do not have counsel and cannot adequately represent myself. Repeated efforts by me to seek an adjournment so that I could be represented by counsel today have been denied by this Court. Numerous motions have been brought by me which have a bearing on this trial have not been ruled upon by this Court. In fact, Mr. Robert McKay, Esquire, attempted to bring a motion before this Court with undisclosed information which is extremely pertinent to this case. This Court refused to hear him. Mr. McKay even acknowledged that the motion was ready because he could not come out to handle the entire case. I spoke with another attorney versed in court work this past Friday. He declined to representation (sic) because he did not feel that he could properly prepare in time for the date set by this Court to start the trial, With all due respect to this Court, my biggest deterrent in my ability to secure representation is this Court's refusal to permit counsel time to prepare. There are 28 boxes of legal documents that need to be reviewed. Once again, I respectfully request an adjournment so I may secure counsel with adequate time to prepare. I firmly believe that the Court's failure to grant an adjournment will seriously prejudice my case and create a serious injustice which creates a denial to my counsel (sic).

66. In response, Judge Reilly stated, "Your application is denied. Have a seat." The

so-called trial proceeded that day.

67. The decision after trial would lay the groundwork for the complete looting of the

Estate's real property and assets, as well as Mrs. Cassini's personal property and

---

[3] Had Mrs. Cassini been represented by counsel and afforded her right to present evidence at trial, she would have presented, among other substantial and relevant evidence, testimony of Dr. Michael Baden regarding the homicide of Daria Cassini on the order of her half-sister, Christina. The homicide of Daria Cassini triggers New York State's "Slayer Rule", which would have prohibited Christina and her heirs from inheriting from Daria.

assets, all of which were extremely valuable and, in many instances, irreplaceable.

68. Mrs. Cassini had pending and motions and appeals that, if decided in her favor, would have the effect of undoing the appointment of the Receiver and the trial. She knew her rights had been violated and was hopeful that the wrongs done to her would be remedied before she had to give away property that rightfully belonged to her, both as the inheritor of her husband's estate as well as personal property that was not part of the estate at all.

69. In or about December 2017, Judge Reilly issued a contempt order and directed the arrest and confinement of Mrs. Cassini.

70. Mrs. Cassini was brutally seized and effectively kidnapped off of the street by six agents of the New York City Sheriff at 54th Street and Fifth Avenue in front of the University Club at 7:18 p.m. on the evening of May 3, 2018. From there, the New York City Sheriff immediately took Mrs. Cassini to a holding pen in Long Island City and held here there overnight against her will and without due process of law.

71. Mrs. Cassini was injured when she was unlawfully seized off the street and thrown into a vehicle with her hands cuffed behind her back, hitting the door and falling to the floor like a rag doll. Marianne heard someone saying, "Does she have a pulse?" right before she passed out.

72. The following morning, on May 4, 2018, Mrs. Cassini was taken in handcuffs to the Nassau County Surrogate's Court. All of the RICO defendants were waiting in the courtroom when Mrs. Cassini arrived.

73. No attorney had been notified to appear to represent Mrs. Cassini.

74. Judge Reilly ordered the agents of the Nassau County Sheriff to take Mrs. Cassini

away, stating in open court, "You are going to your new residence, Ms. Cassini."

75. While Mrs. Cassini was incarcerated, the RICO defendants conspired together to execute the seizure of Mrs. Cassini's real property located at 313 McCouns Lane, Oyster Bay Cove, and its contents.

76. The real property referred to in the foregoing paragraph was Mrs. Cassini's residence for over forty (40) years. Mrs. Cassini and her husband purchased the property in 1978 with funds they earned together from a home furnishings contract initiated and organized with art work directed by Mrs. Cassini.

77. The real property had been appraised at a value of $30 million in 2007. It consisted of 43.5 acres (2-acre zoning), 2 large buildings, provenance built by the founders of the Tiffany retail group, a triple garage, 2 full horse barns, accessory buildings, several paddocks, a tennis court and swimming pool with a view of Oyster Bay.

78. At the time of the seizure, the property was owned by OCI, which was owned wholly and exclusively by Mrs. Cassini.

79. The real development value of the property would be close to 80 million dollars.

80. On May 29, 2018, while Marianne was incarcerated and upon the order and direction of Judge Reilly, the gates of the residence were broken open and the property was trespassed upon by the RICO defendants and/or their agents including the Nassau County Sheriff.

81. Mrs. Cassini's sister, Nannette Nestor, had maintained an apartment in the carriage house of 313 McCouns since 1999. Several hundred thousand dollars worth of jewelry belonging to Nannette Nestor was taken from the carriage house including Bulgari and Harry Winston jewelry items. These items were never accounted for by

Defendants, as though they vanished into thin air. A police report was filed, to no avail.

82. Mrs. Cassini was released from this first period of incarceration on or about November 2, 2018, after Defendants had seized Mrs. Cassini's Oyster Bay Cove property and removed all of its contents.

83. Mrs. Cassini's release from custody was conditioned upon Mrs. Cassini handing over the keys for the offices and showroom of the Plaintiff corporation, Oleg Cassini, Inc., to Ms. Baiamonte. Her release was further contingent upon, per Judge Reilly's order, Mrs. Cassini signing a deed created by Mr. Mahon in the courtroom transferring ownership of Mrs. Cassini's residence at 135 East 19th Street, New York, New York to Mr. Mahon to be held as bail and forfeited in the event Mrs. Cassini failed to appear in court on any appointed day and time.

84. Almost immediately after clearing out the Oyster Bay Cove property and securing access to the New York City properties, the RICO defendants worked together to seize and loot Mrs. Cassini's Manhattan properties.

85. They needed to get Mrs. Cassini out of the way. So, on January 22, 2019, Mrs. Cassini was entrapped and arrested in Judge Reilly's courtroom once again after having been ordered to appear there by the Judge.

86. During her second period of incarceration in the Nassau County Correctional Center, Mrs. Cassini was held in maximum security per Judge Reilly's order to the Nassau County Sheriff.

87. Almost immediately thereafter, on or about February 12, 2019, Defendants and/or their agents broke down the door to and trespassed upon and seized Mrs. Cassini's

residence located at 135 East 19th Street, New York, New York and all of the art, furniture and valuables contained therein.

88. A sale of the contents of the residence was held on June 27, 2019 by Doyle Galleries. Approximately seven hundred fifty-five items were sold.

89. Most of the items seized and sold belonged to Mrs. Cassini, her sister, Peggy Nestor, or their company, Gemeaux Ltd.

90. The RICO defendants had previously been advised and provided with supporting proof that the Manhattan residence and all of its contents belonged to Mrs. Cassini or one of her companies.

91. Specifically, an Order to Show Cause was filed in the Surrogate's Court on behalf Mrs. Cassini in advance of the auction sale, which set forth a catalogue of the items to be sold at auction with corresponding paid invoices/bills of sale as proof of ownership of the items by Gemeaux Ltd.

92. The list included purchases by Gemeaux from various auction houses, and art galleries, including Sotheby's (USA & UK); Christie's (USA); Briest (France - Paris); Butterfields and DeRempich, Inc.

93. The items were sold by Doyle Galleries. Upon information and belief, Mr. Miller is the attorney for Doyle Galleries. Mr. Miller is also the court-appointed attorney for the Receiver.

94. Doyle Galleries knowingly possessed then sold stolen property.

95. It was reported to Mrs. Cassini that the total funds obtained as a result of the sale of the contents of the two residences was approximately $1,500,000.00.

96. The actual value of the items sold was approximately $25 million, and many items were irreplaceable.

97. Most of the items, including those items take from 135 East 19th Street, were Mrs. Cassini's personal property, not belonging to the Estate.

98. Mr. Mahon was aware that the items taken from the 135 East 19th Street residence were Mrs. Cassini's property per a letter dated November 7, 2014 addressed to him and the Court. Additionally, Mr. Mahon and his paralegal, Kathleen Dunbar, came to the East 19th Street residence on January 18, 2015, and reviewed Mrs. Cassini's property and the valuations of the property at that time, including a Tryptich over the fireplace valued by Ralph Colin from the Brooklyn Museum of Art in 1978 at $200,000. The value in 2019 would have been $784,223.92, and $833,423.31 in 2021.

99. The Tryptich was sold at auction for $6,875 by Doyle Galleries on the authority of the illegally appointed, unbonded Receiver who was appointed by Judge Reilly.

100. Another example of the Receiver's failure are the Charles II matching Gesso pier mirror and Gesso table purchased at Partridge London 1951. Their combined value was $837,500, but they were sold for $83,750.

101. No independent appraisals were performed or requested by the Receiver of any of the property sold, which is a violation of her fiduciary duty to the Estate. All items were sold at or below ten cents on the dollar of the actual value of the items.

102. In addition to all of the foregoing, negative stories were leaked to the press that were derogatory of and detrimental to Mrs. Cassini and her reputation as a business person and wife, and damaging to the reputation and legacy of her late husband, Oleg Cassini, whom Mrs. Cassini loves dearly.

103.    Mrs. Cassini was released from jail on March 27, 2019 on the Order of Nassau County Supreme Court Judge Libert, whom Mrs. Cassini's attorney had the good fortune of appearing before due to Judge Reilly being on vacation at the time. Judge Lipert was shocked and appalled at the abuses that had been perpetrated against Mrs. Cassini by Judge Reilly and the other Defendants named herein.

104.    The RICO defendants have effectively destroyed companies that, under Mrs. Cassini's management, ownership, and guidance had been extremely successful for decades: Oleg Cassini Inc. and Cassini Parfums Ltd.

105.    The improper acts of Judge Reilly, which she was able to carry out in her capacity as Nassau County Surrogate, were appealed to the New York State Supreme Court Appellate Division, Second Department.

106.    On February 13, 2020, the Appellate Division, Second Department issued two separate Decisions and Orders on several consolidated appeals brought by Mrs. Cassini. Those decisions are attached as exhibits hereto as Exhibits 1 and 2, respectively, and incorporated into this Complaint by reference.

107.    At page 37 of Exhibit 1, the Appellate Division vacated the July 1, 2016 order of this Court, which had appointed a receiver, as it was done in violation of the CPLR 321(c) stay that was then automatically in effect. The Court further held that Marianne had not been given adequate and proper notice about the cross motion to appoint a receiver and date by which she should have submitted opposition papers.

108.    At page 39 of Exhibit 1, the Appellate Division ordered that all decisions, orders and judgments issued by Judge Reilly in the estate proceeding between March 14 and July 25, 2016 were vacated.

109. The Appellate Division further ordered that the trial held before Judge Reilly in July 2016, and its findings, be set aside because Judge Reilly improperly denied Mrs. Cassini an adjournment of the trial. The Appellate Division directed that a new trial be held, and all actions stayed until this happens.

110. The Appellate Division made the following additional noteworthy findings in its decision attached as Exhibit 1:

a. "While the Surrogate's Court relieved counsel and provided for a 30 day stay of proceedings, it failed to require that the adverse parties serve the orders relieving counsel upon the litigant whose counsel was permitted to withdraw." (Ex. l, p. 2).

b. On the same page the Second Department noted: "In conformity with the controlling statutory and decisional authorities, and to protect the litigant' s right to legal representation, we conclude that the judicial determinations rendered in between the Surrogate's Court's determination of incapacity and its subsequent practical notification of a deadline to appoint counsel should be vacated".

c. Further on the same page the Court wrote, "We also hold. . . that the Surrogate's Court improvidently exercised its discretion in denying the petitioner a reasonable adjournment of the trial date and thereafter proceeding with the trial in her absence."

d. At page 9, the Court wrote: "It may be fairly said that the conduct of the conference on March 2, 2016, contravened the spirit of the stays imposed by the February 16, 2016 order and that proceeding with a conference at that time was unwise."

e. At pages 1-12, the Court wrote: "It is notable that proceedings took place on April 6, 2016, without Marianne's participation, in the context of the accounting proceeding. The conduct of such proceedings contravened the terms of the March

14, 2016 order, providing for a 30 day stay of proceedings in the accounting proceeding as of the date of the order. We cannot assume that the Surrogate's Court was unaware of its orders."

f.  At page 37, the Court noted that the automatic stay embodied in CPLR 321(c) was still in effect on June 29, 2016, when the Surrogate's Court issued its determination to grant the cross motion to appoint a receiver upon default. "Since the issuance of the July 1, 2016 order violated the statutory stay, it should have been vacated."

g.  At page 38, the Court said: "Here, we conclude that, through no fault of her own, Marianne was not given adequate and proper notice that the cross motion [to appoint a receiver] had been marked submitted in April 2016, and she was not afforded a reasonable opportunity to obtain substitute counsel and submit opposition papers. Indeed, the Surrogate's Court's own statement that the cross motion was submitted, unopposed, in April 2016, raises questions. Since the cross motion was made in the context of the accounting proceeding, the Court should not have taken the matter under submission, without opposition, during the period of its own stay."

h.  On the same page, the Court stated: "Thus, the order dated July l, 2016, in effect, granting the cross motion to appoint a receiver, and appointing a receiver, should have been vacated in the interest of justice as having been the product of mistakes, inadvertence, and surprise."

111.    In its decision attached as Exhibit 2, the Court made the following findings:

a. "We begin our analysis by expressing our disagreement with the determination by the Surrogate's Court, supported on appeal by the objectants, that the motion for an adjournment of the trial was moot." (Ex. 2, p. 6).

b. Further down on the same page, the Court wrote: "The court should have, but did not, issue a written order denying Marianne's written motion for an adjournment. Because the court did not issue a written order determining the written motion for an adjournment, Marianne was not able to pursue an appeal as of right from the oral determination denying her request for an adjournment."

c. At page 7, the Court wrote: "We conclude that the denial of the requested 60 day adjournment of the trial was an improvident exercise of discretion."

112.    To date, Mrs. Cassini has received no distributions from her husband's estate, and has personally paid out millions in legal fees. She has had her personal and corporate property invaded and stolen, and was illegally incarcerated twice for a total period of eight months.

113.    In spite of the very clear rulings by the Appellate Division, Judge Reilly, by and through her illegally appointed Receiver and attorney for the Receiver, are now trying to sell OCI and Cassini Parfums Ltd. These companies belong to Mrs. Cassini and are not part of the Estate.

114.    The RICO defendants are all in contempt of the orders of the Appellate Division.

115.    Judge Reilly has refused to recuse herself from the estate proceeding. The denial of Mrs. Cassini's fourth motion for recusal – issued just this month - is up on appeal before the Appellate Division.

116.    The first recusal motion brought by Judge Reilly was made returnable April 20,

2018. It was never decided. Rather, Judge Reilly had Mrs. Cassini arrested on May 3,

2018. Fearing further retaliatory arrest and incarceration, Mrs. Cassini did not file a

second recusal motion until two and a half years later, on or about October 27, 2020.

The third recusal motion was filed on November 20, 2021 and made returnable

December 1, 2021.

117.    Also pending before the Appellate Division is a contempt motion regarding

Defendants' ongoing looting of Mrs. Cassini's property in contravention of the

Appellate Division's Orders.

## LEGAL ALLEGATIONS

### AS AND FOR A FIRST CAUSE OF ACTION
18 U.S.C. §1962 - CIVIL RICO
(against the RICO defendants and the Public Administrator)

118.    Plaintiffs restate and reallege the allegations stated in paragraphs numbered 1

through 117 above as though fully stated under the above-titled cause of action.

119.    Defendants engaged in a racketeering scheme that resulted in the theft of Mrs.

Cassini's Nassau County residence and the contents thereof.

120.    Further, Judge Reilly removed Mrs. Cassini from the management of two

companies that her husband, Oleg Cassini, and she had nurtured into thriving

businesses since their marriage in 1971. After her removal, these two companies -

Plaintiffs Oleg Cassini, Inc. and Cassini Parfums Ltd.- were placed by Judge Reilly in

the hands of Ms. Baiamonte.

121.    Ms. Baiamonte was and remains unqualified, and failed to post a bond as required

by law.

122. Under the Receiver's incompetent management, which could have and should have been anticipated by Judge Reilly, Ms. Baiamonte has allowed these prospering businesses to become shells of their former thriving selves.

123. Upon her appointment, whilst keeping Mrs. Cassini incarcerated, the Receiver disconnected the business telephones, changed the mailing addresses from Manhattan to her own divorce attorney office in Nassau County, closed company bank accounts, took possession of all the existing funds and incoming funds, allowed the website domain addresses to expire, broke into business properties, removed property belonging to the businesses including art, furniture, and antiques, and sold off everything at far below its actual value.

124. The Receiver also paid, on the order of Judge Reilly, 1.4 million dollars to McCann Security Guards, to have the McCouns Lane property surrounded by armed guards around the clock.

125. With the blessing and at the direction of Judge Reilly, property that Mr. & Mrs. Cassini cherished since they began living in their Nassau County home in 1978 was sold by the Receiver callously and for a fraction of its value. The real property located on McCouns Lane In Oyster Bay Cove spanned 43.5 acres. This property had been appraised for $30 million in 2007, yet was sold by the unlawfully appointed, unbonded Receiver for only $9 million.

126. This transaction at a bargain sale price has all the earmarks of "an inside job", as the broker and the purchaser are neighbors of Judge Reilly and her husband, Vincent De Paul McNamara.

127. Defendants also ransacked a townhouse that was owned by Mr. & Mrs. Cassini since 1977 as joint tenants with rights of survivorship. The townhouse is located at 135 East 19th Street. Court appointed attorney for the Public Administrator, Kenneth Mahon, Esq., and his agents, removed valuable art, furniture, clothing and other items worth at least $700,000.

128. Mr. Mahon then asked for $1 million dollars to "carve his firm out of the litigation".

129. Ms. Baiamonte has been paid more than 6 million dollars in legal fees, upon court order.

130. The unnecessary motion practice of the attorneys organized by Judge Reilly resulted in exorbitant legal fees being ordered to be paid by Mrs. Cassini to the RICO defendants.

131. There was also unauthorized loans made to the Public Administrator and/or Mr. DeLuca.

132. Upon information and belief, all of the persons or law firms appointed in this case and receiving exorbitant, court-ordered fees are contributors to Judge Reilly's campaign.

133. Now the Receiver is trying to sell off the two companies - Oleg Cassini Inc. and Cassini Parfums Ltd. - owned exclusively by Mrs. Cassini. No doubt they will next try to find a way to sever Mrs. Cassini's interest in the third, Gemeaux Ltd., and sell that off, too, just as they did to Gemeaux's property.

134. The acts hereindescribed constitute predicate acts sufficient to satisfy the pleading requirement of the RICO statute. Specifically, defendants have violation 18 U.S.C. §

1957 relating to engaging in monetary transactions in property derived from specified

unlawful activity, 18 U.S.C. §§ 2314 and 2315 relating to interstate transportation of

stolen property, have likely committed mail fraud, bank fraud, and have surely

violated the New York State Penal Law by committing acts of kidnapping, fraud,

larceny, bribery, and extortion.

135.    These acts are ongoing and have caused real damage to business and property, as

described herein.

AS AND FOR A SECOND CAUSE OF ACTION
DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT
(brought pursuant to 42 U.S.C. §1983 against Judge Reilly, the County of Nassau, the Public
Administrator, the Nassau County Sheriff, and the New York City Sheriff)

136.    Plaintiffs restate and reallege the allegations stated in paragraphs numbered 1

through 117 above as though fully stated under the above-titled cause of action.

137.    Defendants Judge Reilly, the County of Nassau, the Public Administrator, the

Nassau County Sheriff, and the New York City Sheriff, acting under color of state

law, violated Plaintiffs' rights afforded by the Fourteenth Amendment to the United

States Constitution in a variety of ways.

138.    First, Defendants Judge Reilly, the County of Nassau, the Public Administrator,

and the Nassau County Sheriff deprived Plaintiffs of property without due process of

law in the manner described hereinabove.

139.    Defendants Judge Reilly, the County of Nassau, the Nassau County Sheriff, and

the New York City Sheriff also deprived Mrs. Cassini of her liberty without due

process of law, and subjected her to excessive force.

140.    Further, the actions of Defendants Judge Reilly, the County of Nassau, the Public

Administrator, the Nassau County Sheriff, and the New York City Sheriff violated

Plaintiffs' substantive due process rights in that Defendants' conduct shocks the conscience, is so outrageous and egregious under the circumstances, and Defendants' conduct was truly brutal and offensive to human dignity.

<u>AS AND FOR A THIRD CAUSE OF ACTION</u>
FOURTH AMENDMENT RIGHT AGAINST UNLAWFUL SEIZURE
(brought pursuant to 42 U.S.C. §1983 against Judge Reilly, the County of Nassau, the Nassau County Sheriff and the New York City Sheriff)

141.    Plaintiffs restate and reallege the allegations stated in paragraphs numbered 1 through 117 above as though fully stated under the above-titled cause of action.

142.    The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

143.    The person of Mrs. Cassini and all Plaintiffs' houses, papers, and effects were seized. The seizure was unreasonable and without just or probable cause.

144.    The false arrest of Mrs. Cassini, perpetrated by the New York City Sheriff under color of state law, caused her to sustain severe injuries to her eye and bruising and pain throughout her body. Excessive force was used to effectuate the arrest.

145.    The Nassau County Sheriff, acting under color of state law, thereafter confined Mrs. Cassini in the Nassau County Correctional Facility, where she was the only civil inmate.

146.    Mrs. Cassini endured two separate periods of confinement and was held in jail for a total of eight months, predicating such arrest and confinement on violations of orders that the New York State Appellate Division has since found unlawful.

147.     Mrs. Cassini was routinely brought to court from jail in leg and hand shackles, with her hands cuffed behind her back, causing her wrists to bleed.

148.     Judge Reilly refused to allow the shackles to be removed even for hearings and ordered the guards to move her about the courtroom to "teach her a lesson". Defendants John Does lifted Mrs. Cassini under each arm and dragged her around the courtroom with her arms behind her back and leg chains dragging.

149.     The treatment of Mrs. Cassini by said Defendants, who were at all relevant times acting under color of state law, was not only excessive because it was wholly unnecessary, it was physically and morally demeaning, and extremely painful in every way.

150.     After each Court appearance while Mrs. Cassini was confined to jail, she was returned by John & Jane Does to the Nassau County Correctional Center.

151.     Judge Reilly stated in open court, "I want to keep that woman in jail." It is perhaps a historical first for a widow to be incarcerated on two separate occasions for eight months over a will. This was a truly unnecessary, brutal, sadistic, physical assault on Mrs. Cassini's person, which has caused her severe mental anguish.

152.     Mrs. Cassini was eventually released upon habeas corpus motion to Nassau County Supreme Court Judge Jack Libert.

### AS AND FOR A FOURTH CAUSE OF ACTION
EIGHTH AMENDMENT RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT
(brought pursuant to 42 U.S.C. §1983 against Judge Reilly, the County of Nassau, and the
Nassau County Sheriff)

153.     Plaintiffs restate and reallege the allegations stated in paragraphs numbered 1 through 117 and 142 through 152 above as though fully stated under the above-titled cause of action.

154.    Excessive force claims brought by prisoners are actionable under the Eighth
        Amendment to the U.S. Constitution (via 42 U.S.C. §1983).

155.    The treatment of Mrs. Cassini by the Nassau County Sheriff's Office was
        excessively harsh, cruel, entirely unwarranted, and certainly unusual.

156.    Confining Mrs. Cassini to jail for any period of time, but certainly for the
        excessive period of time she was actually confined (freed the first time upon the
        imposition of excessive and punitive "bail", and the second time only due to the good
        fortune of having the application heard before another judge while Judge Reilly was
        on vacation) certainly violates all contemporary standards of decency.

## AS AND FOR A FIFTH CAUSE OF ACTION
### CONSPIRACY TO VIOLATE CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. §§1985 & 1986
(against all Defendants)

157.    Plaintiffs restate and reallege the allegations stated in paragraphs numbered 1
        through 156 above as though fully stated under the above-titled cause of action.

158.    Defendants conspired together in the manner described herein to deprive Plaintiffs
        of their constitutional rights, and none of them intervened to prevent the violation or
        deprivation of those rights despite their power to do so.


## AS AND FOR A SIXTH CAUSE OF ACTION
### ABUSE OF PROCESS
(in violation the Fourteenth Amendment to the U.S. Constitution and New York State Law;
against the RICO defendants, the County of Nassau, and the Public Administrator)

159.    Plaintiffs restate and reallege the allegations stated in paragraphs numbered 1
        through 158 above as though fully stated under the above-titled cause of action.

160.    The RICO defendants, the County of Nassau, and the Public Administrator
        employed otherwise legal process to do harm to Plaintiffs in the manner described

herein. They defrauded and stole from Plaintiffs, unjustly enriched themselves and their friends and associates, and utilized the power of the Surrogate's Court under the guise of legal process to do so.

161.    The RICO defendants', the County of Nassau's, and the Public Administrator's use of process in the manner described herein was illegitimate, abusive, and illegal.

<u>AS AND FOR A SEVENTH CAUSE OF ACTION</u>
CONVERSION
(against the RICO defendants and the Doyle Galleries)

162.    Plaintiffs restate and reallege the allegations stated in paragraphs numbered 1 through 117 above as though fully stated under the above-titled cause of action.

163.    The RICO defendants and the Doyle Galleries converted Plaintiffs' property described herein by intentionally and without lawful authority assuming and exercising control over said property, interfering with Plaintiffs' rightful possession.

164.    The RICO defendants continue to interfere with Plaintiffs' lawful possession and ownership of their respective property to the extent that said property was not already disposed of for said defendants' financial gain.

<u>AS AND FOR AN EIGHTH CAUSE OF ACTION</u>
BREACH OF FIDUCIARY DUTY
(against Ms, Baiamonte, Mr. DeLuca, and the Public Administrator)

165.    Plaintiffs restate and reallege the allegations stated in paragraphs numbered 1 through 140 and 163 through 164 above as though fully stated under the above-titled cause of action.

166.    Defendants Ms, Baiamonte, Mr. DeLuca, and the Public Administrator had and continue to owe a fiduciary duty to Plaintiffs and the Cassini Estate. Mrs. Cassini was

to inherit the majority of the Estate, which said Defendants have substantially dissipated and wasted.

167.    Ms. Baiamonte, in her role as Receiver, has taken over the Plaintiff corporations to their detriment, and has not exercised due care in managing the companies' holdings and profit-making endeavors.

168.    With the blessing and at the direction of Judge Reilly, property that Mr. & Mrs. Cassini cherished since they began living in their Nassau County home in 1978 was sold by the Receiver callously and for a fraction of its value. The real property located on McCouns Lane In Oyster Bay Cove spanned 43.5 acres. This property had been appraised for $30 million in 2007, yet was sold by the unlawfully appointed, unbonded Receiver for only $9 million. The Receiver never did an independent appraisal of any of the valuable properties.

169.    Defendant Ms, Baiamonte, Mr. DeLuca, and the Public Administrator have breached the fiduciary duty to the Estate and to Plaintiffs, resulting in substantial monetary damage to Plaintiffs.

AS AND FOR A NINTH CAUSE OF ACTION
CONSTRUCTIVE TRUST
(against Ms. Baiamonte and the Doyle Galleries)

170.    Plaintiffs restate and reallege the allegations stated in paragraphs numbered 1 through 117 and 163 through 169 above, and 179 and 180 below as though fully stated under the above-titled cause of action.

171.    "The equitable remedy of a constructive trust may be imposed when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest. The elements of a cause of action to impose

a constructive trust are (1) the existence of a confidential or fiduciary relationship, (2)

a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment." <u>Dee v.</u>

<u>Rakower</u>, 112 AD3d 204, 206 (2d Dep't 2013).

172.    As alleged in detail herein, Defendants Ms. Baiamonte and the Doyle Galleries

unlawfully acquired property rightfully belonging to Plaintiffs. The property

remaining in her possession, and the funds acquired as a result of the sale of

Plaintiff's property previously acquired, should be regarded as placed in a

constructive trust and returned to Plaintiffs lest said Defendants be further unjustly

enriched.

AS AND FOR A TENTH CAUSE OF ACTION
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(against all Defendants)

173.    Plaintiffs restate and reallege the allegations stated in paragraphs numbered 1

through 172 above as though fully stated under the above-titled cause of action.

174.    Defendants' conduct detailed herein was and continues to be extreme and

outrageous, intended to or at best with a disregard of a substantial probability of

causing, severe emotional distress to Mrs. Cassini.

175.    Defendants' conduct has resulted in her experiencing extreme and lasting stress,

anxiety, and agoraphobia. She has been and continued to be fearful for her life.

AS AND FOR A ELEVENTH CAUSE OF ACTION
TRESPASS
(against all Defendants excluding the New York City Sheriff)

176.    Plaintiffs restate and reallege the allegations stated in paragraphs numbered 1

through 117 above as though fully stated under the above-titled cause of action.

177.    As described hereinabove, Defendants and their agents intentionally or recklessly entered and remained upon Plaintiffs' property without Plaintiffs' permission and without justification.

AS AND FOR A TWELFTH CAUSE OF ACTION<br>
UNJUST ENRICHMENT<br>
(against the RICO defendants and the Doyle Galleries)

178.    Plaintiffs restate and reallege the allegations stated in paragraphs numbered 1 through 140 and 162 through 169 above as though fully stated under the above-titled cause of action.

179.    The RICO defendants and their co-conspirators, associates, and friends were enriched by hundreds of millions of dollars at the Plaintiffs' expense.

180.    It is against equity and good conscience to permit any of the Defendants to retain any of the monies they gained through their participation in the criminal enterprise and fraudulent, corrupt conduct described herein.


WHEREFORE, Plaintiffs respectfully requests that this Court issue an Order awarding to Plaintiffs the following relief:

(i)    Establishing a constructive trust over all Plaintiffs' property remaining in the possession of any of the Defendants and all monies in Defendants' possession or control obtained through the sale of property belonging to Plaintiffs; and,

(ii)    Enjoining all Defendants from taking any action vis-à-vis Plaintiffs and/or the Oleg Cassini Estate until further order of this Court or the New York State Appellate Division; and,

(iii)    A declaratory judgment declaring that Plaintiffs' constitutional rights have been

violated by Defendants in the manner described and alleged in and by this

Complaint; and,

(iv)    Compensatory damages in the amount of $350,000,000.00; and,

(v)     Punitive damages in amount to be determined by this Court; and,

(vi)     Attorney's fees and costs; and

(vii)   Such other and further relief as this Court may deem just and proper.

Dated: March 27, 2022

Respectfully Submitted,

KRISTINA S. HEUSER, P.C.

By:    _____/S/_____
       Kristina S. Heuser, Esq. (KH3612)
       23 Birch Hill Road (rear)
       Locust Valley, New York 11560
       Tel. (516) 592-2927
       Fax (516) 676-6382
       E-mail kheuser@heuserlawfirm.com