# Supreme Court of the State of New York
# Appellate Division: Second Judicial Department

D62041
G/afa

_____AD3d_____

Argued - September 25, 2019

ALAN D. SCHEINKMAN, P.J.
JOHN M. LEVENTHAL
JEFFREY A. COHEN
SYLVIA O. HINDS-RADIX, JJ.

────────────────────────────────

2018-00747
2018-00758
2018-02101
2018-02102

OPINION & ORDER

In the Matter of Oleg Cassini, deceased.
Marianne Nestor Cassini, petitioner-appellant;
John J. Barnosky, etc., et al., objectants-respondents;
Jeffrey DeLuca, et al., nonparty-respondents.

(File No. 343100G)

────────────────────────────────

APPEALS by the petitioner, Marianne Nestor Cassini, the former executor of the estate of Oleg Cassini, in a probate proceeding in which she petitioned for judicial settlement of her intermediate account of the estate, from three orders of the Surrogate's Court (Margaret C. Reilly, S.), dated March 6, 2017, November 14, 2017, and December 21, 2017, respectively, and an amended order of the same court dated November 13, 2017, all entered in Nassau County. The order dated March 6, 2017, denied the petitioner's motion to vacate a prior order of the same court dated July 1, 2016, in effect, granting the objectants' cross motion to appoint a receiver, upon the petitioner's default in opposing the cross motion, and appointing a receiver. The amended order dated November 13, 2017, denied the petitioner's motion, inter alia, to vacate certain prior proceedings based on an alleged violation of CPLR 321(c). The order dated November 14, 2017, among other things, granted the receiver's motion to hold the petitioner in contempt for failure to comply with an order of the same court dated October 19, 2016. The order dated December 21, 2017, inter alia, directed that a warrant of arrest and commitment issue.

February 13, 2020

Page 1.

MATTER OF CASSINI, DECEASED

Seddio & Associates, P.C., Brooklyn, NY (Frank R. Seddio and Mischel & Horn, P.C. [Scott T. Horn], of counsel), for petitioner-appellant.

Farrell Fritz, P.C., Uniondale, NY (John J. Barnosky pro se and Robert M. Harper of counsel), for objectants-respondents.

SCHEINKMAN, P.J.

I.        Introduction

On these appeals, we consider the interplay between CPLR 321(b)(2), which permits the attorney of record for a party to withdraw by order of the court, with the court having the ability to stay proceedings pending substitution of new counsel, and CPLR 321(c), which automatically and effectively suspends all proceedings against a party whose attorney becomes incapacitated until 30 days after notice to appoint another attorney has been served upon that party.  In this contentious, complex estate litigation, the Surrogate's Court determined, in the context of a motion by the attorneys for the petitioner to withdraw from representing her, that the attorney primarily responsible for the matter had become unable to continue to represent the petitioner due to health reasons.  While the Surrogate's Court relieved counsel and provided for a 30-day stay of proceedings, it failed to require that the adverse parties serve the orders relieving counsel upon the litigant whose counsel was permitted to withdraw.  The adverse parties themselves failed to serve the orders and also to serve the petitioner with a notice to appoint new counsel.  However, several months later, the petitioner appeared with prospective new counsel at a court conference and was advised by the court that a trial would be conducted some six weeks later, regardless of whether the petitioner was present and regardless of whether the petitioner had representation.  This was, under the circumstances, the practical equivalent of more than 30 days' notice to the litigant to appoint new counsel.  In conformity with the controlling statutory and decisional authorities, and to protect the litigant's right to legal representation, we conclude that the judicial determinations rendered in between the Surrogate's Court determination of incapacity and its subsequent practical notification of a deadline to appoint counsel should be vacated.

We also hold, on a related appeal decided herewith, *Matter of Cassini* (____ AD3d ____ [Appellate Division Docket No. 2017-01413]), that the Surrogate's Court improvidently exercised its discretion in denying the petitioner a reasonable adjournment of the trial date and thereafter proceeding with the trial in her absence.

February 13, 2020                                                                                    Page 2.
MATTER OF CASSINI, DECEASED

II.        Background

Oleg Cassini (hereinafter the decedent), the internationally renowned fashion designer, died in March 2006 (*see Matter of Cassini*, 120 AD3d 799, 799). He was survived by his wife, Marianne Nestor Cassini (hereinafter Marianne), and two daughters from his marriage to the actress Gene Tierney, Daria Cassini (hereinafter Daria) and Christina Cassini (hereinafter Christina) (*see id.*). His last will and testament was admitted to probate in the Surrogate's Court, Nassau County (*see Matter of Cassini*, 95 AD3d 1311, 1312). Marianne served as executor of the decedent's estate for several years (*see id.* at 1312).

Christina petitioned pursuant to SCPA 1809 to determine the validity of her claim against the estate (*see Matter of Cassini,* 95 AD3d at 1312). Christina's claim was based on a "Property Settlement Agreement" (hereinafter the PSA) which was entered into by the decedent and Tierney. The PSA, by its terms, was to be construed and interpreted under and in accordance with California law (*see id.* at 1311). In the PSA, the decedent agreed that he would, by testamentary disposition, leave not less than one-half of his net estate to Daria and Christina, in equal proportions (*see id.*). The PSA was incorporated verbatim, in its entirety, into an interlocutory judgment of divorce (*see id.*). The interlocutory judgment of divorce was incorporated by reference into the final judgment of divorce that was entered in 1953 (*see id.*). The decedent's will did not provide for the testamentary disposition specified in the PSA, so Christina asserted a claim against the decedent's estate and, essentially, sought to have a constructive trust imposed on certain estate assets (*see id.* at 1312).

On a prior appeal, this Court held, in part, that "[a]s the Surrogate's Court essentially and correctly determined, [Christina] established, prima facie, that the decedent's obligation [under the PSA], which merged with the final judgment of divorce, was enforceable as part of that judgment, and that the final judgment was never modified, vacated, or reversed" (*id.* [citations omitted]). "Furthermore, as the Surrogate's Court also essentially and correctly determined, [Marianne] failed to raise a triable issue of fact as to the enforceability of that obligation, which [Christina] first sought to enforce after the decedent's death, via the imposition of a constructive trust upon certain assets of the decedent's estate" (*id.*).

Marianne commenced an action, in California, for declaratory relief, seeking a judicial determination regarding the parties' respective rights and obligations under the judgment of divorce. That action was dismissed for lack of personal jurisdiction over an indispensable party

(*see Cassini v Belmont*, 2012 WL 3594378, 2012 Cal App Unpub LEXIS 6167 [Cal Ct App]). Meanwhile, Marianne filed a petition in the Surrogate's Court, Nassau County, for judicial settlement of her intermediate account as executor, covering the period from March 17, 2006, through December 21, 2010, and listing total gross assets of more than $56 million (hereinafter the Accounting Proceeding). The assets included, among others, Oleg Cassini, Inc. (hereinafter OCI), and Cassini Parfums, Ltd. (hereinafter CPL). Daria died in 2010, and litigation followed involving Marianne and Christina regarding a certain testamentary trust established for Daria's benefit (*see Matter of Cassini*, 120 AD3d 799). Eventually, Christina, individually and as administrator of Daria's estate, filed objections to Marianne's intermediate account.

In June 2014, after Christina petitioned for Marianne's removal as executor and the Public Administrator of Nassau County (hereinafter the Public Administrator) was appointed as temporary administrator of the estate, the Public Administrator was appointed administrator c.t.a., by agreement of the parties. Following Christina's death in 2015, attorney John J. Barnosky and Alexandre Cassini Belmont (hereinafter together the objectants) became the executors of her estate and successor administrators of Daria's estate.

In 2015, the Surrogate's Court, Nassau County (Edward W. McCarty III, S.), issued two orders which are the subject of related appeals decided herewith (*Matter of Cassini*, ___ AD3d ___ [Appellate Division Docket Nos. 2015-09488, 2015-11775]).

First, in an order dated August 3, 2015, the Surrogate's Court authorized and directed the Public Administrator to run the day-to-day business operations of OCI and CPL and all their respective assets and properties. The August 2015 order also vacated a prior decree, in a related matter, to the extent that such decree had appointed Peggy Nestor (hereinafter Peggy)—Marianne's sister—to run the day-to-day business operations of OCI and CPL. The August 2015 order also suspended any authority of Marianne and Peggy to perform any acts as managers, directors, or officers of OCI and CPL.

Second, in an order dated November 5, 2015, the Surrogate's Court, upon a decision dated October 9, 2015, granted the objectants' motion for summary judgment sustaining certain specified objections to Marianne's account. The order determined that the shares of OCI and CPL identified in schedule A of Marianne's account were assets of the estate and directed Marianne to turn over all stock certificates and financial and banking records for OCI and CPL to the Public Administrator, as administrator c.t.a. of the estate. The November 2015 order also determined that

the claim asserted on behalf of Daria's estate against the decedent's estate was valid and timely.

III.          The Withdrawal of Marianne's Counsel

Commencing in early 2010, Marianne was represented in the estate litigation by J. Vincent Reppert of Reppert Kelly, LLC (hereinafter RK), and Charles H. Kaplan of Sills Cummis & Gross P.C. (hereinafter Sills Cummis).  Reppert had represented the decedent for more than 15 years and represented OCI and Marianne for more than 20 years.

The trial of the matter was scheduled to commence on August 17, 2015.  By letter dated July 8, 2015, Reppert informed the Surrogate's Court and the other parties that he had to undergo surgery and it would be physically impossible for him to prepare for, and proceed with, the trial as scheduled.  Reppert did not provide any details as to his medical condition or treatment, but offered to do so in camera upon the court's request.  The trial did not proceed.  The court, in the October 9, 2015, decision, attributed the delay in the trial partly to the health issue of counsel and partly due to the necessity for a decision on the matters addressed in the November 5, 2015, order. As discussed above, the litigation continued into the fall of 2015.

In or around December 2015, Marianne's attorneys moved for leave to withdraw from representing her.  The record includes papers in connection with motions for leave to withdraw made separately by RK and by Sills Cummis.  Reppert and his firm filed three identical motions for leave to withdraw as counsel, in the Accounting Proceeding and in two related proceedings, one commenced by the Public Administrator against Marianne to turn over property alleged to belong to the estate (hereinafter the Turnover Proceeding), and the other a proceeding relating to a special needs testamentary trust established by Marianne for Daria in accordance with the decedent's will (hereinafter the SNT Proceeding).

In an affirmation executed December 9, 2015, bearing a caption indicating that it pertained to the Accounting Proceeding, Reppert asserted that he was a member of RK, attorneys for Marianne "in connection with this action," and that he submitted the affirmation in support of counsel's application for leave to withdraw as counsel for Marianne.

> "For medical reasons, I have not been able to fully return to the practice of law full-time since July of 2015.  I will provide an in camera affirmation for the Court to review or make myself available to discuss the medical issues privately that prevent me from continuing at this time with the Court.  As the Court is well aware this is a very labor intensive litigation that requires an enormous amount of work.  At this time I am not able to provide the time necessary to properly prepare the work and make the appearances that are

required in view of my current situation; nor does my firm have sufficient staff to take over for myself.  I am a member of a small firm which has one other member.  Due to my current situation, my partner's case load has increased to cover many other matters.  In addition, Marianne specifically requested me to work on this action based on a pre-existing work relationship.  Both myself and my partner have informed Marianne that in view of my current situation that our firm would have to move to withdraw as counsel in this action.  We have advised Marianne that our firm will provide all records in our possession and will attempt to assist as much as reasonably possible with any transition.  For the reasons stated herein, it is respectfully requested that the Court grant our application to withdraw as counsel in view of the fact that I am physically unable to provide the representation that is necessary to properly represent our client in this action.  We further request, pursuant to CPLR § 321(c), that this matter be stayed for a period of not less than 30 days after notice to appoint another attorney has been served on Marianne."

Kaplan, in support of the motion by Sills Cummis for leave to withdraw, asserted, in an affirmation submitted in the Accounting Proceeding, that his role had been to assist Reppert and, with Reppert's health precluding him from continuing to represent Marianne, Kaplan's role was "also ending."  Kaplan further averred that Marianne had made statements which prevented him from representing her in the absence of Reppert continuing to serve as lead counsel.[1]

The objectants did not oppose the motions by RK and Sills Cummis for leave to withdraw.  However, despite knowing that Marianne's counsel was seeking to be relieved and seeking to have a stay imposed pending service of a notice to appoint successor counsel, the objectants cross-moved to appoint a receiver.  The Public Administrator joined in that cross motion. Counsel for the Public Administrator asserted, in an affirmation submitted in support of the cross motion, that

"[w]e made numerous attempts to obtain the information [regarding OCI and CPL] with the cooperation of both Marianne . . . and Peggy . . . in a manner least disruptive to the day to day business operations of the companies.  It is apparent to the Public Administrator that no cooperation of any kind has been or will be forthcoming from either Marianne . . . or  Peggy . . . regarding the aforesaid businesses.  It is apparent that both corporations are in danger of irreparable harm as a result of the continued operation of same by Marianne . . . and/or Peggy . . . for their own benefit to the prejudice of the estate and that therefore the appointment of a receiver is warranted under all of the facts

---

[1] Kaplan did not reveal the substance of such statements, noting that such statements were subject to the attorney-client privilege.

February 13, 2020                                                                                    Page 6.
MATTER OF CASSINI, DECEASED

and circumstances to take control of the assets of each of the aforesaid businesses. There are no assets of the estate by reason of the fact that Marianne . . . removed all estate assets and distributed same to herself."

By letter dated January 6, 2016, Christopher P. Kelly of RK wrote to the Surrogate's Court. Kelly noted that the unopposed motions by RK and Sills Cummis for leave to withdraw were returnable on January 13, 2016. Kelly stated that he just received the cross motion to appoint a receiver, also returnable on January 13, 2016, which he described as voluminous and complex and which, he asserted, bore no relationship to the pending motions for leave to withdraw. Under the circumstances, argued Kelly, Marianne did not have sufficient time to adequately respond to the cross motion. Kelly stated: "We also believe it was timed to provide the least amount of time possible to prepare an opposition and with the knowledge that we are shorthanded due to Mr. Reppert's infirmity." Kelly further stated that he had contacted counsel for the objectants, Robert M. Harper of Farrell Fritz, P.C., to request consent to adjourn the cross motion until after the motions for leave to withdraw were heard, but Harper refused to consent. Kelly therefore asked the court to sever the cross motion from the motions for leave to withdraw, and to adjourn the cross motion to a date to be scheduled by the court upon or following the disposition of the withdrawal motions.

Harper responded by letter dated January 7, 2016, to oppose Kelly's request. In the letter, Harper set forth his narrative of the proceeding. According to Harper, Marianne previously attested that OCI and CPL belonged to the decedent's estate but, after it was concluded that Christina had a one-quarter interest in the estate, Marianne claimed that Marianne, individually, owned all of the estate assets. Additionally, in Harper's description, "Marianne engaged in a pattern of obstruction the likes of which is rarely seen in litigation." He asserted that Kelly's request should be denied in view of the actions by Marianne and Peggy which were exposing OCI and CPL to waste and "immediate" harm.

On January 7, 2016, an email was sent to Kelly, and copied to Harper, among others, by Eugene Shifrin, a court attorney at the Surrogate's Court. In the email, Shifrin stated that the Surrogate had asked him to advise counsel that the court had decided to sever the cross motion to appoint a receiver and that opposition to the cross motion was not presently required. No order of severance or other formal documentations of this court action was issued.

Harper, in an affirmation submitted in connection with a later motion, asserted that no attorney from either RK or Sills Cummis appeared on the return date of the withdrawal motions

February 13, 2020                                                                                   Page 7.
MATTER OF CASSINI, DECEASED

even though an appearance typically was required on the return date of a motion in the Surrogate's Court.[2]  But, according to Harper, Marianne appeared and participated in a conference at which Harper, attorneys for other parties to the proceeding, Shifrin, and Surrogate Reilly's then law clerk, Debra Keller, were present.  According to Harper, during that conference, Shifrin asked Marianne whether she had undertaken any efforts to retain new counsel.  Harper averred that Marianne was evasive with her answers and Marianne had stated that she was aware that her attorneys had moved for leave to withdraw and that she would be seeking to replace them.  According to Harper, the court granted Marianne time to retain new counsel, scheduling an appearance on the cross motion for March 2, 2016.  However, no order or other written documentation of this court action was issued.

Kelly, in an affirmation submitted in connection with a later motion, asserted that on or about January 29, 2016, Kelly called Shifrin to inquire about the status of the withdrawal motions.  According to Kelly, Shifrin was unaware of the status of the motions and suggested that Kelly write to Keller to inquire about the status.  Kelly emailed Keller that day, with copies to Harper, among others.  According to Kelly, when after more than one month had passed and he had not received either a response from Keller or a decision on the motions, he called the court on March 1, 2016, and spoke with both Keller and a secretary, Lori Muscarella.  Kelly averred that he was told, inter alia, that the motions had not yet been decided.[3]

Meanwhile, by two orders dated February 16, 2016, the Surrogate's Court granted RK's withdrawal motions in the Turnover Proceeding and in the SNT Proceeding, respectively.  The bodies of the orders are substantively identical and state:

> "Upon the foregoing papers, it is ordered that the petitioner's counsel's unopposed motion to withdraw as attorneys for petitioner is decided as follows:
>
> "The motion brought by the law firm of [RK] . . . for an order of this Court, pursuant to CPLR Section 321(b)(2), permitting the movant to withdraw as attorney of record for the petitioner, Marianne . . . , in the above captioned proceeding is GRANTED.

---

[2] Harper's affirmation indicated that the return date was January 14, 2016, but other record material indicates that the return date was January 13, 2016.

[3] Kelly also averred that he had been informed that the papers on the motion by Sills Cummis had been lost and that Sills Cummis had refiled the papers in late February.

"The rule in applications for the relief herein is that an attorney may terminate his [or her] relationship of attorney-client at any time for a good and sufficient cause (*see Matter of Dunn [Brackett]*, 205 NY 398 [1912]).

"Based upon all the papers submitted for this Court's consideration, the Court finds and determines that [Reppert] is unable to continue to represent the petitioner due to health reasons.

"Therefore, the law firm of [RK] is herewith GRANTED withdrawal of further representation of the petitioner herein.

"It is the further order of this Court that all proceedings in the instant proceeding are stayed for a period of thirty (30) days of the date hereof.

"The movant is further directed to serve a copy of this order upon the petitioner and all interested parties within ten (10) days of the date hereof.

"This constitutes the Decision and Order of the Court" (emphasis omitted).

Even though a stay of two of the three pending proceedings was in effect, and the motions for leave to withdraw were still sub judice in the Accounting Proceeding, there was an appearance in the Surrogate's Court on March 2, 2016, in relation to the cross motion to appoint a receiver.  That cross motion had been made in the Accounting Proceeding and, according to Shifrin, had been severed from the primary motions, which were for leave to withdraw as counsel.  Since the court had not as yet ruled on the motions by Marianne's counsel for leave to withdraw, and since the February 16, 2016, orders specifically related only to the Turnover Proceeding and the SNT Proceeding, it may be said, at least in a technical sense, that the conduct of the conference on March 2, 2016, did not violate any stay.  On the other hand, it may be fairly said that the conduct of the conference on March 2, 2016, contravened the spirit of the stays imposed by the February 16, 2016, orders and that proceeding with the conference at that time was unwise.

There is a sharp dispute as to who was in attendance at the March 2nd conference.  Marianne, in an affidavit submitted in connection with a later motion, asserted that she appeared for a court conference conducted by law clerk Keller.  Marianne stated that Keller did not provide her with any information concerning the status of the motion for leave to withdraw or when the cross motion would be rescheduled.  Marianne claimed that she was told that the next court appearance would be on June 8, 2016.  In contrast, Harper, in an affirmation submitted in connection with a later motion, asserted that neither Marianne nor any attorney from RK or Sills Cummis appeared before

the court on March 2, 2016. The record does not disclose what, if anything, occurred as the result of the March 2, 2016, conference.

By order dated the following day, March 3, 2016, the Surrogate's Court granted Sills Cummis's withdrawal motion in the Accounting Proceeding. In contrast to the February 16, 2016, orders which allowed RK to withdraw based on Reppert's health, the March 3, 2016, order did not specify the precise reasons for allowing Sills Cummis to withdraw; the court stated only that it had determined that Sills Cummis was unable to continue to represent Marianne. The order allowed Sills Cummis to withdraw and stated that "all proceedings in the instant proceeding are stayed for a period of thirty (30) days of the date hereof." As a consequence, a stay went into effect with respect to the Accounting Proceeding on March 3, 2016.

Kelly, in a later affirmation, averred that on or about March 14, 2016, RK received copies of the orders dated February 16, 2016. Kelly also acknowledged receiving the separate orders granting Sills Cummis's motions for leave to withdraw. However, Kelly averred that he had not received an order or decision on RK's motion for leave to withdraw in the Accounting Proceeding. Kelly averred that he called and spoke with Keller on or about March 16, 2016, to inform her that RK had not received an order determining its motion in the Accounting Proceeding. Keller said that she was aware of that and that an order granting RK's withdrawal motion in the Accounting Proceeding "would be going out 'in the next day or two.'"

Eight days later, on March 24, 2016, having received nothing further from the Surrogate's Court, Kelly wrote to Keller by email, asserting that he was reminding the court that RK had not received a decision on its withdrawal motion in the Accounting Proceeding. On April 15, 2016, having received no further word from the court, Kelly wrote a letter to Surrogate Reilly, with an emailed copy to Keller and to other counsel, "to respectfully inquire as to the status of our firm's motion to withdraw as counsel for Petitioner in the above-referenced accounting proceeding."

Kelly claimed that over the next five weeks, he called the Surrogate's Court multiple times. Kelly left at least two messages for Keller, but those messages went unreturned. He spoke with Muscarella at least once and with Shifrin at least once; Muscarella and Shifrin were friendly, but unable to provide any information regarding the status of the motion. On May 23, 2016, Kelly again called the court. He spoke directly with Keller. Keller told Kelly that RK's motion for leave to withdraw in the Accounting Proceeding had been granted in March 2016. Keller offered to, and did, send a copy of the order to Kelly by facsimile.

The record before us contains an order dated March 14, 2016, of the Surrogate's Court, in which the court granted RK's withdrawal motion in the Accounting Proceeding. The copy of the order in the record does not contain a filed or entered stamp affixed by the Clerk of the Court. In addition to the record lacking any evidence that this order was ever officially entered upon the records of the court, the record does not contain any evidence that the order was ever served by anyone upon anyone.

The terms of the March 14, 2016, order are essentially similar to those set forth in the February 16, 2016, orders. The March 14, 2016, order, like the two earlier orders, granted RK's motion for leave to withdraw and provided for a stay of all proceedings for 30 days, which stay took effect as of the date of the March 14, 2016, order. The March 14, 2016, order, also like the two earlier orders, set forth the Surrogate's Court's finding and determination that Reppert was unable to continue to represent Marianne "due to health reasons." The March 14, 2016, order required the movant, RK, to serve the order upon Marianne and all interested parties within 10 days. However, as above noted, there is nothing in the record before us that indicates that anyone served the March 14, 2016, order on anyone else, or that any of the counsel involved in this matter had any contemporaneous awareness of the existence of this order. To the contrary, the record contains uncontradicted assertions by Kelly that he continued to ask the court for a decision on RK's motion for leave to withdraw from the Accounting Proceeding until May 23, 2016, when he finally learned of the existence of the March 14, 2016, order.

IV.        The Ensuing Proceedings

Harper, in a subsequent affirmation, claimed that "[a]lthough yet another conference was scheduled for April 6, 2016, neither Marianne, nor her attorneys appeared in Court." According to Harper, the April 6, 2016, "conference" was in connection with the cross motion in the Accounting Proceeding to appoint a receiver. Harper also stated that, after the April court date, the cross motion was submitted for decision. Harper asserted that, after the March 2nd appearance, neither Marianne nor anyone on her behalf requested time to respond to the cross motion. While Harper noted that the Surrogate's Court had allowed Sills Cummis and RK to withdraw by orders dated March 3 and March 14, 2016, respectively, he did not state when he first became aware of the existence of those two orders. Nor did he assert that RK, or either of its constituent partners, was aware of, or on notice of, the March 14, 2016, order.

It is notable that proceedings took place on April 6, 2016, without Marianne's

participation, in the context of the Accounting Proceeding. The conduct of such proceedings contravened the terms of the March 14, 2016, order, providing for a 30-day stay of proceedings in the Accounting Proceeding as of the date of the order.[4] We cannot assume that the Surrogate's Court was unaware of its orders.

According to a letter that Kelly sent to Surrogate Reilly, dated May 25, 2016, Kelly received the March 14, 2016, order only two days earlier, i.e., May 23, 2016. In his letter, Kelly contended, in essence, that the 30-day stay provided in the March 14, 2016, order had elapsed before he had even known about the order and requested that the court direct that a 30-day stay commence as of May 23, 2016, the day he received the order.

By letter also dated May 25, 2016, Marianne also wrote to Surrogate Reilly, seeking similar relief, namely, that "since I did not receive the Decision and Order until May 24, 2016 the stay be continued for a minimum of 30 days, from the date of my receipt of your Honor's Decision and Order." Marianne's letter also referenced a motion having been made by the objectants that was returnable on June 8, 2016. While Marianne's letter did not describe the nature of that motion, the record before us includes a notice of motion dated May 13, 2016, in which the objectants sought to preclude Marianne from offering any evidence at the trial of the Accounting Proceeding. The notice of motion lists the motion as being addressed to Kelly of RK, to the attorney for the Public Administrator, and to Peggy. The inclusion of Kelly of RK, and the exclusion of Marianne, as recipient of the motion, supports a conclusion that Farrell Fritz, P.C., as attorneys for the movants, was unaware, as of May 13, 2016, that RK's motion for leave to withdraw had been decided two months earlier.

Marianne, in a later affidavit, asserted that immediately upon learning that her attorney's withdrawal motion was granted in the Accounting Proceeding, she "began attempting to locate and secure new counsel so as to be represented in this proceeding which as this Court is aware involves my life's work as well as millions of dollars." She averred that it took her at least two weeks to secure the voluminous file from her attorneys. Marianne stated that "[d]uring the months of April and May, I met with no less than five (5) or six (6) law firms regarding the status of my case

---

[4] The 30-day stays imposed by virtue of the February 16, 2016, orders relieving RK in the Turnover and SNT Proceedings had expired by April 6, 2019, as had the 30-day stay imposed in the Accounting Proceeding by virtue of the March 3, 2016, order relieving Sills Cummis in that proceeding.

and their possible engagement. As this Court is aware, it took these lawyers weeks to review the thousands of pages of prior pleadings and proceedings in this action and there were multiple meetings in order to determine whether or not counsel and I could agree on the terms and conditions of engagement." At that time, there was no trial date in place and "I [Marianne] informed these attorneys of this as this was very important to potential new counsel."

Of moment, while Marianne's affidavit suggests that she did not learn that RK's motion for leave to withdraw in the Accounting Proceeding had been granted until May 23, 2016, she also stated therein that she began her search for new counsel in April. Thus, she had some level of awareness that she had to seek new counsel, either because she was aware of the pending motions for leave to withdraw and/or was aware of the February 16, 2016, orders relieving RK in the Turnover and SNT Proceedings.

On June 8, 2016, Marianne appeared in the Surrogate's Court with attorney Robert McKay. McKay, in a later affirmation, asserted that Marianne asked him to accompany her to a conference, with a view toward representing her to the conclusion of the matters. At the conference, it was announced for the first time, to McKay's knowledge, that a trial in the Accounting Proceeding was being scheduled to take place on July 25 to 29. McKay promptly informed the court that he would not be able to handle that trial because of his work schedule, his summer vacation plans with his family, and the fact that the file in the proceeding comprised at least 28 large boxes. According to McKay, he was told that unless he was appearing for Marianne for all purposes, he would not be permitted to participate in the conference, "thus requiring [McKay] to leave the conference."

Similarly, in a later affidavit, Marianne asserted that on June 8, 2016, the Surrogate's Court directed that the trial would proceed on Monday, July 25, 2016. "It was at that time that Mr. McKay immediately and promptly withdrew . . . when the Court indicated that it would not change the July 25, 2016 date and the Court further stated words to the effect that it would proceed with the trial with or without me and with or without counsel." "It is obvious that Mr. McKay and the other counsel who commenced review of this voluminous file would not be able to represent me in this action on such short notice and that I would be left without an attorney and that by the Court saying that it would proceed without me, [it] is prejudicing me for no apparent reason other than its apparent disdain for me and the case."

Harper, in a later affirmation, asserted that McKay refused to make a general appearance on Marianne's behalf and so, when the parties and attorneys moved into a conference

MATTER OF CASSINI, DECEASED

with Keller, McKay was asked to leave the conference.  Harper asserted that "Marianne decided to remain at the June 8, 2016 conference and to represent herself."  Marianne requested, and received, the opportunity to submit opposition to the objectants' motion to preclude her from offering evidence at trial, among other motions, the return date for which was adjourned to June 29, 2016.  According to Harper, when the attorneys of record confirmed that the cross motion to appoint a receiver had been previously submitted for decision, Marianne did not dispute that fact, did not request the opportunity to oppose the cross motion, and did not indicate that she needed to discuss that cross motion with counsel.

In an order dated June 9, 2016, the Surrogate's Court memorialized the conference held the day before.[5]  According to that order, the trial was to commence on July 25, 2016, and continue to July 29, 2016, day to day, irrespective of whether the parties were represented by counsel.  Marianne was given until June 22, 2016, to interpose opposition to the objectants' motion to preclude, with the motion to be submitted on June 29, 2016.  No adjournments were allowed; if no opposition was interposed, the motion would be submitted without it.[6]

The June 9, 2016, order also confirmed that the cross motion to appoint a receiver had been submitted to the Surrogate's Court without opposition back in April 2016.[7]  However, Marianne, in a later affidavit, claimed that no one at the June 8th conference mentioned the cross motion.  She claimed that she was never informed of a date when her opposition to the cross motion would be due, or when it was to be rescheduled.  At the conclusion of the June 8th conference, Marianne claims she was told that there would be another conference on June 29, 2016.  While at least some of Marianne's statements are at variance with the terms of the June 9, 2016, order, and that order lists her (and not any attorney for her) in the recitation of counsel following the court's signature, the record does not contain any evidence that the order was served on Marianne or that

---

[5] A second order dated June 17, 2016, was issued also memorializing aspects of the June 8, 2016, conference.

[6] It appears that a cross motion to impose sanctions against Marianne had been made, and she had until June 22, 2016, to serve opposition to that cross motion, under the same terms as with the motion to preclude.

[7] The June 9, 2016, order also dismissed a motion made by Marianne to compel DNA testing, as Marianne had failed to properly serve the motion.

she had knowledge of the order, though she certainly had knowledge of some of its terms, such as the setting of the trial date and the court's intention to proceed with or without her.

In June 2016, Marianne submitted a pro se opposition to the motion to preclude, as well as a pro se motion to "amend" the order dated November 5, 2015, and vacate the judgment entered thereon.

On June 29, 2016, Marianne again appeared in court with McKay. Marianne, in a later affidavit, asserted that Keller entered the courtroom and directed the parties to a conference/library room, but Keller told McKay that he could not accompany Marianne to the room; McKay then left the courtroom. Harper, in a later affirmation, claimed that McKay once again refused to enter a general appearance on Marianne's behalf and, consequently, was excused from the proceedings.

That same day, the Surrogate's Court distributed copies of its decision dated June 29, 2016, determining to grant the objectants' cross motion to appoint a receiver.

By order dated July 1, 2016, the Surrogate's Court, in effect, granted the objectants' cross motion to appoint a receiver, and appointed Rosalia Baiamonte of Gassman, Baiamonte & Betts, P.C., as receiver.

On or about July 11, 2016, Marianne made two pro se motions. One of those motions was to adjourn the trial. In her affidavit submitted in support of that motion, Marianne asserted, as noted above, that during April and May 2016 she met with no fewer than five or six law firms regarding her case and their possible engagement. Marianne argued that "[i]nstead of rushing and forcing me to proceed without a lawyer to represent me properly in this proceeding and entering judgment against me, I respectfully request that this Court, in view of the voluminous size of the file and the amount of time that has already transpired, allow me an additional 60 days to locate and retain competent counsel and allow them sufficient time to review the file so as to represent me properly." Marianne did not argue that the court was proceeding to trial in violation of the statutory stay provided for in CPLR 321(c).

The other July 11, 2016, pro se motion was to vacate the July 1, 2016, order, inter alia, appointing a receiver. In her affidavit submitted in support of that motion, Marianne claimed that there was never a briefing schedule set on that cross motion, and that she was never given an opportunity to submit an opposition to that cross motion. Again, Marianne did not raise any issue

regarding a stay under CPLR 321(c).

The receiver, in a later affidavit, asserted that she appeared in court on July 13, 2016, to meet with the parties. Keller introduced the receiver to the parties seated around the conference table. According to the receiver,

> "[Marianne] informed me then and there that she did not recognize or acknowledge my role as Receiver in these proceedings. She further informed me that it was her intention to seek an appeal of the order appointing me. When I advised her that, absent a stay of the order from the Appellate Division, the order appointing me remained in full force and effect. She responded, 'that is a matter of your opinion'" (emphasis omitted).

By order dated July 14, 2016, the Surrogate's Court granted the objectants' motion pursuant to CPLR 3126 "thereby precluding Marianne . . . from introducing evidence at the trial of this proceeding on any issues derived from the filed tax returns of the Estate of [the decedent] or Marianne['s] personal tax returns for the years of 2006 to 2010, unless Marianne . . . provides a copy of signed tax returns for the Estate of [the decedent] for the years of 2006 to 2010 and a copy of signed tax returns for Marianne . . . for the years 2006 to 2010 to the objectants' attorney by July 22, 2016."

By order to show cause dated July 21, 2016, Marianne attempted to move to "[p]ostpon[e] the Accounting [Proceeding] Trial presently scheduled for July 25, 2016 to a future date i) following the completion of testing comparing the DNA of [the decedent] and Christina; ii) following the completion of a homicide investigation into the death of Daria"; to "[p]ostpon[e] the Accounting [Proceeding] Trial until Marianne . . . is able to retain counsel to represent her in this case, since she will otherwise be severely prejudiced to proceed without legal representation"; and for other and further relief. The order to show cause did not bear Surrogate Reilly's signature above the signature block. Instead, there was handwriting near the lower left corner of the second page of the order to show cause reading, "Denied without merit," and bearing the Surrogate's signature and the date "7/21/16."

Marianne, in a later reply affidavit, claimed that McKay filed a special appearance for the order to show cause only. Harper, in a later affirmation, claimed that the court declined to hear argument from McKay after he answered that he would not be making a general appearance for Marianne.

In this Court, Marianne unsuccessfully sought to stay the accounting trial.

The trial commenced as scheduled.  Soon after the parties gave their appearances, Marianne stated:

> "[MARIANNE]: Okay, your Honor, I respectfully request permission to make a statement before the trial starts on the record.  I'm here today because despite motions and requests for an adjournment, this Court has directed that the trial must start today.

> "I state for the record that despite my efforts to secure counsel, I have been unsuccessful.  I do not have counsel and cannot adequately represent myself. Repeated efforts by me to seek an adjournment so that I could be represented by counsel today have been denied by this Court.  Numerous motions have been brought by me which have a bearing on this trial [and] have not been ruled upon by this Court.

> "In fact, Mr. Robert McKay, Esquire, attempted to bring a motion before this Court with undisclosed information which is extremely pertinent to this case. This Court refused to hear him.  Mr. McKay even acknowledged that the motion was ready because he could not come out to handle the entire case. I spoke with another attorney versed in court work this past Friday.  He declined . . . representation because he did not feel that he could properly prepare in time for the date set by this Court to start the trial.

> "With all due respect to this Court, my biggest deterrent in my ability to secure representation is the Court's refusal to permit counsel time to prepare. There are 28 boxes of legal documents that need to be reviewed.

> "Once again, I respectfully request an adjournment so I may secure counsel with adequate time to prepare.  I firmly believe that the Court's failure to grant an adjournment will seriously prejudice my case and create a serious injustice which creates a denial to my counsel."

The Surrogate's Court stated that Marianne's application was denied.  There was further discussion, wherein Marianne repeatedly expressed her desire to have an attorney, before there was a recess so that exhibits could be marked.  Following the recess, the court announced that it appeared Marianne had left.  She did not return during the trial.

According to the decision after trial, the trial took place on July 25, 26, and 27, 2016. The evidence presented included exhibits numbered up to 171 and 3 witnesses.

By order dated October 19, 2016, the Surrogate's Court, inter alia, directed Marianne

to perform certain tasks and deliver certain information and documents to the receiver. The order recited, among other things, that at a conference, the receiver advised the court of Marianne's continued lack of cooperation and ongoing refusal to comply with the receiver's requests for access, information, and documents, thus impeding the receiver's attempts to ascertain and preserve the property belonging to OCI and CPL, and that the receiver made an oral application, in which both the Public Administrator and the objectants joined, to direct Marianne to comply with all requests for access, information, and documents contained in a prior correspondence of the receiver.

The Surrogate's Court issued an order dated December 12, 2016, which denied, as "moot," Marianne's motion to adjourn the trial. The court stated that the same relief was requested and denied at the trial, and that the trial had taken place. Marianne's appeal from this order is addressed on a related appeal decided herewith (*Matter of Cassini*, ___ AD3d ___ [Appellate Division Docket No. 2017-01413]).

V.        The Orders Reviewed on These Appeals

In this opinion and order, we address Marianne's appeals from three orders of the Surrogate's Court, Nassau County (Margaret C. Reilly, S.), dated March 6, 2017, November 14, 2017, and December 21, 2017, respectively, and an amended order of the same court dated November 13, 2017.

A.        The Order Dated March 6, 2017

In the order dated March 6, 2017, the Surrogate's Court denied Marianne's motion to vacate the July 1, 2016, order, in effect, granting the objectants' cross motion to appoint a receiver, upon her default, and appointing a receiver. The March 6, 2017, order provided, in part:

> "This Court held a conference on January 14, 2016. Marianne . . . appeared without counsel, even though the law firm of [RK] had not yet been relieved as counsel. The motions to be relieved filed by Marianne['s] attorneys were adjourned for approximately six (6) weeks to March 2, 2016. On March 2, 2016, neither Marianne . . . or her counsel appeared before the Court. The motions to withdraw as counsel were submitted on March 2, 2016. Thereafter, this court granted Marianne['s] attorneys' motions to withdraw.
>
> "On June 8, 2016, the court held a conference with the parties on the various proceedings. Marianne . . . , appearing pro se, was present at the meeting. Numerous outstanding motions were discussed. During this conference attended by Marianne . . . , the court granted her several requests for additional time to submit an opposition or a reply to various motions filed in

the Nassau County Surrogate's Court. Marianne . . . did not request additional time with respect to the objectants' [cross] motion for the appointment of the Receiver.

"On June 29, 2016, the Court granted the objectants' motion to appoint a Receiver.

"The pro se movant fails to set forth in her Notice of Motion a legal grounds for the relief requested in contravention of CPLR § 2214. The court shall analyze the ground for vacatur, pursuant to CPLR § 5015(a)(1) 'excusable default.' To prevail on a motion to vacate an order granted on default (*see* CPLR 5015[a][1]), the movant must demonstrate both a reasonable excuse for the default and a meritorious defense to the underlying petition (*see Simpson v Tommy Hilfiger USA, Inc.*, 48 AD3d 389 [2d Dept 2008]). The movant has failed to present any excuse for her default and neither the affidavit of Marianne . . . nor the affirmation of . . . Kelly, address or demonstrate a meritorious defense to the appointment of the Receiver. In the attorney for [the objectants'] affirmation in opposition to the motion to vacate the appointment of a Receiver, ¶s 3 through 10, set[ ] forth depositional testimony of Marianne. . . . The depositional testimony showed the operational losses of [OCI] and [CPL] while the corporations were run by Marianne. . . . The affirmation of Kenneth Mahon, attorney for the Public Administrator, who was appointed on March 13, 2014 by the former Surrogate . . . advised the Court that Marianne . . . has refused to cooperate with the Public Administrator's extensive efforts to enlist their assistance in the undertaking of the responsibility for the day-to-day administration of [OCI]. Mr. Mahon further asserted that it is apparent that both corporations are in danger of irreparable harm as a result of the continued operation of same by Marianne . . . and/or Peggy . . . for their own benefit to the prejudice of the estate.

"The Court found in its original decision that appointment of a Receiver is warranted under all of the facts and circumstances to take control of the assets of each of the aforesaid businesses. Marianne . . . , in her motion to reargue, failed to raise an issue with the Court's finding of a necessity of a Receiver for the corporations.

"The motion to vacate is DENIED, as without merit" (emphasis omitted).

B.        The Amended Order Dated November 13, 2017

By notice of motion dated April 12, 2017, Marianne moved pro se to "vacat[e] and declar[e] null and void all Decisions, Orders, Judgments and Proceedings entered or occurring in this

proceeding after March 14, 2016 to the date immediately preceding the decision on this motion on the grounds that all proceedings were automatically stayed pursuant to CPLR 321(c) until 30 days after notice to appoint a new attorney was served on [Marianne] following the Court's March 14, 2016 order granting her attorney's application to withdraw due to health reasons" and for other and further relief.  In her affidavit submitted in support of her motion, Marianne argued that the proceeding was stayed pursuant to CPLR 321(c) when Reppert was determined to be unable, due to health reasons, to continue representing her.  According to Marianne, the stay continued until 30 days after the attorney for the adverse party sent the notice to appoint attorney required by CPLR 321(c). Marianne asserted that no such notice was ever given and, therefore, all motions, orders, decisions, judgments, and proceedings that happened after March 14, 2016, including but not limited to the order, in effect, granting the cross motion to appoint a receiver, as well as the trial, were null and void and must be vacated.

    The objectants opposed Marianne's motion to vacate.  The objectants argued that the Surrogate's Court granted RK's motion for leave to withdraw as Marianne's counsel pursuant to CPLR 321(b)(2), not CPLR 321(c), and thus the stay Marianne claimed to have arisen under CPLR 321(c) did not apply.  They contended that CPLR 321(c) mandated a stay only when a force majeure, like death or incompetency, prevented a party from practicing law.  They urged that for CPLR 321(c) to apply based on a party's attorney's mental or physical incompetency, the attorney's withdrawal application had to be supported by medical proof to substantiate the attorney's condition.  Here, the objectants contended, Reppert's affirmation submitted in support of the withdrawal motion did not establish that he suffered from any injuries that prevented him from practicing law, and was not supported by medical evidence concerning his condition.  They further argued that RK employed at least one attorney besides Reppert, namely, Kelly, who was quite familiar with the proceeding. Moreover, the objectants contended that Marianne, by actively participating in this proceeding as a pro se litigant since at least May 25, 2016, charted her own course as a self-represented party and could not now claim that vacatur was warranted.

    The Public Administrator also opposed Marianne's motion to vacate and did so for the same reasons set forth in the objectants' opposition.

    Marianne replied, contending that the choice to proceed pro se was involuntarily forced on her by the court, and she did not waive her right to the automatic stay under CPLR 321(c).

February 13, 2020                Page 20.

MATTER OF CASSINI, DECEASED

She pointed out that Reppert's affirmation submitted in support of the withdrawal motion expressly referenced CPLR 321(c). Marianne urged that Reppert's affirmation made clear that he was willing to provide additional medical proof at the court's request. The objectants neither demanded such proof nor opposed the withdrawal motion.

The Surrogate's Court issued an amended order dated November 13, 2017, in which it determined that Marianne's motion was without merit and denied the motion.

      C.             The Order Dated November 14, 2017

Meanwhile, around the time the motion practice was taking place on Marianne's motion to vacate, the receiver moved, inter alia, to hold Marianne in civil and criminal contempt for her alleged failure to comply with the October 19, 2016, order.

The Surrogate's Court issued an order dated November 14, 2017, in which it deemed Marianne to be in civil contempt for her failure to comply with the court's October 19, 2016, order, and directed that she could purge her contempt by complying with the October 19, 2016, order within 10 days of the filing of the November 14, 2017, order with notice of entry. The November 14, 2017, order stated, in part:

> "On the return date of the instant Order to Show Cause, Joanna L. Young, Esq., attempted to enter a 'special appearance' for Marianne . . . , solely for the 'purpose of acting as counsel for Marianne['s] Motion to Vacate all Decisions, Orders, Judgments and Proceedings Entered or Occurring in the Proceeding after March 14, 2016.' This attorney also attempted to file same with the court. Marianne . . . , 'who failed to appear in person, cannot claim that she sent her attorney to appear for a limited purpose, thereby attempting to assert jurisdiction for one reason, but to avoid it for another' (*People v Sannerud*, 2007 NY Misc LEXIS 3976, Westchester County, Jus Ct). The court did not accept the attorney's notice of appearance for the limited purpose of filing the motion."

      D.             The Order Dated December 21, 2017

The Surrogate's Court issued an order dated December 21, 2017, in which it determined that Marianne had failed to purge her contempt. The court ordered that a warrant of arrest and commitment would issue directing the Nassau County Sheriff to arrest Marianne and take her into custody, and to bring her before the court to be committed to jail until she complied with the October 19, 2016, order.

Subsequently, this Court, inter alia, denied that branch of Marianne's motion which was to stay enforcement of the orders dated November 14, 2017, and December 21, 2017, pending hearing and determination of the appeals.

VI.        Developments Subsequent to the Orders Appealed From

Although not part of these appeals, the record reflects that the Surrogate's Court issued a decision after trial dated December 19, 2017. The court dismissed some objections, held some objections in abeyance, and sustained some objections. The court surcharged Marianne for, among other things, refusing to comply with the court's determination that the claims of Christina and Daria were valid, making unauthorized transfers of funds from OCI and CPL, making unauthorized payments from OCI, and failing to collect receivables. The court surcharged Marianne more than $20 million in principal together with nine percent annual interest, compounded. Marianne's claims against OCI and CPL were disallowed. In denying payment of executor's commissions to Marianne, the court stated:

> "As the objectants have established that [Marianne]: failed to collect estate assets, including receivables owed to the decedent from [OCI] and [CPL], as well as a debt owed by the decedent's niece, Marina Minoli; refused to follow court orders; failed to maintain adequate records; was derelict and neglectful in the fulfillment of her responsibilities as executor; maladministered the estate and conducted herself improperly in her role as an executor; diverted estate assets to herself and others; and mismanaged estate assets, including the Oyster Bay Cove property, the court DENIES payment of executor's commissions to [Marianne]" (emphasis omitted).

This Court denied Marianne's motion, among other things, to stay enforcement of the decision dated December 19, 2017, pending hearing and determination of the appeals.

VII.       The Parties' Contentions on Appeal

On these appeals, Marianne argues that the Surrogate's Court should have granted her motion to vacate the orders, decisions, and proceedings occurring after March 14, 2016, when the court first determined that Reppert was unable to continue to represent Marianne due to health reasons. Marianne posits that, since Reppert was found to be disabled from further representation of her, a stay pursuant to CPLR 321(c) automatically went into effect and no further proceedings could be taken against her until a notice to appoint a new attorney was served upon her. Marianne contends that she was denied procedural due process when the court decided the cross motion to

appoint a receiver without giving her notice of the return date and of a deadline for submission of opposition papers. Marianne also argues that the contempt order was improper, as the October 19, 2016, order she was found to have violated is not a lawful order, as such order was entered during the period when the proceeding was automatically stayed by operation of law. Marianne contends that the order dated March 14, 2016, permitting RK to withdraw in the Accounting Proceeding was not "release[d] to the parties until it was faxed to [Kelly] more than two months later, on May 23, 2016."

        In opposition, the objectants assert that CPLR 321(c) does not apply to the situation at hand because RK and Sills Cummis moved for leave to withdraw under CPLR 321(b)(2) and there is no evidence that any force majeure event occurred which would have triggered the application of CPLR 321(c). The objectants contend that, because Marianne did not oppose the motions for leave to withdraw, she cannot rely on the provisions of CPLR 321(c) and, in any event, as a sophisticated businessperson, she forfeited any right to a stay under CPLR 321(c) by electing to represent herself from June 2016 forward. The objectants argue that Marianne is not aggrieved by the order appointing a receiver since the Surrogate's Court determined that OCI and CPL are estate assets and Marianne is no longer an estate fiduciary. According to the objectants, Marianne had ample opportunity to oppose their cross motion to appoint a receiver and failed to avail herself of it. The objectants also argue that neither the November 14, 2017, nor the December 21, 2017, orders are appealable and that, in any event, such orders are valid. While the objectants' brief discusses the March 14, 2016, order, the objectants do not respond to Marianne's contention that the March 14, 2016, order was not released to the parties until May 23, 2016.

Legal Analysis

VIII.      <u>The Pathways for Replacing an Attorney of Record</u>

        CPLR 321 provides three pathways by which the attorney of record for a party may seek to be replaced. The client always has the option of discharging the attorney, in which event the discharge is immediate (*see Farage v Ehrenberg*, 124 AD3d 159, 165). Of course, some further action must be taken in order for the discharge to be made known to the other parties to the action and to the court.

        First, pursuant to CPLR 321(b)(1), the attorney of record may withdraw or be changed by a stipulation signed by the outgoing attorney and signed and acknowledged by the client, with

notice to be provided to the other parties to the action (*see* CPLR 321[a]). The use of a stipulation of substitution, which avoids expense and delay, is common where the client, the outgoing attorney, and the incoming attorney (who could be the client pro se) are entirely in agreement on the substitution (*see* Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C321:2 at 181 [2010 ed]). Since the client is, by executing the stipulation of substitution, in effect, consenting to the discharge of the attorney of record and simultaneous replacement with another, there is no entitlement to an automatic stay of proceedings by reason of the change in counsel (*see Shurka v Shurka*, 100 AD3d 566), although incoming counsel could always seek a stay from the court (*see* CPLR 2201).

Second, CPLR 321(b)(2) permits the attorney of record for a party to be changed by order of the court. This pathway requires the attorney of record to move, by order to show cause, on such notice as the court may direct, to be relieved.[8] Withdrawal is not, however, available for the mere asking, particularly when some significant court action is pending, such as the commencement of a trial. The attorney must demonstrate that good cause exists to end the relationship with the client, such as by showing an irretrievable breakdown in the relationship or a failure of cooperation by the client (*see Farage v Ehrenberg*, 124 AD3d at 165). Whether a stay of proceedings should be granted upon an order relieving counsel of record is a matter to be considered further.

Third, pursuant to CPLR 321(c), if an attorney dies, "becomes physically or mentally incapacitated," or is removed, suspended, or otherwise becomes disabled at any time before judgment, no further proceedings may be taken against the party for whom the attorney appeared, without leave of court, until 30 days after notice to appoint another attorney has been served upon the party either personally or in such manner as the court directs. Under this provision, where an attorney becomes functionally disabled from representing the client, a stay of all proceedings automatically attaches, with that stay remaining in effect until a notice to appoint a replacement attorney is served. However, the court has the authority to grant leave for proceedings to be conducted despite the stay.

Unlike CPLR 321(b)(1), where a substitution is with the outgoing attorney's consent,

---

[8] Here, RK and Sills Cummis both moved by notice of motion. Since no party raised this procedural defect, and, in any event, the Surrogate's Court granted the unopposed motions, we likewise will take no cognizance of the defect.

and CPLR 321(b)(2), where an attorney may seek to be relieved, CPLR 321(c) becomes applicable upon the occurrence of an event that is typically outside the outgoing attorney's control.  By the terms of the statute, the termination of the stay is dependent upon service of a notice to appoint by the adverse party or parties, with the notice to be served personally or as the court directs.  Nothing precludes the court from serving the notice to appoint.

IX.          The Interplay Between CPLR 321(b) and (c)

In approaching our analysis of the interplay between CPLR 321(b) and (c), there are two anomalous circumstances in this matter which require notation.  Both CPLR provisions address the replacement of an attorney of record, approaching the topic as if there is but one singular attorney who represents the party in question.

In this case, Marianne had two distinct attorneys of record.  However, absent special circumstances, there may be only one attorney of record for a party in a single action (*see Stinnett v Sears Roebuck & Co.*, 201 AD2d 362, 364; *Matter of Kitsch Riker Oil Co.*, 23 AD2d 502; *but see Itar-Tass Russian News Agency v Russian Kurier, Inc.*, 140 F3d 442, 452 [2d Cir] [recognizing second attorney of record for the purpose of charging lien]).  Here, both RK and Sills Cummis described themselves and were simultaneously recognized without objection as being attorneys of record for Marianne, although Sills Cummis's role, as described by Kaplan, was to assist Reppert and RK.  The controversy at issue herein might have been less confusing had Sills Cummis served strictly in an of counsel capacity to RK, with the latter firm being the sole attorney of record.  It might further be said that, while Reppert's illness gave rise to appropriate cause for Reppert to withdraw under CPLR 321(b), it did not necessitate granting Sills Cummis's motion for leave to withdraw.  Likewise, it could be argued, if Reppert was disabled for the purpose of CPLR 321(c), an automatic stay of proceedings was not triggered because of Sills Cummis's status as a second attorney of record.  However, since none of the parties have addressed, much less given any significance to, the duality of counsel, we note the circumstance but do not comment further on it.

Additionally, RK is a law firm which had at least two attorneys affiliated with it, Reppert and Kelly.  In dealing with death, removal, or disability of an attorney of record for a party, CPLR 321(c) postulates the existence of a singular individual who has died, has been removed or suspended, or has become disabled.  It may be questioned whether, as here, CPLR 321(c) has any application at all to a circumstance where the attorney of record is a law firm composed of multiple

February 13, 2020                                                                                                Page 25.

MATTER OF CASSINI, DECEASED

individual attorneys. Where a client is represented by a law firm with multiple attorneys, it may be argued that the death, suspension, or disability of one attorney in that law firm does not trigger application of CPLR 321(c). However, the parties here do not argue that Kelly's unhampered ability to continue to represent Marianne precludes the application of CPLR 321(c) as the result of Reppert's personal circumstances.

Consequently, despite these anomalous facts, we approach our analysis upon the predicate that Reppert was, in effect, a solo practitioner and the exclusive attorney of record for Marianne. We do so because "[f]or us now to decide this appeal on a distinct ground that we winkled out wholly on our own would pose an obvious problem of fair play. We are not in the business of blindsiding litigants, who expect us to decide their appeals on rationales advanced by the parties, not arguments their adversaries never made" (*Misicki v Caradonna*, 12 NY3d 511, 519; *see Green Tree Servicing, LLC v Molini*, 171 AD3d 880, 882).

We see no reason why, in a circumstance where an attorney of record has become incapacitated, CPLR 321(c) would apply to the exclusion of the other pathways provided in CPLR 321 for replacing the attorney of record. Stated differently, where an attorney of record becomes disabled from further participating in the case, the attorney may seek to be replaced by consent through a stipulation of substitution (CPLR 321[b][1]), or the attorney could seek to be relieved by court order (CPLR 321[b][2]), or the party represented by the attorney could be compelled to replace the attorney by service of a notice to appoint by the adverse party (CPLR 321[c]). The statute does not make any one of these three pathways exclusive, though, as a practical matter, where an attorney has died or has become so incapacitated to be unable to execute an instrument, that attorney would not be able to effectively execute a stipulation of substitution or an affirmation in support of a motion for leave to be relieved. On the other hand, an adverse party may not always be in a position to know that the attorney of record for the other side has become disabled or disabled to such an extent as to preclude the attorney from continuing to provide representation to the client.

Where an attorney is allowed to be relieved by court order under CPLR 321(b)(2), it is preferable for the court to direct that the order be served by the adverse party, just as service of a notice to appoint by the adverse party or the court itself is required by CPLR 321(c). By directing that the adverse party serve the order upon the client previously represented by the relieved attorney, the court can assure that the client is on notice that his or her attorney is relieved of further

representation and that a new attorney should be retained.

As will be discussed further *infra*, where an attorney seeks leave to withdraw under CPLR 321(b)(2), the court may stay proceedings pending the determination of the motion and after the determination.  In contrast, where CPLR 321(c) is triggered, an automatic stay takes hold upon the occurrence of the triggering event.  In both instances, it is preferable for the adverse party to serve notice of any stay and notice to appoint a new attorney upon the client of the relieved attorney in order to prevent the situation, as happened here, where a court-imposed stay lapsed before the client was on notice that a stay had been granted.

X.          The Applicability of CPLR 321(c)

The most extensive treatment of CPLR 321(c) by our Court of Appeals is found in *Moray v Koven & Krause, Esqs.* (15 NY3d 384).  In *Moray*, this Court affirmed the Supreme Court's order granting the defendant's motion pursuant to CPLR 3012(b) to dismiss the action for failure to timely serve a complaint, holding, inter alia, that the plaintiff's contention that the action had been stayed pursuant to CPLR 321(c) was raised for the first time on appeal and, thus, was not properly before us (*see Moray v Koven & Krause, Esqs.*, 62 AD3d 765, *revd* 15 NY3d 384).  The Court of Appeals reversed, stating:

> "The command of CPLR 321(c) is straightforward: if an attorney becomes disabled, '*no further proceeding* shall be taken in the action against the party for whom he appeared, without leave of the court, until thirty days after notice to appoint another attorney has been served upon that party either personally or in such manner as the court directs' (emphasis added).  As the Practice Commentaries explain, CPLR 321(c) brings about 'an automatic stay of the action,' which 'goes into effect with respect to the party for whom the [disabled] attorney appeared' (Alexander, Practice Commentaries, McKinney's Cons. Laws of NY, Book 7B, CPLR C321:3, at 183).  As a result, '[d]uring the stay imposed by CPLR 321(c), no proceedings against the party will have any adverse effect.  It lies within the power of the other side to bring the stay to an end by serving a notice on the affected party to appoint new counsel within 30 days . . . If, at the end of the period, the party has failed to obtain new counsel (or elected to proceed pro se), the proceedings may continue against the party' (*id.*).
>
> "The stay is meant to 'afford a litigant, who has, through no act or fault of his own, been deprived of the services of his counsel, a reasonable opportunity to obtain new counsel before further proceedings are taken against him in the action' (*Hendry v Hilton*, 283 App Div 168, 171 [2d Dept 1953] [discussing Civil Practice Act § 240, the predecessor statute to CPLR 321(c)])" (*Moray*

*v Koven & Krause, Esqs.*, 15 NY3d at 388-389 [footnote omitted]).

The Court applied the law to the facts.

 "This lawsuit was automatically stayed by operation of CPLR 321(c) on January 24, 2008, the date when plaintiff's attorney was suspended from the practice of law.  Defendant never acted to lift the stay by serving a notice upon plaintiff to appoint new counsel within 30 days.  Thus, Supreme Court's order dismissing the action must be vacated (*see e.g. Galletta v Siu-Mei Yip*, 271 AD2d 486, 486 [2d Dept 2000] ['Since the judgment entered upon the defendants' default in appearing at trial was obtained without the plaintiff's compliance with CPLR 321(c), it must be vacated']; *McGregor v McGregor*, 212 AD2d 955, 956 [3d Dept 1995] ['The record reveals no compliance with the leave or notice requirements of CPLR 321(c).  The appropriate remedy for a violation of CPLR 321(c) is vacatur of the judgment'])" (*Moray v Koven & Krause, Esqs.*, 15 NY3d at 389).

The Court explained why it rejected two arguments the defendant made.  First, the defendant pointed out that CPLR 321(c) permits further proceedings by leave of the court, and contended that the Supreme Court exercised that express statutory authority to hear and grant the defendant's motion to dismiss after the plaintiff's attorney was suspended from the practice of law.  The Court of Appeals found that argument to be wanting:

 "The drafter's notes on CPLR 321(c), however, state that the words 'without leave of the court' were 'designed to allow the court to vary the [30-day] rule in cases where the stay of proceedings would produce undue hardship to the opposing party, as where the time to take an appeal or other action would run or where a provisional remedy is sought and speed is essential' (4th Preliminary Rep of Advisory Comm on Prac and Pro, 1960 NY Legis Doc No. 20 at 191).  No remotely comparable situation existed at the time Supreme Court dismissed this action.  Moreover, Supreme Court did not mention CPLR 321(c), much less articulate a basis for exercising its discretion to relax the 30-day notice requirement" (*Moray v Koven & Krause, Esqs.*, 15 NY3d at 390).

Second, the defendant contended that the plaintiff was foreclosed from raising CPLR 321(c) for the first time on appeal.  The Court of Appeals did not agree:

 "While we do not as a general rule resolve cases on grounds not raised in the trial court, the context here is unusual.  We are dealing with a statute intended to protect litigants faced with the unexpected loss of legal representation. And there is no indication in this record that plaintiff sought to raise CPLR 321(c) only after having conducted his lawsuit pro se for some period of time after his attorney became disabled (*cf. Telmark, Inc. v Mills*, 199 AD2d 579,

580-581).  As a general rule, unrepresented litigants should not be penalized for failing to alert a trial court to the existence of an automatic stay created for the very purpose of safeguarding them against adverse consequences while they are unrepresented.  And as the Practice Commentaries point out, all it takes to end the automatic stay is service of a 30-day notice on the affected party" (*Moray v Koven & Krause, Esqs.*, 15 NY3d at 390).

CPLR 321(c) applies to circumstances in which an event occurs which is personal to the attorney of record which involuntarily prevents the attorney of record from continuing to represent the party, notwithstanding the attorney's willingness to do so (*see Hendry v Hilton*, 283 App Div at 171).  The statute is designed for the protection of a litigant who, through no fault of his or her own, has been deprived of the services of one's attorney of record and who, therefore, should be given a reasonable opportunity to obtain new counsel before further proceedings are taken against such party.  The protection of the statute is confined to causes which, as to the client, may be said to arise from a force majeure or one over which the client has no control (*see id*.).

*Moray* involved the circumstance where the attorney of record was suspended from the practice of law.  In *McGregor v McGregor* (212 AD2d at 956), the attorney of record was disbarred.  Where the attorney of record has died, been disbarred, or has been suspended from practice, the fact of the attorney's inability to proceed further is readily established by a documentary record, such as a death certificate or court order.  The disability of the attorney of record is also within the purview of CPLR 321(c), whether that disability be mental or physical (*see Winney v County of Saratoga*, 252 AD2d 882, 883).  The disability, whatever its nature, must be such that effectually prevents the attorney from continuing the representation of the client (*see Hendry v Hilton*, 283 App Div at 171; *see also Winney v County of Saratoga*, 252 AD2d at 883).  Whether such a disability has occurred, and when it occurred, may not always be readily known and, in particular, known to the adverse party.  There also may be no available record that documents the nature and extent of the disability or establishes when the disability arose.

Here, in moving for leave to withdraw from representing Marianne, Reppert asserted that, for medical reasons, he had been unable to fully return to the practice of law full-time since July 2015.  He offered to "provide an in camera affirmation for the Court to review or make [himself] available to discuss the medical issues privately that prevent [him] from continuing at this time with the Court."  He asserted that he was "physically unable to provide the representation that is necessary

to properly represent [his client]," Marianne.  In an affirmation executed two week later, in support of Sills Cummis's motion for leave to withdraw, Kaplan asserted that his firm's role in the matter was ending "[n]ow that Mr. Reppert's health prevents him from continuing to represent Marianne before this Court."  The objectants did not oppose the withdrawal motions.  While it does not appear that the Surrogate's Court took Reppert up on his offer to share medical information with the court privately, the court, in granting Reppert's motions for leave to withdraw, made the specific finding and determination that Reppert was "unable to continue to represent [Marianne] due to health reasons."  In making this finding and determination, the court provided the basis for a discretionary withdrawal of counsel under CPLR 321(b)(2) and simultaneously activated the automatic stay provisions of CPLR 321(c), as Reppert's judicially determined inability to continue to represent Marianne for health reasons constituted a finding of disability for the purpose of CPLR 321(c). Further, in making this finding in its orders, the court put the objectants on notice that Reppert was unable to continue his representation of Marianne and was thus disabled, leading to the applicability of CPLR 321(c).

The objectants argue that CPLR 321(c) does not apply because there was no force majeure and there is no evidence that Reppert was effectively prevented from practicing law.  This contention is unpersuasive.  The statements by Reppert and Kaplan made in affirmations submitted in support of the withdrawal motions are evidence that Reppert was unable to effectively continue with the representation of Marianne.  While no medical testimony or documentation was provided, and the Surrogate's Court might well have denied the withdrawal motion for that reason (*see Matter of Plaro Estates, Inc. v Assessor*, 101 AD3d 886, 888; *Winney v County of Saratoga*, 252 AD2d at 883), or requested the submission of supporting medical documentation, the court evidently was satisfied that Reppert's condition was serious and substantial, as evidenced by its unchallenged finding that Reppert was unable to continue with the representation.  In this regard, we note that the previous Surrogate had granted a lengthy delay in the trial partly due to Reppert's representation that he was required to undergo surgery.  The finding by the court on the motions for leave to withdraw that Reppert's condition precluded his continued participation in the matter, coupled with the facts that Reppert's health condition was a cause over which Marianne had no control and was not due to any fault on her part, established the existence of a disability for the purpose of CPLR 321(c) (*see Hendry v Hilton*, 283 App Div at 171).  Reppert's condition, contrary to the objectants' argument,

constituted a force majeure, that is, an unexpected event that prevented him from doing or completing something he had agreed or planned to do (*see* Black's Law Dictionary [11th ed 2019]).

The objectants contend that, even if Reppert was disabled, the statutory stay was not implicated because Marianne failed to oppose or object to RK's withdrawal motion.  Again, we disagree.

Where counsel is permitted to withdraw, pursuant to CPLR 321(b)(2), over the client's objection, the 30-day stay of proceedings generally attaches since the court has effectively "removed" counsel for the purpose of CPLR 321(c) (*Albert v Albert,* 309 AD2d 884, 886; *see Matter of Wiley v Musabyemariya*, 118 AD3d 898, 899-900; *Sarlo-Pinzur v Pinzur*, 59 AD3d 607).  However, none of our cases stand for the proposition that the CPLR 321(c) stay applies *only* where the client objected to counsel's motion for leave to withdraw.  Indeed, CPLR 321(c) provides that the "removal" of the attorney of record brings about a stay, without regard to whether the removal was with or without the client's consent.  It would make little sense to construe the statute as conferring a stay to protect a client who opposed counsel's application to withdraw due to disability, despite knowing of the attorney's incapacity, while denying a stay to a client who, recognizing that the attorney was disabled, did not object to the attorney's request to withdraw.  Either way, the stay attaches, but subject to the court's authority to vary it in appropriate cases.

CPLR 321(c) expressly permits the court to grant leave to continue the proceedings, and deny a stay, in particular cases where the attorney of record has been removed or suspended.  Certainly, where the attorney's withdrawal is caused by a voluntary act of the client, the court has the discretion to permit the matter to proceed without a stay (*see Matter of Wiley v Musabyemariya*, 118 AD3d at 899-900 [no stay where client voluntarily discharged attorney]; *Sarlo-Pinzur v Pinzur*, 59 AD3d at 608 [no stay where client refused to cooperate with counsel in preparing for trial]; *Graco Constr. Corp. v Eves*, 232 AD2d 370, 370-371 [no stay where client voluntarily discharged attorney on the first day of trial]).  Likewise, a stay may be refused where the removal of counsel was the product of the client's own wrongful act (*see RDLF Fin. Servs., LLC v Bernstein*, 93 AD3d 421 [attorney, representing both himself and his law firm, was disbarred after pleading guilty to stealing client funds; no stay because his removal from the bar was the product of his own wrongdoing]).  Here, however, there is nothing in the record indicating that Marianne's voluntary act or wrongdoing caused Reppert's withdrawal.

February 13, 2020                                                                                        Page 31.

MATTER OF CASSINI, DECEASED

Also unavailing is the objectants' contention that the legislative purpose underlying the enactment of CPLR 321(c) is to protect an unknowing client whose counsel failed to inform the client of counsel's suspension or disability. Here, there is no evidence that Marianne knew that Reppert had a health impairment at the time she initially retained him some 10 years earlier. Nor is there any evidence as to whether and when Reppert advised Marianne of his health condition, apart from his disclosures to the court. In any event, the Court of Appeals has said that "[t]he stay is meant to 'afford a litigant, who has, through no act or fault of his own, been deprived of the services of his counsel, a reasonable opportunity to obtain new counsel before further proceedings are taken against him in the action'" (*Moray v Koven & Krause, Esqs.*, 15 NY3d at 389, quoting *Hendry v Hilton*, 283 App Div at 171). Reppert's medical condition, which deteriorated well after he began representing Marianne in lengthy, protracted proceedings, was a cause over which Marianne had no control and was not due to fault on her part.

XI.        The Duration of the Stay

CPLR 321(c) provides that, where an attorney becomes disabled, "no further proceeding shall be taken in the action against the party for whom he [or she] appeared, without leave of the court, until thirty days after notice to appoint another attorney has been served upon that party either personally or in such manner as the court directs." Where the stay has been violated, the remedy is to vacate the judicial determinations rendered in contravention of the statute (*see Livore v Malik*, 305 AD2d 641, 642; *Galletta v Siu-Mei Yip*, 271 AD2d at 486; *McGregor v McGregor*, 212 AD2d at 956; *see also Moray v Koven & Krause, Esqs.*, 15 NY3d at 389; Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, CPLR C321:3 ["A party against whom an order or judgment is entered in violation of CPLR 321(c) may have the order or judgment vacated"]).

The stay provided for in CPLR 321(c) went into effect upon the Surrogate's Court's finding that Reppert was disabled, which was first made in its orders dated February 16, 2016, relieving RK in the Turnover and SNT Proceedings. Even if it is assumed that this finding was not imported into the Accounting Proceeding until the March 14, 2016, order relieving RK made in that proceeding, and that the stay did not take effect in that proceeding until March 14, 2016, there is no significant consequence as it does not appear that any judicial determinations were rendered in the interval between February 16 and March 14, 2016.

It is undisputed that no party sought leave of the Surrogate's Court to take further

proceeding against Marianne and that no formal notice to appoint another attorney was served on her.  The March 14, 2016, order, granting RK's withdrawal from representing Marianne in the Accounting Proceeding, did not explicitly state that Marianne had to find new counsel.  In any event, no one served her with it.  However, even though Marianne was never formally served with a notice to appoint, it does not necessarily follow that the statutory stay of proceedings continued on ad infinitum, as Marianne contends.

In *Telmark, Inc. v Mills* (199 AD2d 579), the Appellate Division, Third Department, found, on the facts presented, that there was no violation of CPLR 321(c).[9]  There, the defendant's attorney notified the parties that he had been suspended from practice and had advised the defendant to obtain the services of another attorney.  The defendant then sent a letter to the plaintiff's attorneys in which she acknowledged that her counsel had been suspended and directed that the plaintiff "send any papers directly to [her] until notified to the contrary" (*Telmark, Inc. v Mills*, 199 AD2d at 580 [internal quotation marks omitted]).  The defendant then proceeded pro se, which she had the right to do (*see id.* at 580-581).

In *Moray*, the Court of Appeals referenced *Telmark* by stating:

> "We are dealing with a statute intended to protect litigants faced with the unexpected loss of legal representation.  And there is no indication in this record that plaintiff sought to raise CPLR 321(c) only after having conducted his lawsuit pro se for some period of time after his attorney became disabled (*cf. Telmark, Inc. v Mills*, 199 AD2d 579, 580-581 [3d Dept 1993])" (*Moray v Koven & Krause, Esqs.*, 15 NY3d at 390).

Thus, in *Moray*, the Court of Appeals distinguished *Telmark* but did not overrule *Telmark* or call into doubt its conclusion on the facts there presented that there was no violation of CPLR 321(c).

*Telmark* is instructive in several respects.  First, in *Telmark*, the defendant's attorney did give his client notice that she needed to appoint a new attorney.  Second, the defendant responded to that notice by voluntarily electing to proceed pro se.

Here, we consider whether Marianne, who did appear pro se, did so voluntarily for

---

[9] The court in *Telmark* also concluded that the CPLR 321(c) issue was not preserved for appellate review.  However, that conclusion seems untenable in light of the Court of Appeals' subsequent decision in *Moray*, where the Court of Appeals reversed based on CPLR 321(c) even though CPLR 321(c) was raised for the first time on appeal (*see Moray v Koven & Krause, Esqs.*, 15 NY3d at 390).

a period of time before raising the CPLR 321(c) issue.  While Marianne has the right to appear pro se, it remains to consider whether she voluntarily exercised that right or whether her self-representation was compelled against her will.  The Court of Appeals doubtless did not envisage *Telmark* as eviscerating the shield afforded litigants by CPLR 321(c), but rather as preventing a litigant from using the statute as a sword by taking undue advantage through the stratagem of voluntarily proceeding pro se while keeping the CPLR 321(c) issue in a back-pocket in order to belatedly nullify any adverse results.

It must be recognized that Marianne, by her own statements, knew, as of April 2016, that she would have to find new counsel, though there is nothing in the record that indicates that she knew, or was informed, that there was any deadline or urgency to that search.  She was most certainly on notice that she needed new counsel when she appeared, accompanied by McKay, at a conference before the Surrogate's Court on June 8, 2016.  Since McKay was not permitted to attend the conference as he was unwilling to enter a formal appearance, it cannot be said that Marianne's decision to participate in the conference without the benefit of counsel was wholly voluntary.

Marianne voluntarily made a pro se motion on June 28, 2016, seeking to amend the order dated November 5, 2015, sustaining certain objections to Marianne's account and to vacate certain transcripts of judgments.  Marianne did not contend in her motion that she was compelled to make it pro se.  We have considered whether her interposition of the motion constitutes a voluntary election to proceed pro se as of that date.  We conclude that it was not, bearing in mind that on the July 25, 2016, trial date, Marianne appeared with prospective counsel, McKay.  Since both before and after the interposition of the June 28, 2016, motion, Marianne clearly sought the services of counsel, we cannot say the June 28 motion reflected her volitional determination to represent herself as of that date.  Likewise, while Marianne, on or about June 17, 2016, executed an affidavit in opposition to the objectants' motion to preclude evidence in the Accounting Proceeding, this affidavit was submitted under compulsion of the June 9, 2016, order and cannot be considered a voluntary election to appear pro se.  Furthermore, Marianne's decision to absent herself from the trial after her motion for an adjournment was denied reflects her affirmative decision to forgo appearing at the trial at all rather than to represent herself at the trial without the aid of counsel.

We, however, conclude that, as of June 28, 2016, Marianne had received informal but nevertheless effective advance notice of at least 30 days of the need to appoint a new attorney at the

MATTER OF CASSINI, DECEASED

June 8, 2016, conference.

Accepting Marianne's version of events, she stated that she had engaged McKay to represent her, with both Marianne and McKay understanding that no trial date had been set. When the Surrogate's Court set July 25, 2016, as the trial date, McKay withdrew and, averred Marianne, "the Court indicated that it would not change the July 25, 2016 date and the Court further stated words to the effect that it would proceed with the trial with or without me and with or without counsel." Thus, Marianne knew as of June 8, 2016, that she had to retain new counsel if she wanted to have counsel represent her at the trial. She was also given a period well in excess of 30 days in which to retain counsel. Under the circumstances, the notification by the court to Marianne was the functional, practical equivalent of a notice to appoint a new attorney. The service of a formal written notice to appoint from and after June 8, 2016, would have been an idle formality since Marianne knew, and was specifically advised by the court, that, if she wanted to have counsel, she would have to have one by the July 25, 2016, trial date.

"The stay is meant to 'afford a litigant, who has, through no act or fault of his own, been deprived of the services of his counsel, a reasonable opportunity to obtain new counsel before further proceedings are taken against him in the action'" (*Moray v Koven & Krause, Esqs.*, 15 NY3d at 389, quoting *Hendry v Hilton*, 283 App Div at 171), and, in this case, as of June 9, 2016, Marianne was afforded the opportunity to retain new counsel prior to the scheduled trial date of July 25, 2016.[10] We thus treat July 25, 2016, as the terminus of the CPLR 321(c) stay. We find support for this conclusion in *Telmark*, where the party was put on notice by his own attorney of the need to find a replacement (*see Telmark, Inc. v Mills*, 199 AD2d at 580). Here, Marianne was given such notice by the Surrogate's Court.

We consider the context of this matter as well in reaching our conclusion. Marianne has held herself out as a sophisticated businessperson. She was no stranger to litigation. During or around the time these probate matters were pending in the Surrogate's Court, Nassau County, Marianne also was involved in litigation she commenced in California, seeking a judicial

---

[10] However, we also hold, in our opinion and order on a related appeal (*Matter of Cassini*, ___ AD3d ___ [Appellate Division Docket No. 2017-01413; decided herewith]), that the Surrogate's Court should have afforded Marianne and her prospective new counsel additional time to prepare for the trial by granting an adjournment.

MATTER OF CASSINI, DECEASED

determination regarding the respective rights and obligations under the judgment of divorce between the decedent and his former wife, Gene Tierney (*see Cassini v Belmont*, 2012 WL 3594378, 2012 Cal App Unpub LEXIS 6167 [Cal Ct App]); in litigation she commenced in New York County, alleging defamation "based on allegedly false and disparaging statements in an article published in the September 2010 issue of Vanity Fair (Cassini Royale) that reports on plaintiff's secret marriage to the late designer, Oleg Cassini, and her conduct in litigation concerning his estate" (*Cassini v Advance Publs., Inc.*, 125 AD3d 467, 468, *affg* 41 Misc 3d 1202[A], 2013 NY Slip Op 51553[U] [Sup Ct, NY County] [affirming order granting defendants' motion to dismiss complaint and denying plaintiff's cross motion pursuant to CPLR 306-b for an extension of time to serve]); and in litigation she commenced alleging legal malpractice against the estate's former attorneys (*see Nestor v Putney Twombly Hall & Hirson, LLP*, 153 AD3d 840). The proceedings in the Surrogate's Court, Nassau County, had gone on for many years. In particular, Marianne filed the petition for judicial settlement of her intermediate account in December 2010 or January 2011.

We also note that Marianne never raised the issue of the CPLR 321(c) stay until April 2017, when she moved to vacate and nullify all judicial determinations made since March 14, 2016. While she is not an attorney, we also recognize that she is a sophisticated litigant and had she raised the issue earlier, much of the ensuing procedural morass may have been avoided.

We must now apply our legal conclusions to the resolution of the particular appeals before us.

XII.          The Determination of the Appeals

A.          The Order Dated March 6, 2017

The first of the four appeals we determine is Marianne's appeal from the order dated March 6, 2017, which denied her motion to vacate the July 1, 2016, order, in effect, granting, upon Marianne's default, the objectants' cross motion to appoint a receiver, and appointing a receiver.

There is no merit to the objectants' contention that because Marianne no longer had authority to administer OCI or CPL, she was not aggrieved by the appointment of a receiver for those entities. Generally, "a person is aggrieved when he or she asks for relief but that relief is denied in whole or in part. Second, a person is aggrieved when someone asks for relief against him or her, which the person opposes, and the relief is granted in whole or in part" (*Mixon v TBV, Inc.*, 76 AD3d 144, 156-157 [emphasis and footnotes omitted]). Here, Marianne moved to vacate the determination

granting the cross motion to appoint a receiver for OCI and CPL upon her default in opposing the cross motion. By the order dated March 6, 2017, the Surrogate's Court denied her motion to vacate. Thus, since she asked for relief but that relief was denied, Marianne is aggrieved by the March 6, 2017, order from which she appeals.

The objectants made their cross motion in response to the motion made by RK for leave to withdraw. The Surrogate's Court appropriately severed the cross motion and held it in abeyance pending the court's determination of Reppert's motion for leave to withdraw. Whether the CPLR 321(c) stay took effect on February 16, 2016, or March 14, 2016, the stay was in still in effect when the motion was marked submitted by the court in April 2016 and was still in effect on June 9, 2016, when the court confirmed that marking in its order of that date. The stay was still in effect on June 29, 2016, when the court issued its determination to grant the cross motion to appoint a receiver upon default. Since the issuance of the July 1, 2016, order violated the statutory stay, it should have been vacated. Thus, we reverse the order dated March 6, 2017, denying Marianne's motion to vacate the July 1, 2016, order, grant her motion, and vacate the July 1, 2016, order.

Even apart from the violation of CPLR 321(c), there is an alternative basis for reversal. "Under CPLR 5015(a), a court is empowered to vacate a default judgment [or order] for several reasons, including excusable neglect; newly-discovered evidence; fraud, misrepresentation or other misconduct by an adverse party; lack of jurisdiction; or upon the reversal, modification or vacatur of a prior order" (*Woodson v Mendon Leasing Corp.*, 100 NY2d 62, 68; *see* CPLR 5015[a]; *HSBC Bank USA v Josephs-Byrd*, 148 AD3d 788; *40 BP, LLC v Katatikarn*, 147 AD3d 710). "In addition to the grounds set forth in section 5015(a), a court may vacate its own judgment [or order] for sufficient reason and in the interests of substantial justice" (*Woodson v Mendon Leasing Corp.*, 100 NY2d at 68; *see CitiMortgage, Inc. v Maldonado*, 171 AD3d 1007, 1008). Although the court retains "inherent discretionary power to relieve a party from a judgment or order for sufficient reason and in the interest of substantial justice" (*Galasso, Langione & Botter, LLP v Liotti*, 81 AD3d 884, 885; *see Ladd v Stevenson*, 112 NY 325, 332; *Katz v Marra*, 74 AD3d 888, 890), "[a] court's inherent power to exercise control over its judgments is not plenary, and should be resorted to only to relieve a party from judgments taken through [fraud,] mistake, inadvertence, surprise or excusable neglect" (*Matter of McKenna v County of Nassau, Off. of County Attorney*, 61 NY2d 739, 742 [internal quotation marks omitted]; *see Wells Fargo Bank Minn., N.A. v Coletta*, 153 AD3d 757, 758; *HSBC Bank USA v Josephs-Byrd*, 148 AD3d at 790).

Here, we conclude that, through no fault of her own, Marianne was not given adequate and proper notice that the cross motion had been marked submitted in April 2016, and she was not afforded a reasonable opportunity to obtain substitute counsel and submit opposition papers. Indeed, the Surrogate's Court's own statement that the cross motion was submitted, unopposed, in April 2016, raises questions. It appears that the motion was marked submitted on April 6, 2016, at which time a stay of the Accounting Proceeding was in effect, pursuant to the court's own March 14, 2016, order. Since the cross motion was made in the context of the Accounting Proceeding, the court should not have taken the matter under submission, without opposition, during the period of its own stay. Indeed, stays of proceedings, albeit in the Turnover and SNT Proceedings, had been in effect intermittently since February 16, 2016, leading to the prospect of understandable confusion as to the status of these matters. Thus, the order dated July 1, 2016, in effect, granting the cross motion to appoint a receiver, and appointing a receiver, should have been vacated in the interest of justice as having been the product of mistake, inadvertence, and surprise.

The circumstances present here could have been readily avoided had the objectants withheld their motion to appoint a receiver until after a determination of the motions by Marianne's counsel for leave to withdraw and until after they had served a notice to appoint counsel upon Marianne. While the objectants presented significant evidence in support of their motion, they did not contend that there was any urgency to their application and did not present any evidence of any emergency. They did not seek relief on an expedited basis by applying for an order to show cause. Had they done so, the Surrogate's Court's granting of an order to show cause could have been viewed as allowing the application to go forward notwithstanding the court's own stay. Indeed, while this may not have actually been intended, the impression is created, because the objectants made their cross motion at the very moment when Marianne was without counsel to assist her and they did not articulate any claim of urgency, that they were seeking to take unfair advantage of a circumstance over which Marianne had no control, which left her without counsel to assist her at a crucial stage of the case.

While we conclude that Marianne must be provided with the opportunity to respond to the cross motion on its merits, we also nevertheless conclude that, based on the evidentiary showing made on the cross motion by the objectants, the receiver should remain in place as a temporary receiver pending a new determination of the cross motion. While Marianne's right to counsel, and her rights under CPLR 321(c), should be protected, so too should the objectants' rights

to prevent dissipation or looting of the estate and its assets.

B.        The Amended Order Dated November 13, 2017

The amended order dated November 13, 2017, denied Marianne's motion to vacate and declare void all decisions, orders, and judgments entered after March 14, 2016, as violative of the CPLR 321(c) stay.  For the reasons previously expressed, we reverse this amended order and grant Marianne's motion to the extent of vacating all decisions, orders, and judgments entered in all proceedings herein between March 14, 2016, and July 25, 2016, and otherwise deny such motion.

C.        The Order Dated November 14, 2017

Marianne's appeal from the order dated November 14, 2017, inter alia, granting the receiver's motion to hold her in contempt, must be dismissed, because Marianne did not oppose the motion, and no appeal lies from an order entered upon the default of the appealing party (*see* CPLR 5511; *HSBC Bank USA, N.A. v Gervais*, 168 AD3d 692, 693).

D.        The Order Dated December 21, 2017

We dismiss Marianne's appeal from the order dated December 21, 2017, inter alia, directing that a warrant of arrest and commitment issue, because no appeal lies as of right from an order that does not decide a motion made on notice (*see* CPLR 5701[a][2]; *LaSalle Bank N.A. v Lopez*, 168 AD3d 697, 698), and we decline to grant leave to appeal (*see* CPLR 5701[c]), bearing in mind that the December 21, 2017, order was based on the November 14, 2017, order, entered upon Marianne's default.

XIII.        Conclusion

Accordingly, (1) the appeals from the orders dated November 14, 2017, and December 21, 2017, respectively, are dismissed, (2) the order dated March 6, 2017, is reversed, on the law, the petitioner's motion to vacate the order dated July 1, 2016, is granted, the order dated July 1, 2016, is vacated, the matter is remitted to the Surrogate's Court, Nassau County, for a new determination of the objectants' cross motion to appoint a receiver, and pending the new determination of the cross motion, the receiver appointed pursuant to the order dated July 1, 2016, shall continue as temporary receiver, and (3) the amended order dated November 13, 2017, is reversed, on the law, the petitioner's motion to vacate and declare void all decisions, orders, and judgments entered after March 14, 2016, is granted to the extent that all decisions, orders, and judgments entered in all proceedings herein between March 14, 2016, and July 25, 2016, are vacated, and the motion is otherwise denied.

February 13, 2020                                                                                    Page 39.

MATTER OF CASSINI, DECEASED

LEVENTHAL, COHEN and HINDS-RADIX, JJ., concur.

ORDERED that the appeals from the orders dated November 14, 2017, and December 21, 2017, respectively, are dismissed; and it is further,

ORDERED that the order dated March 6, 2017, is reversed, on the law, the petitioner's motion to vacate the order dated July 1, 2016, is granted, the order dated July 1, 2016, is vacated, the matter is remitted to the Surrogate's Court, Nassau County, for a new determination of the objectants' cross motion to appoint a receiver, and pending the new determination of the cross motion, the receiver appointed pursuant to the order dated July 1, 2016, shall continue as temporary receiver; and it is further,

ORDERED that the amended order dated November 13, 2017, is reversed, on the law, the petitioner's motion to vacate and declare void all decisions, orders, and judgments entered after March 14, 2016, is granted to the extent that all decisions, orders, and judgments entered in all proceedings herein between March 14, 2016, and July 25, 2016, are vacated, and the motion is otherwise denied; and it is further,

ORDERED that one bill of costs is awarded to the petitioner.

ENTER:

Aprilanne Agostino
Clerk of the Court