UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
MARIANNE NESTOR CASSINI and GEMEAUX LTD.,

                                Plaintiffs,

                -against-

COUNTY OF NASSAU, BRIAN CURRAN, in his
official capacity as NASSAU COUNTY PUBLIC
ADMINISTRATOR, JEFFREY DELUCA, KENNETH
MAHON, MARGARET C. REILLY, ROSALIA
BAIAMONTE, JEFFREY MILLER, WILLIAM DOYLE
GALLERIES, INC., JAMES DZURENDS, in his official
capacity as NASSAU COUNTY SHERIFF, JOSEPH
FUCITO, in his official capacity as NEW YORK CITY
SHERIFF, and JOHN & JANE DOES 1-10,

                               Defendants.
--------------------------------------------------------------------X

Case 2:22-cv-01696
(DG) (AYS)

**Served on Dec. 23, 2022**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR JOINT MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT AND CASE BACKGROUND ................................................ 1

SUMMARY OF PLAINTIFFS' ALLEGATIONS AND CLAIMS.......................................... 9

PROCEDURAL HISTORY......................................................................................................... 10

LEGAL ARGUMENT................................................................................................................. 12

POINT I      THE AMENDED COMPLAINT IS BARRED BY
THE ROOKER-FELDMAN DOCTRINE ........................................................ 12

     A. The Standard On A Motion To Dismiss
Under Fed. R. Civ. P. 12(b)(1).................................................................... 12

     B. The Rooker-Feldman Doctrine Divests This
Court Of Jurisdiction To Hear Any of Plaintiffs' Claims.............................. 13

POINT II      THE AMENDED COMPLAINT FAILS TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED................................................. 18

     A. The Standard On A Motion To Dismiss Under Fed. R. Civ. P. 12(b)(6) ....... 18

     B. Plaintiffs' Claims Are Insufficiently Pleaded ................................................ 20

         (1)    Plaintiffs' First Cause of Action Fails to State a Claim....................... 21

         (2)    Plaintiffs' Second Cause of Action Fails to State a Claim ................... 25

         (3)    Plaintiffs' Third Cause of Action Fails to State a Claim ...................... 27

         (4)    Plaintiffs' Fourth Cause of Action Fails to State a Claim .................... 29

         (5)    Plaintiffs' Fifth Cause of Action Fails to State a Claim ....................... 30

         (6)    Plaintiffs' Sixth Cause of Action Fails to State a Claim....................... 32

         (7)    Plaintiffs' Seventh Cause of Action Fails to State a Claim .................. 33

         (8)    Plaintiffs' Eighth Cause of Action Fails to State a Claim .................... 34

         (9)    Plaintiffs' Ninth Cause of Action Fails to State a Claim ...................... 35

         (10)   Plaintiffs' Tenth Cause of Action Fails to State a Claim...................... 35

         (11)   Plaintiffs' Eleventh Cause of Action Fails to State a Claim................. 37

         (12)   Plaintiffs' Twelfth Cause of Action Fails to State a Claim .................. 38

POINT III      THE AMENDED COMPLAINT IS BARRED BY THE
DOCTRINES OF SOVEREIGN AND/OR JUDICIAL IMMUNITY
AS AGAINST SURROGATE REILLY, THE RECEIVER,
MR. MILLER, AND THE NEW YORK CITY SHERIFF ................................. 39

        A.  Sovereign and Judicial Immunity Bar All Claims
            Against Surrogate Reilly .................................................................... 39

        B.  Judicial Immunity Bars All Claims Against the
            Court-Appointed Receiver, Ms. Baiamonte, and Her
            Court-Appointed Counsel, Mr. Miller .............................................. 41

        C.  Quasi-Judicial Immunity Bars All Claims Against the
            New York City Sheriff ...................................................................... 42

POINT IV    THE AMENDED COMPLAINT IS BARRED BY
               THE BARTON  DOCTRINE AS AGAINST THE RECEIVER
               AND HER COUNSEL, MR. MILLER ............................................... 43

POINT V     PLAINTIFFS' CLAIMS AGAINST DOYLE ARE BARRED
               BY RES JUDICATA ........................................................................... 44

POINT VI    THIS COURT SHOULD DECLINE TO ADJUDICATE
               ANY DISPUTES THAT ARE SUBJECT TO FURTHER
               STATE COURT PROCEEDINGS UNDER THE COLORADO
               RIVER DOCTRINE OF ABSTENTION ............................................ 45

POINT VII   ALL CLAIMS AGAINST DEFENDANT JOSEPH FUCITO
               SHOULD BE DISMISSED ................................................................. 47

        A.  Plaintiffs' Claims Against Fucito Are Time-Barred ....................... 47

        B.  Plaintiffs' Claims Against Fucito Also Fail For Lack of
            Personal Involvement ....................................................................... 48

POINT VIII PLAINTIFFS' PURPORTED STATE LAW CLAIMS
               AGAINST FUCITO, NASSAU COUNTY, CURRAN, DELUCA AND
               DZURENDA ARE PROCEDURALLY BARRED ............................ 49

CONCLUSION ......................................................................................................... 51

# **TABLE OF AUTHORITIES**

**Cases**                                                                                  **Page No.**

*3H Enterprises, Inc. v. Dwyre*,
   182 F. Supp. 2d 249 (N.D.N.Y. 2001) .................................................................. 33

*Abraham v Hermitage Ins. Co*.,
   47 AD3d 855 (2d Dept. 2008) ........................................................................... 45

*Ackerson v. City of White Plains*,
   702 F.3d 15 (2d Cir. 2012) ............................................................................... 28

*Acklin v. Eichner*,
   2021 WL 4442819 (S.D.N.Y. Sept. 27, 2021) ...................................... 22, 23, 24

*Andrews v. State*,
   138 A.D.3d 1297 (3d Dep't 2016) ..................................................................... 39

*Anthony Pappas for Cong. v. Lorintz*,
   2019 WL 4396589 (E.D.N.Y. Aug. 2, 2019*)* ................................................... 39

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 18, 49

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ............................................................................... 23

*Barton v. Barbour*,
   104 U.S. 126 (1881) ......................................................................................... 43

*Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*,
   652 F. Supp. 2d 463 (S.D.N.Y. 2009) .............................................................. 19

*Bell Atlantic v. Twombly*,
   550 U.S. 544 (2007) ................................................................................... 19, 49

*Bell v. McLemore & Young PLLC*,
   2017 WL 4999627 (M.D. Tenn. Nov. 2, 2017) ................................................. 44

*Berry v. Village of Millbrook*,
   815 F. Supp. 2d 711 (S.D.N.Y. 2011) .............................................................. 50

*Boadi v. City of New York*,
   2012 U.S. Dist. LEXIS 104652 (E.D.N.Y. 2012) .............................................. 30

*Booker v. O'Brien*,
    2019 WL 5267307 (E.D.N.Y. Oct. 16, 2019) ........................................................ 40

*Bradford Audio Corp. v. Pious*,
    392 F.2d 67 (2d Cir. 1968) .................................................................................. 41

*Bradley v. Fisher*,
    80 U.S. 335 (1871) .............................................................................................. 40

*Brady v. Town of Colchester*,
    863 F.2d 205 (2d Cir. 1988) ................................................................................ 26

*Broughton v. State*,
    37 N.Y.2d 451 .................................................................................................... 28

*Byrd v. City of New York*, No. 17-CV-2166 (AJP),
    2018 U.S. Dist. LEXIS 392 (S.D.N.Y. Jan. 2, 2018) ......................................... 48

*Caiozzo v. Koreman*,
    581 F.3d 63 (2d Cir. 2009) .................................................................................. 30

*Candelario v. MTA Bus Co.*,
    2008 NY Slip Op 52544(U), 21 Misc. 3d 1148(A) ............................................ 49

*Chanko v. Am. Broad Companies Inc.*,
    27 N.Y.3d 46 (2016) ............................................................................................ 36

*Chodos v. F.B.I.*,
    559 F. Supp. 69 (S.D.N.Y. 1982) ........................................................................ 48

*Chua v. Ekonomou*,
    1 F.4th 948 (11th Cir. 2021) ............................................................................... 41

*Cla-Mil E. Holding Corp. v. Medallion Funding Corp.*,
    16 A.D.3d 194 (1st Dep't 2005) ................................................................... 37, 38

*Colorado River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976) ............................................................................................ 46

*Combier v. State of New York*,
    2010 WL 3785130 (S.D.N.Y. Aug. 25, 2010) .................................................... 31

*Cooper v. Parsky*,
    140 F.3d 433 (2d Cir. 1998) ................................................................................ 20

*Cuillo v. Shupnick,*
  815 F. Supp. 133 (S.D.N.Y. 1993) ................................................... 33

*Dabah v. Franklin,*
  2022 WL 973834 (S.D.N.Y. Mar. 31, 2022) ................................... 19

*Darnell v. Pineiro,*
  849 F.3d 17 (2d Cir. 2017) ............................................................ 27

*De Cisneros v. Younger,*
  871 F.2d 305 (2d Cir. 1989) .......................................................... 46

*Delee v. Hannigan,*
  729 Fed. Appx. 25 (2d Cir. 2018) ................................................. 30

*Dennis v. Sparks,*
  449 U.S. 24 (1980) ......................................................................... 32

*District of Columbia Court of Appeals v. Feldman,*
  460 U.S. (1983) .............................................................................. 13

*Dolan v. Connolly,*
  794 F.3d 290 (2d Cir. 2015) ................................................... 31, 32

*Dube v. State Univ. of New York,*
  900 F.2d 587 (2d Cir. 1990) .......................................................... 40

*Duboys v. Bomba,*
  2002 WL 146483 (S.D.N.Y. Jan. 31, 2002) .................................. 13

*Durst v. Siegler,*
  2005 WL 3358599 (S.D.N.Y. Dec. 7, 2005) ......................... 4festinger

*Eagleston v. Guido,*
  41 F.3d 865 (2d Cir. 1994) ............................................................ 26

*Ellis v. Kelly,* No. 17-CV-6656 (RRM),
  2019 U.S. Dist. LEXIS 43990 (E.D.N.Y. Mar. 18, 2019) .............. 48

*Estes-El v. Town of Indian Lake,*
  954 F. Supp. 527 (N.D.N.Y. 1997) ................................................ 32

*FDIC v. Four Star Holding Co.,*
  178 F.3d 97 (2d Cir. 1999) ............................................................ 46

*Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP*,
   2022 WL 901660 (S.D.N.Y. Mar. 28, 2022) ...................................................... 18

*Frank v. Relin*,
   1 F.3d 1317 (2d Cir. 1993) ........................................................................ 39

*Frooks v. Town of Cortlandt*,
   997 F. Supp. 438 (S.D.N.Y. 1998) ............................................................ 25

*Gemeaux Ltd. v. William Doyle Galleries, Inc.*,
   2021 WL 6249530 (Sup. Ct. N.Y. Cnty. Dec. 7, 2021) ...................................... 5, 45

*Gollomp v. Spitzer*,
   568 F.3d 355 (2d Cir. 2009) ...................................................................... 40

*Graham v. Connor*,
   490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) ............................... 30

*Hardy v. N.Y.C. Health & Hosps. Corp.*,
   164 F.3d 789 (2d Cir. 1999) ...................................................................... 50

*Harley v. Guida*, No. 19-CV-6152(EK)(MMH),
   2022 U.S. Dist. LEXIS 176529 (E.D.N.Y. Sep. 28, 2022) ............................... 42, 43

*Hoblock v. Albany Cnty. Bd. of Elections*,
   422 F.3d 77 (2d Cir. 2005) ...................................................................... 14

*In re DeLorean Motor Co.*,
   991 F.2d 1236 (6th Cir. 1993) .................................................................. 41

*In re Horler*,
   799 F. Supp. 1457 (S.D.N.Y. 1992) ............................................................ 47

*Iovinella v. Sheriff of Schenectady Co.*,
   67 A.D.2d 1037, 413 N.Y.S.2d 497 (3d Dep't 1979) ..................................... 43

*Ippolito v. Meisel*,
   958 F.Supp. 155 (S.D.N.Y. 1997) .............................................................. 40

*Iqbal v. Hasty*,
   490 F.3d 143 (2d Cir. 2007) ...................................................................... 20

*Jones v. Parmley*,
   714 F. App'x 42 (2d Cir. 2017) .................................................................. 48

*Justice v. Kuhnappel*,
  2013 WL 1749894 (E.D.N.Y. 2013) ................................................................. 28

*Kennedy v. Arias*, 12 Civ. 4166 (KPF),
  2017 U.S. Dist. LEXIS 103576 (S.D.N.Y. July 5, 2017) ................................. 50

*LaFaro v. N.Y. Cardiothoracic Group, PLLC*,
  570 F.3d 471 (2d Cir. 2009) ............................................................................. 18

*Lawrence v. Goldberg*,
  573 F.3d 1265 (11th Cir. 2009) .......................................................................... 4

*LeBlanc v. Cleveland*,
  198 F.3d 353 (2d Cir. 1999) ............................................................................. 13

*Levitin v. Homburger*,
  932 F. Supp. 508 (S.D.N.Y. 1996) ................................................................... 20

*Limtung v. Steven J. Baum, P.C.*,
  2019 WL 12520056 (E.D.N.Y. Mar. 20, 2019) ................................................ 24

*Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
  202 F. Supp. 2d 126 (S.D.N.Y. 2002) ......................................................*passim*

*Livecchi v. Gordon and Schall, LLP*,
  2015 WL 277640 (W.D.N.Y. Jan. 22, 2015) .................................................... 41

*Lombard v. Lombard*,
  2001 WL 548725 (E.D.N.Y. May 23, 2001) ............................................... 12, 13

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
  711 F.3d 106 (2d Cir. 2013) ............................................................................. 22

*MacKay v. Crews*,
  2009 WL 5062119 (E.D.N.Y. Dec. 16, 2009) .................................................. 41

*MacPhearson v. Town of Southampton*,
  738 F. Supp. 2d 353 (E.D.N.Y. 2010) .............................................................. 14

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) ........................................................................ 12, 13

*Maldonado v. New York County Sheriff*,
  2006 WL 2588911 (S.D.N.Y. 2006) ................................................................. 43

*Matter of Cassini*,
    180 A.D.3d 13 (2d Dep't 2020) ................................................................. 42

*Matter of Cassini*,
    180 A.D.3d 775 (2d Dep't 2020) ........................................................ 3, 16

*Matter of Cassini*,
    182 A.D.3d 13 (2d Dep't 2020) ........................................................ 4, 16

*McCaffrey v. Cnty. of Nassau*,
    2013 WL 2322879 (E.D.N.Y. May 25, 2013) ........................................ 25

*McIntire v. China MediaExpress Holdings, Inc.*,
    113 F. Supp. 3d 769 (S.D.N.Y. 2015) .............................................. 43, 44

*Mireles v. Waco*,
    502 U.S. 9 (1991) ................................................................................ 40

*Molina v. State of New York*,
    956 F. Supp. 257 (E.D.N.Y. 1995) ...................................................... 25

*Montero v. Travis*,
    171 F.3d 757 (2d Cir. 1999) ................................................................ 40

*Naples v. Stefanelli*,
    972 F. Supp. 2d 373 (E.D.N.Y. 2013) ................................................ 25

*New York State Ct. Clerks Ass'n v. Unified Ct. Sys. of the State of New York*,
    25 F. Supp. 3d 459 (S.D.N.Y. 2014) ................................................... 39

*O'Brien v. City of Syracuse*,
    54 N.Y.2d 353 (1981) ..................................................................... 44, 45

*O'Neill v. Hernandez*,
    2010 WL 1257512 (S.D.N.Y. Mar. 25, 2010) ..................................... 26

*Ostrer v. Aronwald*,
    567 F.2d 551 (2d Cir. 1977) ................................................................ 26

*Owens v. Okure*,
    488 U.S. 235 (1999) ............................................................................ 48

*Papasan v. Allain*,
    478 U.S. 265 (1986) ............................................................................ 19

*Paramount Pictures Corp. v. Allianz Risk Transfer AG,*
  31 N.Y.3d 64 (2018) .......................................................................... 44, 45

*Pearl v. City of Long Beach,*
  296 F.3d 76 (2d Cir. 2002) .................................................................. 48

*People v. Merkin,*
  124 A.D.3d 435 (1st Dep't 2015) ........................................................ 34

*Petrohawk Energy Corp. v. L. Debenture Tr. Co. of New York,*
  2007 WL 211096 (S.D.N.Y. Jan. 29, 2007) ............................... 33, 35, 39

*Pizzolato v. Baer,*
  551 F. Supp. 355 (S.D.N.Y. 1982) ....................................................... 40

*Polur v. Raffe,*
  912 F.2d 52 (2d Cir.1990) ................................................................... 20

*Porro v. Barnes,*
  624 F.3d 1322 (10th Cir. 2010) ........................................................... 29

*Pryce v. United States,*
  2022 WL 3155842 (S.D.N.Y. Aug. 8, 2022) ........................................ 19

*Raghavendra v. Fenn,*
  2019 WL 4963257 (E.D.N.Y. Oct. 7, 2019) ........................................ 40

*Rooker v. Fidelity Trust Co.,*
  263 U.S. 413 (1923) ............................................................................ 13

*Rothman v. Gregor,*
  220 F.3d 81 (2d Cir. 2000) .................................................................. 19

*Salmon v. Blesser,*
  802 F.3d 249 (2d Cir. 2015) ................................................................ 37

*Sassower v. Mangano,*
  927 F. Supp. 113 (E.D.N.Y. 1996) ...................................................... 40

*Saud v. Bank of New York,*
  929 F.2d 916 (2d Cir. 1991) ................................................................ 44

*Scharrer v. Fundamental Admin. Servs., LLC,*
  2013 WL 12169310 (M.D. Fla. Sept. 10, 2013) ................................... 43

*Selvam v. United States*,
    2021 WL 5149809 (E.D.N.Y. Nov. 5, 2021) ............................................................ 36

*Shapiro v. Goldman*,
    2016 U.S. Dist. LEXIS 107947 (S.D.N.Y. Aug. 15, 2016)................................... 28

*Shelly v. Brandveen*,
    2012 WL 3903472 (E.D.N.Y. Sept. 6, 2012) ................................................. 13, 14

*Shifer v. Shifer*,
    165 A.D.3d 721 (2d Dep't 2018)............................................................................ 20

*Tangreti v. Bachmann*,
    983 F.3d 609 (2d Cir. 2020) .......................................................................... 29, 48

*Tornheim v. Eason*,
    363 F. Supp. 2d 674 (S.D.N.Y. 2005) ......................................................... 42, 43

*Truman v. Brown*,
    434 F. Supp. 3d 100 (S.D.N.Y. 2020) ................................................................. 37

*Turecamo v. Turecamo*,
    55 A.D.3d 455 (1st Dep't 2008) ........................................................................... 34

*United States v. Walsh*,
    194 F.3d 37 (2d Cir. 1999) .................................................................................... 30

*Wallace v. Kato*,
    549 U.S. 384 (2007) ............................................................................................. 48

*Webb v. Goord*,
    340 F.3d 105 (2d Cir. 2003) ................................................................................. 31

*Webster v. Penzaetta*,
    458 F. App'x 23 (2d Cir. 2012) ............................................................................ 12

*Williams v. New York City Hous. Auth.*,
    816 F. App'x 532 (2d Cir. 2020) .......................................................................... 19

*Wright v. Musanti*,
    887 F.3d 577 (2d Cir. 2018) ................................................................................. 28

*Ying Li v. City of N.Y.*,
    246 F. Supp. 3d 578 (E.D.N.Y. 2017) ................................................................. 48

*Zaidi v. Amerada Hess Corp.*,
    723 F. Supp. 2d 506 (E.D.N.Y. 2010) ................................................ 31, 32

*Zeckendorf v. Kerry H. Lutz*,
    282 A.D.2d 295, 723 N.Y.S.2d 360 (1st Dep't 2001) ................................ 33, 37, 38

**Statutes**

18 U.S.C. § 1957 ................................................................................ 21

18 U.S.C. § 1962 ............................................................................ 10, 21

18 U.S.C. §§ 2314, 2315 ..................................................................... 21

42 U.S.C. § 1983 ....................................................................... *passim*

42 U.S.C. §§ 1985 and 1986 ....................................................... 10, 31, 32

N.Y. County Law § 52 ...................................................................... 49

N.Y. Gen. Mun. Law § 50-i ............................................................. 49

N.Y. Gen. Mun. Law, § 50-i(1) ................................................... 49, 50

Section 1986 ............................................................................ 31, 32

U.S. Const. Amend. IV ...................................................................... 27

U.S. Const. Amend. VIII .................................................................... 30

U.S. Const. Amend. XI ...................................................................... 39

**Rules**

CPLR 215 ................................................................................ 33, 37

CPLR 321 ................................................................................... 42

Fed. R. Civ. P. 9 ...................................................................... 22, 24

Fed. R. Civ. P. 12 ............................................................. 1, 12, 13, 19

Defendants, by and through their undersigned attorneys, respectfully submit this memorandum of law in support of their joint motion to dismiss the Amended Complaint dated August 5, 2022[1] filed by Plaintiffs Marianne Nestor Cassini ("Ms. Cassini") and Gemeaux Ltd. ("Gemeaux") (collectively, "Plaintiffs"), pursuant to Fed. R. Civ. P. 12(b)(1) and (6), for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT AND CASE BACKGROUND

This action arises out of over a decade of litigation before the Nassau County Surrogate's Court in the Estate of Oleg Cassini (the "Estate"). Mr. Cassini was a famous fashion designer who died in 2006, and Ms. Cassini, one of the Plaintiffs in this action, is his surviving spouse. Gemeaux, a company owned by Ms. Cassini and her sister Peggy Nestor, is the other Plaintiff. In their Amended Complaint, Plaintiffs seek to unwind and collaterally attack what has occurred in the Surrogate's Court, alleging that the underlying Estate proceeding was a conspiracy to steal Plaintiffs' property. According to Plaintiffs' allegations, the alleged co-conspirators include:

- The current Nassau County Surrogate (Margaret C. Reilly) who issued several rulings with which Plaintiffs disagree;

- The Nassau County Public Administrator (formerly Jeffrey DeLuca and now Brian Curran) who was appointed administrator c.t.a.[2] of the Estate by the prior Surrogate (who is not a defendant herein) after Ms. Cassini was removed as executor due to misconduct,

- The Public Administrator's attorney (Kenneth Mahon);

- The Receiver (Rosalia Baiamonte) who was appointed by the court to manage and operate Oleg Cassini, Inc. ("OCI") and Cassini Parfums, Ltd. ("CPL") (collectively, the "Companies") – two of the Estate's largest assets – after the

---

[1] A copy of the Amended Complaint is attached as Exhibit "A" to the Affidavit of Rosalia Baiamonte, Esq., sworn to on December 22, 2022 ("Baiamonte Aff.").

[2] An "administrator c.t.a." is appointed when the will's designated executor cannot act due to death, incapacity or otherwise, or if the executor resigns or her letters testamentary are revoked by the Surrogate's Court. The abbreviation "c.t.a." stands for "cum testamento annexo," which means "with the will annexed."

prior Surrogate determined that the Companies were unsafe in Ms. Cassini's hands due to her self-dealing and misappropriation of the Companies' assets;

- The Receiver's court-appointed attorney (Jeffrey Miller);

- A New York City auction house (William Doyle Galleries Inc.) that sold Estate property at a public auction pursuant to court orders;

- The New York City Sheriff (Joseph Fucito) and the Nassau County Sheriff (James Dzurenda), who allegedly carried out orders to arrest and incarcerate Ms. Cassini after she was held in contempt of court for refusing to abide by court orders; and

- The County of Nassau.[3]

The problem with Plaintiffs' conspiracy theory is that each and every factual and legal issue they complain of was already decided against them by the Surrogate's Court _and other courts_ in prior orders and decisions that Plaintiffs either appealed (and lost) or failed to appeal. For years, Ms. Cassini has ignored those orders and decisions as though they did not exist – now, they are allegedly part of a RICO conspiracy, simply because Plaintiffs disagree with them. This is not a basis for a federal cause of action. For this reason, and many others discussed further herein, the Amended Complaint should be dismissed.

By way of background, the Estate litigation has dragged on for years primarily as a result of the self-dealing and bad acts of Ms. Cassini, including the diversion of Estate assets to, _inter alia_, herself and her company, Gemeaux.[4] Ms. Cassini's wrongdoing and flagrant disregard of court orders is well-documented in numerous court orders and decisions, and it led to (i) her removal as executor of the Estate, (ii) the appointment of the Public Administrator as administrator c.t.a. of the Estate, (iii) her removal from operating the Companies, (iv) the 2015

---

[3] It is unclear from the face of the Amended Complaint on what basis Plaintiffs believe the County of Nassau is liable.

[4] Sadly, Ms. Cassini's bad acts have prolonged these proceedings for so many years, that Mr. Cassini's two children both died before they were able to receive their 50% share of the Estate. Even by March of 2014, then-Surrogate McCarty noted that "there have been at least twenty-two decisions rendered, multiple motions filed and over one hundred court appearances" in the Estate proceedings. _See_ Baiamonte Aff. Ex. B.

appointment of the Public Administrator to run the Companies' day-to-day business operations, and (v) Ms. Baiamonte's 2016 appointment as the receiver of the Companies.[5]  Each of these decisions and orders has since been affirmed on appeal or the time to appeal has expired.

Upon the appointment of Ms. Baiamonte in 2016, Ms. Cassini refused to grant the Receiver access to the Companies' offices and other properties or otherwise turn over control of the Companies to the Receiver, refused to provide the Receiver with documents necessary for her to fulfill her duties, including the Companies' books and records, and refused to show up at court conferences or otherwise participate in the Estate proceedings.  The Companies own the Oleg Cassini brand and trademarks and are primarily in the business of licensing the Oleg Cassini name to its customers and clients, and the books and records that Ms. Cassini refused to turn over included the Companies' accounting records, customer lists, and customer contact information.  As a licensing business, it was literally impossible for the Receiver to run the business and fulfill her court-ordered duties without these records.  This led to the entry of an order dated October 19, 2016 (the "October 19 Order"), directing Ms. Cassini to provide the documents and information that the Receiver needed to run the business, and the Receiver's motion to have counsel appointed (Mr. Miller) to assist her in enforcing the orders of the Surrogate's Court, if Ms. Cassini continued in her refusal to comply.

But even after counsel was appointed, Ms. Cassini continued to ignore the Court's orders, leading to a motion by the Receiver to hold Ms. Cassini in contempt of court.  Ms. Cassini did not oppose the motion, which was granted by Decision and Order dated November 14, 2017, in which Surrogate Reilly expressly found that "**there are no factual disputes in issue**," because

---

[5] Despite Ms. Cassini's claims to the contrary, the Companies are assets of the Estate, a conclusion reached by Surrogate Reilly's predecessor (Surrogate McCarty) in 2015 that has also been affirmed by the Second Department.  *See Matter of Cassini*, 180 A.D.3d 775, 776 (2d Dep't 2020) (Baiamonte Aff. Ex. I).

Ms. Cassini did not comply with the October 19 Order or even argue that she had complied with the Court's order.  *See* Baiamonte Aff. ¶ 28 & Ex. P (emphasis added).  Despite holding Ms. Cassini in contempt of court based on undisputed facts, Surrogate Reilly nevertheless provided her with an opportunity to "purge her contempt by complying with the court's October 19, 2016 Order within ten (10) days of the filing of this Decision and Order with Notice of Entry."  *Id.*  In other words, Ms. Cassini simply had to turn over the documents and information required by that Order, but she refused, leading to the issuance of a warrant for her arrest.  *See* Baiamonte Aff. Ex. Q (Order dated Dec. 21, 2017).

On May 3, 2018, Ms. Cassini was arrested by "agents of the New York City Sheriff." Am. Compl. ¶ 68.  She was brought to an appearance before the Surrogate's Court the following day and transferred into the custody of the Nassau County Sheriff.  *Id.* ¶ 72.  On November 2, 2018, she was released from custody based upon her representations to the Court that she could only fulfill her obligations under the court's orders if she were released.  *Id.* ¶¶ 70, 80-81.  Ms. Cassini, however, did not comply with the court's orders, and she was rearrested and jailed on January 22, 2019.  *Id.* ¶ 85.[6]  On February 13, 2020, Ms. Cassini's appeal of the underlying decisions and orders that led to the Court holding her in contempt of court and issuing a warrant for her arrest was dismissed.  *See Matter of Cassini*, 182 A.D.3d 13, 58 (2d Dep't 2020) ("the appeals from the orders dated November 14, 2017, and December 21, 2017, respectively, are dismissed") (Baiamonte Aff. Ex. L).

---

[6] In fact, to date, Ms. Cassini did not turn over all the documents and information required by numerous court orders. It was only after the Receiver gained access to the Companies' offices in August 2018 that she first took control of any of the Companies' records, and she required the assistance of an individual who worked part-time for the Companies to help her piece together the existing customer list so that she could carry out her court-ordered duties.

Over the course of 2018 and 2019, and through an arduous process where all parties received notice and an opportunity to be heard, the Receiver obtained court orders to sell OCI's real property located at 313 McCouns Lane, Oyster Bay Cove, New York ("McCouns Lane"), and certain other items of Estate property at an auction conducted by Defendant William Doyle Galleries Inc. ("Doyle"), all in accordance with the Receiver's court-ordered duties to marshal the assets of the Estate.  Again, each of the underlying court orders and decisions that led to these sales has been affirmed on appeal or is no longer subject to an appeal due to the passage of time. *See* Baiamonte Aff. Ex. CC (decision and order of Second Department denying Ms. Cassini's appeal of Surrogate Reilly's 2019 order authorizing the sale of McCouns Lane and request to stay the sale); *id*. Exs. EE and FF (2018 orders entered by Surrogate Reilly that determined property to be sold at auction by Doyle belonged to the Companies; orders were not appealed).

In fact, Ms. Cassini, her sister (Ms. Nestor), and Gemeaux have already tried to forum-shop their claims arising out of the Doyle auction when they sued Doyle for conversion in New York County Supreme Court, claiming that they owned the property sold at auction, including property from McCouns Lane, the Companies' offices at 15 East 63rd Street, and other Estate property previously located at 135 East 19th Street that was sold on behalf of the Public Administrator (collectively, the "Doyle Auctioned Property").  That action was swiftly dismissed and recently affirmed by the First Department after those courts were presented with the underlying Surrogate's Court orders that already determined the property sold belonged to the Estate.  *See Gemeaux Ltd. v. William Doyle Galleries, Inc.*, 2021 WL 6249530 (Sup. Ct. N.Y. Cnty. Dec. 7, 2021), *aff'd* 175 N.Y.S.3d 730, 731 (1st Dep't Nov. 1, 2022) (Baiamonte Aff. Exs. II and JJ).  At oral argument, the Presiding Justice of the First Department even reminded

counsel to Ms. Cassini and Gemeaux that if they disagreed with the Surrogate's Court orders, their proper remedy was an appeal. *See* Baiamonte Aff. ¶ 60 n.7.

Now, after each of these court-ordered sales has concluded and Plaintiffs no longer have any further appellate rights in the state court, they have run to federal court, claiming it was all part of a conspiracy and a violation of their civil rights. These claims are belied, but more importantly, precluded, by the final court orders and decisions on which this action is purportedly based. Indeed, each of the events at the heart of this alleged "conspiracy" – Ms. Cassini's 2018 arrest and the court-ordered sales of Estate property (*i.e.*, McCouns Lane and the Doyle auction) – were fully, fairly, and finally decided by the state court's decisions and orders. Thus, in seeking a second (and in some cases, third) bite at the apple, Plaintiffs' Amended Complaint is barred by the *Rooker-Feldman* doctrine, which deprives this Court of subject matter jurisdiction to entertain collateral attacks on those final, state court decisions and orders. Simply claiming that those decisions and orders were "illegal," "fraudulent," or "part of a conspiracy" does not create a federal cause of action.

Tellingly, numerous other judges and courts have issued decisions and orders adverse to Plaintiffs that impact the same property that Plaintiffs claim to own in the Amended Complaint. None of these decisions or orders is mentioned in the Amended Complaint, nor are these other judges alleged to be co-conspirators. Plaintiffs' omissions not only eviscerate their allegations of a conspiracy among Defendants, but these other decisions and orders further confirm why the Amended Complaint is baseless and barred by *Rooker-Feldman*. For example, the other courts that have addressed the issues at the heart of Plaintiffs' Amended Complaint include:

- Former Surrogate McCarty, who preceded Surrogate Reilly and removed Ms. Cassini as executor and from operating the Companies, appointed the Public Administrator to run the Companies' day-to-day business operations, and declared the Companies assets of the Estate. In doing so, Surrogate McCarty concluded,

among other things, that Ms. Cassini had "filed numerous contradictory statements with the court regarding the ownership of estate assets," claimed to have no estate records, "that they were lost in a fire and that she had not made any effort to recover the records,"[7] and that the Companies were no longer safe in Ms. Cassini's unclean hands, including due to her self-dealing in "administering" the Companies by usurping corporate opportunities and transferring corporate assets to Gemeaux. *See* Baiamonte Aff. Exs. B-E, G-H;

- The justices of the Second Department, who affirmed all of Surrogate McCarty's rulings as well as multiple rulings by Surrogate Reilly, including her orders holding Ms. Cassini in contempt and ordering her arrest, and her order approving the sale of McCouns Lane. *See id.* Exs. F, I, L, T, CC;

- The Nassau County District Court judge who entered a judgment of possession in favor of OCI with respect to the McCouns Lane property prior to its court-ordered sale. Although there was never any question that OCI owned the property (the deed was in OCI's name), Ms. Cassini attempted to interfere with the court-ordered sale by claiming a right to possession under a 99-year lease that no one had ever seen and she refused to produce. Out of an abundance of caution, the Receiver filed a petition on behalf of OCI in Nassau County District Court (landlord/tenant part) to declare that Ms. Cassini had no possessory interest in McCouns Lane and, as a formality, to evict her. After a trial at which Ms. Cassini was represented by counsel, a judgment of possession was granted in OCI's favor by the Nassau County District Court. *See id.* Exs. U-W;

- Justice Laurence Love of the New York County Supreme Court, who dismissed a complaint Plaintiffs filed against Doyle arising out of the court-ordered auction conducted by Doyle, after Plaintiffs tried to forum-shop those claims away from the Surrogate's Court. *See id.* Ex. II; and

- The justices of the First Department, who affirmed Justice Love's decision, and further confirmed that the Surrogate's Court had already determined that the Doyle Auctioned Property belonged to the Estate, not Plaintiffs. *See id.* Ex. JJ.

While the *Rooker-Feldman* doctrine alone disposes of this entire action, the Amended Complaint should also be dismissed based on (i) res judicata and/or collateral estoppel, (ii) the sovereign, judicial, and/or qualified immunity afforded to many of the Defendants here, (iii) Plaintiffs' failure to seek leave of the appointing court (*i.e.*, the Surrogate's Court) prior to suing the court-appointed receiver pursuant to the Supreme Court's *Barton* doctrine, (iv) the statute of limitations, (v) Plaintiff's failure to file a notice of claim with respect to its state law

---

[7] Incredibly, the records that Ms. Cassini had previously claimed were "lost in a fire" were later "found" by the Receiver after she finally gained access to the Companies' offices.

claims asserted against the County of Nassau and its Public Administrator, and (vi) many other glaring pleading deficiencies that fall woefully short of Plaintiffs' pleading burden.

At its core, Plaintiffs' pleading complains of an implausible, far-reaching conspiracy to steal their assets so that Defendants could enrich themselves. While this fails for all of the reasons set forth above and discussed further herein, it cannot be ignored that the payment of money to or from the Estate and its fiduciaries, including the Public Administrator, the Receiver, and their attorneys, is subject to a rigorous process pursuant to New York's Surrogate's Court Procedure Act. *See* N.Y. SCPA Art. 22. Estate fiduciaries are required to file an accounting that reflects, among other things, any amounts received and disbursed by the fiduciary for the period of the accounting. Among other rights that ensure estate funds are not being misused or abused, the Estate's beneficiaries (including Ms. Cassini, who holds a 50% interest in the Estate) are entitled to notice and an opportunity to object to the nature and amount of any expense incurred. Similarly, in order to pay their attorneys' fees, receive statutory commissions, and pay other professionals, the Public Administrator and the Receiver submitted motions to the Surrogate's Court, with all Estate stakeholders receiving notice and an opportunity to be heard, and no payments were issued until those motions were decided. *See* Baiamonte Aff. ¶ 65. In other words, the use of Estate money is heavily scrutinized and regulated by the Surrogate's Court, and Plaintiffs had and continue to have every opportunity to be heard – *in the Surrogate's Court* – if they disagree with the use of those funds. But what they cannot do is sidestep the Surrogate's Court's process by running to federal court and alleging a "conspiracy" among opposing parties, their attorneys, judges, and other government officials.

For all of these reasons, the Amended Complaint should be dismissed.

## <u>SUMMARY OF PLAINTIFFS' ALLEGATIONS AND CLAIMS</u>

In the Amended Complaint, Ms. Cassini claims she "has been victimized by Defendants as they have worked in concert to shamefully loot her late husband's estate." Am. Compl. at p.1. According to Plaintiffs' allegations, Defendants have "[n]ot only . . . abused the legal process to steal the Estate's assets and distribute them amongst the coconspirators and their other cronies, but their thievery has extended to Mrs. Nestor Cassini's businesses and personal assets that are not properly part of the Estate." *Id.* at p.1-2. Plaintiffs have named as Defendants numerous parties involved in the Estate proceedings as well as John and Jane Does 1-10 who allegedly "acted in concert with and/or at the behest of the named Defendants to unlawfully deprive Plaintiffs of their liberty and property or otherwise violated their constitutional rights." *Id.* ¶ 15.

In the "MATERIAL FACTS" section of Plaintiffs' pleading, they mostly recite the procedural history of the Surrogate's Court administration of the estate of Ms. Cassini's late husband, Oleg Cassini, albeit with gross mischaracterizations of the underlying court record and additional detail gratuitously added by Plaintiffs in an effort to prop up their baseless claims. *See* Am. Compl. ¶¶ 16-119. But in short, Plaintiffs claims are based upon primarily three events: (1) the court-ordered arrest of Ms. Cassini, after she was held in contempt of court and refused to purge her contempt, *see id.* ¶¶ 67-72, 85-86, (2) the court-ordered sale of OCI's McCouns Lane property, *see, e.g.*, *id.* ¶¶ 73-79, 127, and (3) the court-ordered sale of other Estate property by Doyle, *i.e.*, the Doyle Auctioned Property, *see id.* ¶¶ 93-105. For a more complete and accurate recitation of the proceedings, decisions and orders before the Surrogate's Court and other courts, and the facts on which this motion is based, the Court is respectfully referred to the Baiamonte Affidavit and the exhibits thereto.

Plaintiffs assert twelve separate causes of action against Defendants based on Ms. Cassini's arrest, the court-ordered sale of McCouns Lane, and the court-ordered auction held by Doyle: (1) a civil RICO claim pursuant to 18 U.S.C. § 1962 against Defendants DeLuca, Mahon, Reilly, Baiamonte, and Miller, the so-called "RICO defendants," *see* Am. Compl. ¶¶ 120-37; (2) a violation of the Due Process Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against Defendants Reilly, the County of Nassau, Curran, DeLuca, the Nassau County Sheriff, and the New York City Sheriff, *see id.* ¶¶ 138-43; (3) a violation of the Fourth Amendment right against unlawful seizure pursuant to 42 U.S.C. § 1983 against Defendants Reilly, the County of Nassau, the Nassau County Sheriff, and the New York City Sheriff, *see id.* ¶¶ 144-55; (4) a violation of the Eighth Amendment right against excessive bail, fines, and cruel and unusual punishment pursuant to 42 U.S.C. § 1983 against Defendants Reilly, the County of Nassau, and the Nassau County Sheriff, *see id.* ¶¶ 156-60; (5) a conspiracy to violate civil rights in violation of 42 U.S.C. §§ 1985 and 1986 against all Defendants, *see id.* ¶¶ 161-62; (6) abuse of process against the RICO defendants, the County of Nassau, and Curran, *see id.* ¶¶ 163-65; (7) conversion against the RICO defendants and Doyle, *see id.* ¶¶ 166-68; (8) breach of fiduciary duty against Defendants Baiamonte, DeLuca, and Curran, *see id.* ¶¶ 169-73; (9) constructive trust against Defendants Baiamonte, Curran, and Doyle, *see id.* ¶¶ 174-76; (10) intentional infliction of emotional distress against all Defendants, *see id.* ¶¶ 177-80; (11) trespass against all Defendants excluding the New York City Sheriff, *see id.* ¶¶ 181-82; and (12) unjust enrichment against the RICO defendants and Doyle, *see id.* ¶¶ 183-85.

## **PROCEDURAL HISTORY**

Plaintiffs filed their first Complaint on March 27, 2022.  *See* ECF No. 1.  The original Complaint was based on the same allegations as the Amended Complaint and asserted the same

claims against the same Defendants but included the Companies as Plaintiffs (even though they are under the management and control of the Receiver, not Ms. Cassini, pursuant to the Surrogate's Court Decision and Order dated October 27, 2020, *see* Baiamonte Aff. Exs. M-N). Defendants submitted pre-motion letters in advance of an anticipated motion to dismiss the Complaint. *See* ECF Nos. 11-13, 17. In response, Plaintiffs stated that they would amend their Complaint to cure any deficiencies in their pleading. *See* ECF Nos. 20-22, 23. The Court therefore denied the requests for a pre-motion conference and directed Plaintiffs to file an amended pleading by August 5, 2022.

On August 5, 2022, Plaintiffs filed the Amended Complaint. *See* ECF No. 25. The Amended Complaint merely removed the Companies as Plaintiffs and added a few additional allegations, none of which did anything to cure the deficiencies in Plaintiffs' original pleading. The Amended Complaint, like the original Complaint, was a transparent attempt to collaterally attack final state court decisions and orders and fell far short of Plaintiffs' federal pleading burden in numerous respects. Thus, Defendants renewed their requests for a pre-motion conference. *See* ECF Nos. 26-27, 29-32. In response, Plaintiffs summarily declared that they are "confident" that "all elements" of their claims "have been pled." *See, e.g.*, ECF No. 35. As to the application of the *Rooker-Feldman* doctrine and Plaintiffs' collateral attack on the state court's final decisions and orders, Plaintiffs all but admitted that this is exactly what they are seeking to do here. *See, e.g.*, ECF No. 37 at 2 (claiming that the Surrogate's Court orders holding Ms. Cassini in contempt and ordering her arrest "are all null and void" because they were purportedly "undertaken in the complete absence of jurisdiction"). Incredibly, Plaintiffs claimed that they are not seeking to "review or change the determinations" of the Surrogate's

Court, but do "seek damages" caused by those determinations.  *See* ECF No. 35 at 2.  This is a distinction without a difference – if the decisions and orders are valid, there are no damages.

A pre-motion conference was held on October 12, 2022.  This motion followed.

## LEGAL ARGUMENT

### POINT I

### THE AMENDED COMPLAINT IS
### BARRED BY THE *ROOKER-FELDMAN* DOCTRINE

At the heart of the "conspiracy" and other baseless claims alleged in the Amended Complaint are three events: (1) Ms. Cassini's arrest, *see* Am. Compl. ¶¶ 67-72, 85-86, (2) the sale of OCI's McCouns Lane property, *see id.* ¶¶ 73-79, 127, and (3) the Doyle auction, *see id.* ¶¶ 93-105.  Each of these events occurred pursuant to duly entered court orders and decisions that were issued after motions were made, and all parties to the Estate proceedings were given notice and an opportunity to be heard.  Plaintiffs have since appealed those decisions (and lost) or failed to timely appeal them.  No matter how Plaintiffs try to frame their purported federal claims here, they are no more than a collateral attack on final state court decisions and orders, they are barred by *Rooker-Feldman*, and this Court lacks subject matter jurisdiction to hear them.

**A.    The Standard On A Motion To Dismiss Under Fed. R. Civ. P. 12(b)(1)**

Under Rule 12(b)(1), dismissal of a case for lack of subject-matter jurisdiction is appropriate "when the district court lacks the statutory or constitutional power to adjudicate it." *Webster v. Penzaetta*, 458 F. App'x 23, 25 (2d Cir. 2012) (upholding district court dismissal for lack of subject matter jurisdiction where *Rooker-Feldman* barred review of state court decision). Unlike a motion to dismiss based on Rule 12(b)(6), a district court deciding such a jurisdictional challenge "may look beyond the allegations of the complaint."  *See Lombard v. Lombard*, 2001 WL 548725 at *2 (E.D.N.Y. May 23, 2001); *see also Makarova v. United States*, 201 F.3d 110,

113 (2d Cir. 2000) (court may "refer to evidence outside the pleadings" when considering a motion pursuant to Rule 12(b)(1)); *LeBlanc v. Cleveland*, 198 F.3d 353, 355 (2d Cir. 1999) ("[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."). The Court may "consider public documents in determining whether claims are barred because of an earlier state court adjudication." *Lombard*, 2001 WL 548725 at *2, 4 (dismissing complaint against Surrogate Court judge based on *Rooker-Feldman* where allegations of a conspiracy to violate plaintiff's civil rights was an attempt "relitigate the outcome of these state court determinations in federal court"). Plaintiffs must prove by a preponderance of the evidence that subject matter jurisdiction exists. *Makarova*, 201 F.3d at 113.

**B.    The *Rooker-Feldman* Doctrine Divests This Court Of Jurisdiction To Hear Any of Plaintiffs' Claims**

Under the *Rooker-Feldman* doctrine, derived from the United States Supreme Court's holdings in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 463 (1983), federal district courts lack subject matter jurisdiction to adjudicate collateral challenges to state court judgments or orders. *See Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 202 F. Supp. 2d 126, 133 (S.D.N.Y. 2002); *Duboys v. Bomba*, 2002 WL 146483 at *4 (S.D.N.Y. Jan. 31, 2002); *see also Shelly v. Brandveen*, 2012 WL 3903472 at *3 (E.D.N.Y. Sept. 6, 2012) (noting that the *Rooker-Feldman* doctrine "applies not only to final judgments, but also interlocutory orders") (citations omitted). The doctrine is "based on the strictly original subject matter of the federal district courts, which precludes them from sitting as appellate tribunals to review state court judgments [or interlocutory orders], as well as from considering issues which are inextricably intertwined with

such judgments or claims seeking relief, that if granted, would modify state court decisions." *Lipin*, 202 F. Supp. 2d at 132-33 (quotations omitted); *see also Shelly*, 2012 WL 3903472 at *3.

Under this doctrine, a district court lacks jurisdiction where, as here, (1) the federal-court plaintiffs lost in state court; (2) plaintiffs complain of injuries caused by the state court judgments or interlocutory orders; (3) plaintiffs invite the district court to review and reject those judgments or orders; and (4) the state court judgments or orders were rendered prior to the filing of the federal action. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005); *MacPhearson v. Town of Southampton*, 738 F. Supp. 2d 353, 363 (E.D.N.Y. 2010) (*Rooker-Feldman* barred review of temporary restraining orders and preliminary injunctions because "federal district courts lack jurisdiction to review state court decisions whether final or interlocutory in nature.") (citations omitted). "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third-party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Hoblock*, 422 F.3d at 88; *see also Lipin*, 202 F. Supp. 2d at 133.

The district court's decision in *Lipin* is instructive. In *Lipin*, the plaintiff brought federal claims against his former employer and others after he had already tried to sue them multiple times in state and federal court and lost. The plaintiff claimed those prior cases were part of a "conspiracy," a violation of his civil rights, and any decisions were obtained through fraudulent means. The *Lipin* Court dismissed plaintiff's case on, among other grounds, the *Rooker-Feldman* doctrine, holding that plaintiff's federal claims "clearly implicate the results of the prior judicial proceedings." 202 F. Supp. 2d at 133. While the plaintiff in *Lipin* tried to argue otherwise (just as Plaintiffs do here), the *Lipin* Court noted that the success of plaintiff's federal claims "depends entirely on the view that the evidence found credible by the state courts was in

14

fact false.  To accept Plaintiff's premise would necessarily be to revisit state court determinations and, indeed, to declare them wrongly decided.  This the *Rooker-Feldman* doctrine prohibits."  *Id.*

Here, it is obvious from the face of the Amended Complaint that Plaintiffs are trying to challenge final court orders and decisions of the Surrogate's Court that were entered before this federal action was filed, primarily, Ms. Cassini's contempt, her court-ordered arrest, the court-ordered sale of McCouns Lane, and the court-ordered sale of the Doyle Auctioned Property. Before these events occurred, Plaintiffs had notice and a full and fair opportunity to be heard by the state court.  *See* Baiamonte Aff. ¶¶ 22-60.  And, like every other litigant in state court, Plaintiffs had appellate rights that they may, and in this case, often did, pursue.  But what they cannot do is try to sidestep the state court judicial process by making baseless allegations about a "conspiracy" among opposing parties, attorneys, judges, and other government officials.  Each of the issues and claims raised in the Amended Complaint falls squarely within *Rooker-Feldman*.

Ms. Cassini's claims arising out of her court-ordered arrest easily meet all four factors of the *Rooker-Feldman* test.  There can be no serious dispute that (i) Ms. Cassini "lost" in state court after Surrogate Reilly found her to be in contempt of court for refusing to turn over the Companies' books and records to the Receiver, *see* Baiamonte Aff. Ex. P, (ii) Ms. Cassini is complaining of injuries stemming from Surrogate Reilly's order holding her in contempt of court and issuing a warrant for her arrest, *see id.* Ex. Q, (iii) Ms. Cassini is asking this Court to review and reject those orders, *see, e.g.*, ECF No. 37 at 2 (Plaintiffs' response to Surrogate Reilly's pre-motion letter, claiming that these orders "are all null and void"), and (iv) each of these orders were entered long before this federal action was commenced.  In fact, a full two years before this action was commenced, the Second Department dismissed Ms. Cassini's appeal of the underlying decisions and orders that led to the Court holding her in contempt of court and issuing

a warrant for her arrest.  *See Cassini*, 182 A.D.3d at 58 (2d Dep't 2020) ("the appeals from the orders dated November 14, 2017, and December 21, 2017, respectively, are dismissed") (Baiamonte Aff. Ex. L).  Ms. Cassini cannot seek a third bite at the apple before this Court.

The same analysis applies to the sale of OCI's McCouns Lane property.  Ms. Cassini claims that this property was wrongfully taken from her and sold, but these issues were fully, fairly, and finally litigated before the state courts before this action was commenced:

- The owner of the property is OCI (Baiamonte Aff. Ex. R), which is an asset of the Estate, not Ms. Cassini.  *See Cassini*, 180 A.D.3d at 776. (Baiamonte Aff. Ex. I).

- The Receiver was granted access to OCI's property at McCouns Lane, and Ms. Cassini's request to stay that order before the Second Department was denied. *See id.* Exs. S and T.

- Ms. Cassini's claim to a right to occupy McCouns Lane pursuant to a 99-year lease that no one had ever seen and she refused to produce was rejected by the Nassau County District Court after a trial where Ms. Cassini was represented by counsel.  *See id.* Ex. W.

- Ms. Cassini's appeal of the Nassau County District Court's judgment was dismissed.  *See id.* Ex. X.

- Surrogate Reilly granted the Receiver's application to sell the property after all parties, including Ms. Cassini, were given notice and an opportunity to be heard at two separate hearings.  *See id.* Exs. Y, Z, AA, and BB.

- Ms. Cassini's attempt to appeal and stay Surrogate Reilly's order was denied by the Second Department.  *See id.* Ex. CC.

- Unable to stay the court-ordered sale, Ms. Cassini tried instead to interfere with it by *inter alia*, contacting the purchaser directly, including by visiting his home and claiming that the Receiver and Mr. Miller were illegally appointed.  Ultimately, Ms. Cassini *and* her counsel both signed a so-ordered stipulation, in which she agreed not to interfere with the sale.  *See* Baiamonte Aff. ¶ 48 & Ex. DD.

Any claim regarding the court-ordered sale of McCouns Lane could have or should have been pursued – and in fact, was pursued – before the Nassau County Surrogate's Court, the Appellate Division, Second Department, and the Nassau County District Court.  *See* Baiamonte Aff. Exs.

S, T, W, X, Y, Z, AA, BB, and CC.  Plaintiffs may not seek to challenge those rulings by dressing up their state court losses as a federal claim.

Any claim based on the Doyle Auctioned Property is also barred by *Rooker-Feldman*, and Plaintiffs' attempts to claim that "*their*" property was sold has been repeatedly rejected:

- After the Receiver finally gained access to the Companies' McCouns Lane property, she learned of a substantial number of items that were kept in the property and belonged to the Companies and the Estate.  Ms. Cassini claimed that she personally owned these items.  Therefore, the Surrogate's Court entered an order that set forth a process to determine ownership of those items.  *See* Baiamonte Aff. Ex. EE.

- On November 1, 2018, Ms. Cassini and her sister, Ms. Nestor, entered into a stipulation with the Receiver and others, that was so-ordered by the Court, in which the parties agreed, among other things, to a nearly identical process for the sale of assets belonging to the Companies that were located at 15 East 63rd Street, New York, New York.  *See id.* Ex. FF.

- The Receiver followed the court-ordered process by preparing an inventory of the Estate property to be sold, and Ms. Cassini and her sister Ms. Nestor (together, the sole owners of Plaintiff Gemeaux) asserted objections to the sale of certain items. *See id.* ¶ 54 & Ex. GG.

- After the Receiver determined that Ms. Cassini, Ms. Nestor, and Gemeaux did not present sufficient evidence to support their objections, the court orders provided Plaintiffs an opportunity to make an application to the Court to challenge the Receiver's determination.  *See id.* Exs. EE and FF.

- Plaintiffs never presented an application to the Surrogate's Court seeking to challenge the Receiver's determination.  *See id.* ¶ 55.

- Thus, pursuant to the court's 2018 orders, these "Company Items . . . may be sold without further notice."  *See id.* Exs. EE and FF.

- While this spells the end of any claim arising out of the Doyle auction, Plaintiffs have already tried to forum-shop these claims when they sued Doyle for conversion in New York County Supreme Court, claiming that they owned the Doyle Auctioned Property.  That action was dismissed based on the 2018 court orders and affirmed by the First Department.  *See id.* Exs. II and JJ.

Despite the foregoing, Plaintiffs are asking this Court to unwind the outcome of the state court proceedings and the ensuing auction and litigate the issue of ownership of the property that was

sold by Doyle.  *See, e.g.*, Am. Compl. ¶ 91 (claiming Doyle sold "Plaintiffs' property").  This is a classic example of federal claims that are barred by *Rooker-Feldman*, because the only way those claims can succeed is if this Court were to "revisit state court determinations and, indeed, to declare them wrongly decided."  *Lipin*, 202 F. Supp. 2d at 133.

For all of these reasons, each and every one of Plaintiffs' purported federal causes of action is a collateral attack on final state court decisions and orders, they are barred by the *Rooker-Feldman* doctrine, and this Court lacks subject matter jurisdiction to hear them.

## POINT II

### THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

While the entirety of the Amended Complaint should be dismissed for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine, it should also be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

### A.   The Standard On A Motion To Dismiss Under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citations omitted); *see also LaFaro v. N.Y. Cardiothoracic Group, PLLC*, 570 F.3d 471, 476 (2d Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.

In deciding a motion to dismiss for failure to state a claim, the Court is generally limited to the well-pleaded allegations of the plaintiff's complaint, but the Court may also consider "any documents attached [to the complaint] or incorporated by reference and documents upon which the complaint relies heavily."  *See Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP*, 2022

18

WL 901660 at *10 (S.D.N.Y. Mar. 28, 2022) (citations omitted). The Court may also take judicial notice of the decisions and orders of the Surrogate's Court and other courts, particularly where, as here, Plaintiffs repeatedly reference those court orders throughout their pleading. *See, e.g.*, *Williams v. New York City Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (holding that district court properly took judicial notice of plaintiff's "Article 78 petition and state court decision because they were public records"); *Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 471 (S.D.N.Y. 2009) (where the "factual allegations in defendant's motion are predicated on proceedings in [another court]," court properly took "judicial notice of public documents filed in connection with [those other proceedings]" in deciding motion to dismiss under Rule 12(b)(6)); *see also Pryce v. United States*, 2022 WL 3155842 n.1 (S.D.N.Y. Aug. 8, 2022) (court may consider facts alleged in the complaint as well as "any statements or documents incorporated in it by reference, as well as . . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit") (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)); *Dabah v. Franklin*, 2022 WL 973834 at *2 (S.D.N.Y. Mar. 31, 2022) (holding that court may take judicial notice of "prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation that relate to the case sub judice").

While a complaint's well-pleaded factual allegations are accepted as true on a motion to dismiss, courts need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A "plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007); *see also Iqbal*, 556 U.S. at 679 ("Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice"); *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) ("[B]ald assertions and conclusions of law are insufficient"). Determining whether a complaint states a plausible claim is a "context-specific task" and requires the court "to draw on its judicial experience and common sense." *Id.* (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). If the plaintiff has "not nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Twombly*, 550 U.S. at 547.

Relatedly, collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, **whether or not the tribunals or causes of action are the same**." *See Shifer v. Shifer*, 165 A.D.3d 721 (2d Dep't 2018) (emphasis added); *see also Levitin v. Homburger*, 932 F. Supp. 508, 515 (S.D.N.Y. 1996) (same) (citing *Polur v. Raffe*, 912 F.2d 52, 55 (2d Cir.1990)). Thus, insofar as Plaintiffs' claims are based upon their purported property interest in McCouns Lane or the Doyle Auctioned Property, Plaintiffs are precluded from relitigating the issue based upon collateral estoppel. The crux of this action, however, is based upon Plaintiffs' false allegations that they own this property and it was "stolen" from them.

## B.   Plaintiffs' Claims Are Insufficiently Pleaded

All twelve of Plaintiffs' causes of action are insufficiently pleaded. Plaintiffs mostly just recite the elements of each claim without providing any necessary factual detail to support them. Plaintiffs' pleading also suffers from improper group pleading, lumping numerous parties together as alleged "RICO defendants" without actually alleging how each of them was supposedly involved in this purported conspiracy. *See* Am. Compl. ¶ 7-11. None of this is sufficient to state a claim upon which relief may be granted, and for this additional reason, Plaintiffs' Amended Complaint should be dismissed.

Each and every Defendant is alleged to have done nothing more than carrying out their duties and responsibilities, whether as a judge, litigant, attorney, or state actor.  At all times, these individuals were acting pursuant to court decisions and orders (or in the case of Surrogate Reilly, issuing decisions and orders on relief requested by the parties).  Plaintiffs were present every step of the way and given a full and fair opportunity to be heard.  That they do not like the end result cannot be repackaged as a federal claim to "seek damages" for these perceived wrongs.  *See* ECF No. 35 at 2.  Plaintiffs have failed to meet their pleading burden.

### (1)    Plaintiffs' First Cause of Action Fails to State a Claim

In their first cause of action, Plaintiffs purport to assert a civil RICO claim pursuant to 18 U.S.C. § 1962 against Defendants DeLuca, Mahon, Reilly, Baiamonte, and Miller, the so-called "RICO defendants."  *See* Am. Compl. ¶¶ 120-37.  The crux of this claim is that the "RICO defendants" allegedly "engaged in a racketeering scheme that resulted in the theft of Mrs. Cassini's Nassau County residence and the extremely valuable contents thereof, as well as the damages and destruction of and theft of property from Plaintiffs' two Manhattan properties."  *Id.* ¶ 121.  Plaintiffs also allege that "Judge Reilly removed Mrs. Cassini from the management of two companies that her husband, Oleg Cassini, and she had nurtured into thriving businesses since their marriage in 1971."  *Id.* ¶ 122.[8]  As the predicate acts for their RICO claim, Plaintiffs allege that the RICO defendants engaged in money laundering (18 U.S.C. § 1957), transportation, sale, and receipt of stolen goods or money (18 U.S.C. §§ 2314, 2315), and "likely committed mail fraud, bank fraud, . . . and acts of kidnapping, fraud, embezzlement, larceny, bribery, and extortion."  *Id.* ¶ 136.  Plaintiffs' allegations do not come close to stating a civil RICO claim.

---

[8] This allegation is false.  Ms. Cassini was removed from the Companies by Surrogate McCarty in 2015, a decision that was affirmed on appeal.  *See* Baiamonte Aff. Exs. D & E.

To state a claim under RICO, Plaintiffs must allege "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (internal quotation marks and citation omitted); *see also Festinger*, 2022 WL 901660 at *20. Plaintiffs must also allege "information regarding the hierarchy, organization, activities of the alleged enterprise, and – critically in this case – explain each participant's role in the alleged fraudulent or illegal conduct." *Acklin v. Eichner*, 2021 WL 4442819 at *4 (S.D.N.Y. Sept. 27, 2021). Where, as here, Plaintiffs merely "lump together each defendant . . . for nearly every allegation," their RICO claim must be dismissed. *Id.* at *5.

Where the alleged enterprise is a "group of individuals associated in fact" (as opposed to a formal legal entity), the enterprise "must have at least three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associations to pursue the enterprise's purpose." *Festinger*, 2022 WL 901660 at *20. An association-in-fact enterprise must also "have an existence separate and apart from the racketeering activity itself." *Id.*

To establish a "pattern of racketeering activity," Plaintiffs "must plead at least two predicate acts, and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." *Acklin*, 2021 WL 4442819 at *5. Additionally, where, as here, Plaintiffs allege fraud as predicate acts, the Amended Complaint is subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were

fraudulent. Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

The Amended Complaint falls woefully short of stating a civil RICO claim. First, Plaintiffs fail to sufficiently plead the existence of an "enterprise." Plaintiffs' pleading contains no allegations "regarding the hierarchy, organization, activities of the alleged enterprise," and it fails, as it must, to "explain each participant's role in the alleged fraudulent or illegal conduct." *Acklin*, 2021 WL 4442819 at *4. Instead, Plaintiffs merely "lump together" all of the RICO defendants, which is fatal to their RICO claim. *Id.* at *5. By way of example, the Amended Complaint is devoid of any specific, well-pleaded allegations of wrongdoing as to Mr. Miller or Mr. Mahon, the attorneys for the Receiver and the Public Administrator, respectively. Plaintiffs simply define these individuals as "RICO defendants," *see* Am. Compl. ¶¶ 8, 11, but otherwise fail to allege what they actually did that could even arguably constitute a violation of the statute. This is plainly insufficient as a matter of law. *Id.* at *5 (dismissing RICO claim where plaintiffs fail to explain how each defendant is involved with an alleged RICO conspiracy).

As to all of the alleged "RICO defendants," Plaintiffs allege nothing more than the fact that these individuals made motions, issued decisions and orders, and acted in accordance with those decisions and orders. *See, e.g.*, Am. Compl. ¶ 67. All of this was done in accordance with legal process and consistent with the duties and responsibilities of each individual. It comes nowhere close to supporting a RICO claim.

Plaintiffs also fail to allege a RICO enterprise that has "an existence separate and apart from the racketeering activity itself." *Festinger*, 2022 WL 901660 at *21. Rather, Plaintiffs claim that Surrogate Reilly, the Public Administrator, the Receiver, and their attorneys "engaged in a racketeering scheme," based on allegations that Plaintiffs own the property that was sold

pursuant to Surrogate Reilly's rulings (*i.e.*, McCouns Lane and the Doyle Auctioned Property), Plaintiffs disagree with Surrogate Reilly's rulings, and those rulings were issued following motions made by the other so-called "RICO defendants." This is not a RICO enterprise, and the Amended Complaint is utterly lacking in any specificity – the who, what, when, and where – of a purported RICO enterprise. *Id.* (dismissing RICO claim based on allegations that plaintiff's ex-wife and her attorneys in divorce proceedings "work[ed] together to perpetrate the allegedly fraudulent divorce proceeding and related mail and wire fraud").

Plaintiffs have also failed to allege a "pattern of racketeering activity," because they have not sufficiently pleaded any – let alone "at least two" – predicate acts. *Acklin*, 2021 WL 4442819 at *5. Plaintiffs' conclusory allegations of money laundering, transportation, sale, and receipt of stolen goods or money, fraud, embezzlement, and others, finds no support in their Amended Complaint. Indeed, Plaintiffs were given every opportunity to litigate issues as to ownership of Estate property, and the Surrogate's Court and other courts have fully, fairly, and finally determined that the property belongs to the Estate. That Plaintiffs disagree with those rulings does not translate to a "fraud" or any of the other criminal acts that they claim support their RICO claim. Nor do these allegations come anywhere close to meeting Rule 9(b)'s heightened pleading standard for fraud. At its core, Plaintiffs are really just complaining allegedly "fraudulent litigation activities," which is insufficient as a matter of law. *See, e.g.*, *Limtung v. Steven J. Baum, P.C.*, 2019 WL 12520056, *3 (E.D.N.Y. Mar. 20, 2019) (dismissing RICO claim where "there is nothing 'more' to [plaintiff's] claims than allegations of fraudulent litigation activities relating to the foreclosure action").[9]

---

[9] In selling the Estate's property pursuant to court orders, the Receiver simply liquidated these assets. The proceeds from those sales remain in the Estate and will only be paid out to the beneficiaries following a final accounting, during which all parties will receive notice and an

Furthermore, Surrogate Reilly, DeLuca, and Curran, in their official capacities, cannot be liable under RICO in any event.[10]  *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 457 (S.D.N.Y. 1998). In enacting RICO, Congress did not override New York's Eleventh Amendment immunity and New York has not consented to such suits against state officials in federal court. *See, e.g., Molina v. State of New York*, 956 F. Supp. 257, 260 (E.D.N.Y. 1995) (dismissing plaintiff's RICO claim against state government as barred under the Eleventh Amendment); *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 390-91 (E.D.N.Y. 2013) (dismissing plaintiffs' RICO claims against state government and state agency as barred under the Eleventh Amendment); *McCaffrey v. Cnty. of Nassau*, No. 11-cv-1668, 2013 WL 2322879, at *7 (E.D.N.Y. May 25, 2013) (finding Nassau County and its municipal employees in their official capacities cannot be liable under RICO).

For all of these reasons, the RICO claim should be dismissed.

**(2)    Plaintiffs' Second Cause of Action Fails to State a Claim**

In their second cause of action, Plaintiffs purport to assert a violation of the Due Process Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against Defendants Reilly, the County of Nassau, Curran, DeLuca, the Nassau County Sheriff, and the New York City Sheriff.  *See* Am. Compl. ¶¶ 138-43.

It is "well established that in order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity

---

opportunity to be heard.  And to the extent any portion of these funds are paid to the Estate's professionals (such as the Receiver or her attorney), a motion must be made in the Surrogate's Court where, again, all parties will receive notice and an opportunity to be heard.  Nothing has been "stolen" from Plaintiffs.

[10] *See infra* Point III regarding Surrogate Reilly being sued in her official capacity.

secured by the Constitution or laws of the United States." *Eagleston v. Guido*, 41 F.3d 865, 875-876 (2d Cir. 1994). "[C]onclusory, vague, or general allegations" of a constitutional violation will not suffice. *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977). "In order to establish a procedural due process violation, a plaintiff must prove that she was deprived of an opportunity granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[T]he availability of … recourse [within the state judicial system] … precludes [a] finding that [a defendant's] conduct violated [a plaintiff's] rights to procedural due process." *Id.* A plaintiff's allegations that "his right to procedural due process" was violated in "court proceedings" must be rejected where they are "unsupported by the … record" of those proceedings. *O'Neill v. Hernandez*, 2010 WL 1257512 at *10 (S.D.N.Y. Mar. 25, 2010). Plaintiffs conclusory assertions that Surrogate Reilly, the County of Nassau, Curran, DeLuca, the Nassau County Sheriff, and the New York City Sheriff violated their rights to due process do not state a plausible claim for relief under § 1983.

The Amended Complaint merely deems these government defendants' actions as unconstitutional and at best suggests via conjecture that they must have conspired with the other defendants to violate Plaintiffs' due process civil rights. Am. Compl. ¶¶ 138-43. Plaintiffs' complaints regarding a purported due process violation merely describe their disagreement with a number of actions and decisions in the underlying Estate proceedings. As described above, such a review of a state action is unavailable in federal court. *See supra* Point I. Crucially, even if Plaintiffs' allegations could support a due process claim, their claims are flatly contradicted by the record in the underlying Estate proceedings. *See* Baiamonte Aff. and Exhibits attached thereto. Any allegation that Plaintiffs' rights were violated is simply unsupported by the record, and therefore Plaintiffs fail to state a claim. *O'Neill*, 2010 WL 1257512, at *10.

**(3)**    **Plaintiffs' Third Cause of Action Fails to State a Claim**

In their third cause of action, Plaintiffs purport to assert a violation of the Fourth Amendment right against unlawful seizure pursuant to 42 U.S.C. § 1983 against Defendants Reilly, the County of Nassau, the Nassau County Sheriff, and the New York City Sheriff.  *See* Am. Compl. ¶¶ 144-55.  This claim fails for several reasons.

While the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," that protection is not absolute.  U.S. Const. Amend. IV.  On its face, the Fourth Amendment guards only against unreasonable searches and seizures; it does not, as the Court is well-aware, serve as a categorical prohibition on searches and seizures.  Here, Plaintiffs seemingly complain of three things: (i) the alleged "seizure" of Plaintiffs' houses, papers, and effects, (ii) the alleged false arrest of Ms. Cassini by the New York City Sheriff, and (iii) the conditions of Ms. Cassini's imprisonment following her willful disobedience of lawful court orders.  Am. Compl. at ¶¶ 146-55.

As a threshold matter, the conditions of imprisonment are not validly asserted under the Fourth Amendment.  Rather, those claims are properly raised under either the Eighth or the Fourteenth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

As to the "seizure" of Plaintiffs' houses, papers, and effects, Plaintiffs fail to state a claim because any alleged "seizure" was in actuality a sale of that property pursuant to orders of the Nassau County Surrogate in connection with the Estate proceedings.  In any event, the County of Nassau, the New York City Sheriff, the Nassau County Sheriff, and Surrogate Reilly were not involved in that sale, nor is any such involvement alleged by Plaintiffs.

"A § 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law.  Under New York law, an action for false arrest requires that the plaintiff

show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (internal quotations and citations omitted); *Wright v. Musanti*, 887 F.3d 577, 587 (2d Cir. 2018). In resolving this motion, the Court need not engage in an analysis of the first three *Ackerson* elements. This is so because an arrest made pursuant to a warrant is privileged and, therefore, not actionable as a false arrest. *See Broughton v. State*, 37 N.Y.2d 451, 456 (citing Restatement (Second) of Torts § 35 cmt. a (1965)); *Shapiro v. Goldman*, 2016 U.S. Dist. LEXIS 107947, at *47 (S.D.N.Y. Aug. 15, 2016) ("An arrest carried out pursuant to a warrant may not give rise to a claim for false arrest even though a claim of malicious prosecution may follow such an arrest").

Ms. Cassini's claim that she was falsely arrested by the New York City Sheriff and unlawfully confined by the Nassau County Sheriff is belied by the fact a valid warrant was issued for her arrest. *See* Baiamonte Aff., Ex. P. The Court is respectfully reminded that prior to issuing the warrant, Mrs. Cassini was offered ample opportunities to comply with court orders and, even after the Court made its contempt finding, Ms. Cassini was provided the opportunity to purge the contempt. She did not, and the warrant was validly executed. Baiamonte Aff. at ¶¶ 30-31; Am. Compl. ¶ 68.

Contrary to Plaintiffs' allegations, Surrogate Reilly did not arrest Ms. Cassini. Surrogate Reilly's contempt order resulted in the arrest, but it cannot be reasonably suggested that she arrested Ms. Cassini. There is no generally understood meaning of the word "arrest" that encompasses a judge's decision to hold a litigant in contempt and order her arrest until the contempt is purged. Plaintiffs' absurd argument that a judge can be liable for a false arrest finds no support in any decisional law. *See, e.g., Justice v. Kuhnappel, et al.*, 2013 WL 1749894 at *2

28

(E.D.N.Y. 2013) (plaintiff's claims against judges for false arrest dismissed because under "well settled law in this Circuit . . . a plaintiff must demonstrate the defendants' direct or personal involvement in the actions which are alleged to have caused the constitutional deprivation").

In sum, Plaintiffs' Third Cause of Action should be dismissed because Ms. Cassini's arrest was made pursuant to a validly issued warrant. The County of Nassau was not involved in that arrest and, even so, Plaintiffs have done nothing to establish *Monell* liability relative to the arrest. The Sheriffs acted in response to the warrant, and the arrest was privileged. What is more, as with Surrogate Reilly, the personal involvement of the Sheriffs is not alleged by Plaintiffs. Thus, they cannot be held liable under the authority of *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020). *Tangretti* stands for the proposition that "[t]o establish a violation of § 1983 by a supervisor, as with everyone else, then, the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights." *Id.* at 618, quoting *Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010) (Gorsuch, J.).

Plaintiffs do not satisfy that standard and so the Third Cause of Action fails.

### (4)    **Plaintiffs' Fourth Cause of Action Fails to State a Claim**

In their fourth cause of action, Plaintiffs purport to assert a violation of the Eighth Amendment right against excessive bail, fines, and cruel and unusual punishment pursuant to 42 U.S.C. § 1983 against Defendants Reilly, the County of Nassau, and the Nassau County Sheriff. *See* Am. Compl. ¶¶ 156-60. Plaintiffs allege that the "treatment of Mrs. Cassini…was excessively harsh, cruel, entirely unwarranted, and certainly unusual," Am. Compl. ¶ 158, and as a result, Ms. Cassini's Eighth Amendment right was violated. These allegations fail to state a claim under the Eighth Amendment. Simply put, the Eighth Amendment does not apply to the incidents alleged in the Amended Complaint.

As an initial matter, Plaintiffs fail to allege the manner in which Ms. Cassini's Eighth Amendment right against excessive bail and fines was violated. Conclusory allegations that "confining Mrs. Cassini to jail for any period of time, but certainly for the excessive period of time she was actually confined…certainly violates all contemporary standards of decency" are insufficient. To the extent Plaintiffs allege that Ms. Cassini's Eighth Amendment right against cruel and unusual punishment was violated, the Eighth Amendment does not apply to the incidents described in the Amended Complaint and therefore this claim should be dismissed.

The Eighth Amendment protects against the infliction of cruel and unusual punishment. U.S. Const. Amend. VIII. However, this protection is only extended to prisoners facing punishment meted out by the State. *See e.g., Delee v. Hannigan*, 729 Fed. Appx. 25, 29 (2d Cir. 2018) ("[t]he Eighth Amendment protects prison inmates...."). "[T]he Eighth Amendment's protection does not apply 'until after conviction and sentence' . . ." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (quoting *Graham v. Connor*, 490 U.S. 386, 392 n.6, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). The protections of the Eighth Amendment do not apply to pre-trial detainees and arrestees. *Boadi v. City of New York*, 2012 U.S. Dist. LEXIS 104652 at *11 (E.D.N.Y. 2012); (citing *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009)). Here, the incidents alleged in Plaintiffs' Amended Complaint occurred in connection with Ms. Cassini's arrests and post-arrest detentions. Ms. Cassini was never convicted or sentenced. Accordingly, the Eighth Amendment does not apply and this claim must be dismissed.

**(5)    Plaintiffs' Fifth Cause of Action Fails to State a Claim**

In their fifth cause of action, Plaintiffs purport to assert a conspiracy to violate civil rights in violation of 42 U.S.C. §§ 1985 and 1986 against all Defendants. *See* Am. Compl. ¶¶ 161-62. Other than a cross-reference to the Amended Complaint's other allegations, this claim is based

on a single conclusory allegation: "Defendants conspired together in the manner described herein to deprive Plaintiffs of their constitutional rights, and none of them intervened to prevent the violation or deprivation of those rights despite their power to do so."  *Id.* ¶ 162.  This claim is insufficiently pleaded for a litany of reasons.

The elements of a claim under Section 1985 are (1) a conspiracy; (2) motivated by racial or other discriminatory animus; (3) for the purpose of depriving any person or a class of persons of the equal protection of privileges and immunities under the law; (4) an overt act in furtherance of the conspiracy; and (5) injury.  *See Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015); *Zaidi v. Amerada Hess Corp.*, 723 F. Supp. 2d 506, 515 (E.D.N.Y. 2010).  Section 1986 provides a cause of action for failure to prevent a Section 1985 conspiracy.  *See Zaidi*, 723 F. Supp. 2d at 516.  Although Plaintiffs need not offer proof of an explicit agreement to state a claim under Section 1985, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve an unlawful end." *See Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003); *see also Zaidi*, 723 F. Supp. 2d at 515 ("[c]onclusory or vague allegations of conspiracy are insufficient").  Plaintiffs fail to allege any of the necessary elements to sustain this claim.

First, Plaintiffs "have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants," and thus their conspiracy allegation is insufficient.  *See Webb*, 340 F.3d at 112.  Plaintiffs allege a far-reaching conspiracy among Surrogate Reilly and the parties and attorneys that appeared in her court based on nothing more than the fact that those parties and attorneys were on the winning side of motions with which Plaintiffs disagree.  *See, e.g.*, Am. Compl. ¶ 121.  There are absolutely no further details or specifics provided.  This fails as a matter of law.  *See Combier v. State of New York*, 2010 WL

3785130 at *14 (S.D.N.Y. Aug. 25, 2010) ("As a matter of law, rulings made during the course of state court proceedings are not a sufficient basis for the Court to find unlawful joint activity among the judges, judicial employees, and private individuals."); *see also Dennis v. Sparks*, 449 U.S. 24, 28 (1980) ("[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a coconspirator or a joint actor with the judge.").

Second, Plaintiffs have not alleged that Defendants were "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *See Dolan*, 794 F.3d at 296. Nor do Plaintiffs allege that they are members of a "protected group" entitled to the protections of the statute. For this additional reason, Plaintiffs Section 1985 conspiracy claim fails. *See Estes-El v. Town of Indian Lake*, 954 F. Supp. 527, 532 (N.D.N.Y. 1997) ("When a plaintiff fails to establish membership in a protected group, a civil rights conspiracy complaint under 42 U.S.C. § 1985 may be dismissed.").

Finally, because Plaintiffs have failed to sufficiently allege a Section 1985 conspiracy, their Section 1986 claim must likewise be dismissed. *See Zaidi*, 723 F. Supp. 2d at 516 ("This section [42 U.S.C. § 1986] is tied specifically to Section 1985, and does not set forth a general cause of action for failure to prevent any violation of Section 1983.").

### **(6)** **Plaintiffs' Sixth Cause of Action Fails to State a Claim**

In their sixth cause of action, Plaintiffs purport to assert an abuse of process claim against the RICO defendants, the County of Nassau, and Curran. *See* Am. Compl. ¶¶ 163-65. As support, Plaintiffs allege that these Defendants "defrauded and stole from Plaintiffs, unjustly enriched themselves and their friends and associates, and utilized the power of the Surrogate's Court under the guise of legal process to do so." *Id.* ¶ 164.

Plaintiffs do not allege how legal process was abused. They simply disagree with the rulings of the Surrogate's Court. This is not a claim for abuse of process. Rather, it is "at heart, a collateral attack on the [Surrogate's Court's orders]. The tort of abuse of process is not a vehicle for backdoor attacks on unfavorable [orders]." *3H Enterprises, Inc. v. Dwyre*, 182 F. Supp. 2d 249, 261 (N.D.N.Y. 2001); *see also Zeckendorf v. Kerry H. Lutz*, 282 A.D.2d 295, 295, 723 N.Y.S.2d 360, 361 (1st Dep't 2001). Despite Plaintiffs' conclusory claim that Defendants "defrauded and stole from Plaintiffs," *see* Am. Compl. ¶ 164, the simple fact is that Defendants merely utilized the legal system to protect their clients' respective rights, and Surrogate Reilly issued rulings based upon the papers that were submitted to her. This is not an abuse of process.

This claim is also time-barred. An abuse of process claim is subject to a one-year statute of limitations. *See* CPLR 215; *see also Cuillo v. Shupnick*, 815 F. Supp. 133, 136 (S.D.N.Y. 1993). The Amended Complaint is based on court orders that were entered no later than 2019, yet Plaintiff did not file this action until 2022. For this additional reason, the abuse of process claim should be dismissed as time-barred. *Cuillo*, 815 F. Supp. at 136.

### (7)    Plaintiffs' Seventh Cause of Action Fails to State a Claim

In their seventh cause of action, Plaintiffs purport to assert a conversion claim against the RICO defendants and Doyle. *See* Am. Compl. ¶¶ 166-68. This claim arises out of the alleged conversion of Plaintiffs' purported property rights in McCouns Lane and the Doyle Auctioned Property. Numerous court orders and decisions have already determined this property belonged to the Estate, not Plaintiffs. *See* Baiamonte Aff. Exs. BB, CC, EE, FF, II, JJ. In the absence of a property interest, Plaintiffs' claim for conversion is therefore barred by collateral estoppel. *See*, *e.g.*, *Petrohawk Energy Corp. v. L. Debenture Tr. Co. of New York*, No. 06 CIV. 9404, 2007 WL 211096, at *4 (S.D.N.Y. Jan. 29, 2007) ("An essential element of conversion is legal ownership

or an immediate superior right of possession to a specific identifiable thing by the plaintiff.") (internal quotation marks and citation omitted); *see also Turecamo v. Turecamo*, 55 A.D.3d 455, 455 (1st Dep't 2008) (dismissing conversion claim where plaintiff did not own property at issue).

### (8)      Plaintiffs' Eighth Cause of Action Fails to State a Claim

In their eighth cause of action, Plaintiffs purport to assert a breach of fiduciary duty claim against Defendants Baiamonte, DeLuca, and Curran.  *See* Am. Compl. ¶¶ 169-73. Plaintiffs allege that these Defendants have "substantially dissipated and wasted" assets of the Estate, and that the Receiver "failed to exercise due care in managing the companies' holdings and profit-making endeavors" and allegedly sold McCouns Lane "for a fraction of its value." *Id.* ¶¶ 170-72.  This claim fails for numerous reasons.

As an initial matter, Plaintiffs must allege that Defendants Baiamonte, DeLuca, and Curran owed them a duty.  *See People v. Merkin*, 124 A.D.3d 435, 435 (1st Dep't 2015).  The Receiver's duty is to the Companies, and DeLuca and Curran, in their capacity as the Public Administrator, owe a duty to the Estate.  None of these Defendants owe any duty to these Plaintiffs.  For this reason alone, the breach of fiduciary duty claim should be dismissed.  *See Merkin*, 124 A.D.3d at 435 ("receiver owed no fiduciary duty to petitioner; his fiduciary duty was to the fund as a whole, not to any particular investor").

But even if there was a duty (and there is not), Plaintiffs' boilerplate and conclusory allegation of a failure to exercise due care is insufficient to state a claim.  *See, e.g.*, *Twombly*, 550 U.S. at 555 (complaint's allegations must contain "more than labels and conclusions").  As to the sale price of McCouns Lane ($9.05 million), this was approved by a final court order, which was entered after all parties received notice and an opportunity to be heard.  During one of two hearings that preceded the sale, the Receiver presented, among other evidence, testimony from a

well-known and reputable broker who handled the sale regarding the value of the property, which was believed to be as low as $5 million.  Baiamonte Aff. ¶ 41 & Ex. AA.  The Court also expressly informed Ms. Cassini, who was represented by two attorneys, that "the Court is going to allow everyone who is a beneficiary or distributee under this estate to raise their objections now or, as they may say, forever hold your peace."  *See id.* Ex. Z at 15:14-21.  Plaintiffs cannot now relitigate the court-approved sales price by calling it a breach of fiduciary duty.

### (9)    Plaintiffs' Ninth Cause of Action Fails to State a Claim

In their ninth cause of action, Plaintiffs purport to assert a constructive trust claim against Defendants Baiamonte, Curran, and Doyle.  *See* Am. Compl. ¶¶ 174-76.  Plaintiffs seek to assert a constructive trust claim over "[t]he property remaining in any of [those Defendants'] possession, and the funds acquired as a result of the sale of Plaintiffs' property previously acquired by said Defendants."  *Id.* ¶ 176.  Again, Plaintiffs are collaterally estopped from arguing that any of the property sold by these Defendants (*i.e.*, McCouns Lane or the Doyle Auctioned Property) belonged to Plaintiffs.  As such, Plaintiffs have also failed to plead a necessary element of their constructive trust claim – any right or interest in the property over which they seek to assert a constructive trust.  *See*, *e.g.*, *Petrohawk*, 2007 WL 211096 at *7 (dismissing constructive trust claim because "Petrohawk has no ownership interest or other ongoing obligation with regard to the diverted funds").  For these reasons, this claim fails to state a claim.

### (10)    Plaintiffs' Tenth Cause of Action Fails to State a Claim

In their tenth cause of action, Plaintiffs purport to assert a claim for intentional infliction of emotional distress ("IIED") against all Defendants.  *See* Am. Compl. ¶¶ 177-80.  To support this claim, Plaintiffs merely cross-reference "Defendants' conduct detailed herein" and claim that this alleged conduct "was so outrageous in character, and so extreme in degree, as to go beyond

all possible bounds of decency." *Id.* ¶ 178.  Ms. Cassini alleges that she now experiences "extreme and lasting stress, anxiety, and agoraphobia" and "continues to be fearful for her life." *Id.* ¶ 180.  Plaintiffs' allegations are insufficient as a matter of law.

To state a claim for IIED, Plaintiffs must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Selvam v. United States*, 2021 WL 5149809, at *51 (E.D.N.Y. Nov. 5, 2021) (citing *Chanko v. Am. Broad. Companies Inc.*, 27 N.Y.3d 46 (2016))).  This is a "rigorous[] and difficult [standard] to satisfy," and insufficiently pleaded claims have included those based on allegations of excessive force and allegations that prosecutors withheld evidence, prolonged a detention, and manipulated DNA reports.  *Id.* (collecting cases).  Plaintiffs must also allege the Defendants' "intent to cause, or disregard of a substantial probability of causing, severe emotional distress."  *Id.*

Although Plaintiffs purport to satisfy this standard by parroting the elements in their Amended Complaint (¶¶ 177-80), it is well-settled that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Moreover, Plaintiffs' allegations of "false arrest" and the purported sale of *Plaintiffs'* property does not constitute conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community."  *See Selvam*, 2021 WL 5149809, at *51.  Indeed, Ms. Cassini was arrested after she was held in contempt of court for refusing to comply with court orders, and this was affirmed on appeal.  Baiamonte Aff. Exs. L, O, P.  Similarly, the property that was sold belonged to the Estate, not Plaintiffs, as established by multiple final court orders.  *Id.* Exs. W, X, BB, CC, EE, FF, II, JJ.  For these reasons, Plaintiffs have failed to state a claim for IIED.

In addition, even if Plaintiffs were able to plead the necessary elements, this claim is time-barred.  A claim for intentional infliction of emotional distress is subject to a one-year statute of limitations.  *See* CPLR 215(3); *see also Truman v. Brown*, 434 F. Supp. 3d 100, 117 (S.D.N.Y. 2020).  Despite Plaintiffs' blanket claims of "continuing wrongs," the Amended Complaint is based on alleged harm that was caused to Plaintiffs as a result of court orders and decisions entered in 2017, 2018, and 2019, and the resulting 2019 sale of McCouns Lane and the 2019 Doyle auction.  Plaintiffs did not file this action until 2022, and Plaintiffs do not allege any "actionable event [that] occurred within one year of the suit."  *See Truman*, 434 F. Supp. 3d at 118.  This claim is time-barred.  *Id.*

Finally, this claim also fails because IIED is a tort of last resort.  This state law claim can only be brought when other theories of tort recovery are unavailable.  *See Salmon v. Blesser*, 802 F.3d 249, 256-57 (2d Cir. 2015).

**(11)    Plaintiffs' Eleventh Cause of Action Fails to State a Claim**

In their eleventh cause of action, Plaintiffs purport to assert a trespass claim against all Defendants excluding the New York City Sheriff.  *See* Am. Compl. ¶¶ 181-82.  According to Plaintiffs, those Defendants "and their agents intentionally or recklessly entered and remained upon Plaintiffs' property without Plaintiffs' permission and without justification."  *Id.* ¶ 182. Plaintiffs' allegations fail to state a claim for trespass.

Where a defendant obtains judicial approval prior to entry upon a plaintiff's property, there is no claim for trespass "unless plaintiffs allege that defendants obtained the . . . order either by concealing facts from the Justice issuing the order or by falsifying facts in the affidavit submitted in support of the order's issuance."  *Zeckendorf*, 282 A.D.2d at 295; *see also Cla-Mil E. Holding Corp. v. Medallion Funding Corp.*, 16 A.D.3d 194, 195 (1st Dep't 2005) ("The

trespass claim should also have been dismissed inasmuch as the entry onto plaintiff's premises and the repossession were duly ordered by the court upon a proper application with no undisclosed material fact."). Because any entry by Defendants upon property belonging to Plaintiffs – or allegedly belonging to Plaintiffs – was done pursuant to a duly entered court order, the trespass claim should be dismissed.

Plaintiffs' trespass claim is based on Defendants' entry upon McCouns Lane (for purposes of selling the real property) and entry upon other properties (for purposes of selling the Estate property located therein at the Doyle auction). As to McCouns Lane, this property belonged to OCI, not Plaintiffs, the Nassau County District Court entered a judgment of possession in favor of OCI that extinguished any purported right held by Ms. Cassini, and Ms. Cassini's appeal of that judgment was dismissed. *See* Baiamonte Aff. Exs. W, X. Thus, Plaintiffs cannot possibly state a claim for trespass as to McCouns Lane. Insofar as Plaintiffs' trespass claim is based on Defendants' entry upon other properties to take custody of Estate property for purposes of selling it at the Doyle auction, this was also done pursuant to court orders. *See id.* Exs. EE, FF, II, JJ. Plaintiffs have not alleged – and cannot allege – that these orders were obtained by "concealing facts" from Surrogate Reilly or "falsifying facts" in an affidavit submitted in support of the issuance of these orders. In fact, several of those orders were **stipulations signed by Ms. Cassini personally**. *See id.* Exs. DD, FF, HH. For all of these reasons, the trespass claim should be dismissed. *Zeckendorf*, 282 A.D.2d at 295; *Cla-Mil E. Holding Corp.*, 16 A.D.3d at 195.

### (12)   Plaintiffs' Twelfth Cause of Action Fails to State a Claim

In their twelfth cause of action, Plaintiffs purport to assert an unjust enrichment claim against the RICO defendants and Doyle. *See* Am. Compl. ¶¶ 183-85. As support, Plaintiffs simply

allege that "the RICO defendants and their co-conspirators, associates, and friends were enriched by hundreds of millions of dollars at Plaintiffs' expense," *id.* ¶ 184, but fail to allege what property belonging to Plaintiffs those Defendants actually received.  Notwithstanding this pleading failure, collateral estoppel precludes this claim, because all of the property at issue in Plaintiffs' Amended Complaint was determined to belong to the Estate, not Plaintiffs.  As such, Plaintiffs' unjust enrichment fails to allege that "the defendant's enrichment [was] at the expense of the plaintiff."  *Petrohawk*, 2007 WL 211096 at *7 (unjust enrichment claim "requires the defendant's enrichment to be at the expense of the plaintiff").

## POINT III

### THE AMENDED COMPLAINT IS BARRED BY THE DOCTRINES OF SOVEREIGN AND/OR JUDICIAL IMMUNITY AS AGAINST SURROGATE REILLY, THE RECEIVER, MR. MILLER, AND THE NEW YORK CITY SHERIFF

**A.    Sovereign and Judicial Immunity Bar All Claims Against Surrogate Reilly**

Sovereign immunity bars all claims against Surrogate Reilly in her official capacity as State Court Surrogate.  *See* U.S. Const., Amend. XI; *Anthony Pappas for Cong. v. Lorintz*, No. 18-cv-4199 (JS)(AKT), 2019 WL 4396589, at *13 (E.D.N.Y. Aug. 2, 2019*), report and recommendation adopted sub nom.* No. 18-cv-04199, 2019 WL 4396761 (E.D.N.Y. Aug. 26, 2019); *see also New York State Ct. Clerks Ass'n v. Unified Ct. Sys. of the State of New York*, 25 F. Supp. 3d 459, 467 (S.D.N.Y. 2014). Although the Amended Complaint does not indicate whether Surrogate Reilly has been sued in her official or individual capacity, Plaintiffs only allege actions taken in her official capacity as Surrogate presiding over the Estate proceedings. *See Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir. 1993) ("courts [must also] look to the course of proceedings to determine the nature of the liability to be imposed."). Given that framework, the claims are properly viewed as asserted against Surrogate Reilly in her official, not individual, capacity. *See, e.g. Andrews v. State*, 138 A.D.3d 1297, 1301 n.4 (3d Dep't 2016). It is well-

settled that New York State and its agencies and officers are protected from such suits by immunity under the Eleventh Amendment. *See Dube v. State Univ. of New York*, 900 F.2d 587, 594-95 (2d Cir. 1990); *Sassower v. Mangano*, 927 F. Supp. 113, 120 (E.D.N.Y. 1996). The NYS Unified Court System and its employees, including judges, are considered "arm[s] of the state" immune to suit in their official capacities. *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). Thus, the Court lacks subject matter jurisdiction over Plaintiffs' claims against Surrogate Reilly. Fed. R. Civ. P. 12(b)(1). Accordingly, the suit against Surrogate Reilly is barred by the Eleventh Amendment. *See, e.g., Ippolito v. Meisel*, 958 F.Supp. 155, 160 (S.D.N.Y. 1997) (New York State court judges immune from lawsuits in their official capacities).

Additionally, Surrogate Reilly in her individual capacity is entitled to absolute judicial immunity from suit. *See Raghavendra v. Fenn*, 2019 WL 4963257, at *4 (E.D.N.Y. Oct. 7, 2019); *Booker v. O'Brien*, 2019 WL 5267307, at *3 (E.D.N.Y. Oct. 16, 2019). The doctrine of absolute judicial immunity protects judicial officers from lawsuits brought against them in their individual capacity for their judicial actions. *Bradley v. Fisher*, 80 U.S. 335, 347 (1871). It is "well established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions," *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999). This immunity extends to state court judges sued in federal court pursuant to Section 1983. *See, e.g., Pizzolato v. Baer*, 551 F. Supp. 355, 356 (S.D.N.Y. 1982), *aff'd sub nom. Pizzolato v. City of New York*, 742 F.2d 1430 (2d Cir. 1983). "[J]udicial immunity is not overcome by allegations of bad faith or malice," and a judicial officer cannot "be deprived of immunity because the action he took was in error . . . or was in excess of authority." *Mireles v. Waco*, 502 U.S. 9, 11, 13 (1991). At all relevant times, Surrogate Reilly was a judicial officer, and Plaintiffs' allegations against her are acts she performed as a judicial officer. As such, she is immune from suit.

40

**B.**    **Judicial Immunity Bars All Claims Against the Court-Appointed Receiver, Ms. Baiamonte, and Her Court-Appointed Counsel, Mr. Miller**

The Receiver, as an officer of the Court, is also entitled to judicial immunity.  *See Bradford Audio Corp. v. Pious*, 392 F.2d 67, 73 (2d Cir. 1968) ("Officers of the courts, such as receivers who act in obedience to the lawful mandate of the court or in obedience to lawful process of any sort, are protected or privileged in respect to acts done under such lawful authority."); *MacKay v. Crews*, No. 09-CV-2218, 2009 WL 5062119, at *12 n.19 (E.D.N.Y. Dec. 16, 2009) ("If a court-appointed receiver is acting in accordance with a judicial mandate, he or she is immune from suit.").  This immunity similarly applies to Mr. Miller, as the Receiver's court-appointed counsel.  *See Chua v. Ekonomou*, 1 F.4th 948, 955 (11th Cir. 2021) (holding that a receiver's immunity "extends to [the receiver's] counsel as well"); *Livecchi v. Gordon and Schall, LLP*, 2015 WL 277640 at *4 (W.D.N.Y. Jan. 22, 2015) (trustee's counsel entitled to judicial immunity); ); *see also In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993) ("The protection ... afford[ed] the Trustee ... would be meaningless if it could be avoided by simply suing the Trustee's attorneys.").  There can be no serious dispute that all actions taken by the Receiver and her counsel referenced in the Amended Complaint were taken pursuant to duly entered court orders and decisions and otherwise in accordance with court rules and New York law.  That Plaintiffs disagree with those actions does not afford them a federal cause of action.

In Plaintiffs' June 20, 2022 response to the Receiver's pre-motion conference request (ECF No. 21), Plaintiffs' counsel claimed that immunity does not apply because the Second Department vacated the Receiver's initial appointment.  This argument is misplaced on two separate grounds.  First, the actions challenged in this federal action – Marianne's 2018 arrest and the 2019 sale of Estate property – were not impacted by the Second Department's ruling. The Second Department's ruling was expressly limited to vacating any orders, decisions, and

judgments entered during the period of the CPLR 321(c) stay – *i.e.*, between March 14, 2016 and July 25, 2016.   While Marianne **requested** that the Second Department "declare void **all** decisions, orders, and judgments entered after March 14, 2016," the Court's decision expressly affected only those orders entered "between March 14, 2016, and July 25, 2016."  *See Matter of Cassini*, 180 A.D.3d 13, 57 (2d Dep't 2020) (emphasis added).   Each and every court order, decision or judgment that bars this action was entered well after July 25, 2016, and was and still is in full force and effect.[11]   Second, Plaintiffs' argument that the immunity afforded to a court-appointed receiver (or a receiver's court-appointed attorney) for acts undertaken pursuant to court order can be retroactively removed if the order appointing the receiver is subsequently appealed, vacated, or modified months or years later finds no support in the law.

## C.   Quasi-Judicial Immunity Bars All Claims Against the New York City Sheriff

The New York City (Defendant Joseph Fucito) is entitled to quasi-judicial immunity because all of Plaintiffs' claims against him stem from Ms. Cassini's May 3, 2018 arrest, which was effectuated pursuant to a lawful warrant.  "Quasi-judicial immunity extends to those officials performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune. Those tasks include discretionary acts directed by a judge." *Harley v. Guida*, No. 19-CV-6152(EK)(MMH), 2022 U.S. Dist. LEXIS 176529, at *7 (E.D.N.Y. Sep. 28, 2022) quoting *Tornheim v. Eason*, 363 F. Supp. 2d 674, 677 (S.D.N.Y. 2005) (internal quotation marks omitted). When relying upon a facially valid warrant, a sheriff is "afforded complete protection from liability for any proper act done in its execution."

---

[11] Moreover, while the Second Department did vacate the Receiver's July 1, 2016 appointment on procedural grounds, the Court nevertheless found that "based on the evidentiary showing made on the cross motion by the objectants [i.e., the litany of bad acts engaged in by Marianne], the receiver should remain in place as a temporary receiver pending a new determination" of Objectants' motion.  Baiamonte Aff. Ex. L.  On remand, Objectants renewed their motion, Marianne was given notice and an opportunity to be heard, **Marianne consented to the Receiver's appointment**, and the Surrogate's Court granted the motion.  *Id.* Exs. M and N.

*Tornheim v. Eason*, 363 F. Supp.2d 674, 676-77 (S.D.N.Y. 2005) quoting *Iovinella v. Sheriff of Schenectady Co.*, 67 A.D.2d 1037, 413 N.Y.S.2d 497 (3d Dep't 1979); *see also Maldonado v. New York County Sheriff*, 2006 U.S. Dist. LEXIS 64391, 2006 WL 2588911 *3 (S.D.N.Y. 2006) (dismissing civil rights claim against Sheriff on ground of quasi-judicial immunity). Here, Plaintiffs' own pleading states that "Judge Reilly issued a contempt order and directed the arrest and confinement of Mrs. Cassini." Am. Compl. ¶ 67.

Furthermore, "where an official acts within the bounds of a facially valid court order, however, he has no obligation to independently research its validity; in fact, he has no authority to question its legality. A sheriff is not empowered to review a facially valid court order; it is not within his scope of authority to question the legality of the provision in the Judgment." *Harley v. Guida*, No. 19-CV-6152(EK)(MMH), 2022 U.S. Dist. LEXIS 176529, at *9 (E.D.N.Y. Sep. 28, 2022) (quoting *Tornheim*, 363 F. Supp. 2d at 677) (internal quotation marks omitted).

<u>**POINT IV**</u>

<u>**THE AMENDED COMPLAINT IS BARRED BY THE *BARTON* DOCTRINE AS AGAINST THE RECEIVER AND HER COUNSEL, MR. MILLER**</u>

The Amended Complaint also ignores the *Barton* Doctrine, established by the Supreme Court more than one hundred years ago, which provides that "before suit is brought against a receiver[,] leave of the court by which he was appointed must be obtained." *Barton v. Barbour*, 104 U.S. 126, 128 (1881); *see also McIntire v. China MediaExpress Holdings, Inc.*, 113 F. Supp. 3d 769, 772 (S.D.N.Y. 2015) ("A receiver is an officer of the court which appointed him or her and 'cannot be sued without the court's consent.'" (citations omitted)). "The *Barton* doctrine applies to actions against a receiver as well as a receiver's counsel." *See Scharrer v. Fundamental Admin. Servs., LLC*, No. 812CV1854T35MAP, 2013 WL 12169310, at *3 (M.D. Fla. Sept. 10, 2013) (citing *Lawrence v. Goldberg*, 573 F.3d 1265, 1269 (11th Cir. 2009)). It is

43

irrelevant that Plaintiffs claim, without any support, that the Receiver "conspired" with the judge who appointed her.  *See, e.g.*, *Bell v. McLemore & Young PLLC*, No. 3:17-CV-959, 2017 WL 4999627, at *1–2 (M.D. Tenn. Nov. 2, 2017), *report and recommendation adopted sub nom. Bell v. McLemore*, No. 3:17-CV-00959, 2017 WL 5899270 (M.D. Tenn. Nov. 30, 2017) (applying the *Barton* doctrine despite plaintiff's allegations that the bankruptcy trustee was conspiring with the bankruptcy court that appointed him).

When the Receiver raised the *Barton* doctrine in her pre-motion letter, Plaintiffs' sole response was that "[t]he *Barton* Doctrine applies to bankruptcy trustees in connection with their official actions taken in the custody of bankruptcy proceedings, so is inapplicable here."  ECF No. 21 at p.2.  Not so.  As expressly stated in *McIntire*, "**the *Barton* Doctrine clearly applies to all proceedings involving receivers—not bankruptcy alone**."  *See McIntire*, 113 F. Supp. 3d at 769 (emphasis added). Because Plaintiffs indisputably did not seek leave of the appointing court before commencing this action against the Receiver, the Amended Complaint should be dismissed as against the Receiver pursuant to the *Barton* doctrine.

## POINT V

## PLAINTIFFS' CLAIMS AGAINST DOYLE ARE BARRED BY RES JUDICATA

Under the doctrine of res judicata, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *See Lipin*, 202 F. Supp. 2d at 135 (quoting *Saud v. Bank of New York*, 929 F.2d 916, 918-19 (2d Cir. 1991)).  As stated by New York's Court of Appeals, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."  *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981); *see also Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 31 N.Y.3d 64, 72 (2018) (doctrine bars "not only every matter which

was offered and received to sustain or defeat the claim or demand, but also any other admissible matter which might have been offered for that purpose").

Ms. Cassini and Gemeaux, the Plaintiffs in this action, have already sued Doyle for conversion in New York County Supreme Court, claiming that they owned the Doyle Auctioned Property that was sold in June 2019, and lost.  The conversion action was dismissed by the Supreme Court and recently affirmed by the First Department, after those courts were presented with the underlying Surrogate's Court orders that determined the Doyle Auctioned Property belonged to the Estate.  *See Gemeaux Ltd. v. William Doyle Galleries, Inc.*, 2021 WL 6249530 (Sup. Ct. N.Y. Cnty. Dec. 7, 2021), *aff'd*, 175 N.Y.S.3d 730, 731 (1st Dep't Nov. 1, 2022) (Baiamonte Aff. Exs. II and JJ).

Just like Plaintiffs' conversion action in state court, all of Plaintiffs' claims against Doyle here are based on the auction, and Plaintiffs' allegation that they owned the Doyle Auctioned Property – allegations that were expressly rejected by the Supreme Court and the First Department.  Therefore, res judicata bars "all other claims arising out of the same transaction or series of transactions."  *O'Brien*, 54 N.Y.2d at 357; *Paramount Pictures*, 31 N.Y.3d at 72; *Abraham v Hermitage Ins. Co*., 47 AD3d 855, 855-56 (2d Dept. 2008).

## POINT VI

### THIS COURT SHOULD DECLINE TO ADJUDICATE ANY DISPUTES THAT ARE SUBJECT TO FURTHER STATE COURT PROCEEDINGS UNDER THE COLORADO RIVER DOCTRINE OF ABSTENTION

Although Defendants respectfully submit that all of Plaintiffs' claims herein are the subject of a final state court order, should Plaintiffs argue – or this Court conclude – that any of the issues raised by Plaintiffs' Amended Complaint are subject to further proceedings in the Surrogate's Court, this Court should decline to hear them pursuant to the *Colorado River* abstention doctrine.

Under "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," a district court may dismiss a federal action where there is an ongoing parallel state court action under the rule of abstention first articulated by the United States Supreme Court in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). In determining whether abstention is proper, the district court must weigh six factors: "(1) assumption of jurisdiction over a *res*; (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiff's rights." *FDIC v. Four Star Holding Co.*, 178 F.3d 97, 101 (2d Cir. 1999); *see also De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989) (affirming order abstaining from exercising jurisdiction pending adjudication of parallel state court action after balancing the six factors). These factors are not a mechanical checklist and "no single factor is necessarily decisive." *De Cisneros*, 871 F.2d at 307 (citations omitted). Instead, abstention is based on a "balancing of the important factors as they apply in a given case." *Id.* Here, the first, third, fourth, and sixth factors all support abstention.

As to the first factor, although Plaintiffs purport to bring this action pursuant to various federal statutes, at its core, the Amended Complaint is based on Plaintiffs' assertion of ownership over various Estate assets. The Surrogate's Court indisputably has jurisdiction over the property of the Estate. Thus, this factor favors abstention. *See Durst v. Siegler*, 2005 WL 3358599 at *9 (S.D.N.Y. Dec. 7, 2005) (first factor supported abstention in diversity action regarding trusts over which Surrogate's Court had jurisdiction).

The third factor also weighs heavily in favor of abstention. As noted, the entirety of Plaintiffs' Amended Complaint is based on their complaints as to how the Surrogate's Court has

administered the Estate.  If this Court were to weigh in on these issues (and, respectfully, it should not), "[t]here is a real risk that this Court's ruling and the Surrogate's Court ruling on such matters might be inconsistent."  *In re Horler*, 799 F. Supp. 1457, 1464 (S.D.N.Y. 1992) (third factor favored abstention where "many of the issues originally presented to this Court for resolution have been, or are being, litigated in the Surrogate's Court").

The fourth factor clearly favors abstention as the administration of the Estate has been ongoing since Mr. Cassini died in 2006, long before Plaintiff filed this action.  And the sixth factor – whether Plaintiffs' rights will be protected – also favors abstention because Plaintiffs are parties to the Surrogate's Court proceedings.  Should Plaintiffs claim that their rights will not be protected based on their perceived bias of the Surrogate's Court, the point is moot as the Estate proceedings are now being heard by Acting Surrogate Teresa Corrigan as a result of this lawsuit.

Lastly, as other courts in this district have noted, any decision on abstention may be "influenced, in part, by the special expertise of the Surrogate's Court in matters related to the probate and administration of wills."  *Horler*, 799 F. Supp. at 1466.  This is because "abstention is particularly appropriate in cases whose resolution may interfere with ongoing probate proceedings."  *Id.*  Plaintiffs are asking this Court to unwind years of orders and decisions by the Surrogate's Court, and potentially impact future Estate proceedings, and for this additional reason, the Court should abstain from hearing this action.

**POINT VII**

**ALL CLAIMS AGAINST DEFENDANT JOSEPH FUCITO SHOULD BE DISMISSED**

**A.**     **Plaintiffs' Claims Against Fucito Are Time-Barred**

Plaintiffs purport to allege federal claims for (i) unlawful seizure, (ii) violation of the Due Process Clause, and (iii) conspiracy against Defendant Fucito, which all arise in connection with Ms. Cassini's May 3, 2018 arrest. These federal claims are time-barred.

Plaintiffs' three federal claims against Defendant Fucito accrued on the date of Ms. Cassini's arrest. *See Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002); *see also Wallace v. Kato*, 549 U.S. 384, 391 (2007) ("Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages.") (citations omitted); *Ying Li v. City of N.Y.*, 246 F. Supp. 3d 578, 601 (E.D.N.Y. 2017); *Chodos v. F.B.I.*, 559 F. Supp. 69, 74 (S.D.N.Y. 1982); *Ellis v. Kelly*, No. 17-CV-6656 (RRM), 2019 U.S. Dist. LEXIS 43990, at *14 (E.D.N.Y. Mar. 18, 2019) ("An excessive force claim accrues when the use of force occurred.") (citations and quotations omitted).[12] The statute of limitations for a § 1983 civil rights action in New York is three years. *See Owens v. Okure*, 488 U.S. 235, 251 (1999). Thus, Plaintiffs' three federal claims against Defendant Fucito accrued on May 3, 2018, and the three-year statute of limitations expired on May 3, 2021.  Because Plaintiffs filed the Complaint on March 27, 2022, Plaintiffs' purported claims for false arrest, violation of the Due Process Clause and conspiracy are time barred.

**B.**    **Plaintiffs' Claims Against Fucito Also Fail For Lack of Personal Involvement**

This action should also be dismissed against Defendant Fucito because Plaintiffs have not alleged any personal involvement of Defendant Fucito in the alleged constitutional violations.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Byrd v. City of New York*, No. 17-CV-2166 (AJP), 2018 U.S. Dist. LEXIS 392 at **18-19 n.11 (S.D.N.Y. Jan. 2, 2018) (quoting *Jones v. Parmley*, 714 F. App'x 42, 46 (2d Cir. 2017)). To show personal involvement for supervisory liability, Plaintiffs must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti*

---

[12] Although Plaintiffs did not plead an excessive force claim as no such claim is separately delineated in the Amended Complaint, should the Court construe the Amended Complaint to allege an excessive force claim, such claim is also time barred.

*v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S 662, 676 (2009)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Amended Complaint fails to allege the specific conduct attributable to Defendant Fucito that allegedly caused any of Plaintiffs' claimed constitutional violations. *See* Am. Compl. Accordingly, Defendant Fucito must be dismissed for lack of personal involvement.

## POINT VIII

## PLAINTIFFS' PURPORTED STATE LAW CLAIMS AGAINST FUCITO, NASSAU COUNTY, CURRAN, DELUCA AND DZURENDA ARE PROCEDURALLY BARRED

Plaintiffs failed to plead compliance with New York General Municipal Law and as such, all of Plaintiffs' purported state law claims against Defendants Fucito, County of Nassau, Curran, DeLuca, and Dzurenda should be dismissed for this additional reason.

New York General Municipal Law requires a notice of claim to be served against the City prior to commencing an action in tort against municipal corporations like the City or County or their employees. N.Y. Gen. Mun. Law, § 50-i(1); *see* N.Y. County Law § 52.   N.Y. Gen. Mun. Law § 50-i requires a plaintiff to plead in the complaint that: (1) he has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed (and before the complaint was filed); and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim. *See* Gen. Mun. Law § 50-i(1).   The Amended Complaint is entirely silent as to the Plaintiffs' compliance with the statutory conditions precedent.  If they did not comply, all of the state law claims fail. *See Candelario v. MTA Bus Co.*, 2008 NY Slip Op 52544(U), ¶ 16, 21 Misc. 3d 1148(A), 1148A, 875 N.Y.S.2d 819 (Sup. Ct.) ("The failure to plead what GML 50-i generally requires mandates dismissal of the complaint for failure to state a cause of action.")

Nevertheless, even if Plaintiffs did file a notice of claim, the state law claims must be dismissed because Plaintiffs did not plead compliance with General Municipal Law. *See id.*

Even if Plaintiffs timely filed a notice of claim and properly plead such in the Amended Complaint – which they did not – Plaintiffs still failed to comply with the General Municipal Law because, upon information and belief, Plaintiffs did not commence this action "within one year and ninety days after the happening of the event upon which the claim is based." N.Y. Gen. Mun. Law § 50-i(1) (A claim against the City or its employees must be "commenced within one year and ninety days after the happening of the event upon which the claim is based"); *see also Kennedy v. Arias*, 12 Civ. 4166 (KPF), 2017 U.S. Dist. LEXIS 103576, at *34-35 (S.D.N.Y. July 5, 2017) ("[N]o tort action shall be prosecuted or maintained against a municipality or any of its officers, agents, or employees unless[…] the action is commenced within one year and ninety days after the event upon which the claim is based occurred." (citations omitted). "[I]n a federal court, state notice-of-claim statutes apply to state-law claims." *Kennedy*, 2017 U.S. Dist. LEXIS 103576, at *34-35 (citing *Hardy v. N.Y.C. Health & Hosps. Corp.,* 164 F.3d 789, 793 (2d Cir. 1999)). The "notice-of-claim requirement is 'construed strictly by New York state courts,' and '[f]ailure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action.'" *Id.* at *34-35 (citing *Berry v. Village of Millbrook*, 815 F. Supp. 2d 711, 724 (S.D.N.Y. 2011)).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant their joint motion to dismiss the Amended Complaint, and grant them such other and further relief as the Court deems just, proper and equitable.

Dated: Uniondale, New York
       December 23, 2022

WESTERMAN BALL EDERER
MILLER ZUCKER & SHARFSTEIN, LLP

By: /s Jeffrey A. Miller
    Jeffrey A. Miller, Esq.
    1201 RXR Plaza
    Uniondale, NY 11556
    (516) 622-9200
    jmiller@westermanllp.com
    *Attorneys for Rosalia Baiamonte*

KAUFMAN DOLOWICH & VOLUCK, LLP

By: /s Brett A. Scher
    Brett A. Scher, Esq.
    135 Crossways Park Drive, Suite 201
    Woodbury, NY 11797
    (516) 681-1100
    bscher@kdvlaw.com
    *Attorneys for Jeffrey A. Miller*

LETITIA JAMES
Attorney General
State of New York

By: /s Steven A. Sutro
    Steven A. Sutro
    Assistant Attorney General
    28 Liberty Street
    New York, NY 10005
    Phone: (212) 416-8273
    Steven.Sutro@ag.ny.gov
    *Attorney for Surrogate Reilly*

THOMAS A. ADAMS
Nassau County Attorney


By: /Matthew M. Rozea_____
    Matthew M. Rozea
    Deputy County Attorney
    1 West Street
    Mineola, New York 11501
    (516) 571-0709
    mrozea@nassaucountyny.gov
    *Attorneys for Defendant County of Nassau,*
    *Brian Curran, and Jeffrey DeLuca*


L'ABBATE, BALKAN, COLAVITA &
CONTINI, L.L.P.


By: /s Marian C. Rice_____
    Marian C. Rice
    3 Huntington Quadrangle, Suite 102S
    Melville, New York 11747
    (516) 294-8844
    mrice@lbcclaw.com
    *Attorneys for Defendant Kenneth Mahon*


HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the
City of New York


By:  /s Inna Shapovalova_____
    Inna Shapovalova
    Senior Counsel
    100 Church Street
    New York, New York  10007
    (212) 356-2656
    inshapov@law.nyc.gov
    *Attorney for Defendant Fucito*

FARRELL FRITZ, P.C.


By:     /s Kevin P. Mulry
        Kevin P. Mulry
        400 RXR Plaza
        Uniondale, New York 11556
        Tel. (516) 227-0700
        kmulry@farrellfritz.com
        *Attorneys for William Doyle Galleries, Inc.*

2723035