IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIANNE NESTOR CASSINI and GEMEAUX LTD., | |
| Plaintiffs, | Case No. 22-cv-01696-DG-AYS |
| v. | |
| COUNTY OF NASSAU, BRIAN CURRAN, in his official capacity as NASSAU COUNTY PUBLIC ADMINISTRATOR, JEFFREY DELUCA, KENNETH MAHON, MARGARET C. REILLY, ROSALIA BAIAMONTE, JEFFREY MILLER, WILLIAM DOYLE GALLERIES, INC., JAMES DZURENDA, in his official capacity as NASSAU COUNTY SHERIFF, JOSEPH FUCITO, in his official capacity as NEW YORK CITY SHERIFF, and JOHN & JANE DOES 1-10, | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' JOINT MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. 4

I.   INTRODUCTION ................................................................. 9
II.  ARGUMENT ...................................................................... 9

**Standard of Review ................................................................. 9**

A. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION ........... 11

   1. The *Rooker-Feldman* Abstention Doctrine Does Not Apply ......................... 11
   2. The Colorado River Abstention Doctrine Does Not Apply .......................... 16

B. ALL CAUSES OF ACTION ASSERTED IN THE AMENDED COMPLAINTARE SUFFICIENTLY PLED OR, WHERE PLEADING DEFICIENCIES EXIST, THEY CAN BE CURED BY AMENDMENT AND THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO AMEND THE COMPLAINT ................................................................. 19

   1.  Plaintiffs' Civil RICO Claim is Sufficiently Pled at this Stage of the Proceeding, and to the Extent this Court Finds Pleading Insufficiency, Plaintiffs Should Be Permitted to Amend the Complaint ................................................................. 19
   2.  Plaintiffs' Due Process Claim Is Sufficiently Pled .................................... 22
   3.  Plaintiffs' Fourth Amendment Cause of Action is Sufficiently Pled .......................... 22
   4.  Plaintiffs' Eighth Amendment Claim Is Proper ........................................... 24
   5.  Plaintiffs' Section 1986 and 1986 Claims Are Sufficiently Pled ............................... 25
   6.  Plaintiffs' Abuse of Process Claim is Sufficiently Pled and Is Not Time Barred ........ 26
   7.  Plaintiffs' Claim for Conversion is Valid and Not Barred by Collateral Estoppel ...... 27
   8.  Plaintiffs' Claim for Breach of Fiduciary Duty Is Sufficiently Pled ........................... 28
   9.  Plaintiffs' Constructive Trust Claim is Sufficiently Pled and is Not Barred by Collateral Estoppel ................................................................. 28
   10. Plaintiff Has Sufficiently Pled a Claim of Intentional Infliction of Emotional Distress Against All Defendants ................................................................. 29
   11. Plaintiffs' Cause of Action for Trespass is Sufficiently Pled and Therefore Not Subject to Dismissal at this Time ................................................................. 30
   12. Plaintiffs' Unjust Enrichment Claim is Sufficiently Pled and Is Not Barred by Collateral Estoppel ................................................................. 30

C. NONE OF THE DEFENDANTS ARE IMMUNE FROM SUIT, NOR ARE PLAINTIFFS' CLAIMS BARRED ON THE BASIS OF ANY OTHER LEGAL DOCTRINE OR STATUTE OF LIMITATIONS ................................................................. 31

   1.  Judge Margaret Reilly ................................................................. 31
   2.  Receiver Rosalia Baiamonte ........................................................ 34

      a.  Judicial Immunity ................................................................. 34
      b.  The Barton Doctrine ................................................................. 35

   3.  Attorney for the Receiver Jeffrey Miller ................................................ 38

      a.  Judicial Immunity ................................................................. 38
      b.  The Barton Doctrine ................................................................. 39

   4.  NYC Sheriff Joseph Fucito ........................................................... 39

      a.   Qualified Immunity..............................................................................................39
      b.   Statute of Limitations.........................................................................................40
      c.   Claimed Lack of Personal Involvement...............................................................42
   5.  William Doyle Galleries..........................................................................................43
III.  CONCLUSION .................................................................................................................45

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

*192 Morgan Realty, LLC v Aquatorium, LLC*, 2021 U.S. Dist LEXIS 212990 (E.D.N.Y. Nov. 3, 2021) ................................................................................................................................ 16

*AIU Insurance Co. v. Olmecs Medical Supply, Inc.,* No. 04-2934, 2005 U.S. Dist. LEXIS 29666, 2005 WL 3710370 (E.D.N.Y. Feb. 22, 2005)............................................................... 20

*Angermeir v Cohen*, 14 F. Supp 3d 134 (S.D.N.Y. 2014) .......................................................... 20

*Arkwright—Boston Mfrs. Mut. Ins. Co. v. City of New York,* 762 F. 2d 205 (2d Cir. 1985)........ 18

*Atkins v. Apollo Real Estate Advisors, L.P.*, 2008 U.S. Dist. LEXIS 35514 (E.D.N.Y. Apr. 30, 2008, No. CV-05-4365) ............................................................................................................ 20

*Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F3d 107 [2d Cir 2004] ....................... 26

*Barone v United States*, 2016 U.S. Dist. LEXIS 59946 (S.D.N.Y. May 5, 2016)........................ 29

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............... 10

*Bradford Audio Corp. v. Pious*, 392 F.2d 67 ............................................................................. 35

*Bugliotti v. Republic of Arg.*, 2021 U.S. Dist LEXIS 62770 (S.D.N.Y. Mar. 31, 2021]).............. 11

*Cain v Bethea*, 2007 U.S. Dist. LEXIS 75824 (E.D.N.Y. Aug. 17, 2007) ................................... 44

*Caldwell v Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp 2d 340 (E.D.N.Y. 2010) .. 15

*Cent. UTA of Monsey v. Vil. of Airmont*, 2020 U.S. Dist. LEXIS 13154 (S.D.N.Y. Jan. 22, 2020) ................................................................................................................................................. 39

*Cf. Lurie v. Blackwell,* 211 F.3d 1274, [published in full-text format at 2000 U.S. App. LEXIS 3360] 2000 WL 237966 (9th Cir. Feb. 18, 2000) (unpublished table decision).")...................... 37

*Clarex Ltd. v. Natixis Sec. Am. LLC*, 2012 U.S. Dist. LEXIS 147485 (S.D.N.Y. Oct. 12, 2012) 10

*Collins v Lippman*, 2005 U.S. Dist. LEXIS 11116 (E.D.N.Y. June 8, 2005).............................. 34

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 1246, 47 L. Ed. 2d 483 (1976) ........................................................................................... 11, 18

*Council v Better Homes Depot, Inc.*, 2006 U.S. Dist. LEXIS 57851 (E.D.N.Y. Aug. 16, 2006)] 44

*County of Suffolk v. Long Island Lighting Co.,* 710 F. Supp. 1387, 1393 (E.D.N.Y. 1989) ........ 43

*Dekom v. Fannie Mae*, 846 F App'x 14, 18 (2d Cir. 2021) ........................................................ 31

4

*Dittmer v. County of Suffolk,* 146 F.3d 113 (2d Cir. 1998).........................................................16

*Dubin v. County of Nassau*, 277 F. Supp 3d 366 [E.D.N.Y. 2017])......................................45

*Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197,167 L. Ed. 2d 1081 (2007) .........................20

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005) .........................................................................................................................15

*Exxon Mobil Corp.,* 544 U.S., 125 S. Ct. (2005) .............................................................14, 16

*Feliciano v County of Suffolk*, 419 F Supp 2d 302 (E.D.N.Y. 2005) .......................................24

*Friedman v. Hartmann,* No. 91-1523, 1994 U.S. Dist. LEXIS 9727, 1994 WL 376058 (S.D.N.Y. July 15, 1994).........................................................................................................................20

*Gonzalez*...........................................................................................................................11

*Green v Schriro*, 2019 U.S. Dist. LEXIS 67916 (E.D.N.Y. Apr. 22, 2019).........................27, 42

*Green v. Mattingly*, 585 F.3d 97 (2d Cir. 2009) ............................................................13, 15

*Grover v. Sattar*, 2019 WL 8356587 (E.D.N.Y. Dec. 16, 2019) ..........................................16, 18

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) .........................39

*Harris v. NYU Langone Med. Ctr.*, No. 12-CV-454, 2013 U.S. Dist. LEXIS 99328, 2013 WL 3487032 (S.D.N.Y. July 9, 2013) ........................................................................................20

*Heck v Humphrey,* 512 U.S. 477 (1994) ...............................................................................41

*Hoblock*, 422 F.3d.........................................................................................................14, 15

*Hudak v. Berkley Grp., Inc.*, No. 13-CV-89, 2014 U.S. Dist. LEXIS 8168, 2014 WL 354676 (D. Conn. Jan. 23, 2014) .........................................................................................................20

*In re Ctr. Teleproductions, Inc.*, 112 BR 567 (Bankr. S.D.N.Y. 1990).....................................35

*In re Horler*, 799 F. Supp. 1457 [S.D.N.Y. 1992] ................................................................18

*In re Slater*, 200 B.R. 491 (E.D.N.Y. 1996) .......................................................................43

*In re Ward*, 423 BR 22 (Bankr E.D.N.Y. 2010) ..................................................................43

*J.S. v. Attica Cent. Schs.*, 386 F.3d 107 (2d Cir. 2004)..........................................................11

*James v. Kaskiw*, 2016 U.S. Dist. LEXIS 10943 (N.D.N.Y. Jan. 28, 2016) ...............................24

*Johnson v Gonzalez*, 2007 U.S. Dist. LEXIS 114057 (E.D.N.Y. Mar. 28, 2007)..................9, 10

*Katz v. Kucej (In re Biebel)*, 2009 Bankr. LEXIS 1544 (Bankr. D.Conn May 19, 2009) ............ 36

*Kelleran v. Andrijevic*, 825 F.2d 692 (2d Cir. 1987), *cert. denied*, 484 U.S. 1007, 108 S. Ct. 701, 98 L. Ed. 2d 652 (1988) .................................................................................................. 43

*Kennedy-Bifulco v. Town of Huntington*, 2010 U.S. Dist. LEXIS 141928 (E.D.N.Y. Oct. 29, 2010) ........................................................................................................................ 27

*Kopec v Coughlin*, 922 F.2d 152, (2d Cir. 1991)..................................................................... 10

*Leonard v. Vrooman,* 383 F.2d 556 (9th Cir. 1967), *cert. denied,* 390 U.S. 925, 88 S. Ct. 856, 19 L. Ed. 2d 985 (1968) ..................................................................................................... 36

*Lerner v. Fleet Bank. N.A.*, 318 F.3d 113 (2d Cir. 2003) ......................................................... 9

*Lipin v. Natl. Union Fire Ins. Co.*, 202 F. Supp 2d 126 (S.D.N.Y. 2002) ................................ 13

*Lurie v. Blackwell,* 211 F.3d 1274 ........................................................................................ 37

*Matter of Cassini*, 182 A.D.3d 1 (2d Dep't 2020) .................................................................... 13

*Matter of Cassini*, 182 A.D.3d 13 (2d Dep't 2020) ........................................................ 23, 32, 41

*Milhaven v Country Vil. Apt.*, 2020 US Dist LEXIS 174847, (S.D.N.Y. Sep. 23, 2020)............. 12

*Mireles v. Waco*, 502 U.S. 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991)....................................... 31

*Morelli v Alters*, 2020 U.S. Dist. LEXIS 47351 (S.D.N.Y. Mar. 18, 2020)................................ 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1,, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983))................................................................................................................... 18

*Muratore v. Darr*, 375 F.3d 140 (1st Cir. 2004)..................................................................... 37

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp*, 108 F.3d 17 (2d Cir.1997) ............................ 16

*Natl. Union Fire Ins. Co.*, 202 F. Supp 2d 126 ..................................................................... 14

*Natural Res. Def. Council v. Johnson*, 461 F.3d 164, (2d Cir. 2006)....................................... 10

*Nazareno v. Cardello*, 2021 U.S. Dist. LEXIS 103861 (E.D.N.Y. Apr. 28, 2021)..................... 35

*Niagara Mohawk Power Corp.,* 673 F.3d ............................................................................. 17

*Nowacki v. Town of New Canaan*, 2017 U.S. Dist. LEXIS 44908 (D. Conn. Mar. 28, 2017)..... 23

*Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995) ......................................................... 42

*Pulliam v. Allen,* 466 U.S. 522, 80 L. Ed. 2d 565, 104 S. Ct. 1970 (1984)................................. 34

*Reliability Inc. v. Doki*, 2021 U.S. Dist. LEXIS 146050 (S.D.N.Y. Aug. 4, 2021)...................... 16

*Reynolds v Giuliani*, 506 F.3d 183 (2d Cir. 2007) ......................................................... 43

*Schweitzer v. Crofton*, 935 F.Supp 2d 527 (E.D.N.Y. 2013) ........................................ 12

*State Farm Mut. Auto. Ins. Co. v Cohan*, 2013 US Dist LEXIS 118667 [EDNY Aug. 20, 2013)29

*Sterling v Deutsche Bank Natl. Trust Co.*, 2019 U.S. Dist. LEXIS 140367 (S.D.N.Y. Aug. 15, 2019) ............................................................................................................... 12, 13

*Supreme Court v. Consumers Union, Inc.,* 446 U.S. 719 735, 64 L. Ed. 2d 641, 100 S. Ct. 1967 (1980) ........................................................................................................... 34

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) .................. 20

*Teton Millwork Sales v. Schlossberg,* 311 Fed. Appx. 145, 2009 WL 323141 (10th Cir. 2009) . 37

*Tucker v Outwater*, 118 F.3d 930 (2d Cir. 1997) ............................................................ 33

*United States v Polouizzi*, 697 F. Supp 2d 381 (E.D.N.Y. 2010) ................................... 24

*Weinberger v. Wiesenfeld*, 420 U.S. 636, 43 L. Ed. 2d 514, 95 S. Ct. 1225 (1975) ..................... 26

*Windward Bora, LLC,* 2020 U.S. Dist. LEXIS 223692, 2020 WL 7042761 .............................. 16

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004) ......................................................... 20

*Ying Li v. City of N.Y.*, 246 F. Supp 3d 578 (E.D.N.Y. 2017) ......................................... 22

**STATUTES**

§ 1983 ............................................................................................................... 41

18 U.S.C. § 1957 ................................................................................................. 21

18 U.S.C. §§ 2314 and 2315 ................................................................................. 21

28 U.S.C. § 959 ................................................................................................... 37

42 U.S.C. §§1985 & 1986 ............................................................................... 25, 45

42 U.S.C. §1983 ............................................................................................... 9, 40

CPLR §3211(a)(1) ................................................................................................ 43

Fed. R. Civ. P. 12(b)(1) and (6) ............................................................................. 9

Fed. R. Civ. P. 56 ................................................................................................. 11

# I.    INTRODUCTION

Plaintiffs have brought this action against various state and non-state actors alleging violation of the civil Racketeer Influenced and Corrupt Organizations ("RICO") statute, constitutional violations pursuant to 42 U.S.C. §1983, and multiple state law claims. All Defendants are involved in an ongoing conspiracy aimed at depriving Plaintiffs and, upon information and belief, similarly situated persons and entities, of property for Defendants' own financial gain. The acts alleged in the Amended Complaint are of the worst kind, abusing the legal process callously, motivated by greed and without regard for their professional and fiduciary duties.

Defendants now move to dismiss the Amended Complaint. They assert a variety of jurisdictional bars, immunities, and failure to state a claim. Defendants must not be allowed to escape liability for their unlawful and unethical actions. Defendants' motion ought to be denied in its entirety for all of the reasons set forth hereinbelow.

# II.    ARGUMENT

Standard of Review

Defendants move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). "The standards for dismissal under Rules 12(b)(1) and 12(b)(6) are, for the most part, substantively identical, *see Lerner v. Fleet Bank. N.A.*, 318 F.3d 113, 128 (2d Cir. 2003), with a crucial exception being that the party invoking the jurisdiction of the court bears the burden of proof in a Rule 12(b)(1) motion while the defendant bears the burden of proof in a 12(b)(6) motion." *Johnson v Gonzalez*, 2007 U.S. Dist. LEXIS 114057, at *3 (E.D.N.Y. Mar. 28, 2007, No. 1 :05-cv-04774-ENV-LB).

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Accordingly, in considering a motion to dismiss, a district court "must accept as true all well-pleaded factual allegations in the complaint, and 'draw[] all inferences in the plaintiff's favor.' (*internal citations omitted*)" *Clarex Ltd. v. Natixis Sec. Am. LLC*, 2012 U.S. Dist. LEXIS 147485, at *7 (S.D.N.Y. Oct. 12, 2012). Likewise, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006)…" *Id.* at *5-6.

Notwithstanding this, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Morelli v Alters*, 2020 U.S. Dist. LEXIS 47351, at *16-17 (S.D.N.Y. Mar. 18, 2020, No. 1:19-cv-10707-GHW). However, the reference to evidence outside the pleadings must be limited to deciding the issue of subject matter jurisdiction, only. *See, e.g.*, *Johnson v. Gonzalez*, 2007 U.S. Dist. LEXIS 114057, at *4 (E.D.N.Y. Mar. 28, 2007, No. 1 :05-cv-04774-ENV-LB) ("In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings…"); *see also Kopec v Coughlin*, 922 F.2d 152, 154-155 (2d Cir. 1991) ("We have emphasized previously that upon a motion to dismiss where materials outside the pleadings are offered, a district court should adhere strictly to the language of Rule 12(b): "Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under

Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *internal citations omitted)*

Even where it is appropriate to consider evidence outside of the pleadings, there are limitations. "[F]ederal courts may take judicial notice of state court decisions." *Gonzalez* at *8. Where affidavits on the issue of subject matter jurisdiction are submitted and considered, "[a] court "may not rely on conclusory or hearsay statements contained in the affidavits[]"" *Bugliotti v. Republic of Arg.*, 2021 U.S. Dist LEXIS 62770, at *7 (S.D.N.Y. Mar. 31, 2021]) *quoting J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). Thus, other than the reference to decisions and orders of the Surrogate's Court as exhibits, the Affidavit of Defendant Rosalia Baiamonte should be disregarded by this Court as her narrative and characterization of the proceedings in that court are disputed and are not properly before the Court at this juncture of the proceedings. Similarly, the section of Defendants' Memorandum of Law entitled "Preliminary Statement and Case Background" must be disregarded by this Court because it asserts facts that differ from those alleged in the Amended Complaint and the latter is to be accepted as true at this stage of the proceedings.

A. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION

**1. The *Rooker-Feldman* Abstention Doctrine Does Not Apply**

"[A]bstention is generally disfavored, and federal courts have a "virtually unflagging obligation" to exercise their jurisdiction. *See [Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 1246, 47 L. Ed. 2d 483 (1976). "The abstention doctrine comprises a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction," and "[i]n this analysis, the balance is heavily weighted in favor of the exercise of jurisdiction." *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001)." *Sterling v Deutsche Bank Natl. Trust Co.*, 2019 U.S. Dist. LEXIS 140367,

at *11 (S.D.N.Y. Aug. 15, 2019, No. 19-CV-205 (GBD)(KNF)). This Court has a duty to exercise its jurisdiction in this matter and not abstain as there is no lawful basis to do so.

Defendants erroneously claim that this action is barred by the *Rooker-Feldman* doctrine. "[T]he Second Circuit has limited the application of *Rooker-Feldman* to cases satisfying a four part test: (1) the federal-court plaintiff lost in state court; (2) the plaintiff 'must complain of injuries caused by a state-court judgment;' (3) the plaintiff 'must invite district court review and rejection of that judgment;' and (4) 'the state-court judgment must have been rendered before the district court proceedings commenced.'" *Schweitzer v. Crofton*, 935 F.Supp 2d 527, 541 (E.D.N.Y. 2013) *citing Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) In this case, at least three components of the four part test are not met, and the fourth can arguably be said not to be met. As all four parts of the test must be satisfied to warrant abstention, there can be no doubt that the *Rooker-Feldman* Doctrine does not serve as a basis for this Court to decline to exercise its jurisdiction over this matter.

The state court proceeding pending in the Nassau County Surrogate's Court regarding the Estate of Oleg Cassini has not yet concluded. Thus, no judgment has been entered and Plaintiff Nestor Cassini cannot be deemed to have lost while the matter is still ongoing. *See, e.g, Milhaven v Country Vil. Apt.*, 2020 US Dist LEXIS 174847, at *11 (S.D.N.Y. Sep. 23, 2020, No. 19-CV-2384 (KMK)) ("*Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation."). (Plaintiff Gemeaux Ltd. is not even a party to that action, so *Rooker-Feldman* is clearly inapplicable to this Court's exercise of jurisdiction over that Plaintiff's claims.)

While Plaintiffs do complain of injuries caused by things that have occurred in state court, there is no state court 'judgment' as of yet so Plaintiffs cannot possibly complain of it. The

judgment that was entered by the Surrogate's Court in 2016 was reversed by the Appellate Division Second Department in 2020.[1] Complaining of a judgment that has been overturned on appeal is a valid basis for a federal court action for violation of constitutional rights. By this litigation, Plaintiffs seek damages emanating from the constitutional violations and violations of other federal and state laws perpetrated by Defendants.

Further, Plaintiffs do not ask this Court to review or change determinations made by the Nassau County Surrogate's Court. *See, e.g., Green v. Mattingly*, 585 F.3d 97, 102 (2d Cir. 2009) ("the *Rooker-Feldman* doctrine does not bar jurisdiction in this action because plaintiff's claims do not meet at least two of the *Rooker-Feldman* requirements: plaintiff did not lose in state court and plaintiff does not 'invite district court review and rejection' of a state court judgment."). As noted above and alleged in the Amended Complaint, Plaintiff Nestor Cassini availed herself of the state appellate process and prevailed as to the issue of the appointment of a Receiver and other related issues.

To be clear, "[t]he Rooker-Feldman doctrine…precludes federal district court jurisdiction where the suit is in fact a collateral attack on a final state court judgment." *Lipin v. Natl. Union Fire Ins. Co.*, 202 F Supp 2d 126, 133 [SDNY 2002]). Where there is no final state court judgment, *Rooker-Feldman* does not apply. It is undisputed that there has been no final judgment rendered by the Surrogate's Court in the proceeding pertaining to the Estate of Oleg Cassini. *See, e.g.*, *Sterling v Deutsche Bank Natl. Trust Co.*, 2019 U.S. Dist. LEXIS 140367, at *16-18 (S.D.N.Y. Aug. 15, 2019, No. 19-CV-205 (GBD)(KNF). ("The Court finds that this action is not barred by the Rooker-Feldman doctrine because, unlike in Rooker and Feldman, where "the losing party in state court filed suit in federal **court after the state proceedings**

---

[1] *See, Matter of Cassini*, 182 A.D.3d 1 (2d Dep't 2020).

**ended**[2] complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment," *Exxon Mobil Corp.,* 544 U.S. at 291, 125 S. Ct. at 1526 (2005) (emphasis added), in this case, MERS presented evidence that the state-court proceedings have not ended, namely[.]…Since the state suit at issue has not "unequivocally terminated," *Hoblock*, 422 F.3d at 89, it follows that no final "unfavorable state-court judgment" existed at the time this action commenced[.]…In the absence of the final state-court judgment, there can be no invitation for the "district court review and rejection" of the state-court judgment. *Exxon Mobil Co.,* 544 U.S. at 284, 125 S. Ct. at 1522.")

Defendants rely heavily upon *Natl. Union Fire Ins. Co.*, 202 F. Supp 2d 126 in support of their argument that this Court must abstain from exercising jurisdiction over this matter based upon the *Rooker-Feldman* Doctrine, but their reliance is misplaced as that case is wholly inapposite. Apart from the fact that the decision was rendered by the Southern District and, while perhaps informative, is not controlling upon this Court, that court declined to exercise its jurisdiction in that case because:

> Plaintiff's Claims for Relief present issues that are "inextricably intertwined" with the state court's conclusions that, because Plaintiff engaged in improper conduct, her employment discrimination action should be dismissed. Plaintiff's claims thus present a direct challenge to state judicial proceedings. Pursuant to Rule 12(b)(1), Plaintiff's First, Second and Third Claims for Relief are dismissed to the extent those claims are inconsistent with the state court's findings in connection with the privileged document incident or with the with-prejudice dismissal of Plaintiff's Lipin I claims. *Lipin v. Natl. Union Fire Ins. Co.*, 202 F. Supp 2d 126, 134 (S.D.N.Y. 2002).

Here, the state court sitting in review of the Surrogate's Court has already decided that the Surrogate's Court improperly appointed a Receiver, vacated that appointment, and vacated all decisions that occurred during a specified period of time. Thus, this Court is not called upon by

---

[2] The bolded text is in the original opinion.

this action to make any collateral attack upon underlying decisions or orders that have already been overturned on appeal, and it is those decisions and orders – which have already been deemed to have been issued in contravention of law – that largely give rise to this action. Apart from that, the Surrogate's Court has not been called upon to decide, nor could it given its limited jurisdiction, whether the Defendants in this action are engaged in an ongoing conspiracy and pattern of racketeering activity, nor any of the other constitutional questions raised by this action. The Surrogate's Court is not called upon to decide in the context of the state court proceeding whether the policies and customs of the municipalities and/or municipal officials that are Defendants in this action run afoul of the constitution. These legal questions that the Court will be called upon to answer in this litigation are not specific to the orders rendered in the Estate proceeding. Again,:

> "The substantive requirements of *Rooker-Feldman* are that "the plaintiff must complain of injuries caused by a state court judgment" and "the plaintiff must invite district court review and rejection of that judgment." *Hoblock*, 422 F.3d at 85. A plaintiff's injuries are not "caused by a state court judgment" when the state court "simply ratified, acquiesced in, or left unpunished" the actions of a third party. *Id*. at 88. *Caldwell v Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp 2d 340, 348 (E.D.N.Y. 2010).

Plaintiffs do not call upon this Court to review and reject any state court judgment.

In any event, all this discussion is unnecessary because *Rooker-Feldman* is inapplicable based upon one simple fact – the state court proceedings are ongoing. Although Defendants try their best to contort the facts and the law to make it suit the circumstances here, the fact remains that *Rooker-Feldman* only applies where final judgment has been rendered in state court:

> While the Second Circuit traditionally applied the doctrine "expansively," and "both to final state court judgments and to interlocutory state court orders," this practice was abrogated by the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). *See Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (internal

citations omitted). Heeding the Supreme Court's admonition that the *Rooker-Feldman* doctrine occupies "narrow ground," *Exxon Mobil Corp.*, 544 U.S. at 284 the Second Circuit limited its application to cases satisfying a four-part test…
*Reliability Inc. v. Doki*, 2021 U.S. Dist. LEXIS 146050, at *21 (S.D.N.Y. Aug. 4, 2021)

That test is recited at the beginning of this section. As it cannot be disputed that proceedings in the Surrogate's Court are ongoing, all components of the test are not met, and *Rooker-Feldman* does not apply.

## 2. The Colorado River Abstention Doctrine Does Not Apply

At the end of their brief, Defendants throw in an argument that the *Colorado River* Abstention Doctrine bars this Court from exercising subject matter jurisdiction over this matter. This argument is unavailing.

This Court put forth a comprehensive explanation of how to determine the applicability of Colorado River in *192 Morgan Realty, LLC v Aquatorium, LLC*, 2021 U.S. Dist LEXIS 212990, at *10-12 (E.D.N.Y. Nov. 3, 2021, No. 20 CV 3627 (RPK)(RML)):

> When deciding whether to abstain under *Colorado River,* a court engages in a two-step inquiry. First, a court must determine that the federal and state court cases are "parallel." *Dittmer v. County of Suffolk,* 146 F.3d 113, 118 (2d Cir. 1998). Cases are parallel "when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp*, 108 F.3d 17, 22 (2d Cir.1997). "[T]wo actions are parallel when there is a substantial likelihood that the state court litigation will dispose of the claims presented in the federal case." *Windward Bora, LLC,* 2020 U.S. Dist. LEXIS 223692, 2020 WL 7042761, at *3 (quotation marks and citation omitted). "Significantly, any doubt regarding the parallel nature of a federal and state action should be resolved in favor of the exercise of federal jurisdiction." *Grover,* 2019 U.S. Dist. LEXIS 217577, 2019 WL 8356587, at *7 (quotation marks and citation omitted). *Id.*

This action is clearly not parallel with the matter of the Estate of Oleg Cassini currently pending in the Nassau County Surrogate's Court, which will only determine which assets properly belong to the Estate and to whom said assets will be distributed and in what shares. *See, e.g.*, *Sterling v Deutsche Bank Natl. Trust Co.*, 2019 U.S. Dist. LEXIS 140367, at *18-19 (S.D.N.Y. Aug. 15,

2019, No. 19-CV-205 (GBD)(KNF)) ("The defendant failed to show that the state-court action and this action are parallel because it did not establish that "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Niagara Mohawk Power Corp.,* 673 F.3d at 100. Although the defendant contend[s] that "this action involves the same issues as the Foreclosure Action," unlike the state-court action involving foreclosure, this action involves civil RICO claims…").

However, should this Court determine that the proceedings are parallel, the inquiry does not end there. The decision continues:

> Second, if a court determines that the federal and state actions are parallel, it next considers the following factors: (1) whether the controversy involves a res over which one of the courts has already assumed jurisdiction; (2) whether the federal forum is less inconvenient for the parties; (3) whether dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's rights. *See Woodford v. Cmty. Action Agency of Greene Cty., Inc.,* 239 F.3d 517 (2d Cir. 2001). *Id.*

This inquiry is unnecessary and inappropriate given that the two actions are clearly not parallel to one another, but were the Court to engage in the inquiry it would have to determine that convenience of the forum is not a factor, federal law provides the rule of decision in this case and state procedures are not adequate to protect Plaintiffs' rights alleged to be violated herein. Piecemeal litigation would not be avoided by dismissing the federal litigation because the claims raised in this action cannot be brought before the Surrogate's Court as that court clearly lacks jurisdiction to hear and decide the claims raised herein. While the state court proceeding can be said to "involve[] a res over which" the state court "has already assumed jurisdiction", this federal litigation does not involve a res so there is no conflict between the courts in that respect.

Although this Court likely needs no reminder, it bears repeating that:

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). "Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Id. at 817 (quotation marks and citations omitted). "In determining whether abstention is appropriate, courts must 'ascertain whether there exist exceptional circumstances' sufficient to 'justify the *surrender* of that jurisdiction.'" *Grover v. Sattar,* No. 18 CV 2402, 2019 U.S. Dist. LEXIS 217577, 2019 WL 8356587, at *7 (E.D.N.Y. Dec. 16, 2019) (emphasis in original) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp. 460 U.S. 1, 25-26, 103 S. Ct. 927, 74 L. Ed. 2, d 765 (1983)). The "burden of persuasion rest[s] on the party opposing the exercise of federal jurisdiction." *Arkwright— Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F. 2d 205, 210 (2d Cir. 1985). *Id.*

No such exceptional circumstances exist here.

The Court should not be persuaded by Defendants' argument that the Surrogate's Court is in the best position to determine these issues based upon its "special expertise" (*citing In re Horler*, 799 F. Supp. 1457, 1464 [S.D.N.Y. 1992]) because a County Court judge with no known expertise in estate matters is currently presiding over the case and the issues before this Court have little to nothing to do with estate matters in any event, but rather arise under federal constitutional and statutory law on which this Court's expertise far exceeds that of the state court. Moreover, the court in *In re Horler* invoked the *Colorado River* abstention doctrine because the federal court's jurisdiction was invoked in that case to resolve a discovery dispute "pursuant to a federal statute which authorizes federal court assistance to persons involved in foreign judicial proceedings." *Id.* at 1463-1464. The court in that matter found that the state court was better positioned to resolve the discovery dispute in the context of the parallel proceeding already pending there, and that no substantive federal rights were implicated such that the unique expertise of the federal court was not required. That set of facts is wholly dissimilar to the case before this Court.

Abstention would be improper in this case. This Court should exercise the federal

question and supplemental jurisdiction it is vested with to finally decide the unique issues presented in the case before it.

## B. ALL CAUSES OF ACTION3 ASSERTED IN THE AMENDED COMPLAINTARE SUFFICIENTLY PLED OR, WHERE PLEADING DEFICIENCIES EXIST, THEY CAN BE CURED BY AMENDMENT AND THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO AMEND THE COMPLAINT

**1. Plaintiffs' Civil RICO Claim is Sufficiently Pled at this Stage of the Proceeding, and to the Extent this Court Finds Pleading Insufficiency, Plaintiffs Should Be Permitted to Amend the Complaint**

Plaintiffs' cause of action accusing Defendants' of violating what is commonly referred to as the civil RICO statute is sufficiently pled. Plaintiffs have alleged conduct of an enterprise through a pattern of racketeering activity and resultant injury to business and property.

Defendants argue that Plaintiffs' allegations are not sufficiently particularized as to each defendant. Defendants' argument is unavailing. It is clear which role each of the parties played in the enterprise and the specific act(s) each committed that caused injury to Plaintiffs. Each Defendant's role in the conspiracy and unlawful actions is described in the Amended Complaint individually where appropriate, and when the Defendants' participating in the RICO violation acted in concert, the Defendants are referred to collectively. This is permissible and does not take away from the sufficiency of the pleading:

> Plaintiffs' Complaint therefore does not simply "lump" Defendants together, as Defendants argue. Instead, it "satisfies the requirements of Rule 8(a)

---

[3] Plaintiffs intended to withdraw the state law tort claims against the municipal defendants by the Amended Complaint, but inadvertently failed to do so. Plaintiffs' Sixth (insofar as it arises under state law), Eighth, Tenth, and Eleventh causes of action are hereby withdrawn (without prejudice) as to Defendants County of Nassau, Curran, Dzurenda, and Fucito on the basis that Plaintiffs did not file a notice of claim, which is a condition precedent to filing suit based upon these causes of action. Plaintiffs reserve the right to seek reinstatement of these causes of action as to these Defendants if/when Plaintiffs satisfy that requirement.

because it gives [Defendants] fair notice of the basis for [Plaintiffs'] claims."
*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1
(2002); *see also Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197,167 L. Ed. 2d
1081 (2007) ("[Rule 8(a)(2)] requires only a short and plain statement of the claim
showing that the pleader is entitled to relief. Specific facts are not necessary; the
statement need only give the defendant fair notice of what the claim is and the
grounds upon which it rests." (internal quotation marks and alterations omitted));
*Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (noting that "[t]he key to Rule
8(a)'s requirements is whether adequate notice is given," and that "fair notice" is "that
which will enable the adverse party to answer and prepare for trial, allow the
application of res judicata, and identify the nature of the case so that it may be
assigned the proper form of trial" (internal quotation marks omitted)). And it does so
even though it includes certain allegations against "Defendants" collectively. *See
Hudak v. Berkley Grp., Inc.*, No. 13-CV-89, 2014 U.S. Dist. LEXIS 8168, 2014 WL
354676, at *4 (D. Conn. Jan. 23, 2014) ("Nothing in Rule 8
prohibits collectively referring to multiple defendants where the complaint
alerts defendants that identical claims are asserted against each defendant.");
*Harris v. NYU Langone Med. Ctr.*, No. 12-CV-454, 2013 U.S. Dist. LEXIS 99328,
2013 WL 3487032, at *7 (S.D.N.Y. July 9, 2013).
*Angermeir v Cohen*, 14 F. Supp 3d 134, 144-145 (S.D.N.Y. 2014)

If, however, the Court finds that the allegations in the Complaint regarding the role of

any of the Defendants against whom the RICO cause of action alleged are not sufficiently

particularized, Plaintiffs respectfully request the opportunity to conduct discovery to

satisfy their pleading requirement because:

> Indeed, sufficient factual information may only emerge in the course of
> discovery. *See AIU Insurance Co. v. Olmecs Medical Supply, Inc.,* No. 04-2934,
> 2005 U.S. Dist. LEXIS 29666, 2005 WL 3710370, at *8 (E.D.N.Y. Feb. 22, 2005)
> (stating that "where the role of the particular defendant in the RICO enterprise is
> unclear, plaintiffs may well be entitled to take discovery on this question")' *Friedman
> v. Hartmann,* No. 91-1523, 1994 U.S. Dist. LEXIS 9727, 1994 WL 376058, at *2
> (S.D.N.Y. July 15, 1994) (finding that because plaintiff did not have "the benefit of
> access to an extensive paper trail in framing its complaint," plaintiff was entitled to
> discovery concerning defendants' role in alleged RICO enterprise). *Atkins v. Apollo
> Real Estate Advisors, L.P.*, 2008 U.S. Dist. LEXIS 35514, at *54-55 (E.D.N.Y. Apr.
> 30, 2008, No. CV-05-4365).

Defendants erroneously contend that this cause of action is subject to a higher

pleading standard because fraud is alleged as a predicate act upon which the RICO claim

rests, but that is not so. Paragraph 136 of the Amended Complaint specifically sets forth

18 U.S.C. § 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity) and 18 U.S.C. §§ 2314 and 2315 (relating to interstate transportation of stolen property) as the predicate acts.

Also contrary to Defendants' assertions, Plaintiffs do indeed "allege a RICO enterprise" that has "an existence separate and apart from the racketeering activity itself." In paragraph 137 of the Amended Complaint Plaintiffs specifically allege:

> …The enterprise consisted of a judge and several lawyers – all, upon information and belief, of the same political party – who abused the public trust and authority vested to them by it to bring about personal financial gain for themselves and their friends and associates. This ongoing scheme was undertaken callously to the detriment of the spouses and family members of the wealthy deceased persons whose estates the RICO defendants targeted.

Through discovery it is likely that Plaintiffs will uncover additional facts and evidence to support that this pattern and practice is not limited to the Estate in this action, but this allegation should be sufficient to sustain this action at this stage of the proceedings. The practice of lucrative appointments to politically connected individuals in Nassau County is well-known and has been widely investigated and reported on. Public records exist of which this Court can and should take judicial notice. The same is true of the unethical conduct of former Nassau County Public Administrator Jeffrey DeLuca who is sued herein.

Finally, Defendants contend that this cause of action is barred as to Defendants Reilly, DeLuca, and Curran due to the immunity afforded to them by the Eleventh Amendment. Defendants Reilly and DeLuca are sued in the individual capacities herein, so they are not shielded from suit by the Eleventh Amendment. The RICO cause of action is not asserted against Defendant Curran.

## 2. Plaintiffs' Due Process Claim Is Sufficiently Pled

Plaintiffs' have sufficiently pled that Defendants violated their rights to both procedural and substantive due process in a variety of ways. The violation of Plaintiff Nestor Cassini's due process rights was recognized by the New York State Supreme Court Appellate Division and is described with particularity not only in the Amended Complaint, but in the court's decisions annexed thereto as exhibits. There is no contention that Plaintiff Gemeaux, Ltd. was ever afforded due process in connection with the deprivation of its property.

Defendants only address the procedural due process claim, but Plaintiff Nestor Cassini also alleges violations of substantive due process based upon the conditions of her pre-trial confinement and the policies and customs of the municipalities and/or their officials that caused these conditions or allowed them to exist by virtue of their deliberate indifference thereto. *See, e.g., Ying Li v. City of N.Y.*, 246 F. Supp 3d 578, 634 (E.D.N.Y. 2017)

## 3. Plaintiffs' Fourth Amendment Cause of Action is Sufficiently Pled

Plaintiffs have sufficiently pled a violation of the Fourth Amendment to the United States Constitution. Plaintiffs allege search and seizure of their houses, papers and effects as well as of Plaintiff Nestor Cassini's person.

Defendants argue that the arrests of Plaintiff Nestor Cassini are privileged and therefore cannot give rise to suit on the basis that they occurred pursuant to a warrant. Although Plaintiff was arrested pursuant to an arrest warrant issued by Defendant Reilly and typically "the issuance of an arrest warrant represents a classic example of the institution of legal process" (*Nowacki v. Town of New Canaan*, 2017 U.S. Dist. LEXIS

44908 (D. Conn. Mar. 28, 2017, No. 3:16-cv-00407 (JAM)), p. 20), under the circumstances of this case the warrant cannot be said to constitute legal process. As determined by the Supreme Court (Lipert, J.) in deciding Mrs. Nestor Cassini's habeas corpus petition and subsequently by the Appellate Division in invalidating the orders underlying the contempt finding upon which the unlawful arrest and confinement of Mrs. Nestor Cassini was premised, Mrs. Nestor Cassini was never held pursuant to legal process.

In addition to that decision and order of the Supreme Court, the Appellate Division vacated "all decisions, orders, and judgments entered in all proceedings herein between March 14, 2016, and July 25, 2016." *Matter of Cassini,* 182 A.D.3d 13, 57 (2d Dep't 2020). This included the "order dated July 1, 2016 [by which] the Surrogate's Court, in effect, granted the objectants' cross motion to appoint a receiver, and appointed Rosalia Baiamonte of Gassman, Baiamonte & Betts, P.C., as receiver." *Id.* at 30. Insofar as the appointment of the Receiver (Defendant Baiamonte) was vacated, it follows that the Receiver's directives to Plaintiff Nestor Cassini and the Receiver's contempt motion that flowed from said Plaintiff's alleged failure to comply with those directives, as well as Judge Reilly's warrant of arrest and order of confinement of said Plaintiff that were purportedly predicated upon that finding of contempt, are all undermined.

Defendants dispute the facts alleged in the Amended Complaint (i.e., that Defendants Reilly, Dzurenda, and Fucito were involved in the arrest of Plaintiff Nestor Cassini, etc.), but such arguments are not appropriately before the court at this stage of the proceedings. All that this Court is properly concerned with at this juncture is whether Fourth Amendment violation is sufficiently pled. *See, e.g.*, *Feliciano v County of Suffolk*,

419 F Supp 2d 302, 307-308 (E.D.N.Y. 2005). The allegations contained in the Amended Complaint include unlawful search and seizure of person and property, use of excessive force in carrying out the arrest, and a policy or custom that gave rise to all of these things. The allegations are sufficient, and therefore Plaintiffs' Fourth Amendment claim must be allowed to proceed. *Id.*

**4. Plaintiffs' Eighth Amendment Claim Is Proper**

Apart from the maltreatment Plaintiff Nestor Cassini was subjected to while confined as the only civil inmate in the Nassau County Correctional Center in violation of the Fourteenth Amendment, Plaintiff brings claims pursuant to the Eighth Amendment for imposing excessive bail and denial of medical treatment.

Plaintiff Nestor Cassini's allegations that she was denied medical care during her lengthy period of confinement due to the policy and custom and deliberate indifference of certain Defendants (in other words, deliberate indifference to a serious medical need) are properly brought before this Court pursuant to the Eighth Amendment to the United States Constitution. *See James v. Kaskiw*, 2016 U.S. Dist. LEXIS 10943 (N.D.N.Y. Jan. 28, 2016, No. 9:13-CV-526 (DNH/CFH)). To the extent this is not sufficiently pled in the Amended Complaint, Plaintiff respectfully requests leave to replead.

As is also alleged in the Amended Complaint, Plaintiff Nestor Cassini was made to turn over the deed and keys to Plaintiff's property as a condition of her release from jail. Plaintiff alleges this was excessive bail imposed in violation of the Eighth Amendment. *See, e.g.*, *United States v Polouizzi*, 697 F. Supp 2d 381, 390 (E.D.N.Y. 2010) ("Bail conditions are unconstitutionally excessive if they impose restraints that are more than necessary to achieve the government's interest."). Thus, Plaintiffs' claim sounding in the Eighth Amendment should not be dismissed.

## 5. Plaintiffs' Section 1986 and 1986 Claims Are Sufficiently Pled

Plaintiffs' fifth cause of action alleges a conspiracy to violate Plaintiffs' civil rights. Because Defendants' conspiracy is detailed elsewhere in the Complaint and those preceding paragraphs are incorporated by reference under this cause of action, the paragraphs setting forth factual allegations under this cause of action are limited in number. Nevertheless, taking into account the incorporated paragraphs, there can be no doubt that Plaintiffs' cause of action arising under 42 U.S.C. §§1985 & 1986 are sufficiently pled.

Plaintiffs specifically allege in the Amended Complaint that the RICO Defendants and Doyle Galleries reached a meeting of the minds to gather and sell Plaintiffs' property irrespective of the irrefutable proof of ownership presented to them demonstrating that the property did not belong to the Estate and, therefore, was not covered by any court order authorizing the Receiver to sell Estate assets. Moreover, a meeting of the minds was reached to sell the property at well below market value because Defendants did not care about their fiduciary obligations to the Estate, but cared only about enriching themselves and their friends and associates who benefitted from the sale of these irreplaceable, one-of-a-kind items for pennies on the dollar. Defendants also reached a meeting of the minds to cover for one another should the lawfulness of their activities be challenged up to and including the attorney for the Receiver actually appearing in state court as attorney for Doyle Galleries to defend against the conversion action.

It is also alleged in the Complaint that Defendants reached a meeting of the minds as to how to best punish and subdue Plaintiff Nestor Cassini and have the least resistance to their grievous ends by bringing a baseless contempt motion against said Plaintiff, purportedly serving her with it during the period of time she was not represented by

counsel, and then falsely arresting her and confining her against her will. These are but some of the more nefarious schemes in furtherance of which Defendants reached a meeting of the minds, as alleged in the Amended Complaint.

Defendants also contend that the Amended Complaint fails to specifically allege that the conspiracy was motivated by discriminatory or class-based animus. It is alleged in the Amended Complaint that Plaintiff Nestor Cassini is a member of a protected class, to wit: widows. "'A statute that treats widowers less favorably than widows - which, in the Title VII context, might have been called a "sex plus marital status" claim - violates the Equal Protection Clause'" *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F3d 107, 119, n 9 [2d Cir 2004] *quoting Weinberger v. Wiesenfeld*, 420 U.S. 636, 43 L. Ed. 2d 514, 95 S. Ct. 1225 (1975). Though the incorporation by reference of this allegation found elsewhere in the Amended Complaint could be regarded as sufficient, in the event the Court deems the pleading insufficient in this regard, Plaintiffs respectfully request leave to amend to make the specific allegation under this cause of action.

## 6. Plaintiffs' Abuse of Process Claim is Sufficiently Pled and Is Not Time Barred

Plaintiffs' Abuse of Process claim is valid and sufficiently pled. It is alleged in the Amended Complaint that, in collaboration with one another, certain Defendants sought while another Defendant issued improper court orders. Insofar as the purpose of these orders were to shield Defendants from liability for their unlawful activity vis-à-vis Plaintiffs, this is the very definition of abuse of process.

The Abuse of Process claim is not time barred. Insofar as the abuse of process claim is brought as a federal civil rights violation, the applicable statute of limitations is three years and the cause of action did not accrue until Plaintiff Nestor Cassini obtained a favorable ruling on the challenged legal process (i.e., release from custody pursuant to

her habeas corpus petition and the vacating by the Appellate Division of all Surrogate's Court orders and judgments that were issued during the period of a statutory stay). *See, e.g.*, *Kennedy-Bifulco v. Town of Huntington*, 2010 U.S. Dist. LEXIS 141928 (E.D.N.Y. Oct. 29, 2010, No. CV 08-1612 (ERK)(ETB). That period has not run.

With respect to Abuse of Process as a state law tort, the statute of limitations has not run because the abuse of process is ongoing. Insofar as this is a continuing tort, the statute of limitations has not yet begun to run. If the Court is not persuaded the statute of limitations is forestalled due to the continuing and ongoing nature of the violation, Plaintiffs respectfully request that the Court apply equitable tolling due to Plaintiff Nestor Cassini's lengthy period of incarceration. This action was filed within three years of Plaintiff's release from the Nassau County Correctional Center. She was released upon successful habeas corpus petition. She could not have obtained counsel or filed suit while she was incarcerated. Her long-term attorney had fallen ill, the Surrogate intimidated any and every lawyer who even attempted to appear before her on Plaintiff's behalf, and she intimidated so many others that they would not even consider appearing. Plaintiff is of advanced age and was suffering mentally and physically while incarcerated. Equitable tolling is appropriate under the extraordinary circumstances present in this action. *See, e.g.*, *Green v Schriro*, 2019 U.S. Dist. LEXIS 67916 (E.D.N.Y. Apr. 22, 2019, No. 18-CV-01641 (PKC) (LB).

**7. Plaintiffs' Claim for Conversion is Valid and Not Barred by Collateral Estoppel**

Plaintiffs' cause of action alleging conversion is not barred by collateral estoppel. Any decision(s) previously issued by the Surrogates Court regarding the ownership of the companies and/or the property sold at auction were preliminary in nature as the previous "trial" (an inquest, at best) was vacated by the Appellate Division and a new trial ordered

(*See* Exhibit B to Amended Complaint). In light of the fact that a) the matter is undecided and b) even if regarded as decided, it is irrefutable that Plaintiffs were not given a full and fair opportunity to be heard. Even Plaintiff Nestor Cassini, the decedent's wife and executrix under the will, was not permitted to present evidence and was not even present at the proceeding. Collateral estoppel does not apply under these circumstances. *See, e.g., Matter of Dunn*, 24 N.Y.3d 699, 704 (2015).

### 8. Plaintiffs' Claim for Breach of Fiduciary Duty Is Sufficiently Pled

Plaintiffs allege that Defendants Baiamonte, DeLuca, and Curran breached their fiduciary duty to them or, more specifically, to Plaintiff Nestor Cassini. Because Plaintiffs have met all pleading requirements, this claim is not subject to dismissal.

It cannot plausibly be denied that a Receiver and Public Administrator appointed to marshal estate assets and oversee their distribution owe a fiduciary duty to the beneficiaries of that estate. As the decedent's wife, Plaintiff Nestor Cassini is due to inherit at least her elective share under New York law, and, in fact, under the terms of the will and the instruments that passed outside of the will, she was to inherit far more.

Defendants' retort that because all actions complained of by Plaintiffs were undertaken by court order, Defendants' cannot be held responsible for the alleged breach of their respective duties. This determination is not before the Court at this time as disputed factual matters beyond the pleading is involved. The question for the Court to decide in the context of this motion to dismiss is whether this cause of action is sufficiently pled. Plaintiffs have alleged the duty, breach, and damages. Thus, this cause of action must be permitted to proceed.

### 9. Plaintiffs' Constructive Trust Claim is Sufficiently Pled and is Not Barred by Collateral Estoppel

Plaintiffs' cause of action for a constructive trust is proper. Insofar as Defendants are in possession of property rightfully belonging to Plaintiffs, they have wrongfully acquired it and a constructive trust is formed.

Defendants falsely claim that Plaintiffs do not allege in the Amended Complaint that they have an interest in any of the acquired property. On the contrary, in addition to other allegations contained elsewhere in the Amended Complaint, under this specific cause of action it is alleged, "Defendants Ms. Baiamonte and the Doyle Galleries unlawfully acquired property rightfully belonging to Plaintiffs."

This claim is also not barred by collateral estoppel for the reasons stated hereinabove.

There is no basis to dismiss this cause of action. "[T]he constructive trust doctrine is equitable in nature and should not be 'rigidly limited,'" (*internal citations omitted*)" *State Farm Mut. Auto. Ins. Co. v Cohan*, 2013 US Dist LEXIS 118667, at *11-12 [EDNY Aug. 20, 2013, No. 12-CV-1956(JS)(GRB)]).

**10. Plaintiff Has Sufficiently Pled a Claim of Intentional Infliction of Emotional Distress Against All Defendants**

The actions of Defendants alleged in the Amended Complaint have and continue to cause Plaintiffs extreme emotional distress. Defendants' actions are ongoing and, naturally, the emotional harm caused by those actions are, too.

Contrary to Defendants' contention that this cause of action is subject to a one year statute of limitations that has expired, Intentional Infliction of Emotional Distress is a continuing tort and is, therefore, not time-barred. *See, e.g.*, *Barone v United States*, 2016 U.S. Dist. LEXIS 59946 (S.D.N.Y. May 5, 2016, No. 12-cv-4103 [LAK]).

As all elements of this cause of action were pled in the Amended Complaint and there is no other bar to this cause of action proceeding, Defendants' request to dismiss this claim must be denied.

## 11. Plaintiffs' Cause of Action for Trespass is Sufficiently Pled and Therefore Not Subject to Dismissal at this Time

Plaintiffs have sufficiently pled a cause of action sounding in trespass. Defendants seek dismissal of this cause of action on the basis that the cause of action cannot be maintained because, although Defendants did enter and remain upon property belonging to Plaintiffs without Plaintiffs' permission, Defendants were allegedly permitted to do so by court order. Plaintiffs dispute this. Even if a court order did exist, it was fraudulently procured and issued in furtherance of the conspiracy and other illegal acts alleged in the Amended Complaint. If court order(s) authorizing entry existed, they are invalid. In any event, these are factual matters not to be determined at this stage of the proceedings. Indeed, under like circumstances, courts have declined to dispose of a trespass cause of action even at the summary judgment stage when disputes as to material facts such as the validity of the order relied upon by the trespasser(s). *See Dockery v. Tucker*, 2006 U.S. Dist. LEXIS 97826 (E.D.N.Y. Sep. 6, 2006, No. 97-CV-3584 (ARR)).

## 12. Plaintiffs' Unjust Enrichment Claim is Sufficiently Pled and Is Not Barred by Collateral Estoppel

The final cause of action alleged in the Amended Complaint is that the Defendants who participated in the RICO enterprise and the Doyle Galleries defendants were unjustly enriched in the manner detailed throughout the Complaint. The cause of action is sufficiently pled.

Notwithstanding this, Defendants claim Plaintiffs' pleading is deficient in that it fails to allege that Defendants' enrichment was at Plaintiffs' expense. On the contrary,

that very allegation is made almost verbatim in paragraph 184, and is stated various other ways throughout the Complaint.

As to this cause of action, too, Defendants' assert collateral estoppel based upon court orders that purportedly permitted the enrichment of Defendants at Plaintiffs' expense. As set forth in the Amended Complaint and asserted elsewhere herein, to the extent that such court orders existed, they were issued in furtherance of Defendants' illicit scheme and were either overturned by a higher court already, or are interlocutory in nature and still subject to appeal or to revision after trial by a final determination on the merits. Whatever the case may be, this is not the stage of the proceedings for Defendants' factual assertions (and Plaintiffs' retorts) to be vetted. Plaintiffs' pleading is sufficient and plausible, and thus this cause of action must be allowed to proceed.

C. NONE OF THE DEFENDANTS ARE IMMUNE FROM SUIT, NOR ARE PLAINTIFFS' CLAIMS BARRED ON THE BASIS OF ANY OTHER LEGAL DOCTRINE OR STATUTE OF LIMITATIONS

1. **Judge Margaret Reilly**

Defendant Reilly is sued herein in her individual, not official, capacity. Thus, the protection afforded to state officials by Eleventh Amendment does not apply. Defendant Reilly is also not shielded from suit by the notion of judicial immunity.

"Judicial immunity will not apply in only two circumstances: (1) where the challenged actions were not taken in the judge's 'judicial capacity,' and (2) where the judge acted 'in the complete absence of all jurisdiction.' *Mireles v. Waco*, 502 U.S. 9, 11-12, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991) (internal citations omitted)." *Dekom v. Fannie Mae*, 846 F App'x 14, 18 (2d Cir. 2021). At all relevant times dealt with in the Amended Complaint, Defendant Reilly acted in the complete absence of all

jurisdiction as confirmed by the New York State Appellate Division, Second

Department. Specifically, that Court held:

> [T]he [Surrogates] court, in granting Reppert's[4] motions for leave to
> withdraw, made the specific finding and determination that Reppert
> was "unable to continue to represent [Marianne] due to health reasons."
> In making this finding and determination, the court provided the basis
> for a discretionary withdrawal of counsel under CPLR 321(b)(2) and
> simultaneously activated the automatic stay provisions of CPLR 321(c)…
> *Matter of Cassini*, 182 A.D.3d 13, 47 (2d Dep't 2020).

On that basis, the Appellate Division vacated "all decisions, orders, and judgments

entered in all proceedings herein between March 14, 2016, and July 25, 2016." *Id.* at

57. This included the "order dated July 1, 2016 [by which] the Surrogate's Court, in

effect, granted the objectants' cross motion to appoint a receiver, and appointed

Rosalia Baiamonte of Gassman, Baiamonte & Betts, P.C., as receiver." *Id.* at 30.

Insofar as the appointment of the receiver was vacated, it follows that the receiver's

directives to the Plaintiff herein and the receiver's contempt motion that flowed from

Plaintiff's alleged failure to comply with those directives, as well as Judge Reilly's

warrant of arrest and order of confinement of Plaintiff that were purportedly

predicated upon that finding of contempt, are all null and void and, for Defendant

Reilly's part, were acts undertaken in the complete absence of jurisdiction. As the

Appellate Division noted:

> Indeed, the Surrogate's Court's own statement that the cross motion [to
> appoint a receiver] was submitted, unopposed, in April 2016, raises
> questions. It appears that the motion was marked submitted on April 6,
> 2016, at which time a stay of the Accounting Proceeding was in effect,
> pursuant to the court's own March 14, 2016, order. Since the cross motion
> was made in the context of the Accounting Proceeding, the court should
> not have taken the matter under submission, without opposition, during
> the period of its own stay. *Id.* at 56.

---

[4] Mr. Reppert was Marianne Nestor Cassini's attorney in the Estate proceeding, and had represented her, Oleg
Cassini, Inc. and Cassini Parfums Ltd. for the preceding decade, approximately.

Even more scathingly, the Appellate Division wrote:

> Indeed, while this may not have actually been intended, the impression
> is created, because the objectants made their cross motion at the very
> moment when Marianne was without counsel to assist her and they did
> not articulate any claim of urgency, that they were seeking to take unfair
> advantage of a circumstance over which Marianne had no control, which
> left her without counsel to assist her at a crucial stage of the case. *Id.* at 56-7.

Though malice and bad faith alone are not sufficient to throw off the cloak of judicial

immunity, it should not be lost on this Court that Judge Reilly played a knowing and

integral role in the abuses perpetrated against Plaintiff (referred to by the Appellate

Division as "Marianne").

Judge Reilly's knowing complicity in the conspiracy to unlawfully deprive

Plaintiffs herein of their assets and violate their civil rights in the manner detailed in the

Amended Complaint is relevant to satisfying the two-part test the Court is to apply in this

instance, to wit:

> …a judge will be denied immunity only where it appears, first, that the
> judge acted in the clear absence of jurisdiction, and second, that the judge
> must have known that he or she was acting in the clear absence of
> jurisdiction. This test, composed both of an objective element -- that
> jurisdiction is clearly absent, *i.e.*, that no reasonable judge would have
> thought jurisdiction proper -- and of a subjective element -- that the judge
> whose actions are questioned actually knew or must have known of the
> jurisdictional defect -- protects judicial acts from hindsight examination
> while permitting redress in more egregious cases…
> *Tucker v Outwater*, 118 F.3d 930, 934 (2d Cir. 1997).

This test is easily satisfied in this case. As the Appellate Division succinctly put it:

> The conduct of such proceedings contravened the terms of the March 14,
> 2016, order, providing for a 30-day stay of proceedings in the Accounting
> Proceeding as of the date of the order. We cannot assume that the Surrogate's
> Court was unaware of its orders. *Id.* at 27.

However, in the event this Court determines that this exception does not apply, the case against Judge Reilly should still be allowed to proceed and, in such event, Plaintiffs will seek only declaratory relief as it pertains to the Judge's acts. *See, e.g.*, *Collins v Lippman*, 2005 U.S. Dist. LEXIS 11116, at *8 (E.D.N.Y. June 8, 2005, No. 04-CV-3215 (FB)(LB)) *quoting Pulliam v. Allen,* 466 U.S. 522, 80 L. Ed. 2d 565, 104 S. Ct. 1970 (1984); *Supreme Court v. Consumers Union, Inc.,* 446 U.S. 719 735, 64 L. Ed. 2d 641, 100 S. Ct. 1967 (1980).

### 2. Receiver Rosalia Baiamonte

There is no legal impediment to Rosalia Baiamonte being sued in this action, and all claims against her must be allowed to proceed.

### a. Judicial Immunity

Defendant Baiamonte contends that, as a court-appointed receiver, she enjoys judicial immunity. While it is true that court-appointed receivers are cloaked with judicial immunity insofar as they are appointed pursuant to lawful court order, here, the New York State Appellate Division found that the order appointing Ms. Baiamonte was issued during a period where state law required a stay in the proceedings. On that basis, the state appellate court vacated the order appointing Defendant Baiamonte and all actions taken by her during the period of the mandatory stay. Insofar as her appointment was vacated, Defendant cannot lawfully enjoy immunity for the period of time she was found to not have been appointed pursuant to lawful court order.

Lest Defendant Baiamonte argue that she was unaware that her appointment was unlawful at the time the actions complained of were carried out, the fact is that Defendant Baiamonte is a practicing attorney in the State of New York and knew or should have known that her appointment occurred during the period of a mandatory statutory stay

pursuant to New York's Civil Practice Law and Rules. Thus, it cannot be said that she was acting in good faith. Further, a receiver is cloaked with judicial immunity only when he/she is "doing no more and no less than to carry out an explicit order, fair and regular on its face." *Bradford Audio Corp. v. Pious*, 392 F.2d 67, 72-3. "Where the trustee [or receiver] negligently fails to discover his agent's negligence, negligently obtains a court order, or negligently or willfully carries out a court order he knew or should have known he wrongfully procured, however, personal liability will attach." *In re Ctr. Teleproductions, Inc.*, 112 BR 567, 578 (Bankr. S.D.N.Y. 1990). Not only is it alleged in the Amended Complaint that the orders of the court were oft illegal and part of a conspiracy to unlawfully deprive Plaintiffs of their assets, but the Receiver also took actions of her own accord beyond the scope of the court's orders. By way of example, the Receiver seized and arranged for the sale of property belonging to Plaintiff Nestor Cassini and her sister's private property not properly regarded as part of the Estate. Thus, Defendant Baiamonte is surely not immune from suit for those actions not undertaken pursuant to a facially "explicit, fair, and regular" order. These things can only be determined as discovery moves forward, and not in the context of a motion to dismiss.

  b. The Barton Doctrine

  Defendant Baiamonte also asserts immunity based upon the *Barton* Doctrine, which requires leave of the appointing court prior to initiating suit against the Receiver for actions undertaken pursuant to order of that court. The *Barton* Doctrine traditionally arises in bankruptcy proceedings so that bankruptcy trustees are shielded from suit in connection with their official actions taken in the context of those proceedings. *See, e.g., Nazareno v. Cardello*, 2021 U.S. Dist. LEXIS 103861 (E.D.N.Y. Apr. 28, 2021, No. 20-CV-2242 (DRH)(AYS)), but Defendant. Baiamonte asserts that this Doctrine is not

limited to bankruptcy proceedings. Even if this is so, there are recognized exceptions to the *Barton* Doctrine, and the allegations in the Amended Complaint fall under one or both exceptions. Thus, the *Barton* Doctrine cannot be relied upon here to shield Defendant Baiamonte from suit.

Again, the order appointing Defendant Baimonte was vacated by the New York State Appellate Division. Thus, as a matter of law, Defendant Baiamonte's actions undertaken during the period during which her appointment was deemed invalid are not cloaked by court order or any theoretical immunity. Even assuming *arguendo* that this Court does not agree that the decisions of the Appellate Division (annexed to and incorporated by reference into the Amended Complaint) undermine the presumption of legality of the Receiver's actions, immunity does not extend to the Receiver because her actions exceeded her lawful authority even had the orders appointing her and directing her not been vacated by the appellate court. Therefore, her actions fall under the ultra vires exception to the *Barton* Doctrine.

As alleged in the Amended Complaint, Defendant Baiamonte was a co-conspirator in an intricate and ongoing conspiracy aimed at unlawfully depriving Plaintiffs of not only their property, but also their civil rights and human dignity. The *Barton* Doctrine was never intended to shield bad actors from their just desserts. *See, e.g.*, *Katz v. Kucej (In re Biebel)*, 2009 Bankr. LEXIS 1544, at *18-19 (Bankr. D.Conn May 19, 2009, Nos. 02-32865 [LMW], 08-3115) (""Thus, the trustee is not protected by the *Barton* Doctrine in cases where the trustee should have obtained a court order and did not. *See Leonard v. Vrooman,* 383 F.2d 556, 560 (9th Cir. 1967), *cert. denied,* 390 U.S. 925, 88 S. Ct. 856, 19 L. Ed. 2d 985 (1968) (holding that "a trustee wrongfully

possessing property which is not an asset of the estate may be sued for damages arising out of his illegal occupation in a state court without leave of his appointing court"). *But see Muratore v. Darr,* 375 F.3d 140, 147 (1st Cir. 2004) (declining to recognize "some generalized tort exception to the Barton doctrine"). Moreover, the trustee is not protected by the *Barton* Doctrine if the trustee obtains a court order but acts beyond its scope. *See Teton Millwork Sales v. Schlossberg,* 311 Fed. Appx. 145, 2009 WL 323141 (10th Cir. 2009) (finding that receiver who was authorized by court order to seize the defendant's property held in the name of Teton Millwork Sales, an entity in which the defendant held a 25% interest, could be sued without leave of his appointing court when he seized 100% of the assets of Teton Millwork Sales). *Cf. Lurie v. Blackwell,* 211 F.3d 1274, [published in full-text format at 2000 U.S. App. LEXIS 3360] 2000 WL 237966 (9th Cir. Feb. 18, 2000) (unpublished table decision).")

Also, pursuant to 28 U.S.C. § 959, leave of Court to sue a court-appointed receiver is not required "with respect to any of their acts or transactions in carrying on business connected with such property [over which the receiver is appointed]". Plaintiffs allege in the Amended Complaint that Defendant Baiamonte has destroyed the businesses and business interests she was entrusted with, and participated in the unlawful sale of the property she was to oversee. Thus, this exception also applies and leave of Court was not required prior to bringing suit.

It would be illogical for Plaintiffs to have been required to seek leave of court prior to bringing suit against the Receiver. It is a foregone conclusion that such leave application would have been denied, as was every other application ever presented to that court by Plaintiff Nestor Cassini while Defendant Reilly presided. Defendant Baiamonte

is not shielded from suit by the *Barton* Doctrine based upon the allegations in the Amended Complaint that Defendant Baiamonte exceeded her lawful authority, seized and sold or otherwise disposed of property belonging to Plaintiffs and not to the Estate, and engaged in business transactions and other acts covered under well-established exceptions to the *Barton* Doctrine.

### 3. Attorney for the Receiver Jeffrey Miller

#### a. Judicial Immunity

Defendant Miller, attorney for the Receiver, claims that he, too, is cloaked with judicial immunity. There is little support found in this Circuit for that proposition. In fact, only a single case can be found, and that was decided by the District Court for the Western District of New York. That Court cited to foreign courts to support its extension of judicial immunity to counsel for the Receiver.

An attorney, even a court-appointed one, cannot be regarded as serving a judicial function. By the very nature of judicial proceedings, which are adversarial in nature, an attorney's role is distinct from that of judge. Thus, judicial immunity does not logically extend to an attorney.

Even if this Court were to determine that judicial immunity could theoretically extend to an attorney appointed to represent a court-appointed receiver, such immunity should not apply in this case for the reasons articulated above with respect to Defendant Baiamonte. In sum, the order appointing the Receiver was vacated and her actions were not lawful both because there was no lawful order in place and, even if there was, the actions of the Receiver and her counsel exceeded the scope of any lawful court orders and/or the court was complicit in the scheme to harm Defendants in the manner described in the Amended Complaint including abusing the legal process to shield themselves and

their co-conspirators from liability for their bad acts. Under these circumstances, immunity does not apply.

### b. The Barton Doctrine

Defendant Miller seeks to stretch the *Barton* Doctrine to extend to him as attorney for the Receiver. There is no support found in the caselaw in this Circuit for this contention. Even if the Court were to regard this Doctrine as applicable to counsel for the court-appointed receiver, the two exceptions described hereinabove to this Doctrine apply based upon the allegations set forth in the Amended Complaint, and therefore leave of the Surrogate's Court was not required prior to filing this lawsuit.

### 4. NYC Sheriff Joseph Fucito

### a. Qualified Immunity

Defendant Fucito, the New York City Sheriff, is not entitled to qualified immunity in connection with this action. Not only was this defense not asserted in his pre-motion letters, "[q]ualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)." *Cent. UTA of Monsey v. Vil. of Airmont*, 2020 U.S. Dist. LEXIS 13154, at *62-63 (S.D.N.Y. Jan. 22, 2020, No. 18 CV 11103 (VB)). The alleged constitutional violations articulated in Plaintiffs' Amended Complaint are all well-established, and thus qualified immunity would not apply.

Defendant Fucito argues that qualified immunity applies because the arrest of Plaintiff Nestor Cassini was made based upon what appeared to be a facially valid arrest warrant. As the warrant has not been produced in this action and vetted by the parties or this Court, this defense is not available at this time (but may be at some future stage of

the proceedings). Further, even if qualified immunity is deemed to apply based on the existence of a facially valid warrant, that would not shield Defendant Fucito from Plaintiffs' excessive force and due process claims[5].

    b.  Statute of Limitations

The claims asserted against Defendant Fucito pursuant to 42 U.S.C. §1983 have a three-year statute of limitations. The statute of limitations had not expired prior to the commencement of this action because they did not begin to accrue until a later date than that asserted by Defendant.

The cause of action arising from the false arrest and excessive force in effectuating the arrest began to accrue only once Mrs. Nestor Cassini was incarcerated pursuant to legal process. *See*, *Nowacki v. Town of New Canaan*, 2017 U.S. Dist. LEXIS 44908 (D. Conn. Mar. 28, 2017, No. 3:16-cv-00407 (JAM)). Although Plaintiff was arrested pursuant to an arrest warrant issued by the Nassau County Surrogate and typically "the issuance of an arrest warrant represents a classic example of the institution of legal process" (*Id.* at 20), under the circumstances of this case the warrant cannot be said to constitute legal process. As determined by the Supreme Court (Lipert, J.) in

---

[5] The due process claim against the NYC Sheriff includes the following, which, to the extent not included in sufficient detail in the Amended Complaint, Plaintiffs' seek leave to amend to include them. Defendant Fucito allowed and oversaw the sale of 15 East 63rd Street New York 10065, a building in which Plaintiff Nestor Cassini held at fifty percent interest (with the other fifty percent owned by Plaintiff's sister, Peggy Nestor). Defendant Fucito did so based upon the judgment obtained against Plaintiff Nestor Cassini after the "trial" that was vacated by decision of the Appellate Division. Upon information and belief, the property was sold to (or through) the attorney for the Public Administrator, Defendant Mahon, on credit alone. The detailed facts were not yet included in the Amended Complaint because the details are still a bit unclear and require verification through the discovery process. This all occurred following the unlawful arrest of Plaintiff Nestor Cassini and while she remained incarcerated. The rules pertaining to such Sheriff's sales, upon information and belief, require payment of the full purchase price up front and the poundage fees within 3 days. In this case, Defendant Fucito curiously breached his own rules and allowed for the purchase on credit and the poundage fees of approximately Three Hundred Thousand Dollars to be paid over a three month period. Defendant Fucito subsequently deeded the property to Defendant DeLuca, which occurred after Defendant DeLuca had been forced to resign from his office in disgrace.

deciding Mrs. Nestor Cassini's habeas corpus petition and subsequently by the Appellate Division in invalidating the orders underlying the contempt finding upon which the unlawful arrest and confinement of Mrs. Nestor Cassini was premised[6], Mrs. Nestor Cassini was never held pursuant to legal process.

A finding of delayed accrual of Plaintiff's constitutional causes of action is also appropriate here because Mrs. Nestor Cassini could not bring suit alleging constitutional violations stemming from her arrest and confinement until her habeas corpus petition was granted and she was released from confinement. *Heck v Humphrey,* 512 U.S. 477 (1994) ("Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id.* at 489. Plaintiff could not have brought her claim against the Sheriff prior to challenging her confinement via habeas corpus petition, thus she should not now be penalized for not sooner bringing the action.

Plaintiff's constitutional claims against Defendant Fucito are also not untimely because he is sued in his official capacity only and it is alleged in the Complaint that his actions were undertaken pursuant to official policy and custom of the City of New York. In other words, Plaintiffs have asserted a *Monell* claim. *Monell* claims only accrue upon discovery of the policy or custom that resulted in the constitutional violation. *See,*

---

[6] The Appellate Division vacated "all decisions, orders, and judgments entered in all proceedings herein between March 14, 2016, and July 25, 2016." *Matter of Cassini,* 182 A.D.3d 13, 57 (2d Dep't 2020). This included the "order dated July 1, 2016 [by which] the Surrogate's Court, in effect, granted the objectants' cross motion to appoint a receiver, and appointed Rosalia Baiamonte of Gassman, Baiamonte & Betts, P.C., as receiver." *Id.* at 30. Insofar as the appointment of the receiver was vacated, it follows that the receiver's directives to the Plaintiff herein and the receiver's contempt motion that flowed from Plaintiff's alleged failure to comply with those directives, as well as Judge Reilly's warrant of arrest and order of confinement of Plaintiff that were purportedly predicated upon that finding of contempt, are all null and void.

*e.g.*, *Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995). Thus, this is an issue

properly decided on summary judgment rather than in the context of a motion to dismiss

as it requires a factual inquiry.

Should the Court not find any of the foregoing arguments persuasive, Plaintiff

respectfully requests that the Court apply equitable tolling due to her lengthy period of

incarceration. This action was filed within three years of Plaintiff's release from the

Nassau County Correctional Center. She was released upon successful habeas corpus

petition. She could not have obtained counsel or filed suit while she was incarcerated.

Her long-term attorney had fallen ill, the Surrogate intimidated any and every lawyer who

even attempted to appear before her on Plaintiff's behalf and she intimidated so many

others that they would not even consider appearing. Plaintiff is of advanced age and was

suffering mentally and physically while incarcerated. Equitable tolling is appropriate

under the extraordinary circumstances present in this action. *See, e.g.*, *Green v Schriro*,

2019 U.S. Dist. LEXIS 67916 (E.D.N.Y. Apr. 22, 2019).

    c. Claimed Lack of Personal Involvement

Contrary to Defendant Fucito's contentions, the Amended Complaint lays out in

sufficient detail the role of the New York City Sheriff in the factual allegations section,

and supplements those under those causes of action alleged as against Defendant Fucito.

While his role in the conspiracy and deprivation of civil rights as compared with the other

co-conspirators is not as expansive, he played a role to be sure. Moreover, Plaintiffs'

ability to detail with great specificity the action of each specific defendant is limited at

this juncture and discovery must be allowed to go forward for Plaintiffs to ascertain the

role each respective Defendant played in the conspiracy.

Moreover, insofar as *Monell* claims and claims of supervisory liability are made by the Amended Complaint, the extent to which "personal involvement" need be alleged is quite limited. Indeed, a municipal official can even be liable for claims arising under Section 1983 based upon a failure to act rather than some affirmative act. *See, e.g., Reynolds v Giuliani*, 506 F.3d 183, 191-192 (2d Cir. 2007).

### 5. William Doyle Galleries

Defendant William Doyle Galleries asserts that Plaintiffs' claims against it in this action are barred by the doctrine of *res judicata* because Plaintiffs Marianne Nestor Cassini and Gemeaux Ltd., along with nonparty Peggy Nestor, sued the company in state court for conversion. *Res judicata* is inapplicable under these circumstances because the state court judgment upon which Defendant relies was procured by collusion and fraud and "[s]ome cases have held that, notwithstanding the doctrine of res judicata, a New York state court's judgment is not given preclusive effect by the federal court if the judgment was procured by collusion or fraud. *See Kelleran v. Andrijevic,* 825 F.2d 692 (2d Cir. 1987), *cert. denied*, 484 U.S. 1007, 108 S. Ct. 701, 98 L. Ed. 2d 652 (1988); *Goddard*, 2006 U.S. Dist. LEXIS 19651, 2006 WL 842925, at *7; *In re Slater*, 200 B.R. 491, 495 (E.D.N.Y. 1996); *County of Suffolk v. Long Island Lighting Co.,* 710 F. Supp. 1387, 1393 (E.D.N.Y. 1989)." *In re Ward*, 423 BR 22, 29 (Bankr E.D.N.Y. 2010). The judgment in the state court action dismissing the complaint against Doyle Galleries resulted from a motion to dismiss based upon documentary evidence pursuant to CPLR §3211(a)(1). The documents submitted to the state court by Mr. Miller to procure that order of dismissal were orders of the Surrogate's Court authorizing the sale of Estate property by Doyle Galleries, which Mr. Miller (who represented Doyle Galleries in that action, further underscoring the existence of collusion and conspiracy)

falsely or wrongly asserted exempted Doyle Galleries from liability. Putting aside for now the fact that an auction house such as Doyle has an independent obligation to verify the ownership of each item it auctions and bears liability for its failure to do so, Mr. Miller perpetrated a fraud upon the state court by falsely representing that the orders submitted to it were valid and authorized the sale of plaintiffs' property. The orders relied upon in procuring that state court judgment were vacated by the Appellate Division and only authorized the sale of certain property, but not all of the property that was in fact sold. More than 300 items of furniture, artwork, and jewelry – many priceless and irreplaceable – belonging to Plaintiffs were illegally sold at auction by Doyle Galleries. Plaintiffs allege by their Amended Complaint that all of the actions of the respective Defendants related to the liquidation of Plaintiffs' property resulted from fraud, and that the court was a participant in the fraud. The state court judgment was therefore procured by fraud because it was based upon court orders allowing for the sale of certain property by the court-appointed Receiver (which appointment was subsequently vacated by the Appellate Division). Therefore, this litigation falls under this fraud exception and is ***not*** barred by *res judicata*.

Res judicata also does not apply because there are different parties in this action than the state court action. Insofar as this case involves different parties, the claim of conversion asserted in this case not barred by *res judicata*. *See, e.g.*, *Cain v Bethea*, 2007 U.S. Dist. LEXIS 75824, at *52 (E.D.N.Y. Aug. 17, 2007, No. 04 CV 3946 [JG]); *see also Council v Better Homes Depot, Inc.*, 2006 U.S. Dist. LEXIS 57851 (E.D.N.Y. Aug. 16, 2006, No. 04 CV 5620 [NGG][KAM]).

In the event this Court deems Plaintiffs' cause of action sounding in conversion to be barred, the other causes of action asserted against Doyle Galleries (to wit: Conspiracy to Violate Plaintiffs' Civil Rights pursuant to 42 U.S.C. §§1985 & 1986, Constructive Trust, Intentional Infliction of Emotional Distress, Trespass, and Unjust Enrichment) should be allowed to move forward. The Section 1985 & 1986 claim clearly could not have been brought in the state court action without all of the other co-conspirators being named as defendants therein, but all causes of action brought in this action are exempt from *res judicata* dismissal because they all involve other parties.

### III.     CONCLUSION

Plaintiffs respectfully request that Defendants' Joint Motion to Dismiss the Complaint be denied in its entirety, that Plaintiffs be granted leave to amend the Complaint to replead those causes of action this Court regards as insufficiently pled (*see, e.g.*, *Dubin v. County of Nassau*, 277 F. Supp 3d 366, 404 [E.D.N.Y. 2017]), and such other and further relief as this Court may deem just and proper.

Dated: February 10, 2023

<div style="margin-left:40%;">

Respectfully Submitted,

KRISTINA S. HEUSER, P.C.

By:     _____/S/_____
Kristina S. Heuser, Esq. (KH3612)
23 Birch Hill Road (rear)
Locust Valley, New York 11560
Tel. (516) 676-1565
Fax (516) 676-6382
E-mail kheuser@heuserlawfirm.com

</div>