UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MARIANNE NESTOR CASSINI and GEMEAUX LTD.,

               Plaintiffs,

          -against-

COUNTY OF NASSAU, BRIAN CURRAN, in his
official capacity as NASSAU COUNTY PUBLIC
ADMINISTRATOR, JEFFREY DELUCA, KENNETH
MAHON, MARGARET C. REILLY, ROSALIA
BAIAMONTE, JEFFREY MILLER, WILLIAM DOYLE
GALLERIES, INC., JAMES DZURENDS, in his official
capacity as NASSAU COUNTY SHERIFF, JOSEPH
FUCITO, in his official capacity as NEW YORK CITY
SHERIFF, and JOHN & JANE DOES 1-10,

               Defendants.
-------------------------------------------------------------------X

Case 2:22-cv-01696
(DG) (AYS)

**Served on March 31, 2023**

 

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR JOINT MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ......................................................................... 1

LEGAL ARGUMENT ........................................................................................ 5

POINT I      THE AMENDED COMPLAINT IS BARRED BY
THE *ROOKER-FELDMAN* DOCTRINE, RES JUDICATA
AND/OR COLLATERAL ESTOPPEL ................................................ 5

        A.   The Rooker-Feldman Doctrine Divests This
Court Of Jurisdiction To Hear Any of Plaintiffs' Claims .......................... 6

        B.   Plaintiffs' Claims Are Also Barred By Res Judicata
and/or Collateral Estoppel ........................................................................ 10

POINT II    THE AMENDED COMPLAINT FAILS TO  STATE A
CLAIM UPON WHICH RELIEF CAN BE GRANTED ................................. 12

        A.   Plaintiffs' First Cause of Action Fails to State a Claim ............................ 12

        B.   Plaintiffs' Second Cause of Action Fails to State a Claim ....................... 14

        C.   Plaintiffs' Third Cause of Action Fails to State a Claim .......................... 15

        D.   Plaintiffs' Fourth Cause of Action Fails to State a Claim ........................ 16

        E.   Plaintiffs' Fifth Cause of Action Fails to State a Claim ........................... 17

        F.   Plaintiffs' Sixth Cause of Action Fails to State a Claim ........................... 18

        G.   Plaintiffs' Seventh Cause of Action Fails to State a Claim ...................... 18

        H.   Plaintiffs' Eighth Cause of Action Fails to State a Claim ........................ 19

        I.   Plaintiffs' Ninth Cause of Action Fails to State a Claim .......................... 19

        J.   Plaintiffs' Tenth Cause of Action Fails to State a Claim .......................... 20

        K.   Plaintiffs' Eleventh Cause of Action Fails to State a Claim ..................... 20

        L.   Plaintiffs' Twelfth Cause of Action Fails to State a Claim ...................... 21

i

POINT III    THE AMENDED COMPLAINT IS BARRED BY THE DOCTRINES
             OF SOVEREIGN AND/OR JUDICIAL IMMUNITY AS AGAINST
             SURROGATE REILLY, THE RECEIVER, MR. MILLER, AND
             THE NEW YORK CITY SHERIFF ................................................................ 21

             A.    Sovereign and Judicial Immunity Bar All Claims
                   Against Surrogate Reilly.................................................................. 21

             B.    Judicial Immunity Bars All Claims Against the
                   Receiver and Mr. Miller.................................................................. 23

             C.    Quasi-Judicial Immunity Bars All Claims Against
                   the New York City Sheriff .............................................................. 24

POINT IV     THE AMENDED COMPLAINT IS BARRED BY THE
             *BARTON DOCTRINE* AS AGAINST THE RECEIVER
             AND HER COUNSEL, MR. MILLER ............................................................ 25

POINT V      PLAINTIFFS' CLAIMS AGAINST DOYLE ARE
             BARRED BY RES JUDICATA ...................................................................... 25

POINT VI     THIS COURT SHOULD DECLINE TO ADJUDICATE
             ANY DISPUTES THAT ARE SUBJECT TO FURTHER
             STATE COURT PROCEEDINGS UNDER THE COLORADO
             RIVER DOCTRINE OF ABSTENTION .......................................................... 26

POINT VII    ALL CLAIMS AGAINST DEFENDANT
             JOSEPH FUCITO SHOULD BE DISMISSED ................................................ 28

             A.    Plaintiffs' Claims Against Fucito Are Time-Barred................................ 28

             B.    Plaintiffs' Claims Against Fucito Also Fail For
                   Lack of Personal Involvement ................................................................ 29

CONCLUSION................................................................................................ 31

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page No.**

*3H Enterprises, Inc. v. Dwyre*,
  182 F. Supp. 2d 249 (N.D.N.Y. 2001) ............................................................... 18

*Back v. Hastings on Hudson Union Free Sch. Dist.*,
  365 F.3d 107 (2d Cir. 2004) ............................................................................. 17

*Barone v. United States*,
  2016 WL 2658174 (S.D.N.Y. May 5, 2016) ..................................................... 20

*Bartolini v. Mongelli*,
  2018 WL 6333827 (W.D.N.Y. Nov. 7, 2018) ..................................................... 8

*Barton v. Barbour*,
  104 U.S. 126 (1881) ......................................................................................... 25

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007) ................................................................................... 19, 29

*Bliven v. Hunt*,
  579 F.3d 204 (2d Cir. 2009) ............................................................................. 22

*Boadi v. City of New York*,
  2012 U.S. Dist. LEXIS 104652 (E.D.N.Y. 2012) ............................................ 16

*Booker v. O'Brien*,
  2019 WL 5267307 (E.D.N.Y. Oct. 16, 2019) ................................................... 22

*Bradley v. Fisher*,
  80 U.S. 335 (1871) ........................................................................................... 22

*Brady v. Town of Colchester*,
  863 F.2d 205 (2d Cir. 1988) ............................................................................. 15

*Caiozzo v. Koreman*,
  581 F.3d 63 (2d Cir. 2009) ............................................................................... 16

*Cuillo v. Shupnick*,
  815 F. Supp. 133 (S.D.N.Y. 1993) ................................................................... 18

*De Cisneros v. Younger*,
  871 F.2d 305 (2d Cir. 1989) ............................................................................. 27

*Dekom v. Fannie Mae*,
  846 F. App'x 14 (2d Cir.) ........................................................................... 22

*Dolan v. Connolly*,
  794 F.3d 290 (2d Cir. 2015) ...................................................................... 17

*Ellis v. Kelly*,
  No. 17-CV-6656 (RRM),
  2019 U.S. Dist. LEXIS 43990 (E.D.N.Y. Mar. 18, 2019) ......................... 28

*Fate v. Petranker*,
  No. 19 CV-05519 (PMH),
  2020 U.S. Dist. LEXIS 119103 (S.D.N.Y. July 6, 2020) ........................... 29

*Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP*,
  2022 WL 901660 (S.D.N.Y. Mar. 28, 2022) ............................................... 13

*Green v. Mattingly*,
  585 F.3d 97 (2d Cir. 2009) ...................................................................... 7, 8

*Harley v. Guida*,
  No. 19-CV-6152(EK)(MMH),
  2022 U.S. Dist. LEXIS 176529 (E.D.N.Y. Sep. 28, 2022) ......................... 24

*Hoblock v. Albany Cnty. Bd. of Elections*,
  422 F.3d 77 (2d Cir. 2005) ...................................................................... 6, 9

*In re Horler*,
  799 F. Supp. 1457 (S.D.N.Y. 1992) .......................................................... 27

*In re IAC/Interactivecorp Sec. Litig.*,
  695 F. Supp. 2d 109 (S.D.N.Y. 2010) ....................................................... 16

*Ligonde v. Marriot Hotel Servs.*,
  No. CV 3680 (AMD) (CLP),
  2021 U.S. Dist. LEXIS 149435 (E.D.N.Y. Aug. 5, 2021) ......................... 30

*Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
  202 F. Supp. 2d 126 (S.D.N.Y. 2002) ..................................................... 9, 10

*MacPherson v. Town of Southampton*,
  738 F. Supp. 2d 353 (E.D.N.Y. 2010) ...................................................... 7, 8

*Maldonado v. N.Y. County Sheriff*,
  2006 WL 2588911 (S.D.N.Y. Sept. 6, 2006) ............................................. 24

*Matter of Cassini*,
    180 A.D.3d 775 (2d Dep't 2020)......................................................................... 3, 10

*Matter of Cassini*,
    182 A.D.3d 1 (2d Dep't 2020)............................................................................ 9

*Matter of Cassini*,
    182 A.D.3d 13 (2d Dep't 2020)...................................................................*Passim*

*Milhaven v. Country Village Apt.*,
    2020 WL 5663380 (S.D.N.Y. Sept. 23, 2020) ................................................ 8

*Mireles v. Waco*,
    502 U.S. 9 (1991) ...................................................................................... 22, 23

*Moses v. Westchester Cnty. Dep't of Corrections*,
    951 F. Supp. 2d 448 (S.D.N.Y. 2013) ........................................................... 29

*O'Brien v. City of Syracuse*,
    54 N.Y.2d 353 (1981)................................................................................... 26

*Ostrer v. Aronwald*,
    567 F.2d 551 (2d Cir. 1977) ........................................................................ 15

*People v. Merkin*,
    124 A.D.3d 435 (1st Dep't 2015) ................................................................. 19

*Petrohawk Energy Corp. v. L. Debenture Tr. Co. of New York*,
    2007 WL 211096 (S.D.N.Y. Jan. 29, 2007) .............................................. 18, 19, 21

*Raghavendra v. Fenn*,
    2019 WL 4963257 (E.D.N.Y. Oct. 7, 2019) ................................................ 22

*Remy v. N.Y. Dep't of Taxation & Fin.*,
    2013 WL 28362 (2d Cir. Jan. 3, 2013) ........................................................ 7

*Rodriguez v. Weprin*,
    116 F.3d 62 (2d Cir. 1997) .......................................................................... 22

*Salmon v. Blesser*,
    802 F.3d 249 (2d Cir. 2015) ........................................................................ 20

*Scharrer v. Fundamental Admin. Servs., LLC*,
    2013 WL 12169310 (M.D. Fla. Sept. 10, 2013)........................................... 25

*Selvam v. United States*,
   2021 WL 5149809 (E.D.N.Y. Nov. 5, 2021) ........................................................... 20

*Shelley v. Brandveen*,
   2012 WL 3903472 (E.D.N.Y. Sept. 6, 2012) ........................................................ 7, 8

*Stump v. Sparkman*,
   435 U.S. 349 (1978) ............................................................................................... 23

*Tangreti v. Bachmann*,
   983 F.3d 609 (2d Cir. 2020) ............................................................................. 16, 30

*Truman v. Brown*,
   434 F. Supp. 3d 100 (S.D.N.Y. 2020) .................................................................... 20

*Turecamo v. Turecamo*,
   55 A.D.3d 455 (1st Dep't 2008) ............................................................................. 19

*Walker v. Jastremski*,
   430 F.3d 560 (2d Cir. 2005) ................................................................................... 29

*Webb v. Goord*,
   340 F.3d 105 (2d Cir. 2003) ................................................................................... 17

*Wright v. Smith*,
   21 F.3d 496 (2d Cir. 1994) ..................................................................................... 30

*Xu v. Suffolk Cnty.*,
   2020 WL 3975471 (E.D.N.Y. July 14, 2020) ......................................................... 8

*Zeckendorf v. Kerry H. Lutz*,
   282 A.D.2d 295, 723 N.Y.S.2d 360 (1st Dep't 2001) ............................................ 18

*Zuneska v. Cuomo*,
   2013 WL 431826 (E.D.N.Y. Feb. 1, 2013) .......................................................... 7, 8

## Statutes

18 U.S.C. § 1957 ....................................................................................................... 13
18 U.S.C. § 2314 ....................................................................................................... 13
18 U.S.C. § 2315 ....................................................................................................... 13
28 U.S.C. § 959 ......................................................................................................... 25
42 U.S.C. § 1985 ................................................................................................. 17, 18
42 U.S.C. § 1986 ................................................................................................. 17, 18

**Rules**

CPLR 215.................................................................................................................18
CPLR 215(3).............................................................................................................20
CPLR 321(c) ..............................................................................................................2
Fed. R. Civ. P. 12(b)(1) and (6) ................................................................................1
Fed. R. Civ. P. 12(b)(6)............................................................................................12

Defendants, by and through their undersigned attorneys, respectfully submit this reply memorandum of law in further support of their joint motion to dismiss Plaintiffs'[1] Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

At its core, this action is principally based on three events: (i) the court-ordered sale of the Doyle Auctioned Property, (ii) the court-ordered sale of OCI's McCouns Lane property, and (iii) Ms. Cassini's arrest after she was held in contempt of court for refusing to turn over records belonging to the Companies. All three are the subject of multiple state court decisions and orders, including decisions by the Appellate Division, that became final prior to the commencement of this federal action, and they are not subject to any further litigation or appeals in the state court. The Amended Complaint is therefore barred by the *Rooker-Feldman* doctrine, res judicata and/or collateral estoppel. In their opposition brief ("Opp. Br."), Plaintiffs do not substantively address these arguments, but instead try to avoid the dispositive effect of these multiple final state court decisions and orders based on a few baseless arguments.

As a threshold matter, Plaintiffs claim that the state court's decisions and orders were deemed invalid when the Second Department vacated the Receiver's 2016 appointment on procedural grounds in February 2020. A review of that decision – on which Plaintiffs base this entire argument (Baiamonte Aff. Ex. L)[2] – shows Plaintiffs' assertion to be demonstrably false.

As discussed in detail by the Second Department, in January 2016, following decisions by former Surrogate McCarty that (i) removed Ms. Cassini as executor of the Estate for acts of

---

[1] Capitalized terms not otherwise defined herein shall have the meaning given to them in Defendants' moving brief ("Mov. Br.").

[2] *See Matter of Cassini*, 182 A.D.3d 13 (2d Dep't 2020).

wrongdoing and appointed the Public Administrator to administer the Estate (Baiamonte Aff. Exs. B and C), (ii) removed Ms. Cassini and her sister, Ms. Nestor, from operating OCI and CPL due to self-dealing (*id.* Exs. D and E), and (iii) determined that OCI and CPL did not belong to Ms. Cassini personally but were instead "assets of the Decedent's Estate" (*id.* Exs. G and H), the Objectants[3] filed a motion seeking the appointment of a receiver for OCI and CPL. Surrogate Reilly granted the motion and appointed Ms. Baiamonte as the Receiver. *See id.* Exs. J and K.

Despite issuance of these decisions and orders, Ms. Cassini refused to recognize or acknowledge Ms. Baiamonte's authority as the Receiver (ultimately leading to a November 2017 order holding Ms. Cassini in contempt of court), and she sought to appeal Surrogate Reilly's rulings. On appeal, Ms. Cassini asked the Second Department to "declare void **all** decisions, orders, and judgments entered after March 14, 2016." *See Cassini*, 182 A.D.3d at 57 (emphasis added). On March 14, 2016, Surrogate Reilly had granted a motion by Ms. Cassini's then-counsel of record to withdraw from the Estate proceedings for medical reasons, and Ms. Cassini argued that a statutory stay of all proceedings should have been in place pursuant to CPLR 321(c) upon granting counsel's motion to withdraw.

Ultimately, the Second Department concluded that the order appointing the Receiver was entered when the statutory stay should have been in effect and vacated any decisions and orders entered "between March 14, 2016 and July 26, 2016," **but no other decisions or orders entered in the case**. *Cassini*, 182 A.D.3d at 57. Thus, the orders Plaintiffs challenge here (entered in 2017, 2018, and 2019) remain valid and final, and are not subject to further litigation or appeal.

The Second Department also expressly found that "based on the evidentiary showing made on the cross motion by the objectants [i.e., the litany of bad acts engaged in by Ms.

---

[3] Objectants are other interested parties in Mr. Cassini's Estate and entitled to receive at least 50% of the Estate.

Cassini], the receiver should remain in place as a temporary receiver pending a new determination" of Objectants' motion. *Id.* On remand, Objectants renewed their motion, Ms. Cassini was given notice, an opportunity to be heard and **consented to the Receiver's appointment**. The Surrogate's Court then granted the motion. Baiamonte Aff. Exs. M and N.

Because the Second Department's decision (*Cassini*, 182 A.D.3d 13) does not actually say what Plaintiffs claim – that all orders after the Receiver's appointment are void[4] – Plaintiffs cannot argue that the Receiver (or any of the other Defendants) did not act pursuant to court orders or that the issues raised by Plaintiffs in this case have not been finally adjudicated. In an attempt to avoid this, Plaintiffs try to claim an alleged RICO conspiracy among Defendants to take Plaintiffs' property and mistreat Ms. Cassini – all of which was done pursuant to valid court orders and process. This argument fails for multiple reasons.

First, none of *Plaintiffs'* property was the subject of the state court orders under which Defendants acted. That property belonged to OCI and the Estate. The McCouns Lane property indisputably belonged to OCI for decades (Baiamonte Aff. Ex. R (deed)), and OCI was determined long ago to be an asset of the Estate in a decision by then-Surrogate McCarty that was affirmed on appeal. *See id.* Ex. I (*Matter of Cassini*, 180 A.D.3d 775, 778 (2d Dep't 2020)); *see also id.* Exs. G and H. Similarly, both the New York County Supreme Court and the Appellate Division have confirmed that Plaintiffs cannot assert any claims arising out of the sale of the Doyle Auctioned Property, which also belonged to the Estate. *See id.* Exs. II and JJ.

Second, the above-referenced orders were <u>all</u> issued by judges who are not alleged to be part of any alleged RICO conspiracy, further undermining Plaintiffs' baseless allegations of a

---

[4] Tellingly, Plaintiffs do not address any of the numerous other court decisions and orders attached to the Baiamonte Affidavit, which were issued by Surrogate McCarty, the New York County Supreme Court, the Appellate Division, and the Nassau County District Court.

conspiracy.  In fact, the Presiding Justice of the First Department even reminded counsel to Ms. Cassini and Gemeaux that if they disagreed with the Surrogate's Court orders, their proper remedy was an appeal, not a collateral attack in another court.[5]  *See* Baiamonte Aff. ¶ 60 n.7.

Third, as to Ms. Cassini's arrest, this occurred after she was held in contempt of court for refusing to abide by a court order entered in October 2016 to provide the Receiver with the Companies' books and records so she could fulfill her duties – documents which, again, belonged to the Companies, not Ms. Cassini personally.  Baiamonte Aff. Exs. P and Q.  Ms. Cassini has never claimed that she complied with this court order, and as noted above, this order was not affected by the Second Department's ruling, because it was entered after July 26, 2016. If there was any doubt that Ms. Cassini's arrest was not part of a conspiracy, it should be put to rest by the fact that the Second Department (non-parties here) dismissed Ms. Cassini's appeal of the orders holding her in contempt of court.  *See id.* Ex. L (*Cassini*, 182 A.D.3d at 58).

Finally, even ignoring all of the foregoing, and assuming Plaintiffs have some viable basis to claim their property was taken from them and Ms. Cassini was mistreated, the Amended Complaint falls far short of pleading a RICO conspiracy.  Plaintiffs have received numerous pre-motion letters directed at both the original and Amended Complaint and a motion for sanctions, giving them ample opportunity to set forth a viable claim for relief.  Yet, the Amended Complaint does not contain a single allegation that even remotely supports the notion of a sweeping conspiracy among opposing parties, their attorneys, the Nassau County Surrogate, and other government officials.  There are no allegations of how or when this conspiracy began, its purpose, any meetings among the alleged co-conspirators, their roles in the alleged conspiracy,

---

[5] *See* Baiamonte Aff. ¶ 60 n.7.  The Presiding Justice also noted that the Second Department expressly held that any orders after July 26, 2016 remained valid. *See* https://www.youtube.com/watch?v=DGEl67jYJPc, beginning at 33 minutes, 23 seconds.

or any actions taken by any of the Defendants in furtherance of this purported conspiracy. Every action undertaken by Defendants was authorized by a court order. Lacking any basis to support their claims of a conspiracy, Plaintiffs have instead tried to dress up their frivolous claims with inflammatory rhetoric such as "fraud," "theft," and "conspiracy." This is far from sufficient.

In sum, Plaintiffs' Amended Complaint is a transparent attempt to collaterally attack over a decade of proceedings before the Nassau County Surrogate's Court, claiming a massive "conspiracy" based on nothing more than Plaintiffs' disagreement with the outcome of the state court's final rulings. As discussed in Defendants' moving brief, the Amended Complaint can and should be dismissed for a litany of reasons. Plaintiffs' opposition purports to summarily reject Defendants' arguments and does not substantively grapple with the authority cited by Defendants or the complete absence of any well-pleaded allegations to support Plaintiffs' sweeping claims of a "conspiracy." This only further confirms why the arguments raised by Defendants mandate dismissal of the Amended Complaint.

For all of these reasons, discussed further below and in Defendants' moving brief, the Amended Complaint should be dismissed.

## LEGAL ARGUMENT

### POINT I

### THE AMENDED COMPLAINT IS BARRED BY THE *ROOKER-FELDMAN* DOCTRINE, RES JUDICATA AND/OR COLLATERAL ESTOPPEL

There can be no serious dispute that Plaintiffs' claims are based entirely on three core events: (1) the court-ordered sale of the Doyle Auctioned Property, *see* Am. Compl. ¶¶ 93-105, (2) the court-ordered sale of OCI's McCouns Lane property, *see id.* ¶¶ 73-79, 127, and (3) Ms. Cassini's arrest, *see id.* ¶¶ 67-72, 85-86. Each of those issues have been fully and finally decided by the state court and are no longer subject to further litigation or appeal. In fact, as it relates to

OCI's McCouns Lane property, it was then-Surrogate McCarty and not any of the alleged co-conspirators here who determined that OCI was an asset of the Estate, not Plaintiffs. *See* Baiamonte Aff. Exs. G, H, and I. Along the same lines, both the New York County Supreme Court and the Appellate Division (again, not any of the alleged co-conspirators in this case) have confirmed that Plaintiffs cannot assert any claims arising out of the sale of the Doyle Auctioned Property. *See id.* Ex. II and JJ. As to Ms. Cassini's arrest, she has never actually claimed that she complied with Surrogate's Reilly order, and the Appellate Division dismissed Ms. Cassini's appeal of the orders holding her in contempt of court. *See id.* Ex. L (*Cassini*, 182 A.D.3d at 58). These final orders preclude this action in its entirety.

A.     **The *Rooker-Feldman* Doctrine Divests This Court Of Jurisdiction To Hear Any of Plaintiffs' Claims**

As it relates to Defendants' motion to dismiss pursuant to Rule 12(b)(1), Plaintiffs ask this Court to ignore the entirety of the Receiver's affidavit "other than the reference to decisions and orders of the Surrogate's Court as exhibits." Opp. Br. at 11. While the Court may consider the Receiver's affidavit[6] (which merely summarizes those decisions and orders for ease of reference), the exhibits to that affidavit provides this Court all that it needs to dismiss the Amended Complaint based on *Rooker-Feldman*.

Plaintiffs correctly acknowledge the four-factor test applied by the Second Circuit to determine whether *Rooker-Feldman* applies:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invite district court review and rejection of [that] judgment[]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced."

*Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (citations omitted); *see*

---

[6] *See* Mov. Br. at 12-13 (collecting cases).

*also* Opp. Br. at 12. Despite the foregoing, Plaintiffs claim that *Rooker-Feldman* does not apply because "at least three components of the four part test are not met, and the fourth can arguably be said not to be met." Opp. Br. at 12. A review of the state court record and cases applying *Rooker-Feldman* in similar circumstances to this action proves otherwise.

Plaintiffs claim that "no judgment has been entered" in the Estate proceedings and therefore they "cannot be deemed to have lost." Opp. Br. at 12. The former argument is a red herring and the latter is simply false. As an initial matter, *Rooker-Feldman* applies to both final judgments and interlocutory state court decisions and orders. *See, e.g.*, *Zuneska v. Cuomo*, 2013 WL 431826 at \*4 (E.D.N.Y. Feb. 1, 2013) ("*Rooker-Feldman* doctrine applies not only to final orders **but also to interlocutory decisions**") (emphasis added) (citing *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009)); *see also Shelley v. Brandveen*, 2012 WL 3903472 at \*3 (E.D.N.Y. Sept. 6, 2012) (same); *MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 363 (E.D.N.Y. 2010) (same). What matters is that **Plaintiffs have indisputably lost in state court on each and every issue raised by the Amended Complaint and there will be no further litigation of those issues in the Surrogate's Court**. *See Remy v. N.Y. Dep't of Taxation & Fin.*, 2013 WL 28362, at \*2 (2d Cir. Jan. 3, 2013) (holding that a state court decision is a loss when the plaintiff had "a full and fair opportunity to litigate that issue").

Again, despite Plaintiffs' complaints about the court-ordered sale of the Doyle Auctioned Property, the New York County Supreme Court and the Appellate Division have already ruled that Plaintiffs have no claims arising out of that sale. *See* Baiamonte Aff. Exs. II and JJ; *see also id.* Exs. EE, FF, HH (Surrogate's Court orders). As to the court-ordered sale of OCI's McCouns Lane property, it was then-Surrogate McCarty who determined that OCI belonged to the Estate, not Plaintiffs here. *See id.* Exs. G, H, and I; *see also id.* Exs. BB, CC (Surrogate Reilly order

authorizing the sale and Second Department's order dismissing appeal of same). Lastly, Surrogate Reilly's orders holding Ms. Cassini in contempt of court and ordering her arrest was based on Ms. Cassini's admitted non-compliance with the Court's prior orders, and her appeal of those orders has been dismissed. *See id.* Exs. L, P, Q. Clearly, Plaintiffs have been given numerous opportunities to litigate these issues in state court, and they lost.

The decisions and orders rendered by the Surrogate's Court and other state courts are final, and it is irrelevant that there may be ongoing proceedings relating to other matters in the Surrogate's Court. *See, e.g.*, *Xu v. Suffolk Cnty.*, 2020 WL 3975471 at *3-6 (E.D.N.Y. July 14, 2020) (*Rooker-Feldman* applied to final Surrogate's court decision that was on appeal and proceedings were ongoing in the Surrogate's court after the federal case was filed); *Bartolini v. Mongelli*, 2018 WL 6333827 at *2, 6-7 (W.D.N.Y. Nov. 7, 2018) (applying *Rooker-Feldman* to final Surrogate's Court decree denying probate of a contested will, despite the existence of an ongoing accounting proceeding in Surrogate's Court); *see also Zuneska*, 2013 WL 431826 at *4 (applying *Rooker-Feldman* to final County Court decision where "Plaintiff had an opportunity to fully and fairly litigate" the issue presented to the state court); *Shelley*, 2012 WL 3903472 at *3 (Plaintiffs "lost in state court by Judge Brandveen's denial of their four OSCs . . . the denial of which is the source of Plaintiffs' injury"); *MacPherson*, 738 F. Supp. 2d at 362-63 ("Plaintiffs 'lost' in the State Court Actions when Justice Weber issued TROs," despite the fact that the state court had not yet decided defendants' motions seeking preliminary injunctions).[7]

Plaintiffs seem to believe that they are "state court winners" as a result of two Second

_____

[7] The cases cited by Plaintiffs are inapposite. In *Green v. Mattingly*, 585 F.3d 97 (2d Cir. 2009), *Rooker-Feldman* did not apply to a state court order that *temporarily* removed a child from his parent's custody and was reversed four days later. In *Milhaven v. Country Village Apt.*, 2020 WL 5663380 (S.D.N.Y. Sept. 23, 2020), the defendant abandoned its *Rooker-Feldman* argument after the state court's decision was reversed on appeal. Since the rulings challenged in this case are final and no longer subject to any appellate challenge, these cases do not apply.

Department decisions entered in February 2020, but neither is the subject of this federal action. Those rulings related exclusively to (i) a **2016** accounting trial that had nothing to do with Ms. Cassini's **2018** arrest, or the **2019** court-ordered sales of OCI's McCouns Lane property or the Doyle Auctioned Property, *see Matter of Cassini*, 182 A.D.3d 1 (2d Dep't 2020),[8] and (ii) a procedural vacatur of the Receiver's 2016 appointment that, on its face, impacted only those rulings entered during a four-month window, *see Cassini*, 182 A.D.3d at 57 (vacating decisions and orders entered "between March 14, 2016, and July 25, 2016").

There also can be no dispute that Plaintiffs complain of injuries caused by final state court decisions and orders and invite this Court to "review and reject" those rulings. Plaintiffs actually admit it. *See* Opp. Br. at 12 ("Plaintiffs do complain of injuries caused by things that have occurred in state court"); *see also* ECF No. 35 at 2 (admitting Plaintiffs "seek damages" caused by the state court's decisions and orders). Plaintiffs cannot recover damages for their alleged injuries unless this Court were to effectively reject the findings of the Surrogate's Court and other state courts that (i) Ms. Cassini was validly arrested after she refused to comply with the court's order and was held in contempt, (ii) the Companies are assets of the Estate, not Plaintiffs, and (iii) the Receiver and Doyle were authorized to sell the Estate's property. Dressing up their claims as purported constitutional and other statutory violations does not change this result. *See Hoblock*, 422 F.3d at 87 ("[A] federal plaintiff cannot escape the *Rooker-Feldman* bar simply by relying on a legal theory not raised in state court."). Nor does Plaintiffs' complaint of "fraud." *See Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 202 F. Supp. 2d 126, 133 (S.D.N.Y. 2002) (dismissing claim based on *Rooker-Feldman* where the success of plaintiff's federal claims "depends entirely on the view that the evidence found credible by the

---

[8] The 2016 accounting trial was held to resolve certain objections to Ms. Cassini's accounting for the Estate between 2006 through 2010, when she was still executor.

state courts was in fact false"); *see also infra* Section II (discussing Plaintiffs' pleading failures).[9]

Finally, insofar as Plaintiffs claim that Gemeaux is not a party to the Estate proceedings and, thus, not subject to *Rooker-Feldman*, *see* Opp. Br. at 12, this argument fails for two reasons. First, in this case, Gemeaux claims that its property was sold by Doyle – there are no allegations that it was damaged by Ms. Cassini's arrest or the court-ordered sale of OCI's McCouns Lane property.  But Gemeaux sued Doyle in New York County Supreme Court and lost, prior to commencing this federal action, subjecting its claims to *Rooker-Feldman* on that basis alone. *See* Baiamonte Aff. Ex. II.  Moreover, Gemeaux is wholly owned by Ms. Cassini and her sister, *see* Am. Compl. ¶ 4, both of whom were parties to the Estate proceedings and subject to the orders authorizing the sale of the Doyle Auctioned Property.  *See id.* Exs. EE and FF.

For these reasons, the entirety of the Amended Complaint is barred by the *Rooker-Feldman* doctrine, and this Court lacks subject matter jurisdiction to hear them.

**B.      Plaintiffs' Claims Are Also Barred By Res Judicata and/or Collateral Estoppel**

Even if this Court were to conclude that *Rooker-Feldman* does not apply (and respectfully, it should not), virtually all of Plaintiffs' claims are barred by res judicata and/or collateral estoppel.  No matter how they are framed, Plaintiffs' claims are based on facts and issues that have been decided by other courts, and Plaintiffs have had a full and fair opportunity to litigate those facts and issues.

In 2015, then-Surrogate McCarty determined that OCI and CPL belonged to the Estate, not any of the Plaintiffs here.  *See* Baiamonte Aff. Exs. G and H.  The Second Department affirmed Surrogate McCarty's determination.  *See id.* Ex. I (*Cassini*, 180 A.D.3d at 778).

---

[9] Plaintiffs' attempt to distinguish *Lipin* is unavailing.  In *Lipin*, as in this case, plaintiff attempted to rehash his state court losses as a "conspiracy," and a violation of his civil rights. They were swiftly dismissed based on *Rooker-Feldman*.  202 F. Supp. 2d at 133.

Because OCI indisputably owned McCouns Lane (*see id.* Ex. R (deed)), Plaintiffs therefore cannot assert claims for conversion, constructive trust, trespass, or unjust enrichment arising out of the sale of property that they do not own.   They lack standing to do so.  And if they have standing, the claims have already been adjudicated against them.

The same is true as to the Doyle Auctioned Property.  Insofar as that property was already determined to belong to the Companies or the Estate, there is no basis for any claim by these Plaintiffs.  Plaintiffs were in fact given the opportunity by the Surrogate's Court to assert a claim of ownership to this property prior to its auction pursuant to a court-ordered process, but failed to do so.  *See* Baiamonte Aff. ¶¶ 49-56 & Exs. EE, FF.  Should there be any doubt that this issue has been finally resolved by another court, Plaintiffs already raised the exact same complaints about the Doyle auction in New York County Supreme Court, which dismissed Plaintiffs' claims.  *See id.* Ex. II.  The Appellate Division has since affirmed.  *See id.* Ex. JJ.

As to Ms. Cassini's arrest, there has never been any dispute that Ms. Cassini refused to comply with the orders of the Surrogate's Court, directing her to turn over the Companies books and records so that the Receiver could fulfill her duties, and as a result, she was held in contempt of court.  *See* Baiamonte Aff. Ex. P (Decision and Order dated November 14, 2017, holding Ms. Cassini in contempt and finding that "**there are no factual disputes in issue**") (emphasis added).  Her arrest was pursuant to that order of contempt, *id.* Ex. Q, and affirmed on appeal, *id.* Ex. L.  This issue has been litigated to its final conclusion and is not subject to further challenge here.  Insofar as Ms. Cassini purports to raise violations of her constitutional and other rights arising out the arrest, she has failed to state a claim in any event.  *See infra* Section III.

11

## POINT II

### THE AMENDED COMPLAINT FAILS TO
### STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

While the entirety of the Amended Complaint should be dismissed pursuant to the *Rooker-Feldman* doctrine, res judicata and/or collateral estoppel, it should also be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

### A.     Plaintiffs' First Cause of Action Fails to State a Claim

Plaintiffs purported RICO claim is deficient in nearly every respect, most notably, Plaintiffs' failure to identify any specifics as to the alleged RICO enterprise – the who, what, and when.  What was the purpose of this conspiracy?  When did it begin?  What did each alleged co-conspirator do in furtherance of the purported conspiracy?  Were there meetings among the alleged co-conspirators?   Plaintiffs' disappointment with the outcome of the state court proceedings, without more, does not qualify as a RICO conspiracy.  Mov. Br. at 21-24.  In their opposition, Plaintiffs do not point to a single allegation in their Amended Complaint that suggests otherwise.  Instead, they just conclusively declare that "Plaintiffs have alleged conduct of an enterprise through a pattern of racketeering activity and resultant injury to business and property."  Opp. Br. at 19.  This is far from sufficient.

As to each Defendants' role and conduct, Plaintiffs claim, without any citation, that this is set out in the Amended Complaint "where appropriate," but Defendants are otherwise "referred to collectively."  Opp. Br. at 19.  Plaintiffs all but admit that this is not enough as they speculate that perhaps through discovery they can find support for their insufficiently pleaded claims.  *Id.* at 20.  Respectfully, Plaintiffs have it backwards.  They must first plead a plausible claim for relief that is made up of more than mere labels and conclusions, and only then can they proceed to discovery.  It is no coincidence that Magistrate Shields has already entered a stay of

discovery pending the outcome of this motion.

Plaintiffs effectively abandon their allegations of fraud as a RICO predicate act in order to avoid the heightened pleading standard of Rule 9(b).  Opp. Br. at 20.  But Plaintiffs' allegations that Defendants violated 18 U.S.C. § 1957 (monetary transactions in property derived from unlawful activity) and 18 U.S.C. §§ 2314, 2315 (interstate transportation of stolen property) fare no better.  The entirety of the Amended Complaint is based on a single, flawed premise: the Surrogate's Court got it wrong when it determined that property owned by the Companies belonged to the Estate, not Plaintiffs – a decision reached by former Surrogate McCarty, a non-party to these proceedings.  Not only is this final judicial conclusion not subject to federal review, *see supra* Point I, but it bars Plaintiffs from alleging that _they_ own this property and its court-ordered sale was theft and unlawful activity underlying an alleged RICO conspiracy.

Plaintiffs also have not alleged a RICO enterprise that has "an existence separate and apart from the racketeering activity itself."  Mov. Br. at 23 (quoting *Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP*, 2022 WL 901660 at *21 (S.D.N.Y. Mar. 28, 2022)).  Plaintiffs' allegations that Defendants are all "of the same political party," Opp. Br. at 21, even if true, is not enough.  The Amended Complaint contains merely conclusory allegations of a RICO conspiracy based on their disagreement with the rulings of the Surrogate's Court.  At best, Plaintiffs complain of allegedly "fraudulent litigation activities."  This is insufficient as a matter of law.  Mov. Br. at 24.

As to Surrogate Reilly, DeLuca, and Curran, they cannot be liable under RICO in their official capacity.  *See* Mov. Br. at 25.  In response, Plaintiffs argue that Surrogate Reilly and DeLuca have been sued only in their individual capacity.  *See* Opp. Br. at 21.[10]  However,

---

[10] Plaintiffs have abandoned any RICO claim as to Curran.  Opp. Br. at 21.

Plaintiffs complain exclusively of actions these Defendants took in their official capacities.

The Amended Complaint specifically states that Plaintiffs disagree with Surrogate Reilly's "handling of the estate proceeding." Am. Compl. ¶ 28. The Amended Complaint goes on to state that the "improper acts of [Surrogate] Reilly" were "carr[ied] out **in her capacity as Nassau County Surrogate**. . . ." *Id.* ¶ 109 (emphasis added). The Amended Complaint describes Surrogate Reilly's orders issued in the Estate proceedings, including appointing the Receiver and her attorney, denying a stay, issuing a decision after trial, holding Ms. Cassini in contempt of court and ordering confinement for the contempt, deciding ownership of various estate assets, among others as the actions this lawsuit targets. Am. Compl. ¶¶ 9, 16, 20, 42, 59-65, 72, 78, 81, 85, 122, 126-127.  Plaintiffs cannot argue in opposition to the Motion to Dismiss that they intended to sue Surrogate Reilly in her individual capacity where the Amended Complaint itself alleges only actions by Surrogate Reilly in her role as Surrogate in the Estate proceedings.

Similarly, the Amended Complaint makes clear that all of DeLuca's actions were undertaken in his capacity as Public Administrator.  From the earliest pages of the Amended Complaint, Plaintiffs allege that DeLuca "improperly us[ed] his office to misappropriate the assets of the Cassini Estate. . . ."  Am. Compl. ¶ 7.  Just as Plaintiff cannot now claim that Surrogate Reilly was to be sued in her individual capacity, Plaintiff cannot make a similar claim against DeLuca where the factually sparse allegations involve official conduct only.

For all of these reasons, the RICO claim should be dismissed.

**B.    Plaintiffs' Second Cause of Action Fails to State a Claim**

Plaintiffs' § 1983 due process claim is built wholly on conclusory assertions, and therefore, must be dismissed. *See* Mov. Br. at 25-26.  Plaintiffs do little to suggest otherwise in their opposition. *See* Opp. Br. at 21. Plaintiffs argue that Ms. Cassini's due process rights were violated because the Appellate Division disagreed with some of Surrogate Reilly's decisions. *See*

*id.* However, by acknowledging that Ms. Cassini was afforded and utilized her right to appeal Surrogate Reilly's decisions, Plaintiffs show exactly how Ms. Cassini was provided with due process. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988) ("[T]he availability of . . . recourse [within the state judicial system], as a matter of law, precludes finding that defendants' conduct violated plaintiffs' rights to procedural due process."). Plaintiffs' opposition goes on to state that there "is no contention that Plaintiff Gemeaux, Ltd. was ever afforded due process in connection with the deprivation of its property." Opp. Br. at 22. Again, the Amended Complaint, and the underlying state court filings, clearly demonstrate that all decisions regarding the Estate and its assets were made pursuant to the lengthy judicial Estate proceedings.[11] Plaintiffs are left only with the conclusory assertions that their rights were violated, which is insufficient to state a claim. *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) ("complaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed") (internal citation omitted).

As to Ms. Cassini's contention that her substantive due process rights were violated as a result of the conditions of her pre-trial confinement, such a claim must similarly be dismissed. The sole allegation in the Amended Complaint regarding a substantive due process claim is that Defendants' conduct "shocks the conscience, was outrageous and egregious under the circumstances, and Defendants' was [sic] truly brutal and offensive to Mrs. Cassini's human dignity." Am. Compl. ¶ 142. Such conclusory pleading is insufficient. *Ostrer*, 567 F.2d at 553.

### C.    **Plaintiffs' Third Cause of Action Fails to State a Claim**

Nothing contained within Plaintiffs' opposition regarding the Fourth Amendment warrants denial of the Defendants' motion to dismiss the Third Cause of Action. In effect,

---

[11] Gemeaux also ignores that its claims were heard – and rejected – by the New York County Supreme Court and the First Department. *See* Baiamonte Aff. Exs. II, JJ.

Plaintiffs' opposition consists of a repetition of the Amended Complaint's allegations followed by the conclusion that "under the circumstances of this case the [arrest] warrant cannot be said to constitute legal process."  Opp. Br. at 22-24.  Plaintiffs cite to no legal authority to support that argument.  In fact, Plaintiffs all but concede that the arrest was privileged because it was conducted pursuant to an arrest warrant (*see* Opp. Br. at 22), but then argue that this Court should look past that point because of subsequent outcomes in the habeas proceeding and the Appellate Division litigation.  However, none of that changes the fact that Surrogate Reilly is absolutely immune from this claim under well-established law.  Moreover, Plaintiffs have not established any basis upon which the County of Nassau – as a municipality – could be liable. And none of the Plaintiffs' arguments alter the fact that the Nassau County Sheriff and the New York City Sheriff cannot be held liable under the authority of *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020) – a point that Plaintiffs do not even bother to oppose.

### D.    Plaintiffs' Fourth Cause of Action Fails to State a Claim

As an initial matter, Plaintiffs have failed to plead any denial of medical treatment claim, and "[i]t is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs." *In re IAC/Interactivecorp Sec. Litig.*, 695 F. Supp. 2d 109, 124 (S.D.N.Y. 2010) (quoting *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005)). Thus, the Court should not consider newly added allegations with respect to the purported claim for denial of medical treatment in Plaintiffs' opposition brief.

Further, Plaintiffs have failed to address Defendants' arguments that the protections of the Eighth Amendment do not apply to pre-trial detainees and arrestees. *See* Mov. Br. at 30 (citing *Boadi v. City of New York*, 2012 U.S. Dist. LEXIS 104652 at *11 (E.D.N.Y. 2012); *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009)). Here, Ms. Cassini was never convicted or sentenced.  Accordingly, Plaintiffs' Eighth Amendment claim must be dismissed.

**E.    Plaintiffs' Fifth Cause of Action Fails to State a Claim**

Plaintiffs' claim for a conspiracy to violate civil rights in violation of 42 U.S.C. §§ 1985 and 1986 is also insufficient.  Among other things, Plaintiffs fail to allege (i) a "meeting of the minds . . . to achieve an unlawful end," (ii) that Defendants were "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus," or (iii) that Plaintiffs are members of a protected class.  Mov. Br. at 30-32 (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) and *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015)).

Plaintiffs claim in their opposition that the meeting of the minds was the agreement by Defendants "to gather and sell Plaintiffs' property," *see* Opp. Br. at 25, but just like their RICO claim, this falls far short of Plaintiffs' pleading burden.  There are no factual allegations that Defendants met and agreed to "steal" Plaintiffs' property.  Rather, Plaintiffs complain solely of the sale of property belonging to the Companies (an asset of the Estate) that was done pursuant to court order.  This does not constitute a "meeting of the minds . . . to achieve an unlawful end." *Webb*, 340 F.3d at 105.  The same is true for Plaintiffs' claim that there was a meeting of the minds "as to how to best punish and subdue" Ms. Cassini by making a motion to hold her in contempt of court.  Opp. Br. at 25.  Ms. Cassini was held in contempt of court because she refused to comply with court orders, despite being given multiple opportunities to do so.  Baiamonte Aff. Exs. P, Q.  Nowhere in the Amended Complaint or Plaintiffs' opposition does Ms. Cassini argue she actually complied with those court orders.

As to Defendants' alleged "racial or perhaps otherwise class-based, invidious discriminatory animus," and Plaintiffs' alleged membership in a protected class, Plaintiffs claim that Ms. Cassini (but not Gemeaux) is protected as a widow.  Opp. Br. at 26.  This argument finds no support in any section 1985 or 1986 case, and it is thus unsurprising that Plaintiffs cite only a footnote in a Title VII gender discrimination case.  *See Back v. Hastings on Hudson*

*Union Free Sch. Dist.*, 365 F.3d 107, 119 n.9 (2d Cir. 2004).  Plaintiffs have not alleged any racial or other class-based animus, they are not members of a protected class, and they have not alleged a claim under sections 1985 and 1986.

    **F.**    **Plaintiffs' Sixth Cause of Action Fails to State a Claim**

Plaintiffs' abuse of process claim fails because it consists of nothing more than their disagreement with the rulings of the Surrogate's Court.   Mov. Br. at 32-33 (citing *3H Enterprises, Inc. v. Dwyre*, 182 F. Supp. 2d 249, 261 (N.D.N.Y. 2001); *Zeckendorf v. Kerry H. Lutz*, 282 A.D.2d 295, 295, 723 N.Y.S.2d 360, 361 (1st Dep't 2001)).  It is also time-barred.  *Id.* at 33 (citing CPLR 215; *Cuillo v. Shupnick*, 815 F. Supp. 133, 136 (S.D.N.Y. 1993)).

Plaintiffs do not respond to the former point, merely claiming that the orders of the Surrogate's Court were "improper" and issued "to shield Defendants from liability for their unlawful activity."  Opp. Br. at 26.  These conclusory statements are insufficient.

As to the statute of limitations, Plaintiffs argue that a three-year limitations period applies to their abuse of process claim under section 1983.  Plaintiffs did not assert an abuse of process claim under section 1983 claim, and it is therefore subject to New York's one-year statute of limitations.  *See* CPLR 215.  And, contrary to Plaintiffs' arguments, this is not a continuing tort. Plaintiffs complain expressly about orders entered no later than 2019, yet they did not file this action until 2022.  As to tolling due to Ms. Cassini's incarceration, even if applied, she was released on March 27, 2019 (Am. Compl. ¶ 107) and had ample time to bring this purported claim prior to 2022.  This claim should be dismissed.

    **G.**    **Plaintiffs' Seventh Cause of Action Fails to State a Claim**

As noted above, Plaintiffs' conversion claim fails for the simple reason that the property they allege was converted has already been determined to belong to OCI, which is property of the Estate.  Mov. Br. at 33 (citing *Petrohawk Energy Corp. v. L. Debenture Tr. Co. of New York*,

2007 WL 211096, at *4 (S.D.N.Y. Jan. 29, 2007); *Turecamo v. Turecamo*, 55 A.D.3d 455, 455 (1st Dep't 2008)).  Plaintiffs' sole response: those rulings were "preliminary in nature."  Opp. Br. at 27.  This is false, as each of these rulings, including then-Surrogate McCarty's 2015 ruling that the Companies are properties of the Estate, not Plaintiffs, are final and no longer the subject of any further appeals or litigation.  Baiamonte Exs. I, L, CC, JJ.

> **H.**     **Plaintiffs' Eighth Cause of Action Fails to State a Claim**

Plaintiffs' breach of fiduciary duty claim against the Receiver, DeLuca, and Curran fails, because they do not allege a failure to exercise due care except in the most conclusory fashion. Mov. Br. at 34-35 (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiffs argue that this claim involves "disputed factual matters beyond the pleading."  Opp. Br. at 28.  This is not correct where, as here, the alleged breach is based on court-ordered sales, and everything these Defendants are alleged to have done was pursuant to lawful, final court orders.

In addition, as to the Receiver, Ms. Cassini does not allege any duty owed to her.  Mov. Br. at 34-35 (citing *People v. Merkin*, 124 A.D.3d 435, 435 (1st Dep't 2015)).  Plaintiffs' opposition completely misses the point, arguing that the Receiver owed a duty to the Estate, not any specific beneficiary.  This is insufficient.  *Merkin*, 124 A.D.3d at 435 ("receiver owed no duty to petitioner; his fiduciary duty was to the fund as a whole, not to any particular investor"). This claim should be dismissed.

> **I.**     **Plaintiffs' Ninth Cause of Action Fails to State a Claim**

Plaintiffs' constructive trust claim fails for the same reason as their conversion claim: they are collaterally estopped from arguing that any of the property sold by Defendants (*i.e.*, OCI's McCouns Lane property or the Doyle Auctioned Property) belonged to Plaintiffs.  Mov. Br. at 35 (citing *Petrohawk*, 2007 WL 211096 at *7); *see also supra* Section I.B.  Plaintiffs' response: they have alleged that they have an interest in the property.  While they did allege as

much, the issue has already been decided against them by the state courts.  Baiamonte Aff Exs. I, CC, JJ.  This claim should be dismissed.

**J.      Plaintiffs' Tenth Cause of Action Fails to State a Claim**

Plaintiffs' claim for intentional infliction of emotional distress ("IIED") fails to allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community."  Mov. Br. at 36 (quoting *Selvam v. United States*, 2021 WL 5149809, at *51 (E.D.N.Y. Nov. 5, 2021)).  It also fails as it is a tort of last resort that can be brought only when other theories of tort recovery are unavailable.  *Id.* (citing *Salmon v. Blesser*, 802 F.3d 249, 256-57 (2d Cir. 2015)).  **Plaintiffs ignore both points, thus admitting their pleading failure**.

This claim is also time-barred.  Mov. Br. at 37 (citing CPLR 215(3); *Truman v. Brown*, 434 F. Supp. 3d 100, 117 (S.D.N.Y. 2020)).  Plaintiffs argue this is another "continuing wrong," but even if correct, Plaintiffs must allege at least one act within the one-year statute of limitations.[12]  This case is based entirely on court orders entered no later than 2019.

**K.      Plaintiffs' Eleventh Cause of Action Fails to State a Claim**

Plaintiffs' trespass claim, like all of their claims grounded in purported property rights, fails based on numerous court orders that have decided those issues.  Mov. Br. at 37-38 (Baiamonte Aff. Exs. EE, FF, II, JJ).  Plaintiffs inexplicably "dispute this" and claim that any such order "was fraudulently procured and issued in furtherance of the conspiracy and other illegal acts alleged in the Amended Complaint."  Opp. Br. at 30.  This circular argument, which just recycles all of Plaintiffs' conclusory and boilerplate allegations of fraud, conspiracy, and

---

[12] *See Barone v. United States*, 2016 WL 2658174, at *2 (S.D.N.Y. May 5, 2016) (if continuing wrong doctrine applies, the "last actionable act" of the alleged course of conduct must still fall within the statute of limitations).

illegal court orders (addressed in detail above) cannot revive their insufficiently pleaded claim.

**L.  Plaintiffs' Twelfth Cause of Action Fails to State a Claim**

Plaintiffs' unjust enrichment claim fails because, again, other courts have already determined that Plaintiffs do not own the property they claim was stolen.  Mov. Br. 38-39 (citing *Petrohawk*, 2007 WL 211096 at *7).  Plaintiffs argue, yet again, that these court orders "were issued in furtherance of Defendants' illicit scheme and were either overturned by a higher court already, or are interlocutory in nature and still subject to appeal or to revision after trial by a final determination on the merits."  Opp. Br. at 31.  As discussed throughout this brief and Defendants' moving brief, the state courts have finally determined that (i) the Companies are assets of the Estate, not Plaintiffs, and (ii) the Receiver and Doyle were authorized to sell the Estate's property.  These rulings were not reversed and are not subject to further litigation. Plaintiffs' unjust enrichment claim should be dismissed.

**POINT III**

**THE AMENDED COMPLAINT IS BARRED BY THE DOCTRINES
OF SOVEREIGN AND/OR JUDICIAL IMMUNITY AS AGAINST SURROGATE
REILLY, THE RECEIVER, MR. MILLER, AND THE NEW YORK CITY SHERIFF**

**A.  Sovereign and Judicial Immunity Bar All Claims Against Surrogate Reilly**

Sovereign immunity bars all claims against Surrogate Reilly in her official capacity as the Nassau County Surrogate. *See* Mov. Br. at 39-40.  In response, Plaintiffs claim that Surrogate Reilly has only been sued in her individual, not official, capacity.  *See* Opp. Br. at 31. As described *supra* at Section II.A, because Plaintiffs only allege actions taken by Surrogate Reilly in her official capacity as Surrogate presiding over the Estate proceedings, Surrogate Reilly has been sued in her official capacity, not her individual capacity. *See also* Mov. Br. at 39-40.

Even if the Amended Complaint could be construed as suing Surrogate Reilly in her individual capacity, Surrogate Reilly would still be immune from suit, under the doctrine of

21

absolute judicial immunity. *See* Mov. Br. at 40. The doctrine of absolute judicial immunity protects judicial officers from lawsuits brought against them in their individual capacity for their judicial actions. *See Bradley v. Fisher*, 80 U.S. 335, 347 (1871); *Raghavendra v. Fenn*, 2019 WL 4963257, at *4 (E.D.N.Y. Oct. 7, 2019); *Booker v. O'Brien*, 2019 WL 5267307, at *3 (E.D.N.Y. Oct. 16, 2019). As described above, Plaintiffs complain exclusively of Surrogate Reilly's judicial actions taken as Surrogate presiding over the Estate proceedings.

Plaintiffs cite the Second Circuit's decision in *Dekom v. Fannie Mae*, 846 F. App'x 14 (2d Cir.), *cert. denied sub nom. Dekom v. Fed. Nat'l Mortg. Ass'n*, 211 L. Ed. 2d 27, 142 S. Ct. 100 (2021) and Supreme Court's decision in *Mireles v. Waco*, 502 U.S. 9 (1991), which held that judicial immunity does not apply "where the judge acted in the complete absence of all jurisdiction." *Dekom*, 846 F. App'x at 18 (citing *Mireles*, 502 U.S. at 11-12) (internal quotations marks omitted). *See* Opp. Br. at 31.   Plaintiffs contend that because the Appellate Division disagreed with some of Surrogate Reilly's orders, she was acting in absence of jurisdiction. *See id.* at 25-26. Plaintiffs do not (and cannot) cite any authority for such a contention.

Moreover, *Dekom* and *Mireles*, cited by Plaintiffs, demonstrate why absolute judicial immunity applies here. In *Dekom*, the Second Circuit held that defendant New York Supreme Court and Appellate Division justices were entitled to judicial immunity where the targeted actions "pertained to the management of [the underlying] foreclosure case and appeal, thus making them judicial in nature." *Dekom*, at 18-19 (citing *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009) ("acts arising out of, or related to, individual cases before the judge are considered judicial in nature") and *Rodriguez v. Weprin*, 116 F.3d 62, 66–67 (2d Cir. 1997)).

In *Mireles*, the U.S. Supreme Court held that a judge was immune from suit where the plaintiff alleged "the judge, angered by the absence of attorneys from his courtroom, ordered the

police officer defendants to forcibly and with excessive force seize and bring plaintiff into his courtroom." The plaintiff alleged that the judge "knowingly and deliberately approved and ratified each of the [aggressive and violent] acts of the police officers." *Mireles*, 502 U.S. at 10 (internal citations and quotation marks omitted). The *Mireles* Court emphasized that the "relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself." *Id*. (citing *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). Here, the challenged acts are all undisputedly orders and decisions made by Surrogate Reilly while presiding over the Estate proceedings – the function inherent in a judge's role. *See supra* at Section I.A, describing the alleged acts by Surrogate Reilly cited in the Amended Complaint. As such, Surrogate Reilly is immune from suit.

**B.**    **Judicial Immunity Bars All Claims Against the Receiver and Mr. Miller**

Plaintiffs admit that the Receiver is "cloaked with judicial immunity," but claims this immunity does not apply because the Second Department subsequently vacated the order providing for the Receiver's initial appointment. Opp. Br. at 34. Thus, Plaintiffs argue that the Receiver "cannot lawfully enjoy immunity for the period of time she was found to not have been appointed pursuant to lawful court order." *Id*.[13] Plaintiffs do not cite a single case to support this sweeping conclusion. But more importantly, as discussed above, the Second Department (i) vacated only those decisions and orders entered in a four-month window (none of which are at issue here), and (ii) kept the Receiver in place as a temporary receiver pending a renewed motion before the Surrogate's Court. On remand, the renewed motion was granted, the Receiver was subsequently re-appointed, and she has continued to serve in that role since that time. *See* Baiamonte Aff. Exs. L, M, and N. All of the Receiver's actions at issue in the Amended Complaint were undertaken in accordance with legal process and pursuant to court orders, none

---

[13] Plaintiffs also make the incredible claim that because the Receiver is an attorney, she should have known in 2016 that the Second Department would vacate her appointment on procedural grounds four years later. Opp. Br. at 34.

of which have been vacated.  Plaintiffs' unsupported claim that those orders were "illegal and part of a conspiracy" need not be considered.  The Receiver is entitled to judicial immunity.

As to Mr. Miller, Plaintiffs simply rehash the same arguments regarding the Receiver's immunity, which can and should be rejected for the same reasons.  Opp. Br. at 38.  Plaintiffs also claim, without any legal citation, that judicial immunity does not extend to the court-appointed Receiver's court-appointed attorney.  As set forth in the moving brief, it does.  Mov. Br. at 41.

### C.   Quasi-Judicial Immunity Bars All Claims Against the New York City Sheriff

Plaintiffs conflate the defense of qualified immunity with that of quasi-judicial immunity, only the latter of which was raised by Defendant Fucito.  Mov. Br. at 42-43.  Plaintiffs claim Defendant Fucito is not entitled to qualified immunity but concede that the arrest of Ms. Cassini was based on a facially valid arrest warrant, and then attempt to set out additional allegations against Defendant Fucito in a footnote. Opp. Br. at 40 n.5.  First, with respect to Plaintiffs' footnote, as discussed *supra* at Section II.D*,* Plaintiffs cannot amend their pleading in an opposition brief.  As such, these unpleaded allegations should be disregarded by the Court.

Second, "[c]ourts regularly grant quasi-judicial, absolute immunity to individuals executing court orders. '[B]ecause the function being performed is deemed integral to the judicial process, persons who faithfully execute valid court orders are absolutely immune from liability for damages in actions challenging conduct authorized by the order." *Harley v. Guida*, No. 19-CV-6152(EK)(MMH), 2022 U.S. Dist. LEXIS 176529, at *7 (E.D.N.Y. Sep. 28, 2022) (quoting *Maldonado v. N.Y. County Sheriff*, No. 5-CV-8377, 2006 U.S. Dist. LEXIS 64391, 2006 WL 2588911, at *5 (S.D.N.Y. Sept. 6, 2006)); *see also* Mov. Br. 43. Here, Plaintiffs concede that Ms. Cassini was arrested by "six agents of the New York City Sheriff" pursuant to the contempt order directing the arrest and confinement of Ms. Cassini issued by Surrogate Reilly. *See* Am. Compl. ¶¶ 67-68.  Accordingly, Defendant Joseph Fucito is entitled to quasi-

24

judicial immunity because all of Plaintiffs' claims against him stem from Ms. Cassini's May 3, 2018 arrest, which was effectuated pursuant to a lawful warrant.

## POINT IV

### THE AMENDED COMPLAINT IS BARRED BY THE *BARTON* DOCTRINE AS AGAINST THE RECEIVER AND HER COUNSEL, MR. MILLER

The *Barton* Doctrine requires that Plaintiffs seek leave of the Surrogate's Court before filing a suit against the Receiver or her court-appointed counsel, Mr. Miller. Mov. Br. at 43-44 (citing *Barton v. Barbour*, 104 U.S. 126, 128 (1881)). Plaintiffs claim that the doctrine does not apply for the same reasons judicial immunity purportedly does not apply: the Receiver's actions "undertaken during the period during which her appointment was deemed invalid are not cloaked by court order or any theoretical immunity." Opp. Br. at 36. These arguments fail for the same reasons. *See supra* Point III.B. Plaintiffs also argue that their claims are subject to a statutory exception to *Barton* found in 28 U.S.C. § 959. This case, however, is not about the Receiver's "carrying on business" with respect to the Companies' property, *see* 28 U.S.C. § 959, but rather, Plaintiffs' complaints about court orders entered by the Surrogate's Court that authorized the sale of those Estate assets. On its face, the statutory exception does not apply.

As to Mr. Miller, Plaintiffs declare *Barton* inapplicable to the Receiver's counsel, but, as with their immunity arguments, they cite no supporting authority. As set forth in Defendants' moving brief, the *Barton* doctrine extends to Mr. Miller. Mov. Br. at 43 (citing *Scharrer v. Fundamental Admin. Servs., LLC*, 2013 WL 12169310 at *3 (M.D. Fla. Sept. 10, 2013) ("The *Barton* doctrine applies to actions against a receiver as well as a receiver's counsel.")).

## POINT V

### PLAINTIFFS' CLAIMS AGAINST DOYLE ARE BARRED BY RES JUDICATA

Plaintiffs have already sued Doyle for claims arising out of the auction, they lost, and that

decision was affirmed by the First Department.  Baiamonte Aff. Exs. II and JJ.  Accordingly, all of Plaintiffs' claims against Doyle – which are based on the auction – are barred by res judicata. Mov. Br. at 44-45.  Plaintiffs' attempts to avoid this black-letter law should be rejected.

First, Plaintiffs assert that "the state court judgment upon which [Doyle] relies was procured by collusion and fraud."  Opp. Br. at 43.  There is no allegation of fraud or collusion by Justice Love (who dismissed the state court action against Doyle) or any judge in the First Department (who affirmed that decision), all of whom considered, and rejected, Plaintiffs' challenges to the Surrogate Court orders authorizing the sale of the Doyle Auctioned Property. Second, Plaintiffs assert that res judicata does not apply because the parties were different.  *Id.* at 44.  That is demonstrably false.  Plaintiffs in this action are the same plaintiffs who sued Doyle in the state court conversion action.  Res judicata applies.  Finally, Plaintiffs claim, without citation, that res judicata does not apply because they only chose to sue Doyle, and not any other defendant, in state court.  *Id.* at 38.  Plaintiffs cannot escape the res judicata bar based on their own selection of defendants in state court.  *See, e.g., O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981) (res judicata bars "all other claims arising out of the same transactions or series of transactions … even if based upon different theories or if seeking a different remedy").

## POINT VI

### THIS COURT SHOULD DECLINE TO ADJUDICATE ANY DISPUTES THAT ARE SUBJECT TO FURTHER STATE COURT PROCEEDINGS UNDER THE COLORADO RIVER DOCTRINE OF ABSTENTION

As discussed in Defendants' moving brief and above, the Amended Complaint should be dismissed in its entirety for numerous reasons, not the least of which is the undisputed fact that the claims Plaintiffs purports to assert here have already been decided against them in other courts.  There has been more than a decade of litigation before the Surrogate's Court where these issues have been fully and finally decided, those decisions have been affirmed on appeal, and

Plaintiffs have even tried (and failed) to get a different result in New York County Supreme Court with respect to the Doyle Auctioned Property. Nevertheless, should this Court conclude that there are issues raised in this federal action that remain subject to further litigation in the Surrogate's Court (a conclusion with which Defendants respectfully disagree), this Court should decline to adjudicate any such issues under the *Colorado River* doctrine of abstention. Although the six factors favoring abstention are not a mechanical checklist, this case clearly meets most of them. Mov. Br. at 45-47 (citing *De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989)). Moreover, "the special expertise of the Surrogate's Court" makes abstention "particularly appropriate" in this case to avoid interfering with the Estate proceedings. *Id.* at 47 (quoting *In re Horler*, 799 F. Supp. 1457, 1466 (S.D.N.Y. 1992)).

In response, Plaintiffs argue that this federal action and the Estate proceedings "are clearly not parallel to one another," because their purported federal claims cannot be asserted in Surrogate's Court. Opp. Br. at 17. This ignores the fact that the only way Plaintiffs' federal claims can possibly succeed would be if this Court were to overturn the past decade of rulings by the Surrogate's Court, which has already determined that the Companies are property of the Estate, not Plaintiffs, and the Receiver and Doyle were authorized to sell the Estate's property. If Plaintiffs wish to complain about ownership of Estate property (which has already been decided), the Surrogate's Court is the proper forum.

Plaintiffs also argue that *Horler* does not apply, because the Estate proceedings are now being handled by the Acting Surrogate of Nassau County. Opp. Br. at 18. This is absurd. When Plaintiffs filed this action, Surrogate Reilly – who they claim violated their rights – presided over the Estate proceedings. She has since recused herself, and Plaintiffs are trying to use that as a sword to avoid application of the abstention doctrine. This argument should be flatly rejected.

# POINT VII

## ALL CLAIMS AGAINST DEFENDANT JOSEPH FUCITO SHOULD BE DISMISSED

### A.    Plaintiffs' Claims Against Fucito Are Time-Barred

Plaintiffs argue that their claims against Defendant Fucito did not expire "prior to the commencement of this action because they did not begin to accrue until a later date than that asserted by Defendant." Opp. Br. at 40.  However, Plaintiffs offer no authority to support their conclusory argument that the issuance of an arrest warrant in this case cannot be said to constitute legal process. Further, Plaintiffs improperly rely on *Heck v. Humphrey* for their argument that Ms. Cassini was unable to "bring suit alleging constitutional violations stemming from her arrest and confinement until her habeas corpus petition was granted and she was released from confinement." Opp. Br. at 41.  *Heck* dealt with an action for damages based on a conviction or sentence and not merely an arrest. As such, this argument should be rejected.

To the extent Plaintiffs purportedly alleged an excessive force claim against Defendant Fucito, such a claim is time-barred and the ruling in *Heck* is similarly inapplicable.  As discussed in Defendants' moving brief, "[a]n excessive force claim accrues when the use of force occurred." Mov. Br. at 48 (quoting *Ellis v. Kelly*, No. 17-CV-6656 (RRM), 2019 U.S. Dist. LEXIS 43990, at *14 (E.D.N.Y. Mar. 18, 2019)).  Any purported excessive force claim against Defendant Fucito accrued on May 3, 2018, and expired on May 3, 2021, nearly one year before Plaintiffs filed their Complaint.  Further, to the extent Ms. Cassini argues that she was unable to bring suit for damages until after her habeas corpus petition was granted, no such argument applies to an excessive force claim. Here, the basis for damages relating to Ms. Cassini's purported excessive force claim is entirely independent of any conviction or sentence and irrelevant to the status of any habeas corpus petition brought by Ms. Cassini.

In a futile attempt to salvage their time-barred claims against Defendant Fucito, Plaintiffs

argue that "he is being sued in his official capacity only . . . in other words, Plaintiffs have asserted a *Monell* claim." Opp. Br. at 41. As a threshold matter, Plaintiffs failed to name the City of New York as a defendant in this matter. Moreover, "*Monell* municipal liability does not extend to individuals." *Fate v. Petranker*, No. 19 CV-05519 (PMH), 2020 U.S. Dist. LEXIS 119103, at *16 (S.D.N.Y. July 6, 2020). Accordingly, all of Plaintiffs' claims against Defendant Fucito are time-barred and should be dismissed.

Plaintiffs argue for equitable tolling based on unsupported and frivolous allegations. As an initial matter, Plaintiffs offer no support for their contention that Ms. Cassini "could not have obtained counsel or filed suit while she was incarcerated." Opp. Br. at 42. For Plaintiffs' purported § 1983 claims, courts apply a federal equitable tolling standard, which applies "only in rare and exceptional circumstances" where "extraordinary circumstances prevented a party from timely performing a required act, and that the party acted with reasonable diligence throughout the period [s]he sought to toll." *Walker v. Jastremski,* 430 F.3d 560, 564 (2d Cir. 2005) (internal citation, quotation marks and brackets omitted); *see also Moses v. Westchester Cnty. Dep't of Corrections,* 951 F. Supp. 2d 448, 454 (S.D.N.Y. 2013).

Plaintiffs allege that Ms. Cassini was arrested by agents of the New York City Sheriff on May 3, 2018, injured when she was arrested, brought to the Nassau County Surrogate's Court, and subsequently released on November 2, 2018.  *See* Am. Compl. ¶¶ 68-70, 80. Plaintiffs have failed to demonstrate any circumstances, much less exceptional, that prevented Ms. Cassini from timely asserting a claim against Defendant Fucito until March 27, 2022.

### B.    Plaintiffs' Claims Against Fucito Also Fail For Lack of Personal Involvement

Plaintiffs contend that they are entitled to discovery to establish the personal involvement of Defendant Fucito. If Plaintiffs' claims cannot stand without discovery, they have not satisfied their pleading burden. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("when the

allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." (quotations omitted)).

As discussed in the moving brief, the Amended Complaint fails to allege any specific conduct attributable to Defendant Fucito that allegedly caused any of Plaintiffs' claimed constitutional violations. In fact, with respect to Ms. Cassini's arrest, Plaintiffs concede that Ms. Cassini was arrested by "agents of the New York City Sheriff," Am. Compl. ¶ 68, and fail to allege the manner in which Defendant Fucito had any personal involvement in her arrest.

To the extent Plaintiffs argue that Defendant Fucito is being sued based on a theory of supervisory liability, they claim, incorrectly, that "the extent to which 'personal involvement' need to be alleged is quite limited." Opp. Br. at 43. A complaint must set out specific allegations as to any individual defendant and establish their personal involvement. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). "[A] plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citation omitted). "The failure to plead plausible facts as to the personal involvement of a government official renders the claim fatally defective on its face." *Ligonde v. Marriot Hotel Servs.*, No. 20 CV 3680 (AMD) (CLP), 2021 U.S. Dist. LEXIS 149435, at *15 (E.D.N.Y. Aug. 5, 2021) (citation omitted). "Simply put, there's no special rule of liability for supervisors. The test for them is the same as the test for everyone else." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citation omitted). Accordingly, Defendant Fucito must be dismissed for lack of personal involvement.[14]

---

[14] Plaintiffs have withdrawn their purported state law claims against Defendants Fucito, County of Nassau, Curran, DeLuca, and Dzurenda. Opp. Br. at 19 n.3.

**<u>CONCLUSION</u>**

For the foregoing reasons, and those set forth in their moving brief, Defendants respectfully request that the Court grant their joint motion to dismiss the Amended Complaint, and grant them such other and further relief as the Court deems just, proper and equitable.

Dated: Uniondale, New York
          March 31, 2023

WESTERMAN BALL EDERER
MILLER ZUCKER & SHARFSTEIN, LLP

By: /s Jeffrey A. Miller
       Jeffrey A. Miller, Esq.
       1201 RXR Plaza
       Uniondale, NY 11556
       (516) 622-9200
       jmiller@westermanllp.com
       *Attorneys for Rosalia Baiamonte*

KAUFMAN DOLOWICH & VOLUCK, LLP

By: /s Brett A. Scher
       Brett A. Scher, Esq.
       135 Crossways Park Drive, Suite 201
       Woodbury, NY 11797
       (516) 681-1100
       bscher@kdvlaw.com
       *Attorneys for Jeffrey A. Miller*

LETITIA JAMES
Attorney General
State of New York

By: /s Steven A. Sutro
       Steven A. Sutro
       Assistant Attorney General
       28 Liberty Street
       New York, NY 10005
       Phone: (212) 416-8273
       Steven.Sutro@ag.ny.gov
       *Attorney for Surrogate Reilly*

31

THOMAS A. ADAMS
Nassau County Attorney


By: /Matthew M. Rozea_____
    Matthew M. Rozea
    Deputy County Attorney
    1 West Street
    Mineola, New York 11501
    (516) 571-0709
    mrozea@nassaucountyny.gov
    *Attorneys for Defendant County of Nassau,*
    *Brian Curran, and Jeffrey DeLuca*


L'ABBATE, BALKAN, COLAVITA &
CONTINI, L.L.P.


By: /s Marian C. Rice_____
    Marian C. Rice
    3 Huntington Quadrangle, Suite 102S
    Melville, New York 11747
    (516) 294-8844
    mrice@lbcclaw.com
    *Attorneys for Defendant Kenneth Mahon*


HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the
City of New York


By:  /s Inna Shapovalova_____
    Inna Shapovalova
    Senior Counsel
    100 Church Street
    New York, New York  10007
    (212) 356-2656
    inshapov@law.nyc.gov
    *Attorney for Defendant Fucito*

32

FARRELL FRITZ, P.C.


By:      /s Kevin P. Mulry
         Kevin P. Mulry
         400 RXR Plaza
         Uniondale, New York 11556
         Tel. (516) 227-0700
         kmulry@farrellfritz.com
         *Attorneys for William Doyle Galleries, Inc.*

02765697