UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
Marianne Nestor Cassini and Gemeaux Ltd.,

               Plaintiffs,

       -against-

County of Nassau, *et al.*,

              Defendants.
---------------------------------------------------------------X

**MEMORANDUM & ORDER**
22-CV-01696 (DG) (AYS)

DIANE GUJARATI, United States District Judge:

On March 27, 2022, Marianne Nestor Cassini ("Mrs. Cassini") and Gemeaux Ltd.

("Gemeaux," and together with Mrs. Cassini, "Plaintiffs") commenced this action against

Defendants County of Nassau; Brian Curran, in his official capacity as Nassau County Public

Administrator (the "Public Administrator"); Jeffrey DeLuca; Kenneth Mahon; Judge Margaret C.

Reilly of the Surrogate's Court of the State of New York, County of Nassau ("Judge Reilly");

Rosalia Baiamonte; Jeffrey Miller; William Doyle Galleries, Inc. ("Doyle Galleries"); James

Dzurenda, in his official capacity as Nassau County Sheriff (the "Nassau County Sheriff"); 

Joseph Fucito, in his official capacity as New York City Sheriff (the "New York City Sheriff"); 

and John and Jane Does 1-10.  *See* Complaint ("Compl."), ECF No. 1.

On August 5, 2022, Plaintiffs filed the operative Amended Complaint.  *See* Amended

Complaint ("Am. Compl."), ECF No. 25.[1]

In summary, Plaintiffs allege that they have suffered various injuries as a result of events

---

[1] Although the Complaint also listed Oleg Cassini, Inc. ("OCI") and Cassini Parfums Ltd.
("CPL") as plaintiffs in this action, *see* Compl. at 1, 3, the Amended Complaint removed OCI
and CPL as plaintiffs "without prejudice, based upon the representation by [Defendant
Baiamonte] (through her counsel) that she solely has the authority to retain counsel and
commence litigation on behalf of said corporations."  *See* Am. Compl. at 1, 3, 12 n.3.

that took place in connection with over a decade of litigation in the Surrogate's Court of the State of New York, County of Nassau (the "Surrogate's Court") relating to the estate of Oleg Cassini.[2] More specifically, the Amended Complaint alleges that various assets, of which Plaintiffs claim ownership, have been mismanaged and/or stolen from Plaintiffs, including real property located at 313 McCouns Lane, Oyster Bay Cove (the "McCouns Lane Property") and approximately seven hundred fifty-five items removed from various properties and sold at auction in 2019 by Defendant Doyle Galleries.  The Amended Complaint further alleges that Mrs. Cassini suffered various harms when she was held in contempt, arrested, and detained for a total of approximately eight months for failing to comply with orders issued by the Surrogate's Court.

The Amended Complaint asserts twelve Causes of Action: (1) violation of 18 U.S.C. § 1962 – Civil RICO, against Defendants DeLuca, Mahon, Reilly, Baiamonte, and Miller (collectively, the "RICO Defendants"), *see* Am. Compl. ¶¶ 120-37; (2) violation of the Due Process Clause of the Fourteenth Amendment, brought pursuant to 42 U.S.C. § 1983 ("Section 1983"), against Defendants Reilly, the County of Nassau, the Public Administrator, the Nassau County Sheriff, and the New York City Sheriff, *see* Am. Compl. ¶¶ 138-43; (3) violation of the Fourth Amendment right against unlawful seizure, brought pursuant to Section 1983, against Defendants Reilly, the County of Nassau, the Nassau County Sheriff, and the New York City Sheriff, *see* Am. Compl. ¶¶ 144-55; (4) violation of the Eighth Amendment right against excessive bail, fines, and cruel and unusual punishment, brought pursuant to Section 1983, against Defendants Reilly, the County of Nassau, and the Nassau County Sheriff, *see* Am. Compl. ¶¶ 156-60; (5) conspiracy to violate civil rights in violation of 42 U.S.C. §§ 1985 and

---

[2] Familiarity with the detailed procedural history and background of this action and the relevant proceedings, decisions, and orders in state court is assumed herein.

1986, against all Defendants, *see* Am. Compl. ¶¶ 161-62; (6) abuse of process, in violation of the

Fourteenth Amendment to the U.S. Constitution and New York State Law, against the RICO

Defendants, the County of Nassau, and the Public Administrator, *see* Am. Compl. ¶¶ 163-65; (7)

conversion, against the RICO Defendants and Defendant Doyle Galleries, *see* Am. Compl.

¶¶ 166-68; (8) breach of fiduciary duty, against Defendants Baiamonte, DeLuca, and the Public

Administrator, *see* Am. Compl. ¶¶ 169-73; (9) constructive trust, against Defendants Baiamonte,

the Public Administrator, and Doyle Galleries, *see* Am. Compl. ¶¶ 174-76; (10) intentional

infliction of emotional distress, against all Defendants, *see* Am. Compl. ¶¶ 177-80; (11) trespass,

against all Defendants excluding the New York City Sheriff, *see* Am. Compl. ¶¶ 181-82; and

(12) unjust enrichment, against the RICO Defendants and Defendant Doyle Galleries, *see* Am.

Compl. ¶¶ 183-85.

Plaintiffs request that the Court issue an order awarding Plaintiffs the following relief:

"[e]stablishing a constructive trust over all Plaintiffs' property remaining in the possession of

any of the Defendants and all monies in Defendants' possession or control obtained through the

sale of property belonging to Plaintiffs;" "[e]njoining all Defendants from taking any action vis-

à-vis Plaintiffs and/or the Oleg Cassini Estate until further order of this Court or the New York

State Appellate Division;" "[a] declaratory judgment declaring that Plaintiffs' constitutional

rights have been violated by Defendants in the manner described and alleged in and by" the

Amended Complaint; compensatory damages in the amount of $350,000,000.00; treble damages

pursuant to 18 U.S.C. § 1964(c); punitive damages "in amount to be determined by this Court;"

attorney's fees and costs; and such other and further relief as this Court may deem just and

proper.  *See* Am. Compl. at 38.[3]

---

[3]   In citing to the Amended Complaint, which does not contain internal pagination, the Court

Pending before the Court are (1) Defendants' Motion to Dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Motion to Dismiss"), *see* Defendants' Notice of Motion, ECF No. 64; Affidavit of Rosalia Baiamonte, Esq. in Support of Defendants' Joint Motion to Dismiss ("Baiamonte Affidavit"), ECF No. 64-1;[4] Defendants' Memorandum of Law in Support of Their Joint Motion to Dismiss the Amended Complaint ("Defs.' Br."), ECF No. 64-39; Defendants' Reply Memorandum of Law in Further Support of Their Joint Motion to Dismiss the Amended Complaint ("Defs.' Reply"), ECF No. 66, and (2) Defendants Baiamonte and Miller's Motion for Sanctions pursuant to Rule 11(c) of the Federal Rules of Civil Procedure ("Motion for Sanctions"), *see* Notice of Motion, ECF No. 69; Affirmation of Jeffrey A. Miller, Esq. in Support of Motion for Sanctions ("Miller Affirmation"), ECF No. 69-1;[5] Baiamonte Affidavit, ECF No. 69-6;[6] Rosalia Baiamonte's and Jeffrey A. Miller's Joint Memorandum of Law in Support of Their Motion for Sanctions ("Sanctions Br."), ECF No. 69-44; Rosalia Baiamonte's and Jeffrey A. Miller's Joint Reply Memorandum of Law in Further Support of Their Motion for Sanctions ("Sanctions Reply"), ECF No. 71.

---

refers either to paragraph numbers or to the page numbers generated by the Court's electronic case filing system ("ECF").  The Court also refers to the page numbers generated by ECF in citing to the exhibits attached to the Amended Complaint.  Unless noted otherwise, all other citations are to the cited document's internal pagination.

[4]  Together with the Baiamonte Affidavit, Defendants submitted thirty-seven exhibits ("Baiamonte Exs.").  *See* ECF Nos. 64-2 to 64-38.  In citing to these exhibits, the Court uses the letters assigned to the exhibits in the Baiamonte Affidavit and refers to the page numbers generated by ECF.

[5]  Together with the Miller Affirmation, Defendants Baiamonte and Miller submitted four exhibits.  *See* ECF Nos. 69-2 to 69-5.

[6]  The Baiamonte Affidavit and accompanying exhibits were filed in connection with both the Motion to Dismiss, *see* ECF Nos. 64-1 to 64-38, and the Motion for Sanctions, *see* ECF Nos. 69-6 to 69-43.

Plaintiffs oppose both motions. *See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pls.' Br."), ECF No. 65; Declaration of Kristina S. Heuser, Esq. in Opposition to F.R.C.P. Rule 11 Motion ("Heuser Declaration"), ECF No. 70;[7] Memorandum of Law in Opposition to F.R.C.P. Rule 11 Motion ("Sanctions Opp."), ECF No. 70-9.

For the reasons set forth below, the Motion to Dismiss is granted, the Amended Complaint is dismissed in its entirety, and the Motion for Sanctions is denied.

## BACKGROUND

I.    **Factual Background[8]**

A.  **Relevant Individuals and Entity**

Oleg Cassini, the internationally renowned fashion designer, died in March 2006 and was survived by his wife, Mrs. Cassini, and two daughters from a prior marriage, Christina Cassini and Daria Cassini. *See* Am. Compl. ¶ 3; Pls.' Ex. 1 at 3, ECF No. 25-2 (*Matter of Cassini*, 182 A.D.3d 13 (N.Y. App. Div. 2d Dep't 2020)). Daria Cassini died in 2010. *See* Pls.' Ex. 1 at 4. Christina Cassini died in 2015, after which attorney John J. Barnosky and Alexandre Cassini Belmont (together, the "Objectants") became the executors of Christina Cassini's estate and successor administrators of Daria Cassini's estate. *See* Pls.' Ex. 1 at 4.

Plaintiff Gemeaux is a New York corporation of which Mrs. Cassini serves as Chief

---

[7]   Together with the Heuser Declaration, Plaintiffs submitted eight exhibits. *See* ECF Nos. 70-1 to 70-8.

[8]   The following facts, which are viewed in the light most favorable to Plaintiffs, are drawn from the Amended Complaint, the exhibits attached to the Amended Complaint ("Pls.' Exs."), ECF Nos. 25-2 and 25-3, and certain documents that are subject to judicial notice and/or incorporated by reference in or integral to the Amended Complaint, as to which there appears to be no dispute regarding authenticity, accuracy, or relevance.

Executive Officer and is a fifty-percent shareholder.  *See* Am. Compl. ¶ 4.[9]

      **B.**    **The Accounting Proceeding and Removal of Mrs. Cassini as Executor**

Oleg Cassini's last will and testament was admitted to probate in August 2007, and, pursuant to its terms, Mrs. Cassini was appointed executor of Oleg Cassini's estate.  *See* Pls.' Ex. 2 at 2, ECF No. 25-3 (*Matter of Cassini*, 182 A.D.3d 1 (N.Y. App. Div. 2d Dep't 2020)).  Mrs. Cassini served as executor of the estate for several years.  *See* Pls.' Ex. 1 at 3.

Litigation involving various claims to the estate's assets thereafter ensued, including a petition filed by Mrs. Cassini in or about January 2011 in the Surrogate's Court for judicial settlement of her intermediate account as executor (the "Accounting Proceeding").  *See* Pls.' Ex. 1 at 4; Nassau County Surrogate's Court File No. 343100/G.  Mrs. Cassini's petition reflected that the estate had total gross assets of more than $56 million, including OCI and CPL.  *See* Pls.' Ex. 1 at 4.

In 2013, Christina Cassini commenced a proceeding for the removal and immediate suspension of Mrs. Cassini as executor.  *See* Baiamonte Ex. C at 4; *see also* Baiamonte Ex. B at 4.  In an Order dated March 13, 2014, Judge Edward W. McCarty, III ("Judge McCarty") – Nassau County Surrogate at that time – declined to revoke letters testamentary issued to Mrs. Cassini without a hearing.  *See* Baiamonte Ex. B at 13.  However, in the March 13, 2014 Order, Judge McCarty described various examples of the conduct of Mrs. Cassini that warranted the immediate suspension of letters testamentary issued to Mrs. Cassini, including that Mrs. Cassini "filed numerous contradictory statements with the [Surrogate's Court] regarding the ownership of estate assets;" that Mrs. Cassini "filed a deficient account and in response to multiple

---

[9]   The other half of Gemeaux is owned by Mrs. Cassini's sister, Peggy Nestor.  *See* Am. Compl. ¶ 4.

schedules, merely provided that the information was not yet available;" that "[w]hile ostensibly acting as trustee of the supplemental needs trust set up under the decedent's will, [Mrs. Cassini] set up a different trust in contravention to the decedent's wishes and without court permission" and "further paid herself the balance of the supplemental needs trust and sidestepped the requirements of SCPA 1805 . . . by claiming that the funds were her own and not the decedent's;" and that Mrs. Cassini had "personal claims which amount[ed] to almost the entire estate which put[] her in position of conflict with the beneficiary."  *See* Baiamonte Ex. B at 13-14.  Also in the March 13, 2014 Order, Judge McCarty appointed the Public Administrator of Nassau County – at that time, Defendant DeLuca – as temporary administrator of Oleg Cassini's estate and scheduled a hearing on the revocation of letters for May 16, 2014.  *See* Baiamonte Ex. B at 14; *see also* Baiamonte Ex. C at 5.

The relevant parties appeared before the Surrogate's Court for a hearing on Mrs. Cassini's removal as executor on May 30, June 2, and June 5, 2014.  *See* Baiamonte Ex. C at 5. The parties entered into a Stipulation, which was placed on the record in open court before Judge McCarty.  *See* Baiamonte Ex. C at 5.  By Decree dated November 3, 2014, Judge McCarty ordered, *inter alia*, "that the Letters Testamentary previously issued to [Mrs. Cassini], as Executor of the Estate of Oleg Cassini, are revoked, based upon [Mrs. Cassini's] resignation deemed made on June 5, 2014 from that fiduciary post" and "that Letters of Administration C.T.A. shall issue to Jeffrey DeLuca, the Public Administrator of Nassau County . . . , to serve as the Administrator C.T.A. of the Estate of Oleg Cassini."  *See* Baiamonte Ex. C at 6; *see also* Baiamonte Ex. D at 3-4.

Meanwhile, in May 2014, Christina Cassini, individually and as administrator of Daria Cassini's estate, filed objections to Mrs. Cassini's intermediate account.  *See* Pls.' Ex. 1 at 4;

Nassau County Surrogate's Court File No. 343100/G.

**C.      2015 Surrogate's Court Orders: Authorizing Public Administrator to Run OCI and CPL and Granting Summary Judgment**

Judge McCarty issued an Order, dated August 3, 2015, that authorized and directed the Public Administrator (at that time, Defendant DeLuca) to run the day-to-day operations of OCI and CPL and all their respective assets and properties. *See* Pls.' Ex. 1 at 4; Baiamonte Ex. E at 4, 8. The August 3, 2015 Order also, *inter alia*, suspended any authority of Mrs. Cassini and Peggy Nestor to perform any acts as managers, directors, or officers of OCI and CPL. *See* Pls.' Ex. 1 at 4; Baiamonte Ex. E at 8.

Then, in an Order dated November 5, 2015, Judge McCarty, upon a decision dated October 9, 2015, granted the Objectants' motion for summary judgment, sustaining certain specified objections to Mrs. Cassini's account. *See* Pls.' Ex. 1 at 4; *see generally* Baiamonte Exs. G, H. The November 5, 2015 Order determined that the shares of OCI and CPL identified in Schedule A of Mrs. Cassini's account were assets of the estate and directed Mrs. Cassini to turn over all stock certificates and financial banking records for OCI and CPL to the Public Administrator (at that time, Defendant DeLuca), as administrator C.T.A. of the estate. *See* Pls.' Ex. 1 at 4; *see generally* Baiamonte Exs. G, H.

**D.      2016 Surrogate's Court Proceedings and Orders: Withdrawal of Counsel, Stay, Appointment of Receiver, and Trial**

In or around December 2015, Mrs. Cassini's attorneys moved for leave to withdraw from representing Mrs. Cassini and requested, pursuant to N.Y. C.P.L.R. 321(c), that the matter be stayed "for a period of not less than 30 days after notice to appoint another attorney has been served on [Mrs. Cassini]." *See* Pls.' Ex. 1 at 5-6; *see also* Am. Compl. ¶¶ 19-20.[10] The

_____

[10] Commencing in early 2010, Mrs. Cassini was represented in the estate litigation, including in

Objectants did not oppose the motions for leave to withdraw.  *See* Pls.' Ex. 1 at 6.  However, despite knowing that Mrs. Cassini's counsel was seeking to be relieved and seeking to have a stay imposed pending service of a notice to appoint successor counsel, the Objectants cross-moved to appoint a receiver, and the Public Administrator (at that time, Defendant DeLuca) joined in that cross motion.  *See* Pls.' Ex. 1 at 6.

By Order dated March 14, 2016, Judge Reilly – who had become Surrogate in or around January 2016, *see* Am. Compl. ¶ 18 – granted, with respect to the Accounting Proceeding, Reppert Kelly's motion for leave to withdraw and provided for a stay of all proceedings for 30 days, which stay took effect as of the date of the March 14, 2016 Order.  *See* Pls.' Ex. 1 at 11. Nevertheless, proceedings took place on April 6, 2016, without Mrs. Cassini's participation, in the context of the Accounting Proceeding.  *See* Pls.' Ex. 1 at 11-12.

On June 8, 2016, a conference was held, during which Judge Reilly directed that the trial of the Accounting Proceeding would proceed on July 25, 2016.  *See* Pls.' Ex. 1 at 13; Pls.' Ex. 2 at 3.  By Order dated July 1, 2016, Judge Reilly, in effect, granted the Objectants' cross motion to appoint a receiver, and appointed Rosalia Baiamonte as Receiver.  *See* Pls.' Ex. 1 at 15.  On or about July 11, 2016, Mrs. Cassini made two *pro se* motions: (1) to adjourn the trial to allow her an additional 60 days to locate and retain competent counsel and allow them sufficient time to review the file so as to represent her properly, and (2) to vacate the July 1, 2016 Order, *inter alia*, appointing a receiver.  *See* Pls.' Ex. 1 at 15.

Mrs. Cassini's motion for an adjournment remained undecided when the trial commenced on July 25, 2016.  *See* Pls.' Ex. 2 at 4.  At trial, soon after the parties gave their appearances,

---

the Accounting Proceeding, by J. Vincent Reppert of Reppert Kelly, LLC and Charles H. Kaplan of Sills Cummis & Gross P.C.  *See* Pls.' Ex. 1 at 5; *see also* Pls.' Ex. 2 at 2.

Mrs. Cassini again requested an adjournment so that she could secure counsel with adequate time to prepare, which request was denied.  *See* Pls.' Ex. 1 at 17; Pls.' Ex. 2 at 5.  According to the decision after trial, the trial took place on July 25, 26, and 27, 2016 and the evidence presented included exhibits numbered up to 171 and 3 witnesses.  *See* Pls.' Ex. 1 at 17.

By Order dated October 19, 2016, Judge Reilly, *inter alia*, directed Mrs. Cassini "to perform certain tasks and deliver certain information and documents to the receiver."  *See* Pls.' Ex. 1 at 17-18.  The October 19, 2016 Order "recited, among other things, that at a conference, the receiver advised the court of [Mrs. Cassini's] continued lack of cooperation and ongoing refusal to comply with the receiver's requests for access, information, and documents, thus impeding the receiver's attempts to ascertain and preserve the property belonging to OCI and CPL, and that the receiver made an oral application, in which both the Public Administrator and the objectants joined, to direct [Mrs. Cassini] to comply with all requests for access, information, and documents contained in a prior correspondence of the receiver."  *See* Pls.' Ex. 1 at 18.

By Order dated December 12, 2016, Judge Reilly denied, as "moot," Mrs. Cassini's motion to adjourn the trial, stating that the same relief was requested and denied at the trial, and that the trial had taken place.  *See* Pls.' Ex. 1 at 18.

### E.    2017 Surrogate's Court Orders: Denial of Motions to Vacate, Civil Contempt, and Arrest Warrant

By Order dated March 6, 2017, Judge Reilly denied Mrs. Cassini's motion to vacate the July 1, 2016 order, which order had, in effect, granted the Objectants' cross motion to appoint a receiver, upon Mrs. Cassini's default, and appointed a receiver.  *See* Pls.' Ex. 1 at 18.

By notice of motion dated April 12, 2017, Mrs. Cassini moved *pro se* to "vacate and declare null and void all Decisions, Orders, Judgments and Proceedings entered or occurring in this proceeding after March 14, 2016 to the date immediately preceding the decision on this

motion on the grounds that all proceedings were automatically stayed pursuant to CPLR 321(c) until 30 days after notice to appoint a new attorney was served on [Mrs. Cassini] following the Court's March 14, 2016 order granting her attorney's application to withdraw due to health reasons" and for other and further relief.  *See* Pls.' Ex. 1 at 19-20 (alterations accepted).  In her affidavit submitted in support of her motion, Mrs. Cassini argued that the proceeding was stayed pursuant to N.Y. C.P.L.R. 321(c) when her attorney was determined to be unable, due to health reasons, to continue representing her.  *See* Pls.' Ex. 1 at 20.  According to Mrs. Cassini, the stay continued until 30 days after the attorney for the adverse party sent the notice to appoint attorney required by N.Y. C.P.L.R. 321(c).  *See* Pls.' Ex. 1 at 20.  Mrs. Cassini asserted that no such notice was ever given and, therefore, all motions, orders, decisions, judgments, and proceedings that happened after March 14, 2016, including but not limited to the order, in effect, granting the cross motion to appoint receiver, as well as the trial, were null and void and must be vacated. *See* Pls.' Ex. 1 at 20.

The Objectants set forth various arguments in opposition to Mrs. Cassini's motion to vacate, and the Public Administrator (at that time, Defendant DeLuca) also opposed the motion for the same reasons set forth in the Objectants' opposition.  *See* Pls.' Ex. 1 at 20.

In reply, Mrs. Cassini contended, *inter alia*, that the choice to proceed *pro se* was involuntarily forced on her by the court.  *See* Pls.' Ex. 1 at 20.

The Surrogate's Court issued an Amended Order dated November 13, 2017, in which it determined that Mrs. Cassini's motion was without merit and denied the motion.  *See* Pls.' Ex. 1 at 21.

Meanwhile, around the time that the motion practice was taking place on Mrs. Cassini's motion to vacate, the Receiver moved, *inter alia*, to hold Mrs. Cassini in civil and criminal

contempt for her alleged failure to comply with the October 19, 2016 Order.  *See* Pls.' Ex. 1 at

21.  By Order dated November 14, 2017, the Surrogate's Court deemed Mrs. Cassini to be in

civil contempt for her failure to comply with the court's October 19, 2016 Order, and directed

that she could purge her contempt by complying with the October 19, 2016 Order within 10 days

of the filing of the November 14, 2017 Order with notice of entry.  *See* Pls.' Ex. 1 at 21.  The

Surrogate's Court then issued an Order dated December 21, 2017 in which it determined that

Mrs. Cassini had failed to purge her contempt and ordered that a warrant of arrest and

commitment would issue directing the Nassau County Sheriff to arrest Mrs. Cassini and take her

into custody, and to bring her before the Surrogate's Court to be committed to jail until she

complied with the October 19, 2016 Order.  *See* Pls.' Ex. 1 at 21; *see also* Am. Compl. ¶ 67.

### F.     The Arrests of Mrs. Cassini, Sale of McCouns Lane Property, and Doyle Galleries Auction

The Amended Complaint alleges that Mrs. Cassini was "brutally seized and effectively

kidnapped off of the street by six agents of the New York City Sheriff at 54th Street and Fifth

Avenue in front of the University Club at 7:18 p.m. on the evening of May 3, 2018" and that

"[f]rom there, the New York City Sheriff immediately took Mrs. Cassini to a holding pen in

Long Island City and held her[] there overnight against her will and without due process of law."

*See* Am. Compl. ¶ 68.  The Amended Complaint further alleges that Mrs. Cassini was injured

when she was "unlawfully seized off the street and thrown into a vehicle with her hands cuffed

behind her back, hitting the door and falling to the floor like a rag doll" and that Mrs. Cassini

"heard someone saying, 'Does she have a pulse?' right before she passed out."  *See* Am. Compl.

¶ 69.  The Amended Complaint alleges that Mrs. Cassini was released on or about November 2,

2018.  *See* Am. Compl. ¶ 80.

The Amended Complaint alleges that, while Mrs. Cassini was incarcerated, the RICO

Defendants conspired together to execute the seizure of Mrs. Cassini's real property – the McCouns Lane Property – and its contents.  *See* Am. Compl. ¶ 73.

The record reflects that in an Order dated May 23, 2018, Judge Reilly noted, *inter alia*, that Mrs. Cassini was taken into custody for her failure to comply with the requirements of the court's October 19, 2016 Order and that Mrs. Cassini had continued to refuse to provide information required by the October 19, 2016 Order, including information necessary for the Receiver to gain access to the McCouns Lane Property, and Judge Reilly authorized the Receiver to take all steps reasonably necessary to gain access to, manage, and operate the McCouns Lane Property.  *See* Baiamonte Ex. S at 5.

The record further reflects that by Order dated May 30, 2018, Judge Reilly ordered that the Receiver is authorized to sell numerous items, "all of which belong to [OCI and CPL] or the Estate" (the "Company Items"), and that the Receiver shall undertake the following procedures with respect to such sale(s):

1. The Receiver shall be authorized to engage the services of one or more auction service companies to which the Company Items will be consigned.

2. The Receiver shall create an inventory of all Company Items that she intends to sell through consignment, and shall provide the inventory of such items to counsel for Marianne Nestor Cassini, with a copy to the additional parties listed below.  The Receiver may distribute such inventory on a rolling basis.

3. Within 14 days of being provided with the complete or partial inventory of Company Items, counsel for Ms. Cassini may provide evidence to the Receiver that certain inventoried items do not belong to the Companies.

4. Upon considering such evidence, the Receiver shall determine whether the disputed property belongs to the Companies, and shall communicate such determination to counsel for all parties in writing.

5. If the Receiver determines that items disputed by Ms. Cassini are Company Items, and Ms. Cassini continues to dispute that determination, she may, within 5 days of receiving the Receiver's determination, make an application to the Court by Order to Show Cause for an order determining the ownership of the

disputed items.

6. Any Company Items not timely disputed by Ms. Cassini under the procedures set forth herein, and any item the Court determines to be an asset of the Companies under the procedures set forth herein, shall promptly be sold.

*See* Baiamonte Ex. EE at 4-5.

The record also reflects that on October 18, 2018, the District Court of Nassau County issued an Order granting OCI a judgment of possession with the warrant stayed until November 19, 2018, noting that after November 19, 2018, OCI may proceed to evict Mrs. Cassini.  *See* Baiamonte Ex. U at 3; *see also* Baiamonte Exs. V at 2 (Warrant of Eviction noting that "[f]inal decision in favor of the petitioner(s) has been granted based on the judgment of possession entered in the Nassau County District Court – 1st District on 11/01/2018, which awarded the petitioner(s) the delivery of the premises: (1) Oleg Cassini Inc" and commanding the Sheriff of Nassau County to remove Mrs. Cassini, John Doe, Jane Doe, "[a]nd all other persons from the following described premises, located in the County of Nassau and to put said petitioner(s) in full possession thereof: (1) 313 McCouns Lane, Oyster Bay, NY 11771-3123"), W (Landlord and Tenant Judgment entered on November 1, 2018), X (Order of Dismissal dated October 15, 2019 issued by the Appellate Term of the Supreme Court of the State of New York for the 9th & 10th Judicial Districts dismissing appeal of November 1, 2018 judgment).  By Order dated March 25, 2019, Judge Reilly authorized the Receiver to proceed with the sale of the McCouns Lane Property as set forth in the Purchase Option Agreement and Residential Contract of Sale approved by the court.  *See* Baiamonte Ex. BB at 6; *see also* Baiamonte Ex. CC at 4 (Decision & Order on Motion dated May 20, 2019 issued by the Supreme Court of the State of New York, Appellate Division, Second Judicial Department (the "Appellate Division"), *inter alia*, denying leave to appeal the March 25, 2019 Order and dismissing the appeal purportedly taken as of

14

right).

During this time period, Mrs. Cassini and Peggy Nestor entered into a Stipulation and Order, dated November 1, 2018 and So-Ordered by Judge Reilly, setting forth, *inter alia*, that "[w]ithin five (5) days of the execution of this Stipulation by counsel for the parties therein, the Receiver shall be provided with all keys to the Premises [15 East 63rd Street, New York, New York] if they have not already been provided;" that "[t]he Receiver shall be entitled to commence the process of removing items from the Premises, including books and records and any other items existing at the Premises but excluding fixtures;" that "[t]he Receiver is permitted in her sole discretion to retain professionals or other third parties to assist in the packing and removal of items from the Premises;" and that Mrs. Cassini and Peggy Nestor "shall not interfere in any way with the Receiver's actions set forth herein." *See* Baiamonte Ex. FF at 3.

As alleged in the Amended Complaint, "[o]n January 10, 2019, Mrs. Cassini observed a large Doyle Galleries truck parked in[] front of her townhouse located at 15 East 63rd Street, New York, New York" and "further observed Ms. Baiamonte in front of the premises directing the removal of property therefrom." *See* Am. Compl. ¶ 83.  The Amended Complaint further alleges that "[s]hortly thereafter, Mrs. Cassini contacted representatives of Doyle Galleries to make them aware that property they had and/or were looking to abscond with belonged to her, her sister, Peggy, and/or Gemeaux Ltd." *See* Am. Compl. ¶ 84.

The Amended Complaint alleges that "[i]n order to further their conspiracy and steal additional assets of Plaintiff, the insatiable RICO defendants needed to get Mrs. Cassini out of the way" and that "on January 22, 2019, Mrs. Cassini was entrapped and arrested in Judge Reilly's courtroom after having been ordered to appear there by the Judge." *See* Am. Compl. ¶ 85.  The Amended Complaint further alleges that "[a]lmost immediately upon jailing Mrs.

Cassini for the second time, on or about February 12, 2019, Defendants and/or their agents broke

down the door to and trespassed upon and seized Mrs. Cassini's residence located at 135 East

19th Street, New York, New York and all of the art, furniture and valuables contained therein."

*See* Am. Compl. ¶ 87.  The Amended Complaint alleges that Mrs. Cassini was released from jail

on March 27, 2019.  *See* Am. Compl. ¶ 107.

The Amended Complaint alleges that "[t]he RICO defendants disregarded Plaintiffs'

proof of ownership and proceeded, with the assistance and cooperation of Doyle Galleries, to

catalogue and sell Plaintiffs' property at auction."  *See* Am. Compl. ¶ 91.  The Amended

Complaint further alleges that "[a] sale of the contents of the residence was held on June 27,

2019 by Doyle Galleries," where "[a]pproximately seven hundred fifty-five items were sold."

*See* Am. Compl. ¶ 93.

### G.     February 2020 Appellate Division Decisions

The Appellate Division issued four Orders dated February 13, 2020 in connection with

Mrs. Cassini's various appeals from the Surrogate's Court.  *See* Pls.' Exs. 1, 2; Baiamonte Exs. F

(*Matter of Cassini*, 180 A.D.3d 773 (N.Y. App. Div. 2d Dep't 2020)), I (*Matter of Cassini*, 180

A.D.3d 775 (N.Y. App. Div. 2d Dep't 2020)).

The Appellate Division affirmed, insofar as appealed from, Judge McCarty's August 3,

2015 Order granting "that branch of the objectants' motion which was to appoint a temporary

receiver to the extent of appointing the Public Administrator to run the day-to-day business

operations of OCI and CPL."  *See* Baiamonte Ex. F at 6.  The Appellate Division also affirmed

Judge McCarty's November 5, 2015 Order, which Order, *inter alia*, granted "those branches of

[the Objectants'] motion which were for summary judgment sustaining" certain objections to

Mrs. Cassini's account, which resulted in the determination that the shares of OCI and CPL

identified in Schedule A of Mrs. Cassini's account were assets of the estate.  *See* Baiamonte Ex. I

at 6; *see also* Pls.' Ex. 1 at 4; Baiamonte Ex. H at 5-6.  The Appellate Division reversed Judge Reilly's Order dated December 12, 2016, granted Mrs. Cassini's motion for an adjournment of the trial date, and remitted the matter to the Surrogate's Court for a new trial in the Accounting Proceeding.  *See* Pls.' Ex. 2 at 9.

In addition, the Appellate Division decided appeals by Mrs. Cassini "from three orders of the Surrogate's Court (Margaret C. Reilly, S.), dated March 6, 2017, November 14, 2017, and December 21, 2017, respectively, and an amended order of the same court dated November 13, 2017."  *See* Pls.' Ex. 1 at 1.  The Appellate Division reversed the Order dated March 6, 2017, which Order denied Mrs. Cassini's motion to vacate the July 1, 2016 Order; granted Mrs. Cassini's motion; and vacated the July 1, 2016 Order, which Order had, in effect, granted, upon Mrs. Cassini's default, the Objectants' cross motion to appoint a receiver and appointed a receiver.  *See* Pls.' Ex. 1 at 36-37.  The Appellate Division noted that while it concluded "that [Mrs. Cassini] must be provided with the opportunity to respond to the cross motion [to appoint receiver] on its merits," the Appellate Division also nevertheless concluded that "based on the evidentiary showing made on the cross motion by the objectants, the receiver should remain in place as a temporary receiver pending a new determination of the cross motion," noting that while Mrs. Cassini's "right to counsel, and her rights under CPLR 321(c) should be protected, so too should the objectants' rights to prevent dissipation or looting of the estate and its assets."  *See* Pls.' Ex. 1 at 38-39.  The Appellate Division also reversed the Amended Order dated November 13, 2017 – which had denied Mrs. Cassini's motion to vacate and declare void all decisions, orders, and judgments entered after March 14, 2016, as violative of the CPLR 321(c) stay – and granted Mrs. Cassini's motion "to the extent of vacating all decisions, orders, and judgments entered in all proceedings herein between March 14, 2016, and July 25, 2016" but "otherwise

den[ied] such motion." *See* Pls.' Ex. 1 at 39.[11]  Further, the Appellate Division dismissed Mrs. Cassini's appeal from the Order dated November 14, 2017, which Order had, *inter alia*, granted the Receiver's motion to hold Mrs. Cassini in contempt; dismissed Mrs. Cassini's appeal from the Order dated December 21, 2017, which Order had, *inter alia*, directed that a warrant of arrest and commitment issue; and declined to grant leave to appeal with respect to the December 21, 2017 Order.  *See* Pls.' Ex. 1 at 39.

### H.     October 2020 Surrogate's Court Decision and Order

Following the Appellate Division's February 13, 2020 Orders, the Objectants filed, *inter alia*, "[a] motion for an order reconfirming the appointment of the Receiver, Rosalia Baiamonte, Esq. . . . : (1) pursuant to CPLR 6401, as receiver of [OCI] and [CPL]; and (2) reconfirming the grant to Baiamonte of [various receivership powers]."  *See* Baiamonte Ex. M at 4-5.  By Decision & Order dated October 27, 2020, Judge Reilly granted the motion in full, noting that the receivership powers granted to Baiamonte are addressed in a separate order issued by the Surrogate together with the Decision & Order.  *See* Baiamonte Ex. M at 8, 14.  In the separate Order, also dated October 27, 2020, Judge Reilly ordered that "the Receiver has been granted all of the customary and usual powers of a Receiver, including the exclusive power to represent, operate, manage, govern, preserve, administer and maximize the value of the assets of OCI and CPL."  *See* Baiamonte Ex. N at 4.

### I.     2021 State Court Conversion Action

On or about August 4, 2021, Gemeaux, Mrs. Cassini, and Peggy Nestor filed a complaint against Doyle Galleries in the Supreme Court of the State of New York, New York County, bringing a cause of action for the tort of conversion under New York law (the "2021 Conversion

---

[11]  Plaintiffs appear to overstate the scope of the vacatur.

Action").  *See Gemeaux Ltd. v. William Doyle Galleries Inc.*, No. 157251/2021, 2021 WL

6249530, at *1-2 (N.Y. Sup. Ct. Dec. 7, 2021), *aff'd*, 210 A.D.3d 408 (N.Y. App. Div. 1st Dep't

2022).  The complaint in that case alleged, *inter alia*:

> On June 27, 2019, Doyle sold at auction to various persons and/or entities a
> substantial number of items of property owned by one or more of the plaintiffs,
> which property had been wrongfully removed from a townhouse owned by [Mrs.
> Cassini], located at 135 E. 19th St. in New York County, and from Gemeaux's
> place of business at 15 E. 63rd St. in New York County.  On June 27, 2019, Doyle
> sold at auction to various persons or entities a substantial number of items of
> property owned by one or more of the plaintiffs, which included property located
> at 313 McCoun's Lane in Oyster Bay, Long Island.  The foregoing auction included
> of 755 lots of personal property, the bulk of which was owned by one or more of
> the plaintiffs.

*See Gemeaux Ltd.*, 2021 WL 6249530, at *2 (quoting complaint in the 2021 Conversion Action);

*see also* Baiamonte Ex. II at 4.

By Decision and Order dated December 7, 2021, Justice Laurence Love of the Supreme

Court of the State of New York, New York County dismissed the complaint in its entirety, noting

that "[t]hrough a review of all the documents submitted this court finds documentary evidence to

warrant dismissal of this action."  *See Gemeaux Ltd.*, 2021 WL 6249530, at *2.  By Decision and

Order dated November 1, 2022, the Supreme Court of the State of New York, Appellate

Division, First Judicial Department affirmed, noting that Defendant "presented documents,

including a Surrogate Court order and so-ordered stipulation, definitively disproving the claim"

and that "Defendant's documents further establish that this action seeks to relitigate issues of fact

previously decided in the Surrogate's Court's action, which plaintiffs failed to appeal."  *See*

*Gemeaux Ltd.*, 210 A.D.3d at 409.

### J.    The Instant Action

The Amended Complaint alleges that, as of the date of the filing of the Amended

Complaint, August 5, 2022, there had been no trial in the Accounting Proceeding and Mrs.

Cassini had received no distributions from her husband's estate.  *See* Am. Compl. ¶ 116.  The Amended Complaint further alleges that Mrs. Cassini "has been made to pay millions of dollars in legal fees" and "has had her personal and corporate property invaded and stolen, and was illegally incarcerated twice for a total period of eight months."  *See* Am. Compl. ¶ 116.

The Amended Complaint's First Cause of Action alleges violation of 18 U.S.C. § 1962 – Civil RICO.  *See* Am. Compl. at 26.  The Amended Complaint alleges that the RICO Defendants "engaged in a racketeering scheme that resulted in the theft of Mrs. Cassini's Nassau County residence and the extremely valuable contents thereof, as well as the damage and destruction of and theft of property from Plaintiffs' two Manhattan properties."  *See* Am. Compl. ¶ 121.  The Amended Complaint further alleges that "[w]ith the blessing and at the direction of Judge Reilly, property that Mr. & Mrs. Cassini cherished since they began living in their Nassau County home in 1978 was sold by the Receiver callously and for a fraction of its value" and that the "transaction at a bargain sale price has all the earmarks of 'an inside job.'"  *See* Am. Compl. ¶¶ 127-28.  The Amended Complaint additionally alleges, *inter alia*, that Judge Reilly removed Mrs. Cassini from the management of OCI and CPL; that Defendant Baiamonte was and remains unqualified to serve as Receiver and that under the Receiver's incompetent management, Defendant Baiamonte "has allowed these prospering businesses to become shells of their former thriving selves;" that Defendants "ransacked a townhouse that was owned by Mr. & Mrs. Cassini since 1977 as joint tenants with rights of survivorship;" that Defendants Baiamonte and Miller "and their co-conspirators have been paid more than 6 million dollars in fees and commissions, upon court order issued by Defendant Reilly;" and that now the Receiver is trying to sell off the two companies, OCI and CPL, "owned exclusively by Mrs. Cassini."  *See* Am. Compl. ¶¶ 122-24, 129, 131, 134.  The Amended Complaint alleges that "[t]he acts hereindescribed constitute

20

predicate acts sufficient to satisfy the pleading requirement of the RICO statute" and that "[s]pecifically, the RICO defendants have violated 18 U.S.C. § 1957 relating to engaging in monetary transactions in property derived from specified unlawful activity, 18 U.S.C. §§ 2314 and 2315 relating to interstate transportation of stolen property, have likely committed mail fraud, bank fraud, and have surely violated the New York State Penal Law by committing acts of kidnapping, fraud, embezzlement, larceny, bribery, and extortion."  *See* Am. Compl. ¶ 136.

The Amended Complaint's Second Cause of Action alleges violation of the Due Process Clause of the Fourteenth Amendment and is brought pursuant to Section 1983.  *See* Am. Compl. at 29.  The Amended Complaint alleges that "Defendants Judge Reilly, the County of Nassau, the Public Administrator, the Nassau County Sheriff, and the New York City Sheriff, acting under color of state law and pursuant to official policy or custom, violated Plaintiffs' rights afforded by the Fourteenth Amendment to the United States Constitution in a variety of ways." *See* Am. Compl. ¶ 139.  The Amended Complaint alleges that Defendants Reilly, the County of Nassau, the Public Administrator, and the Nassau County Sheriff deprived Plaintiffs of property without due process of law and that Defendants Reilly, the County of Nassau, the Nassau County Sheriff, and the New York City Sheriff also deprived Mrs. Cassini of her liberty without due process of law.  *See* Am. Compl. ¶¶ 140-41.  The Amended Complaint alleges that "the actions of Defendants Judge Reilly, the County of Nassau, the Public Administrator, the Nassau County Sheriff, and the New York City Sheriff violated Plaintiffs' substantive due process rights in that Defendants' conduct shocks the conscience, was outrageous and egregious under the circumstances, and Defendants' was truly brutal and offensive to Mrs. Cassini's human dignity." *See* Am. Compl. ¶ 142.  The Amended Complaint alleges that "[t]he Nassau County Sheriff and New York City Sheriff were deliberately indifferent regarding the conduct of their deputies and

others under their supervision, and the treatment to which Mrs. Cassini was subjected." *See* Am. Compl. ¶ 143.

The Amended Complaint's Third Cause of Action alleges violation of the Fourth Amendment right against unlawful seizure and is brought pursuant to Section 1983 against Judge Reilly, the County of Nassau, the Nassau County Sheriff, and the New York City Sheriff. *See* Am. Compl. at 30.  The Amended Complaint alleges that "[t]he person of Mrs. Cassini and all Plaintiffs' houses, papers, and effects were seized" and that the seizure was unreasonable and without just or probable cause. *See* Am. Compl. ¶ 146.  The Amended Complaint alleges that "[t]he false arrest of Mrs. Cassini, perpetrated by the New York City Sheriff under color of state law, caused her to sustain severe injuries to her eye and bruising and pain throughout her body" and that "excessive force was used to effectuate the arrest." *See* Am. Compl. ¶ 147.  The Amended Complaint alleges that "Mrs. Cassini endured two separate periods of confinement and was held in jail for a total of eight months" and that "[s]uch arrest and confinement was predicated upon purported violations of orders that the New York State Appellate Division has since found unlawful." *See* Am. Compl. ¶ 149.  The Amended Complaint alleges that Mrs. Cassini was routinely brought to court from jail in leg and hand shackles, with her hands cuffed behind her back, causing her wrists to bleed. *See* Am. Compl. ¶ 150.  The Amended Complaint alleges that Judge Reilly refused to allow the shackles to be removed even for hearings and ordered the guards to move Mrs. Cassini about the courtroom to "teach her a lesson" and that Defendants John Does "lifted Mrs. Cassini under each arm and dragged her around the courtroom with her arms behind her back and leg chains dragging." *See* Am. Compl. ¶ 151.  The Amended Complaint alleges that "[t]he treatment of Mrs. Cassini by said Defendants, who were at all relevant times acting under color of state law and pursuant to official policy or custom, was

not only excessive because it was wholly unnecessary, but also physically and morally demeaning, and extremely painful in every way." *See* Am. Compl. ¶ 152.[12]  The Amended Complaint alleges that Mrs. Cassini "was eventually released upon habeas corpus motion to Nassau County Supreme Court Judge Jack Libert." *See* Am. Compl. ¶ 155.

The Amended Complaint's Fourth Cause of Action alleges violation of the Eighth Amendment right against excessive bail, fines, and cruel and unusual punishment and is brought pursuant to Section 1983 against Defendants Reilly, the County of Nassau, and the Nassau County Sheriff.  *See* Am. Compl. at 32.  The Amended Complaint alleges that "[t]he treatment of Mrs. Cassini by the Nassau County Sheriff's Office, perpetrated under color of state law and pursuant to official policy or custom, was excessively harsh, cruel, entirely unwarranted, and certainly unusual." *See* Am. Compl. ¶ 158.  The Amended Complaint alleges that "[c]onfining Mrs. Cassini to jail for any period of time, but certainly for the excessive period of time she was actually confined (freed the first time upon the imposition of excessive and punitive 'bail', and the second time only due to the good fortune of having her habeas corpus application heard before another judge while Judge Reilly was on vacation) certainly violates all contemporary standards of decency." *See* Am. Compl. ¶ 159.  The Amended Complaint further alleges that the Nassau County Sheriff and New York City Sheriff "were deliberately indifferent regarding the conduct of their deputies and others under their supervision, and the treatment to which Mrs. Cassini was subjected." *See* Am. Compl. ¶ 160.

The Amended Complaint's Fifth Cause of Action alleges conspiracy to violate civil rights

---

[12]  The Amended Complaint further alleges that Judge Reilly stated in open court, "I want to keep that woman in jail;" that "[i]t is perhaps a historical first for a widow to be incarcerated on two separate occasions for eight months over a will;" and that "[t]his was a truly unnecessary, brutal, sadistic physical assault on Mrs. Cassini's person, which has caused her severe mental anguish."  *See* Am. Compl. ¶ 154.

in violation of 42 U.S.C. §§ 1985 and 1986, against all Defendants.  *See* Am. Compl. at 33.  The Amended Complaint alleges that "Defendants conspired together in the manner described [in the Amended Complaint] to deprive Plaintiffs of their constitutional rights, and none of them intervened to prevent the violation or deprivation of those rights despite their power to do so." *See* Am. Compl. ¶ 162.

The Amended Complaint's Sixth Cause of Action alleges abuse of process in violation of the Fourteenth Amendment to the U.S. Constitution and New York State Law, against the RICO Defendants, the County of Nassau, and the Public Administrator.  *See* Am. Compl. at 34.  The Amended Complaint alleges, *inter alia*, that the RICO Defendants "employed otherwise legal process to do harm to Plaintiffs in the manner described [in the Amended Complaint]" and that "[t]hey defrauded and stole from Plaintiffs, unjustly enriched themselves and their friends and associates, and utilized the power of the Surrogate's Court under the guise of legal process to do so."  *See* Am. Compl. ¶¶ 164-65.

The Amended Complaint's Seventh Cause of Action alleges conversion against the RICO Defendants and Doyle Galleries.  *See* Am. Compl. at 34.  The Amended Complaint alleges that the RICO Defendants and Doyle Galleries "converted Plaintiffs' property described [in the Amended Complaint] by intentionally and without lawful authority assuming and exercising control over said property, interfering with Plaintiffs' rightful possession" and that the RICO Defendants "continue to interfere with Plaintiffs' lawful possession and ownership of their respective property to the extent that said property was not already disposed of for said Defendants' financial gain."  *See* Am. Compl. ¶¶ 167-68.

The Amended Complaint's Eighth Cause of Action alleges breach of fiduciary duty against Defendants Baiamonte, DeLuca, and the Public Administrator.  *See* Am. Compl. at 35.

The Amended Complaint alleges, *inter alia*, that Mrs. Cassini was to inherit the majority of the estate, which Defendants Baiamonte and the Public Administrator have substantially dissipated and wasted; that "Ms. Baiamonte, in her role as Receiver, has knowingly taken over corporations rightfully owned by Mrs. Cassini and has failed to exercise due care in managing the companies' holdings and profit-making endeavors, thereby irreparably damaging the corporations and Mrs. Cassini;" and that "[w]ith the blessing and at the direction of Judge Reilly, property that Mr. & Mrs. Cassini cherished since they began living in their Nassau County home in 1978 was sold by the Receiver callously and for a fraction of its value."  *See* Am. Compl. ¶¶ 170-72.

The Amended Complaint's Ninth Cause of Action alleges constructive trust against Defendants Baiamonte, the Public Administrator, and Doyle Galleries.  *See* Am. Compl. at 36. The Amended Complaint alleges, *inter alia*, that Defendants Baiamonte and Doyle Galleries "unlawfully acquired property rightfully belonging to Plaintiffs;" that "Ms. Baiamonte has stated that some or all of the property was 'owned' by the Public Administrator;" and that "[t]he property remaining in any of their possession, and the funds acquired as a result of the sale of Plaintiffs' property previously acquired by said Defendants, should be regarded as placed in a constructive trust and returned to Plaintiffs lest said Defendants be further unjustly enriched." *See* Am. Compl. ¶ 176.

The Amended Complaint's Tenth Cause of Action alleges intentional infliction of emotional distress against all Defendants.  *See* Am. Compl. at 37.  The Amended Complaint alleges, *inter alia*, that "Defendants' conduct detailed [in the Amended Complaint] was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency;" that "Defendants' conduct continues to be extreme and outrageous, intended to – or at best with a disregard of – a substantial probability of causing severe emotional distress to Mrs.

Cassini;" and that "Defendants' conduct has resulted in [Mrs. Cassini] experiencing extreme and lasting stress, anxiety, and agoraphobia" and Mrs. Cassini "has been and continues to be fearful for her life." *See* Am. Compl. ¶¶ 178-80.

The Amended Complaint's Eleventh Cause of Action alleges trespass against all Defendants excluding the New York City Sheriff. *See* Am. Compl. at 37. The Amended Complaint alleges that "Defendants and their agents intentionally or recklessly entered and remained upon Plaintiffs' property without Plaintiffs' permission and without justification." *See* Am. Compl. ¶ 182.

The Amended Complaint's Twelfth Cause of Action alleges unjust enrichment against the RICO Defendants and Doyle Galleries. *See* Am. Compl. at 37. The Amended Complaint alleges that the RICO Defendants "and their co-conspirators, associates, and friends were enriched by hundreds of millions of dollars at Plaintiffs' expense" and that "[i]t is against equity and good conscience to permit any of the Defendants to retain any of the monies they gained through their participation in the criminal enterprise and fraudulent, corrupt conduct described [in the Amended Complaint]." *See* Am. Compl. ¶¶ 184-85.[13]

## II.     Procedural Background

On March 27, 2022, Mrs. Cassini, OCI, CPL, and Gemeaux commenced this action. *See* ECF No. 1. Thereafter, various pre-motion conference letters in anticipation of motions to dismiss were filed, asserting that the Complaint suffered from various deficiencies; Plaintiffs, in

---

[13] In briefing, Plaintiffs state, *inter alia*: "Plaintiffs intended to withdraw the state law tort claims against the municipal defendants by the Amended Complaint, but inadvertently failed to do so. Plaintiffs' Sixth (insofar as it arises under state law), Eighth, Tenth, and Eleventh causes of action are hereby withdrawn (without prejudice) as to Defendants County of Nassau, Curran, Dzurenda, and Fucito." *See* Pls.' Br. at 19 n.3. Accordingly, those Causes of Action are deemed withdrawn, as specified.

response, expressed the view that the claims were sufficiently pled or, to the extent that there

were pleading deficiencies, such deficiencies could be cured by amendment; and Plaintiffs

requested leave to amend.  *See* ECF Nos. 11-13, 17, 20-23.  By Order dated July 5, 2022, the

Court granted Plaintiffs leave to amend.  *See* July 5, 2022 Order.

On August 5, 2022, Plaintiffs filed the Amended Complaint.  *See* ECF No. 25.

Thereafter, Defendants filed various pre-motion conference letters in anticipation of

motions to dismiss, asserting that the Amended Complaint suffered from various deficiencies,

and Plaintiffs responded.  *See* ECF Nos. 26-27, 29-32, 34-35, 37-40.  On October 12, 2022, the

Court held a pre-motion conference.  *See* October 12, 2022 Minute Entry.

On March 31, 2023, Defendants filed their joint Motion to Dismiss the Amended

Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,

which Plaintiffs oppose.  *See* ECF Nos. 64-66.  On April 19, 2023, Defendants Baiamonte and

Miller filed their Motion for Sanctions pursuant to Rule 11(c) of the Federal Rules of Civil

Procedure, which Plaintiffs oppose.  *See* ECF Nos. 69-71.[14]

## STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  "A plaintiff

---

[14] By letter dated September 19, 2023, Defendant Baiamonte informed the Court that the
Honorable Teresa K. Corrigan, Acting Surrogate of the Surrogate's Court, had issued a
decision on September 8, 2023 which, *inter alia*, approved the Receiver's interim accounting
for the period of July 1, 2016 through April 30, 2021.  *See* ECF No. 72 at 1; *see also generally*
ECF No. 72 at 3-8 (Decision & Order).  By letter dated September 27, 2023, Plaintiffs
responded to the September 19, 2023 letter, arguing that Judge Corrigan's September 8, 2023
Decision & Order "has no bearing on the pending motions nor the merits of the claims set
forth in the Complaint" and was being appealed.  *See* ECF No. 73 at 1-2; *see also* ECF No.
73-2.

asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*; *see Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005); *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) ("The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." (quotation omitted)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

When a court is faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the court "must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Pressley v. City of N.Y.*, No. 11-CV-03234, 2013 WL 145747, at *5 (E.D.N.Y. Jan. 14, 2013) (quotation omitted); *see also United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993).

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept all 'well-pleaded factual allegations' in the complaint as true" and "'construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff.'" *Lynch v. City of N.Y.*, 952 F.3d 67, 74-75 (2d Cir. 2020) (first quoting *Iqbal*, 556 U.S. at 679; then quoting

*Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009)).  However, "labels and conclusions" or

"formulaic recitation[s] of the elements of a cause of action will not do," and dismissal is proper

where "the allegations in a complaint, however true, could not raise a claim of entitlement to

relief." *Twombly*, 550 U.S. at 555, 558.  A court is not "bound to accept conclusory allegations

or legal conclusions masquerading as factual conclusions." *See Faber v. Metro. Life Ins. Co.*,

648 F.3d 98, 104 (2d Cir. 2011) (quotation omitted); *see also Iqbal*, 556 U.S. at 678 (noting that

a court is "not bound to accept as true a legal conclusion couched as a factual allegation"

(quoting *Twombly*, 550 U.S. at 555)); *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55,

59 (2d Cir. 2010) (noting that "factual allegations must be sufficient to support necessary legal

conclusions" and "plausibly suggest an entitlement to relief").  "In considering a motion to

dismiss for failure to state a claim, '[a] district court is normally required to look only to the

allegations on the face of the complaint,'" though "[it] may consider documents that 'are

attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the

proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020)

(quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).  State court decisions are "public

records, and thus appropriate for judicial notice." *See Williams v. N.Y.C. Hous. Auth.*, 816 F.

App'x 532, 534 (2d Cir. 2020); *see also Simmons v. Trans Express Inc.*, 16 F.4th 357, 360-61

(2d Cir. 2021) (noting that "[t]he district court properly took judicial notice of documents

indicating the claims [plaintiff] brought in small claims court, the remedies she sought, and the

judgment she was awarded").[15]

---

[15] Plaintiffs acknowledge that "it is within this Court's discretion to consider public records in
deciding a motion to dismiss."  *See* ECF No. 73 at 1; *see also* Pls.' Br. at 11 (acknowledging
that federal courts may take judicial notice of state court decisions).

## DISCUSSION

For the reasons set forth below, the Motion to Dismiss is granted, the Amended

Complaint is dismissed in its entirety, and the Motion for Sanctions is denied.

## I.      Mrs. Cassini's Claims are Dismissed

As set forth below, the *Rooker-Feldman* doctrine appears to bar all of Mrs. Cassini's

claims except to the extent she seeks to bring any excessive force claim(s).  Accordingly, all of

Mrs. Cassini's claims, except to the extent she seeks to bring any excessive force claim(s), must

be dismissed for lack of subject matter jurisdiction.  Further, any excessive force claim(s) must

be dismissed for failure to state a claim.

### A.      *Rooker-Feldman* Bars Mrs. Cassini's Claims, Except Any Excessive Force Claim(s)

#### 1.   Applicable Law

As the United States Court of Appeals for the Second Circuit has noted, *Rooker v.*

*Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*,

460 U.S. 462 (1983) "established the clear principle that federal district courts lack jurisdiction

over suits that are, in substance, appeals from state-court judgments."  *See Hoblock v. Albany*

*Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005); *see also Hunter v. McMahon*, 75 F.4th 62,

67 (2d Cir. 2023).  *Rooker-Feldman* "bars a party losing in state court from seeking what in

substance would be appellate review of the state judgment in a United States district court."  *See*

*Hunter*, 75 F.4th at 67 (ellipsis and quotation omitted).

The Second Circuit has "articulated a four-part test according to which *Rooker-Feldman*

applies if '(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries

caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment;

and (4) the state judgment was rendered before the district court proceedings commenced.'"  *See*

*id.* at 68 (quoting *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014)).

The Second Circuit has stated that "the core requirement from which the other *Rooker-Feldman* requirements derive" is that a "plaintiff complains of injuries *caused by* a state court judgment." *See id.* at 71 (emphasis added) (quotations omitted). In determining whether a plaintiff complains of injuries caused by a state court judgment, "the following formula guides [a court's] inquiry: a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are *produced* by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *See id.* (alteration accepted) (quoting *Hoblock*, 422 F.3d at 88); *see also Charles v. Levitt*, No. 15-CV-09334, 2016 WL 3982514, at *4 (S.D.N.Y. July 21, 2016) (noting that *Rooker-Feldman* does not bar a claim "where a plaintiff alleges damages directly caused by defendants' misconduct – *not* by the state court judgment which the misconduct allegedly produced" but determining that *Rooker-Feldman* barred plaintiff's claims where the only damages plaintiff clearly pled were the direct result of a judgment and an order appointing receiver and plaintiff "[sought] to redress injuries that [were] a direct result of the state-court judgment and subsequent attempts to enforce it"), *aff'd and remanded on other grounds*, 716 F. App'x 18 (2d Cir. 2017).

"*Rooker-Feldman* deprives a federal court of jurisdiction only if the federal suit is filed 'after the state proceedings ended.'" *See Hunter*, 75 F.4th at 70 (quoting *Exxon Mobil v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)). For *Rooker-Feldman* to apply, "[t]he state-court proceedings must either have reached finality or yielded an order that satisfies 'the exceptions to the finality requirement that were set out in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975),' so as to trigger the exclusive appellate jurisdiction of the Supreme Court." *Id.* (quoting

*ASARCO Inc. v. Kadish*, 490 U.S. 605, 612 (1989)).  In *Hoblock*, the Second Circuit observed

that although *Rooker-Feldman*'s "timing requirement will usually be straightforward," "federal

suits challenging interlocutory state judgments may present difficult questions as to whether 'the

state proceedings have "ended" within the meaning of *Rooker-Feldman* on the federal questions

at issue.'"  *See Hoblock*, 422 F.3d at 89 (quoting *Federacion de Maestros de P.R. v. Junta de

Relaciones del Trabajo de P.R.*, 410 F.3d 17, 25 (1st Cir. 2005)).  "In making this observation,

the Second Circuit cited to *Federacion,* a First Circuit case that examined at length how *Rooker-*

*Feldman* applied to interlocutory state court judgments" and that "concluded that *Rooker-*

*Feldman* did indeed bar a federal suit that would have required the federal district court to review

and reject an interlocutory determination of a Puerto Rican court that federal law did not preempt

the state court proceedings."  *Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690,

714 (S.D.N.Y. 2006).  "Although *Federacion*'s analysis of this issue concerning when a state

court proceeding has 'ended' has not been formally adopted by the Second Circuit," courts in

this Circuit have been "persuaded by *Federacion*'s reasoning."  *Id.*; *see also Robinson v. Cusack*,

No. 05-CV-05318, 2007 WL 2028112, at *5 (E.D.N.Y. July 11, 2007).

    The *Federacion* court explored what it means for state proceedings to have "ended" and

concluded that for purposes of *Rooker-Feldman*, generally speaking, state proceedings will have

"ended" in three situations: first, "when the highest state court in which review is available has

affirmed the judgment below and nothing is left to be resolved;" second, "if the state action has

reached a point where neither party seeks further action" – for example, "if a lower state court

issues a judgment and the losing party allows the time for appeal to expire;" and third, "if the

state court proceedings have finally resolved all the federal questions in the litigation, but state

law or purely factual questions (whether great or small) remain to be litigated."  *See Federacion*,

410 F.3d at 24-25; *see also Phillips*, 453 F. Supp. 2d at 714 (discussing *Federacion* and noting

that these three situations are not limited to situations of a final judgment under 28 U.S.C.

§ 1257).  In other words, "*Rooker-Feldman* applies where the state proceeding has ended *with*

*respect to the issues that the federal plaintiff seeks to have reviewed in federal court,* even if

other matters remain to be litigated." *See Phillips*, 453 F. Supp. 2d at 714 (quoting

*Federacion*, 410 F.3d at 26).  "Simply stated, proceedings end for *Rooker-Feldman* purposes

when the state courts finally resolve the issue that the federal court plaintiff seeks to relitigate in

a federal forum." *Hunter*, 75 F.4th at 70 (alteration accepted) (quotation omitted).

## 2. *Rooker-Feldman* Applies to Mrs. Cassini's Claims, Except Any Excessive Force Claim(s)

Defendants argue that "it is obvious from the face of the Amended Complaint that

Plaintiffs are trying to challenge final court orders and decisions of the Surrogate's Court that

were entered before this federal action was filed, primarily, Mrs. Cassini's contempt, her court-

ordered arrest, the court-ordered sale of [the McCouns Lane Property], and the court-ordered sale

of the Doyle Auctioned Property," and that "[e]ach of the issues and claims raised in the

Amended Complaint falls squarely within *Rooker-Feldman*." *See* Defs.' Br. at 15.  Defendants

argue that Mrs. Cassini's claims arising out of her court-ordered arrest easily meet all four

factors of the *Rooker-Feldman* test and that there can be no serious dispute that (1) Mrs. Cassini

"lost" in state court after Judge Reilly found her to be in contempt of court for refusing to turn

over OCI's and CPL's books and records to the Receiver; (2) Mrs. Cassini is complaining of

injuries stemming from Judge Reilly's order holding her in contempt of court and issuing a

warrant for her arrest; (3) Mrs. Cassini is asking this Court to review and reject those orders; and

(4) each of these orders was entered long before this federal action was commenced.  *See* Defs.'

Br. at 15.  Defendants argue that the same analysis applies to the sale of OCI's McCouns Lane

Property, which Mrs. Cassini claims was wrongfully taken from her and sold; that any claim regarding the court-ordered sale of the McCouns Lane Property could have or should have been pursued – and in fact, was pursued – before the Surrogate's Court, the Appellate Division, and the Nassau County District Court; and that Plaintiffs "may not seek to challenge those rulings by dressing up their state court losses as a federal claim." *See* Defs.' Br. at 16-17.  Further, Defendants argue that Plaintiffs' attempt to claim that "their" property was sold has been repeatedly rejected and that Plaintiffs are asking this Court to unwind the outcome of the state court proceedings and the ensuing auction and litigate the issue of ownership of the property that was sold by Doyle Galleries, which is a "classic example of federal claims that are barred by *Rooker-Feldman*, because the only way those claims can succeed is if this Court were to revisit state court determinations and, indeed, to declare them wrongly decided." *See* Defs.' Br. at 17-18 (quotation omitted).

Plaintiffs argue that "the *Rooker-Feldman* Doctrine does not serve as a basis for this Court to decline to exercise its jurisdiction over this matter," asserting that "[t]he state court proceeding pending in the Nassau County Surrogate's Court regarding the Estate of Oleg Cassini has not yet concluded" and "[t]hus, no judgment has been entered and [Mrs. Cassini] cannot be deemed to have lost while the matter is still ongoing." *See* Pls.' Br. at 12.  Plaintiffs also argue that Gemeaux "is not even a party to that action, so *Rooker-Feldman* is clearly inapplicable to this Court's exercise of jurisdiction over that Plaintiff's claims." *See* Pls.' Br. at 12.  Plaintiffs acknowledge that "Plaintiffs do complain of injuries caused by things that have occurred in state court," but emphasize that "there is no state court 'judgment' as of yet so Plaintiffs cannot possibly complain of it." *See* Pls.' Br. at 12.  Further, Plaintiffs assert that they "do not ask this Court to review or change determinations made by [the Surrogate's Court]," arguing that Mrs.

Cassini availed herself of the state appellate process and prevailed as to the issue of the appointment of a receiver and other related issues.  *See* Pls.' Br. at 13.

Here, except as to any excessive force claim(s), *Rooker-Feldman* applies to each of Mrs. Cassini's Causes of Action because (1) Mrs. Cassini lost in state court, (2) Mrs. Cassini complains of injuries caused by one or more state court orders, (3) Mrs. Cassini appears to invite review and rejection of one or more of those state court orders, and (4) the state court orders were rendered before this action was commenced.  As to each of the orders Mrs. Cassini complains of, the order was affirmed on appeal, the appeal of the order was dismissed, or no appeal of the order was filed before the time to appeal had expired.  The Court is persuaded by *Federacion* and concludes that prior to the commencement of the instant action, the state proceedings had "ended" with respect to the relevant issues for the purposes of *Rooker-Feldman*.

Mrs. Cassini's First (civil RICO), Sixth (abuse of process), Seventh (conversion), Eighth (breach of fiduciary duty), Ninth (constructive trust), Eleventh (trespass), and Twelfth (unjust enrichment) Causes of Action, as well as Mrs. Cassini's Second (due process), Third (Fourth Amendment), Fifth (conspiracy to violate civil rights), and Tenth (intentional infliction of emotional distress) Causes of Action to the extent that they relate to the alleged deprivation of property, stem from allegations that Defendants improperly deprived Mrs. Cassini of her property.  *See* Am. Compl. ¶¶ 120-37, 140, 161-85.  Notwithstanding Plaintiffs' assertions to the contrary, each of those Causes of Action appears to invite review and rejection of at least one of the following state court orders: the Nassau County District Court Order awarding OCI a judgment of possession of the McCouns Lane Property and a warrant of eviction as to Mrs. Cassini, *see* Baiamonte Exs. U, V, W, X; the Surrogate's Court Order approving the Purchase Option Agreement and Residential Contract of Sale with respect to the sale of the McCouns

Lane Property and authorizing the Receiver to proceed with the sale, *see* Baiamonte Exs. BB, CC; and the Surrogate's Court Orders authorizing the Receiver to sell items belonging to OCI and CPL or the estate, *see* Baiamonte Exs. EE, FF.  Mrs. Cassini lost in state court with respect to these Orders; the injury that Mrs. Cassini complains of – namely, loss of property – was caused by one or more of the Orders, which authorized the Receiver and others to take possession of and to sell the property at issue; and the Orders were final prior to the commencement of this action.

Similarly, Mrs. Cassini's Fourth Cause of Action (Eighth Amendment), as well as Mrs. Cassini's First (civil RICO), Second (due process), Third (Fourth Amendment), Fifth (conspiracy to violate civil rights), and Tenth (intentional infliction of emotional distress) Causes of Action to the extent they relate to allegations of deprivation of liberty, stem from Mrs. Cassini's arrest and confinement and appear to invite review and rejection of the Surrogate's Court Orders holding Mrs. Cassini in civil contempt and issuing an arrest warrant.  *See* Baiamonte Exs. P, Q, L.  Mrs. Cassini lost in state court with respect to these Orders; the injury that Mrs. Cassini complains of was caused by the Orders, which authorized Mrs. Cassini's arrest and confinement; and the Orders were final prior to the commencement of this action.

Plaintiffs' argument that *Rooker-Feldman* is inapplicable because the state court proceedings are ongoing is unavailing.  Even though the state court proceedings relating to Oleg Cassini's estate were ongoing when this action was commenced, the state proceedings ended *with respect to the issues that Mrs. Cassini seeks to have reviewed in federal court*, even if other matters remained to be litigated.  *See Phillips*, 453 F. Supp. 2d at 713-14.  With respect to each of the state court orders relating to the sale of the McCouns Lane Property, the sale of OCI's and CPL's property by Doyle Galleries, and Mrs. Cassini's arrest and confinement, by the time this

action was commenced, Mrs. Cassini had appealed and lost, or failed to appeal before the time for doing so had expired.  *See* Baiamonte Exs. L, CC; Pls.' Ex. 1; *see also* N.Y. C.P.L.R. 5513.

However, to the extent that Mrs. Cassini seeks to bring any excessive force claim, such claim would not be barred by *Rooker-Feldman*.  Mrs. Cassini appears to seek to bring an excessive force claim – or claims – as part of the Third Cause of Action and/or the Fourth Cause of Action.  *See, e.g.*, Am. Compl. ¶¶ 147 (alleging that "[e]xcessive force was used to effectuate the arrest"), 157 (alleging that "[e]xcessive force, maltreatment and denial of medical care claims brought by prisoners – including those subject to civil confinement – are actionable under the Eighth Amendment to the U.S. Constitution (via 42 U.S.C. § 1983)"); *see also* Pls.' Br. at 23-24, 40.  Although Mrs. Cassini was arrested and confined pursuant to the Surrogate's Court Orders, neither the arrest warrant nor the contempt order *caused* the use of any alleged excessive force.  Moreover, any allegations relating to excessive force do not invite review or rejection of the validity of any state court order.  Accordingly, *Rooker-Feldman* does not deprive the Court of jurisdiction over any excessive force claim(s).

Mrs. Cassini's claims, except as to any excessive force claim(s), are dismissed, without prejudice, for lack of subject matter jurisdiction.

**B.    Any Excessive Force Claims are Dismissed**

Defendants argue that "[a]lthough Plaintiffs did not plead an excessive force claim as no such claim is separately delineated in the Amended Complaint, should the Court construe the Amended Complaint to allege an excessive force claim, such claim is . . . time barred."  *See* Defs.' Br. at 48 n.12; *see also* Defs.' Br. at 48 (noting that the statute of limitations for a Section 1983 civil rights action in New York is three years).  Defendants also argue that "[t]he County of Nassau was not involved in [Mrs. Cassini's] arrest and, even so, Plaintiffs have done nothing to

establish *Monell* liability relative to the arrest." *See* Defs.' Br. at 29.

Plaintiffs argue that they have "sufficiently pled a violation of the Fourth Amendment to the United States Constitution" and that "[t]he allegations contained in the Amended Complaint include unlawful search and seizure of person and property, use of excessive force in carrying out the arrest, and a policy or custom that gave rise to all of these things." *See* Pls.' Br. at 22-24. Plaintiffs also argue that "[t]he statute of limitations had not expired prior to the commencement of this action" because "[t]he cause of action arising from the false arrest and excessive force in effectuating the arrest began to accrue only once [Mrs. Cassini] was incarcerated pursuant to legal process" and Mrs. Cassini "was never held pursuant to legal process." *See* Pls.' Br. at 40-41. Plaintiffs further argue that "*Monell* claims only accrue upon discovery of the policy or custom that resulted in the constitutional violation" and "[t]hus, this is an issue properly decided on summary judgment rather than in the context of a motion to dismiss as it requires a factual inquiry." *See* Pls.' Br. at 41-42.

### 1. Mrs. Cassini Fails to State a Claim Under Section 1983 Against the County of Nassau, the Nassau County Sheriff in His Official Capacity, and the New York City Sheriff in His Official Capacity

Section 1983 "provides 'a method for vindicating federal rights elsewhere conferred,' including under the Constitution." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).[16]

---

[16] In pertinent part, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such

To hold a municipality liable under Section 1983, a plaintiff must allege "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quotation omitted); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-92 (1978). "To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal policymaking officials, *i.e.*, officials with final decision making authority, that caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread as to practically have the force of law, or that was so manifest as to imply the constructive acquiescence of senior policy-making officials; or (4) that a policymaking official exhibited deliberate indifference to constitutional deprivations caused by subordinates." *Wilson v. Cnty. of Nassau*, No. 15-CV-05436, 2016 WL 1465361, at *3 (E.D.N.Y. Apr. 14, 2016) (alteration accepted) (citations and quotations omitted).

As an initial matter, the Court notes that Defendants persuasively argue that any excessive force claim would be time-barred. *See* Defs.' Br. at 48.

Even assuming, *arguendo*, that any excessive force claim is not time-barred, Mrs. Cassini has not, *inter alia*, plausibly alleged an official policy or custom and therefore fails to state a claim for excessive force under Section 1983 against the County of Nassau or the City of New York.[17]  The Amended Complaint contains only conclusory allegations relating to any policy or

---

officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

[17]  Because the Nassau County Sheriff and the New York City Sheriff are sued only in their official capacities, *see* Am. Compl. ¶¶ 13-14; *see also* Pls.' Br. at 41-42, any excessive force claim against the Nassau County Sheriff and the New York City Sheriff is in effect a claim against the County of Nassau and the City of New York, respectively. *See Lore v. City of*

custom.  *See, e.g.*, Am. Compl. ¶¶ 143 ("The Nassau County Sheriff and New York City Sheriff were deliberately indifferent regarding the conduct of their deputies and others under their supervision, and the treatment to which Mrs. Cassini was subjected."), 152 ("The treatment of Mrs. Cassini by said Defendants, who were at all relevant times acting under color of state law and pursuant to official policy or custom, was not only excessive because it was wholly unnecessary, but also physically and morally demeaning, and extremely painful in every way."), 158 ("The treatment of Mrs. Cassini by the Nassau County Sheriff's Office, perpetrated under color of state law and pursuant to official policy or custom, was excessively harsh, cruel, entirely unwarranted, and certainly unusual.").  The Court need not – and does not – accept such conclusory allegations as true.  *See Faber*, 648 F.3d at 104; *Ruston*, 610 F.3d at 59.

To the extent Mrs. Cassini seeks to bring any excessive force claim against the County of Nassau, the Nassau County Sheriff in his official capacity, and/or the New York City Sheriff in his official capacity, such claim is dismissed.

## 2.  Any Excessive Force Claim Against Judge Reilly is Barred by Judicial Immunity

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions."  *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009).  "Generally, 'acts arising out of, or related to, individual cases before the judge are considered judicial in nature.'"  *Wilkins v. Willner*, No. 22-CV-02215, 2022 WL 1004191, at *2 (S.D.N.Y. Apr. 4, 2022) (quoting *Bliven*, 579 F.3d at 210).  A judge's "judicial immunity is not overcome

---

*Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (noting that "[a] claim asserted against an individual in his official capacity . . . is in effect a claim against the governmental entity itself, rather than a suit against the individual personally, for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent'" (quoting *Monell*, 436 U.S. at 691 n.55)).

by allegations of bad faith or malice," *Mireles v. Waco*, 502 U.S. 9, 11 (1991), and a judge "will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority," *id.* at 13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)). Immunity may only be overcome where (1) the challenged actions were "not taken in the judge's judicial capacity" or (2) the actions, "though judicial in nature, [were] taken in the complete absence of all jurisdiction." *See id.* at 11-12; *see also Gross v. Rell*, 585 F.3d 72, 82 (2d Cir. 2009) (noting that judicial immunity "may be overcome if the judge acts in the clear absence of all jurisdiction or if he is not acting in his judicial capacity").

As an initial matter, the Court again notes that Defendants persuasively argue that any excessive force claim would be time-barred. *See* Defs.' Br. at 48.

Even assuming, *arguendo*, that any excessive force claim is not time-barred, such a claim against Judge Reilly is barred by judicial immunity. Mrs. Cassini's allegations against Judge Reilly appear to relate to actions taken in Judge Reilly's judicial capacity – *i.e.*, in presiding over the proceedings in the Surrogate's Court.[18] Moreover, Judge Reilly, as Nassau County Surrogate, had jurisdiction to issue, in connection with the proceedings over which she presided, the arrest warrant and contempt order that led to Mrs. Cassini's arrest and confinement. Judge Reilly has judicial immunity here, and any excessive force claim against her cannot stand.[19]

---

[18] Defendants argue that "Plaintiffs only allege actions taken [by Judge Reilly] in her official capacity as Surrogate presiding over the Estate proceedings." *See* Defs.' Br. at 39. Plaintiffs assert that Defendant Reilly "is sued herein in her individual, not official, capacity." *See* Pls.' Br. at 31. The Amended Complaint reflects that certain other Defendants are sued in their official capacities but does not indicate that Judge Reilly is sued in her official capacity. *See* Am. Compl. at 1, ¶¶ 9, 13-14.

[19] To the extent that Plaintiffs seek injunctive and/or declaratory relief in connection with any excessive force claim against Judge Reilly, such relief would not be available here. *See* 42 U.S.C. § 1983; *see also Treistman v. McGinty*, 804 F. App'x 98, 99 (2d Cir. 2020) (noting that "judicial immunity bars any claim for retrospective declaratory relief").

To the extent Mrs. Cassini seeks to bring any claim for excessive force against Judge Reilly, such claim is dismissed.

## II.     Gemeaux's Claims are Dismissed

As set forth below, although *Rooker-Feldman* does not bar Gemeaux's claims, Gemeaux's claims are barred by collateral estoppel and must be dismissed.

### A.     *Rooker-Feldman* Does Not Bar Gemeaux's Claims

In contrast to Mrs. Cassini's claims, Gemeaux's claims are not barred by *Rooker-Feldman*.  Because Gemeaux was not a party to the estate proceedings in the Surrogate's Court, Gemeaux cannot be said to have "lost in state court."  *See Hunter*, 75 F.4th at 68; *see also Lance v. Dennis*, 546 U.S. 459, 466 (2006) (stating that "[t]he *Rooker-Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment").

Moreover, although Gemeaux was a party to the 2021 Conversion Action, Gemeaux's claims – as discussed further below – appear to be based on allegations that "[t]he RICO defendants disregarded Plaintiffs' proof of ownership and proceeded, with the assistance and cooperation of Doyle Galleries, to catalogue and sell Plaintiffs' property at auction" in June 2019.  *See, e.g.*, Am. Compl. ¶¶ 91-93.  Because these claims are based on alleged misconduct that preceded the 2021 Conversion Action and therefore were not caused by the state court judgment in the 2021 Conversion Action, these claims are not barred by *Rooker-Feldman*.  *See Hunter*, 75 F.4th at 68.

### B.     Gemeaux's Claims are Barred by Collateral Estoppel

#### 1.  Applicable Law

"The fundamental notion of the doctrine of collateral estoppel, or issue preclusion, is that

42

an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the parties or their privies." *Constantine v. Tchrs. Coll.*, 448 F. App'x 92, 93 (2d Cir. 2011) (quoting *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008)). "Federal courts must give a New York state court judgment the same preclusive effect that New York courts would, and if New York law would bar [a plaintiff] from relitigating the claim in a subsequent state-court suit, he may not relitigate those factual issues in a federal forum." *El-Shabazz v. N.Y. Comm. on Character & Fitness for the Second Jud. Dep't*, 428 F. App'x 95, 96 (2d Cir. 2011) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) and *Genova v. Town of Southampton*, 776 F.2d 1560, 1561 (2d Cir. 1985)). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 66 F.4th 365, 371 (2d Cir. 2023) (quoting *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021)); *see also El-Shabazz*, 428 F. App'x at 96-97 (noting that "[u]nder New York law, collateral estoppel precludes a plaintiff from contesting in a subsequent action issues clearly raised in a prior proceeding and decided against that party, irrespective of whether the tribunals or causes of action are the same; New York courts apply collateral estoppel 'if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action'" (quoting *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002))).

Under New York law, in the context of collateral estoppel, "privity is an amorphous concept not easy of application and includes those who are successors to a property interest,

those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and those who are coparties to a prior action." *See Buechel v. Bain*, 97 N.Y.2d 295, 304 (2001) (alterations accepted) (quotations omitted); *see also Crown v. Danby Fire Dist.*, 676 F. App'x 87, 90 (2d Cir. 2017). "In addressing privity, courts must carefully analyze whether the party sought to be bound and the party against whom the litigated issue was decided have a relationship that would justify preclusion, and whether preclusion, with its severe consequences, would be fair under the particular circumstances." *Buechel*, 97 N.Y.2d at 304-05. "Doubts should be resolved against imposing preclusion to ensure that the party to be bound can be considered to have had a full and fair opportunity to litigate." *Id.* at 305; *see also Crown*, 676 F. App'x at 90.

### 2. Collateral Estoppel Bars Gemeaux from Relitigating the Issue of Ownership of the Property Doyle Galleries Sold at Auction

Defendants argue that "insofar as Plaintiffs' claims are based upon their purported property interest in McCouns Lane or the Doyle Auctioned Property, Plaintiffs are precluded from relitigating the issue based upon collateral estoppel" but "[t]he crux of this action . . . is based upon Plaintiffs' false allegations that they own this property and it was 'stolen' from them." *See* Defs.' Br. at 20. Defendants further argue that "[n]umerous court orders and decisions have already determined this property belonged to the Estate, not Plaintiffs." *See* Defs.' Br. at 33 (citing Baiamonte Exs. BB, CC, EE, FF, II, JJ); *see also* Defs.' Br. at 39 (asserting that "all of the property at issue in Plaintiffs' Amended Complaint was determined to belong to the Estate, not Plaintiffs").

Plaintiffs argue that "[a]ny decision(s) previously issued by the Surrogate[']s Court regarding the ownership of the companies and/or the property sold at auction were preliminary in nature as the previous 'trial' (an inquest, at best) was vacated by the Appellate Division and a

new trial ordered." *See* Pls.' Br. at 27-28 (citing Pls.' Ex. 2).  Plaintiffs argue that "the matter is

undecided" and "even if [the matter is] regarded as decided, it is irrefutable that Plaintiffs were

not given a full and fair opportunity to be heard," asserting that Mrs. Cassini "was not permitted

to present evidence and was not even present at the proceeding." *See* Pls.' Br. at 28.  Plaintiffs

argue that collateral estoppel does not apply under these circumstances. *See* Pls.' Br. at 28.

Here, collateral estoppel bars Gemeaux from relitigating the issue of ownership of the

property sold at auction by Doyle Galleries in 2019.  The 185-paragraph Amended Complaint

appears to reference Gemeaux in only a few paragraphs, which appear to allege, in sum and in

substance, that Doyle Galleries sold property that was stolen from Gemeaux.  *See* Am. Compl.

¶¶ 84 (alleging that "Mrs. Cassini contacted representatives of Doyle Galleries to make them

aware that property they had and/or were looking to abscond with belonged to her, her sister,

Peggy, and/or Gemeaux Ltd."), 89 (alleging that "Mrs. Cassini, with the assistance of counsel,

did her best to prepare an inventory of all seized items and an explanation of ownership for those

belonging to her or Gemeaux Ltd., and therefore not rightfully in the custody and control of Ms.

Baiamonte, Doyle Galleries, or any of the RICO defendants"), 91-95 (alleging, *inter alia*, that

the RICO Defendants "disregarded Plaintiffs' proof of ownership and proceeded, with the

assistance and cooperation of Doyle Galleries, to catalogue and sell Plaintiffs' property at

auction;" that "[a]n Order to Show Cause was filed in the Surrogate's Court on behalf of Mrs.

Cassini in advance of the auction sale, which set forth a catalogue of the items to be sold at

auction;" and that "[t]he list included purchases by Gemeaux Ltd., Ms. Nestor, and Mrs. Cassini

from various auction houses, and art galleries"), 96 (alleging that "Doyle Galleries knowingly

possessed then sold stolen property"), 134 (alleging that "the RICO defendants will next try to

find a way to sever Mrs. Cassini's interest in the third [company], Gemeaux Ltd., and sell that

off, too, just as they did to Gemeaux's property"); *see also, e.g.*, Am. Comp. ¶ 168 (alleging that "[t]he RICO defendants continue to interfere with Plaintiffs' lawful possession and ownership of their respective property to the extent that said property was not already disposed of for said Defendants' financial gain").[20]

In order for the Amended Complaint to plausibly allege that Doyle Galleries sold stolen property, the Amended Complaint would have to plausibly allege that Gemeaux owned that property, which it cannot do in light of the state court proceedings.  The issue of ownership of the property necessarily was decided by the Surrogate's Court in the underlying estate litigation. *See* Baiamonte Exs. BB, CC, EE, FF, II, JJ.  Notwithstanding Plaintiffs' arguments to the contrary, the Appellate Division vacated only the decisions, orders, and judgments entered in all proceedings between March 14, 2016 and July 25, 2016 and did not vacate or declare void the orders issued by the Surrogate's Court regarding ownership of the property sold at auction, which were issued outside of that timeframe.  *See* Pls.' Ex. 1 at 39 (granting Petitioner's motion to vacate and declare void all decisions, orders, and judgments entered after March 14, 2016 to the extent that all decisions, orders, and judgments entered in all proceedings between March 14, 2016 and July 25, 2016 are vacated and noting that "the motion is otherwise denied").

Moreover, it is fair to preclude Gemeaux from relitigating the issue because Gemeaux is in privity with Mrs. Cassini, who had a full and fair opportunity to litigate the issue in state court. Notwithstanding Plaintiffs' arguments to the contrary, pursuant to the procedures set forth in

---

[20] Gemeaux does not appear to join in Mrs. Cassini's claims relating to *Mrs. Cassini*'s person or property.  *See generally* Am. Compl.  In any event, Gemeaux would lack standing to bring any such claim(s), as Gemeaux has not alleged that it has suffered any injury in connection with Mrs. Cassini's claims relating to Mrs. Cassini's person or property.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021).

Judge Reilly's May 30, 2018 Order and in the November 1, 2018 Stipulation and Order signed by Mrs. Cassini's counsel and So-Ordered by Judge Reilly, Mrs. Cassini had a full and fair opportunity to dispute the Receiver's determination of whether the property belonged to OCI and CPL.  *See* Baiamonte Exs. EE, FF.  Given that Mrs. Cassini owns 50% of Gemeaux, Mrs. Cassini and Gemeaux have a relationship that justifies preclusion here.

Notably, Gemeaux, along with Mrs. Cassini and Peggy Nestor, set forth similar allegations in the 2021 Conversion Action.  *See Gemeaux Ltd.*, 2021 WL 6249530, at *1; *see also* Baiamonte Ex. II at 4.  However, as recognized by the Appellate Division, First Judicial Department, the same issues of fact had already been litigated in the Surrogate's Court prior to the 2021 Conversion Action.  *See Gemeaux Ltd.*, 210 A.D.3d at 409 (affirming dismissal of the complaint in the 2021 Conversion Action; stating that "Defendant established its entitlement to dismissal of the complaint because it presented documents, including a Surrogate Court order and so-ordered stipulation, definitively disproving the claim;" and noting that "Defendant's documents further establish that this action seeks to relitigate issues of fact previously decided in the Surrogate's Court's action, which plaintiffs failed to appeal"); *see also* Baiamonte Ex. JJ at 4.  The Appellate Division, First Judicial Department, applying New York law, barred Plaintiffs from relitigating their property-related claims in a subsequent state-court suit.  Plaintiffs may not relitigate the same factual issues in a federal forum.

Gemeaux's claims are barred by collateral estoppel and are dismissed.

* * *

In sum, dismissal of the Amended Complaint in its entirety is warranted.[21]

---

[21] Although the Court need not consider certain of Defendants' arguments in light of the above, the Court notes that Defendants raise a variety of persuasive arguments as to why Plaintiffs' claims should otherwise be dismissed.  *See* Defs.' Br. at 18-47 (arguing, *inter alia*, that

### III.     The Motion for Sanctions is Denied

For the reasons set forth below, the Court declines to impose sanctions here.

### A.     Applicable Law

Rule 11 of the Federal Rules of Civil Procedure "requires an attorney to certify that (1) a pleading 'is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation,' (2) 'the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law,' and (3) 'the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'"  *See Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, 628 F. Supp. 3d 501, 521 (S.D.N.Y. 2022) (quoting Fed. R. Civ. P. 11(b)), *reconsid. denied*, No. 18-CV-02442, 2023 WL 3724155 (S.D.N.Y. May 30, 2023), *aff'd*, No. 23-947, 2024 WL 2720235 (2d Cir. May 28, 2024).

Rule 11 further provides, in relevant part:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.  If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

*See* Fed. R. Civ. P. 11(c)(2).

---

Plaintiffs' claims are insufficiently pleaded and fail to state a claim; that Plaintiffs' claims against certain Defendants are barred by the doctrines of sovereign immunity, judicial immunity, quasi-judicial immunity, and/or the *Barton* doctrine; that Plaintiffs' claims against Defendant Doyle Galleries are barred by res judicata; and that the Court should decline to adjudicate any disputes that are subject to further state court proceedings under the *Colorado River* doctrine of abstention).

"A pleading violates Rule 11 if it is frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." *Now-Casting*, 628 F. Supp. 3d at 521 (quotation omitted). "To constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Id.* (alteration accepted) (quoting *Simon DeBartolo Grp. L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 167 (2d Cir. 1999)). "Given concern for encouraging zealous advocacy, courts maintain a high bar for establishing a Rule 11 violation." *Id.* (quotations omitted). "Among other things, a court must 'resolve all doubts in favor of the signer' of the pleading, and may impose sanctions only where an attorney's conduct was 'objectively unreasonable.'" *Galin v. Hamada*, 283 F. Supp. 3d 189, 201 (S.D.N.Y. 2017) (alterations accepted) (first quoting *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993); then quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003)), *aff'd*, 753 F. App'x 3 (2d Cir. 2018); *see also Omega SA v. 375 Canal, LLC*, 324 F.R.D. 47, 54 (S.D.N.Y. 2018) (noting that "[b]ecause Rule 11 sanctions represent a drastic, extraordinary remedy, courts seldom issue them and then only as a (very) last resort" (quotation omitted)). "Sanctions are appropriate under Rule 11 only where it is patently clear that a claim has absolutely no chance of success." *Now-Casting*, 628 F. Supp. 3d at 521 (quotation omitted). "And even if the Court finds that a party has met this high bar, 'the decision whether or not to impose sanctions is a matter for the court's discretion.'" *Id.* (quoting *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004)); *see also Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 451 (S.D.N.Y. 2019) (noting that "[c]ourts should be cautious in granting Rule 11 sanctions").[22]

---

[22] The 1993 Advisory Committee note to Rule 11 lays out various possible considerations for

B.       **The Court Declines to Impose Sanctions**

Defendants Baiamonte and Miller argue, *inter alia*, that "[f]rom the face of the Amended Complaint, it is obvious that Plaintiffs are trying to challenge final court orders and decisions of the Surrogate's Court that were entered before this federal action was filed, primarily, Ms. Cassini's contempt, her court-ordered arrest, the court-ordered sale of McCouns Lane, and the court-ordered sale of the Doyle Auctioned Property;" that the Amended Complaint "is plainly barred by the state court proceedings, warranting the imposition of severe sanctions;" and that sanctions are warranted "for a litany of other reasons." *See generally* Sanctions Br.; *see also generally* Sanctions Reply.

Plaintiffs argue, *inter alia*, that this action was not brought for an improper purpose; that Plaintiffs and Plaintiffs' counsel "are aware that some difficult hurdles have to be overcome in order to maintain suit against a judge, court-appointed attorneys and other public officials where conduct was sanctioned by court order, but to not proceed would be to allow the wrongs alleged in the Complaint to go without recourse;" that there has been no final judgment in the Surrogate's Court matter; that even if the Court is not swayed by Plaintiffs' arguments, they are advanced in good faith, are grounded in the law, and are not frivolous; and that Plaintiffs' allegations in this action have evidentiary support. *See generally* Sanctions Opp.  Plaintiffs point to the Heuser Declaration and accompanying exhibits to address the factual contentions raised by

---

deciding whether to impose sanctions and what sanctions would be appropriate: "[w]hether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants." *See* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment; *see also Now-Casting*, 628 F. Supp. 3d at 521.

Defendants in the Motion for Sanctions and argue that such motion "is not the proper vehicle for raising such factual disputes."  *See* Sanctions Opp. at 13-14.

Although, as set forth above, the Court has concluded that all of Plaintiffs' claims must be dismissed and although Plaintiffs' allegations and arguments are troublingly inconsistent with the state court record in some respects, ultimately the Court declines to impose the extraordinary remedy of sanctions on the record here.

The Motion for Sanctions is denied.[23]

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss, ECF No. 64, is GRANTED; the Amended Complaint, ECF No. 25, is DISMISSED in its entirety; and the Motion for Sanctions, ECF No. 69, is DENIED.  Dismissal of Mrs. Cassini's claims, other than any excessive force claim(s) against Judge Reilly, the County of Nassau, the Nassau County Sheriff, and the New York City Sheriff, is without prejudice.

Dismissal of the Amended Complaint is without leave to further amend.[24]  Plaintiffs were apprised of the pleading defects in the original Complaint by way of the initial requests for a pre-motion conference; Plaintiffs were afforded – and availed themselves of – the opportunity to amend; Plaintiffs were apprised of the pleading defects in the Amended Complaint by way of the requests for a pre-motion conference with respect to the Amended Complaint; and Plaintiffs did not seek leave to further amend at that time.  On the record before the Court, there is no

---

[23]  Plaintiffs' request "that the Court award counsel fees to Plaintiffs to offset the expense incurred as a result of having to defend against [the] motion," *see* Sanctions Opp. at 14, also is denied.  Such relief is not warranted here.

[24]  Plaintiffs appear to request leave to amend – rather cursorily – in various places in their briefing.  *See, e.g.*, Pls.' Br. at 19, 24, 26, 40 n.5.

indication that Plaintiffs could provide additional allegations that might cure the defects set forth

above and lead to a different result.  Under these circumstances, leave to amend is not warranted.

*See Gallop v. Cheney*, 642 F.3d 364, 369-70 (2d Cir. 2011); *see also Nat'l Credit Union Admin.*

*Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018).

The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

*/s/ Diane Gujarati*
DIANE GUJARATI
United States District Judge

Dated: August 12, 2024
          Brooklyn, New York